UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TERRY DUKES, SR.,

     Plaintiff,

v.

ROBERT B. McCALLUM, JR., in his
official capacity as Sheriff of Levy
County, Florida, CORPORAL CHASE
GREGORY, CORPORAL TUCKER
GAFFEY, and CORPORAL FRANCO
ALMEIDA, each in their individual
capacities,

     Defendants.

Case No.

**<u>JURY DEMAND</u>**

## <u>COMPLAINT FOR DAMAGES</u>

Plaintiff Terry Dukes, Sr., by and through his undersigned attorneys,

files this complaint for damages against Robert B. McCallum, Jr., in his official

capacity as Sheriff of Levy County, Florida, and Corporals Chase Gregory,

Tucker Gaffey, and Franco Almeida, each in their individual capacities.

In support, Plaintiff alleges:

## JURISDICTION, VENUE, PARTIES

1.      This is an action for money damages for the injuries suffered by Plaintiff Terry Dukes, Sr., as a result of Defendants' conduct in violation of Plaintiff's civil rights under the United States Constitution and Florida law.

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3.      Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of civil rights under the Fourth Amendment to the U.S. Constitution.

4.      Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider the state law claims alleged herein.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b), being the district where the claims arose and where Defendants conduct business.

6.      At all times relevant, Plaintiff Terry Dukes, Sr. is and was a resident of Bronson, Florida, Levy County, Florida and is otherwise *sui juris*.

7.      Prior to the unlawful conduct of the defendants, Plaintiff worked for Levy County for more than 20 years.

8.      Plaintiff is hard of hearing and requires hearing aids.

9.      In May 2019, Plaintiff did not have any hearing aids or other devices to improve his difficult hearing after they broke, and he did not have enough money to afford new ones.

10. At all times relevant, Defendant Sheriff Robert B. McCallum, Jr., was and is the elected Sheriff of Levy County, Florida. As the constitutional officer elected in accordance with Chapter 30, Florida Statutes, and Article VIII, section 1, of the Florida Constitution, Defendant McCallum, Jr., is tasked with implementing, ratifying, and approving the policies and practices of the Levy County Sheriff's Office (LCSO). Defendant McCallum, Jr. is the final policymaker for LCSO and at all times material was acting under color of law.

11. At all times relevant, Defendant Corporal Chase Gregory—then a deputy in rank—was and is a sheriff's deputy for the Levy County Sheriff's Office and is otherwise *sui juris*. Gregory is being sued in his individual capacity.

12. At all relevant times during the events at issue in this case, Gregory was acting under color of law.

13. At all times relevant, Defendant Corporal Tucker Gaffey—then a deputy in rank—was and is a sheriff's deputy for the Levy County Sheriff's Office and is otherwise *sui juris*. Gaffey is being sued in his individual capacity.

14. At all relevant times during the events at issue in this case, Gaffey was acting under color of law.

3

15.     At all times relevant, Defendant Corporal Franco Almeida was and is a corporal for the Levy County Sheriff's Office and is otherwise *sui juris*. Almeida is being sued in his individual capacity.

16.     At all relevant times during the events at issue in this case, Almeida was acting under color of law.

17.     All conditions precedent to the filing of this action have occurred, accrued, or have been waived.

18.     Specifically, Plaintiff has timely complied with all applicable presuit notice provisions of section 768.28, Florida Statutes. Defendants have failed to fully comply with the presuit requirements of section 768.28(6), Florida Statutes.

19.     Plaintiff has been required to engage the services of the undersigned counsel and is entitled to an award of reasonable attorney's fees and costs.

## FACTUAL ALLEGATIONS

20.     At around 3:13 a.m. on or about May 25, 2019, LSCO was alerted to a possible battery involving a pregnant person.

21.     At around 3:58 a.m., LCSO Detective Wilkinson responded to the battery complaint and learned that Plaintiff's then 31-year-old son, Terry Dukes, Jr., had purportedly assaulted his girlfriend.

22.     Det. Wilkinson claimed to have probable cause to arrest Plaintiff's son.

23.     At around 5:15 a.m., then-Deputies Gaffey, Murphy, Gregory and Corporal Almeida arrived at Plaintiff's residence—900 Patterson Street, Bronson, Florida 32621—to arrest Dukes, Jr.

24.     At all times material, Plaintiff owned his residence.

25.     At the time of their arrival, LCSO did not have any lawfully issued arrest warrant for Plaintiff's son or any search warrant for Plaintiff's residence. There were no exigent circumstances or fresh pursuit at the time that warranted any entry of Plaintiff's residence without a warrant. In its investigative report for Internal Investigation 2019-FI-08—regarding the events that transpired at Plaintiff's home on May 25, 2019—LCSO acknowledged that "[t]here was no fresh pursuit and no warrant existed at this point."

26.     According to the investigative summary LSCO created in that investigation—and to which Sheriff McCallum, Jr. "agree[d] with the findings"—LSCO custom, practice, and policy at the time was to delay obtaining a warrant and instead "make attempts to locate and arrest a person when probable cause has been established." LCSO concluded that the application for a warrant "would not have been appropriate at this juncture of the investigation."

5

27.     According to the same investigative report, LCSO had, since April 2017, responded to 21 investigations involving Plaintiff's son—including an event a month earlier on April 18, 2019—at Plaintiff's residence.

28.     The individual defendants in this case knew Plaintiff's son and what he looked like.

29.     Plaintiff had encountered Gregory on two occasions prior to the May 2019 event—once at his home on Patterson Street and once at his place of employment.

30.     At all times material, Gregory knew and would have known that Plaintiff was not Dukes, Jr.—the suspect of the alleged crime.

31.     When Gaffey, Murphy, Gregory and Almeida arrived at Plaintiff's residence, they claimed to have knocked on his door several times announcing, "sheriff's office."

32.     While the individual defendants were outside Plaintiff's house, Plaintiff heard nothing. Only when one of the officers shined a light through Plaintiff's window did he realize someone was home—his son.

33.     Around that time, Plaintiff's son would routinely come and go and often show up late at night at Plaintiff's home. Because his father was hard of hearing—his son would shine a flashlight into the home to alert his father, who would wake and open the door for his son.

6

34.     That night, Plaintiff was woken by a flashlight, believed his son was home, and walked to the back door to let his son in the house.

35.     At the time, Plaintiff was naked; he used his phone's flashlight to navigate to the door.

36.     When Plaintiff opened the door, he did not say a word—he simply opened it and returned to his room to shower so that he could go to work.

37.     At no time did Plaintiff invite the individual defendants into his home or otherwise give consent for their entry.

38.     Once Plaintiff opened the back door to his home, Gregory entered without consent.

39.     Gaffey announced on the radio that the back door was opened, and that Gregory entered; Gaffey then followed Gregory inside the house; Almeida followed Gaffey into the house.

40.     At no time were any of these individuals authorized by Plaintiff to be in his home nor did they ask to be invited into Plaintiff's home.

41.     As the United States Supreme Court declared in 1980: "[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 590 (1980).

42.    According to its investigative report, LCSO contended that "[t]he opening of the door could be construed as an invitation to enter." It was clearly established at the time that the mere opening of a door to a home did not constitute implied consent to enter a home without a warrant or probable cause and exigent circumstances. LCSO's well established and pervasive policy, practice, and custom permitting its deputies to enter an individual's residence without a warrant or exigent circumstances and probable cause with the mere opening of a door was and is unconstitutional.

43.    According to his interview in connection with the investigative report, Gregory admitted that after the door was opened, he entered the house without being invited inside. The report—which Sheriff McCallum, Jr. approved—stated:

> The door was opened slightly by an unknown individual from inside, whom [Gregory] did not see. This person immediately turned and retreated back inside the home. [Gregory] explained that he is trained in tactics (SWAT) which are more advanced than that of other deputies in the same position as a patrol deputy and said he knew not to turn his flashlight on. [Gregory] explained this would have done two things: given away his position and illuminated himself making him a target; so he entered the doorway of the home.

44.    In his narrative concerning the event, Gregory wrote on May 26, 2019, that "[a]s soon as this door opened, I walked up the steps and entered the residence through the open door."

45.    In a recorded interview taken after the incident, Gregory acknowledged that he had no right to enter Plaintiff's home. He stated: "And my thought process was and looking back now I probably shouldn't have done that."

46.    In his supplement, Gaffey wrote on May 26, 2019, that he "observed the back door to the residence open and Dep. Gregory walk up the wooden steps, inside through the back door." He then "followed shortly behind Dep. Gregory and entered the home."

47.    In an interview taken later, Gaffey was asked whether Plaintiff said anything when Gregory went inside the home to which he replied: "I did not hear anything."

48.    Almeida stated in an interview after the incident that he heard over the radio that Gregory had gone inside the home. When asked whether he ran to the back door to enter after hearing that, he stated that he simply walked there because there didn't appear to be any commotion and he heard no yelling.

49.    He also stated that it was possible that "the door opened, and [Gregory and Gaffey] just followed someone in."

9

50.     LCSO General Order 1105.3, Conduct Standards and Violation Levels—which was in effect at the time of the unlawful entry into Plaintiff's home—provides that supervisors are tasked with "ensuring all applicable laws" are "adhered to by those members under their supervision."

51.     Almeida failed to ensure that Gregory and Gaffey obtained Plaintiff's consent prior to entering his residence.

52.     At the time of entry into his home, Gregory, Gaffey, and Almeida:

    a. Did not possess a warrant to arrest Plaintiff;

    b. Did not possess a warrant to arrest Plaintiff's son;

    c. Were not in hot pursuit of Plaintiff's son;

    d. Were not in hot pursuit of Plaintiff;

    e. Did not have exigent circumstances justifying entry into Plaintiff's home;

    f. Did not possess a search warrant regarding Plaintiff's home; and

    g. Did not have express or implied consent to enter Plaintiff's home.

53.     It was clearly established at the time of their entry into Plaintiff's home that these officers' entry into Plaintiff's home without a warrant, hot pursuit, exigent circumstances, or consent, violated the Fourth Amendment to the United States Constitution.

54.   At the time of their unlawful entry into Plaintiff's home, LCSO had an unconstitutional policy, custom, and practice of permitting and approving its officers' illegal entry into the homes of Levy County residents.

55.   The policy and practice at the time authorized LCSO officers to enter homes illegally to arrest suspects without a warrant, exigent circumstances or hot pursuit, or consent.

56.   Almeida expressly acknowledged LCSO's unconstitutional policy and practice at the time of entering residents' homes without consent even in the absence of a warrant or exigent circumstances.

57.   After the unlawful entry into Plaintiff's home, Sheriff McCallum, Jr., as the final policymaker for LCSO, ratified his officers' unconstitutional acts by "agree[ing] with the findings" of the internal investigation into these officers' conduct and exonerating Gregory from all "allegations of violations of policy" determining that "no violation of any LCSO policy was discovered" with respect to the events that occurred at Plaintiff's home on May 25, 2019—including the unlawful excessive force that followed the illegal entry.

58.   Specifically, once in Plaintiff's home, the officers proceeded towards Plaintiff, who was naked and heading back towards his bedroom to get ready for work.

11

59.     Plaintiff entered his bedroom to turn on the lights before which Gregory snuck up on Plaintiff who was inside the bedroom by the door.

60.     Plaintiff then heard Gregory order him to get on the floor.

61.     Plaintiff complied.

62.     Gaffey, also in the home, asserted that he had his Taser pointed at Plaintiff. Almeida was also outside Plaintiff's bedroom and stated that he had his firearm drawn.

63.     Prior to hearing Gregory's order to get on the floor, Plaintiff had not heard any other orders from any of the officers.

64.     Plaintiff was unaware of the deputies' entrance into his home, he believed he had cracked the back door open for his son.

65.     Assuming that Gregory was there looking for his son—who had police encounters at Plaintiff's residence in the past, including with Gregory—Plaintiff told Gregory that he was "Terry, Sr." and that his son was not at home. He also asked the officers why they were in his home and told them he needed to go to work.

66.     Plaintiff was on the ground in his bedroom, terrified and embarrassed to have strangers in his home while he was nude on the floor. He repeatedly told Gregory that he wanted to put on pants to cover his naked body.

67.    Plaintiff then moved forward in the direction of the bedroom door to reach for his pants and begun to put them over his legs while repeatedly telling the officers that he was putting on his pants.

68.    Without giving any commands, Gregory deployed his Taser, hitting Plaintiff in the chest with one of the probes while he was putting on his pants.

69.    Plaintiff possessed firearm in his bedroom at the time—a revolver that was on his bed behind him. Plaintiff did not move towards the gun. At all times material, Plaintiff remained on the floor and only moved forward—away from the bed where the gun was located—to reach for and put on his pants.

70.    At the time Gregory deployed his Taser, it was clearly established that an officer could not use force—including "less lethal" force—on a subject on the ground who was several feet from a firearm and was not moving in the direction of the firearm.

71.    Gregory's use of force against Plaintiff was not objectively reasonable in light of the facts and circumstances, including the location of the firearm, the fact that Plaintiff was naked on the floor, and the fact that Plaintiff moved forward towards the door and away from the gun when Gregory fired his Taser.

72.     In an interview taken after the incident, Gregory justified his actions by explaining that he knew that Plaintiff's son had used MDMA, and in his opinion MDMA made people erratic or exhibit strange behavior.

73.     After deploying his Taser, Gregory entered Plaintiff's bedroom, where Plaintiff was still reaching trying to pull his pants up to cover his naked body.

74.     Gregory, Gaffey, and Almeida permitted Plaintiff to continue to put on his pants.

75.     Plaintiff was then placed in handcuffs and taken outside with the Taser probe still lodged in his chest.

76.     He remained outside in the cold without a shirt or shoes and in handcuffs until paramedics arrived, who removed the probe from his chest.

77.     While waiting for paramedics, Plaintiff told the officers that what they had done was unlawful and that he would seek legal recourse.

78.     Plaintiff was then taken to the hospital for observation.

79.     Only after the incident at Plaintiff's residence did LCSO apply for and obtain a warrant for the arrest of Plaintiff's son.

80.     In connection with the incident, Plaintiff was charged with one count of resisting an officer without violence in the matter of *State of Florida v. Terry Carl Dukes, Sr.*, Case No. 38-2019-MM-471-A.

14

81.    Upon information and belief, Plaintiff was criminally charged based on his statements that he would pursue legal action for the unlawful entry and force.

82.    On June 6, 2019, the State Attorney's Office dropped the charges and filed a "No Information" with the court.

83.    Since the incident in May 2019, Plaintiff has experienced extreme mental and physical distress.

84.    Plaintiff could no longer perform his job functions due to the stress of the incident and was forced to retire early.

85.    Plaintiff has experienced suicidal ideations stemming from the incident and has sought mental health treatment and received a diagnosis of post-traumatic stress disorder.

86.    Plaintiff experiences extreme discomfort and stress in public and around other people as well as in his own home.

87.    Since the incident, Plaintiff no longer sleeps in his bedroom.

88.    Plaintiff also experiences physical pain due to an aggravation of a preexisting injury of his shoulder from the deployment of the Taser probe. Since the incident, the injury has become exacerbated to the point that Plaintiff has resulting limited mobility and grip strength.

## Count I – Invasion of Privacy Under Florida Law
### (against Gregory, Gaffey & Almeida)

Plaintiff repeats and re-alleges paragraphs 1 through 88 above, as if fully set forth herein and further alleges:

89.     The Florida Constitution provides for the right of the people to be secure in their houses against unreasonable searches and seizures. *See* art. I, § 12, Fla. Const.

90.     On or about May 25, 2019, Defendants Gregory, Gaffey and Almeida intentionally and with malice and bad faith invaded Plaintiff's privacy in violation of state law, by entering onto Plaintiff's private property without consent, a warrant, or exigent circumstances justifying the warrantless entry.

91.     Defendants Gregory, Gaffey and Almeida knew or reasonably should have known that there was no justification for entry into Plaintiff's residence because they did not have a warrant, exigent circumstances justifying warrantless entry, or permission from Plaintiff to support the unlawful entry.

92.     Defendants Gregory, Gaffey and Almeida knew or reasonably should have known that their conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences.

93.     As a direct and proximate result of the actions by Defendants Gregory, Gaffey and Almeida, Plaintiff suffered and will continue to suffer in the future, damage to his reputation, mental pain and suffering, physical injury, aggravation of preexisting injury, embarrassment, humiliation, deprivation of property, disgrace, and lost wages and benefits.

WHEREFORE, Plaintiff Terry Dukes, Sr. demands judgment against Defendants Chase Gregory, Tucker Gaffey, and Franco Almeida for compensatory and exemplary damages, costs of this action, and such further relief as the Court deems appropriate.

## Count II – Trespass Under Florida Law
### (against Gregory, Gaffey & Almeida)

Plaintiff repeats and re-alleges paragraphs 1 through 88 above, as if fully set forth herein and further alleges:

94.     On or about May 25, 2019, Defendants Gregory, Gaffey, and Almeida willfully, intentionally, and with malice and bad faith entered Plaintiff's residence.

95.     Defendants Gregory, Gaffey, and Almeida were not authorized, licensed, or invited to enter Plaintiff's residence.

96.     Defendants Gregory, Gaffey, and Almeida had notice that they were not authorized to enter Plaintiff's residence.

97.     Plaintiff did not provide consent, permission, or authorization to Defendants Gregory, Gaffey or Almeida to enter his residence.

98.     Defendants Gregory, Gaffey, and Almeida committed trespass by entering Plaintiff's residence without his permission.

99.     Defendants Gregory, Gaffey and Almeida knew or reasonably should have known that their conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences.

100.   As a direct and proximate result of the actions by Defendants Gregory, Gaffey and Almeida, Plaintiff suffered and will continue to suffer in the future loss of enjoyment, use, and deprivation of property.

WHEREFORE, Plaintiff Terry Dukes, Sr. demands judgment against Defendants Chase Gregory, Tucker Gaffey, and Franco Almeida for compensatory and exemplary damages, costs of this action, and such further relief as the Court deems appropriate.

### Count III – Unlawful Entry in Violation of the Fourth Amendment
### (against Gregory, Gaffey & Almeida)

Plaintiff repeats and re-alleges paragraphs 1 through 88 above, as if fully set forth herein and further alleges:

101.   At all times material, Defendants Gaffey, Gregory, and Almeida were sheriff's deputies and law enforcement officers employed by the Levy County Sheriff's Office and acting under color of state law.

102.   The Fourth Amendment to the United States Constitution is violated when a law enforcement officer enters a home (a) without a warrant or (b) absent probable cause *and* exigent circumstances.

103.   At all times, Plaintiff had a Fourth Amendment right to be free from unlawful entry into his home.

104.   On or about May 25, 2019, Defendants Gregory, Gaffey, and Almeida abused their positions as law enforcement officers when they entered Plaintiff's residence without a warrant, exigent circumstances, or Plaintiff's permission.

105.   Defendants Gregory, Gaffey, and Almeida entered Plaintiff's residence for the sole purpose of searching for Plaintiff's son and intentionally disregarded Plaintiff's right to be free from unlawful entry into his home.

106.   Defendants Gregory, Gaffey and Almeida knew or reasonably should have known that their conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences.

107.   During the unlawful entry into Plaintiff's home, he was arrested and subjected to excessive force.

108.   As a direct and proximate result of the defendant's unlawful entry in violation of the Fourth Amendment, Plaintiff has suffered mental and physical injuries and special damages.

109.   These damages include but are not limited to: the violation of Plaintiff's federal constitutional rights, a deprivation of liberty, humiliation, physical inconvenience, pain and suffering, physical injury, aggravation of preexisting injury, emotional damage, mental suffering and anguish, lost wages and benefits, and all other damages associated with this constitutional violation.

110.   Plaintiff has been required to engage the services of the undersigned counsel. Accordingly, Plaintiff is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff Terry Dukes, Sr. demands judgment against Defendants Chase Gregory, Tucker Gaffey, and Franco Almeida for compensatory, exemplary, and punitive damages, costs of this action, reasonable attorneys' fees, and such further relief as the Court deems appropriate.

## <u>Count IV – Unlawful Seizure in Violation of the Fourth Amendment</u>
### (against Gregory, Gaffey & Almeida)

Plaintiff repeats and re-alleges paragraphs 1 through 88 above, as if fully set forth herein and further alleges:

111.   At all times material, Defendants Gaffey, Gregory, and Almeida were sheriff's deputies and law enforcement officers employed by the Levy County Sheriff's Office and acting under color of state law.

112.   The Fourth Amendment to the United States Constitution applies to seizures conducted by law enforcement.

113.   The seizure of Plaintiff by Defendants Gaffey, Gregory, and Almeida was unlawful and in violation of Plaintiff's Fourth Amendment Rights.

114.   The arrest, handcuffing and detention of Plaintiff by these defendants was in violation of Plaintiff's Fourth Amendment Rights.

115.   A person has been seized within the meaning of the Fourth Amendment if in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.

116.   A reasonable person in Plaintiff's situation would not have felt free to leave.

117.    Seizures with the essential attributes of full custodial arrest by law enforcement officers are reasonable only if supported by probable cause.

118.    None of the officers had a valid warrant for Plaintiff's arrest.

119.    None of the officers had a valid warrant to search Plaintiff's residence.

120.    None of the officers had probable cause or arguable probable cause to arrest Plaintiff.

121.    None of the officers had a legal right to be present in Plaintiff's residence for the purpose of making an arrest or establishing probable cause.

122.    Defendants Gregory, Gaffey and Almeida knew or reasonably should have known that their conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences.

123.    The Fourth Amendment also encompasses the right to be free from the use of excessive force during an arrest.

124.    During the arrest, Plaintiff was subjected to excessive force.

125.    As a direct and proximate result of the defendant's unlawful seizure in violation of the Fourth Amendment, Plaintiff has suffered mental and physical injuries and special damages.

126.   These damages include but are not limited to: the violation of Plaintiff's federal constitutional rights, a deprivation of liberty, humiliation, physical inconvenience, pain and suffering, physical injury, aggravation of preexisting injury, emotional damage, mental suffering and anguish, lost wages and benefits, and all other damages associated with this constitutional violation.

127.   Plaintiff has been required to engage the services of the undersigned counsel. Accordingly, Plaintiff is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff Terry Dukes, Sr. demands judgment against Defendants Chase Gregory, Tucker Gaffey, and Franco Almeida for compensatory, exemplary, and punitive damages, costs of this action, reasonable attorneys' fees, and such further relief as the Court deems appropriate.

### Count V – False Arrest/False Imprisonment Under Florida Law
### (against Gregory, Gaffey & Almeida)

Plaintiff repeats and re-alleges paragraphs 1 through 88 above, as if fully set forth herein and further alleges:

128.   At all times material, Defendants Gaffey, Gregory, and Almeida were sheriff's deputies and law enforcement officers employed by the Levy

County Sheriff's Office and acting under color of state law and acting within their discretionary function.

129.   Florida law protects a person from the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty.

130.   Defendants Gregory, Gaffey, and Almeida unlawfully detained Plaintiff and deprived him of his liberty.

131.   Defendants Gregory, Gaffey, and Almeida unlawfully detained Plaintiff against his will.

132.   Defendants Gregory, Gaffey, and Almeida unlawfully detained Plaintiff without legal authority or "color of authority."

133.   Specifically, these defendants detained Plaintiff without lawful basis or legal right to be in his residence.

134.   The detention of Plaintiff was unreasonable and unwarranted under the circumstances.

135.   These defendants acted with ill will, hatred, spite, and evil intent to arrest Plaintiff in his home without a warrant or probable cause.

136.   A person has been seized within the meaning of the Fourth Amendment if in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.

137.   Defendants Gregory, Gaffey, and Almeida knew or reasonably should have known that their conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences.

138.   As a direct and proximate result of defendant's unlawful arrest in violation of Florida law, Plaintiff suffered mental and physical injuries and special damages.

139.   These damages include but are not limited to: the violation of Plaintiff's federal constitutional rights, a deprivation of liberty, humiliation, physical inconvenience, pain and suffering, physical injury, aggravation of a preexisting injury, emotional damage, mental suffering and anguish, lost wages and benefits, and all other damages associated with this violation.

WHEREFORE, Plaintiff Terry Dukes, Sr. demands judgment against Defendants Chase Gregory, Tucker Gaffey, and Franco Almeida for compensatory and exemplary damages, costs of this action, and such further relief as the Court deems appropriate.

## Count VI – Failure to Intervene Under 42 U.S.C. § 1983
### (against Gaffey & Almeida)

Plaintiff repeats and re-alleges paragraphs 1 through 88 above, as if fully set forth herein and further alleges:

140.   At all times material, Defendants Gaffey, Gregory, and Almeida were sheriff's deputies and law enforcement officers employed by the Levy County Sheriff's Office and acting under color of state law.

141.   The Fourth Amendment to the United States Constitution is violated when a law enforcement officer enters a home (a) without a warrant or (b) absent probable cause *and* exigent circumstances.

142.   At all times, Plaintiff had a Fourth Amendment right to be free from unlawful entry into his home.

143.   On or about May 25, 2019, Defendant Gregory abused his position as a law enforcement officer when he entered Plaintiff's residence without a warrant, exigent circumstances, or Plaintiff's permission.

144.   Defendants Gaffey and Almeida knew that Defendant Gregory did not have permission or a lawful basis to enter Plaintiff's residence but failed or refused to intervene.

145.   Defendant Gaffey then entered Plaintiff's residence without permission or any lawful basis under the Fourth Amendment.

146.   Defendant Almeida knew that Defendant Gaffey did not have permission or a lawful basis to enter Plaintiff's residence but failed or refused to intervene.

26

147.   As a direct and proximate result of the defendant's unlawful entry in violation of the Fourth Amendment, Plaintiff has suffered mental and physical injuries and special damages.

148.   These damages include but are not limited to: the violation of Plaintiff's federal constitutional rights, a deprivation of liberty, humiliation, physical inconvenience, pain and suffering, physical injury, aggravation of a preexisting injury, emotional damage, mental suffering and anguish, lost wages and benefits, and all other damages associated with this constitutional violation.

149.   Plaintiff has been required to engage the services of the undersigned counsel. Accordingly, Plaintiff is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff Terry Dukes, Sr. demands judgment against Defendants Tucker Gaffey and Franco Almeida for compensatory, exemplary, and punitive damages, costs of this action, reasonable attorneys' fees, and such further relief as the Court deems appropriate.

### Count VII – Failure to Train/Supervise/Discipline Under 42 U.S.C. § 1983 (against Sheriff McCallum, Jr.)

Plaintiff repeats and re-alleges paragraphs 1 through 88 above, as if fully set forth herein and further alleges:

150.   Defendant McCallum, Jr., in his official capacity as Sheriff of Levy County, implemented, approved, ratified, and enabled a policy, practice, and custom of delaying warrant applications and permitting and encouraging warrantless entry into residents' homes and premises without consent or exigent circumstances and probable cause.

151.   This policy, practice, and custom amounts to the deliberate indifference of the rights of persons with whom the police come in contact because it permits LCSO deputies to violate the Fourth Amendment for the purpose of effectuating arrest without having to first seek an application for a warrant from the court. This policy, practice, and custom further amounts to the deliberate indifference of the rights of persons with whom the police come in contact because it permits LCSO deputies to violate the Fourth Amendment by construing the opening of the door to a home to constitute implied consent for purposes of obviating the warrant requirement or need for exigency.

152.   The policy, practice, and custom were well settled and widespread within LCSO such that it was approved and condoned at the highest levels of LSCO.

153.   At all times material, Defendant McCallum, Jr. was the decisionmaker and policymaker for LCSO with respect to this unconstitutional policy, practice, and custom.

154.   Defendant McCallum, Jr. knew of a need to train, supervise, and/or discipline his deputies and officers on the requirements of the Fourth Amendment, but he deliberately chose not to take any action.

155.   Defendant McCallum, Jr. violated Plaintiff's rights by maintaining practices, customs, and policies that were the moving force of these constitutional violations.

156.   These policies, customs, and practices were able to exist and thrive within LCSO because Defendant McCallum, Jr. was deliberately indifferent to the problem, thereby effectively ratifying and approving it.

157.   Defendant McCallum, Jr. expressly ratified and approved LCSO's unconstitutional custom, policy, and practice when he exonerated Defendant Gregory in this case despite his admissions in the post-incident internal investigation that he entered Plaintiff's home without a warrant, consent, or exigent circumstances, identifying that he "probably shouldn't have done that."

158.   Defendant McCallum, Jr. expressly ratified and approved LCSO's unconstitutional custom, policy, and practice when he failed to discipline Defendants Gregory, Gaffey, and Almeida for their failure to obtain consent prior to entering Plaintiff's home and for Defendants Gaffey's and Almeida's failure to intervene after Defendant Gregory entered without consent.

159.   Defendant McCallum, Jr. admits through his ratification and approval of the Investigative Summary and report for investigation no. 19-FI-08 that LCSO at all times material maintained an unconstitutional practice, custom, and policy of permitting, condoning, and allowing LCSO deputies and staff to enter homes without warrants, probable cause and exigent circumstances, or consent. Specifically, Defendant McCallum, Jr.'s unconstitutional policy, custom, and practice permits law enforcement to enter a home without a warrant or exigent circumstances upon the opening as a door, which LCSO construes as an "invitation."

160.   The need for more or different training was so obvious that Defendant McCallum, Jr. can reasonably be said to have been deliberately indifferent to the need.

161.   Defendant McCallum, Jr. violated Plaintiff's constitutional rights through the actions and failures to act by individuals with final policymaking authority for him.

162.   Plaintiff's injuries were caused by persons who acted per the foregoing policies, customs, and practices in engaging in the misconduct described herein.

163.   Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable

attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff Terry Dukes, Sr. demands judgment against Defendant Robert McCallum, Jr., in his official capacity, for compensatory and exemplary damages, costs of this action, reasonable attorneys' fees, and such further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

Dated: March 1, 2023.

Respectfully submitted,

SLATER LEGAL PLLC

*/s/ James M. Slater*
James M. Slater (FBN 111779)
113 S. Monroe Street
Tallahassee, Florida 32301
james@slater.legal
Tel. (305) 523-9023

-and-

LAW OFFICE OF ROBERT SAYLOR
Robert L. Saylor (FBN 132481)
2730 Blue Heron Village
Deland, Florida 32720
Tel. (561) 531-2680

*Attorneys for Plaintiff*