UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TERRY DUKES, SR.,

      Plaintiff,

v.

ROBERT B. MCCALLUM, JR., in his
official capacity as Sheriff of Levy
County, Florida, and CORPORAL
CHASE GREGORY, in his individual
capacity,

      Defendants.

Case No. 1:23-cv-45-AW-HTC

**<u>JURY DEMAND</u>**

## <u>CONSENTED[1] FIRST AMENDED COMPLAINT FOR DAMAGES</u>

Plaintiff Terry Dukes, Sr., by and through his undersigned attorneys,

files this amended complaint for damages against Robert B. McCallum, Jr.,

in his official capacity as Sheriff of Levy County, Florida, and Corporal

Chase Gregory, in his individual capacity.

In support, Plaintiff alleges:

---

[1] This amendment is being filed with the written consent of Defendants pursuant
to Rule 15(a)(2) and within the time to amend pleadings under Rule 15 pursuant to the
schedule set forth in the parties' Rule 26(f) Report (Doc. 7 at 5), as adopted by the
Court's Scheduling and Mediation Order (Doc. 8 at 1).

## JURISDICTION, VENUE, PARTIES

1.      This is an action for money damages for the injuries suffered by Plaintiff Terry Dukes, Sr., as a result of Defendants' conduct in violation of Plaintiff's civil rights under the United States Constitution and Florida law.

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3.      Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of civil rights under the Fourth Amendment to the U.S. Constitution.

4.      Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider the state law claims alleged herein.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b), being the district where the claims arose and where Defendants conduct business.

6.      At all times relevant, Plaintiff Terry Dukes, Sr. is and was a resident of Bronson, Florida, Levy County, Florida and is otherwise *sui juris*.

7.      Prior to the unlawful conduct of the defendants, Plaintiff worked for Levy County for more than 20 years.

2

8.    Plaintiff is hard of hearing and requires hearing aids.

9.    In May 2019, Plaintiff did not have any hearing aids or other devices to improve his difficult hearing after they broke, and he did not have enough money to afford new ones.

10.    At all times relevant, Defendant Sheriff Robert B. McCallum, Jr., was and is the elected Sheriff of Levy County, Florida. As the constitutional officer elected in accordance with Chapter 30, Florida Statutes, and Article VIII, section 1, of the Florida Constitution, Defendant McCallum, Jr., is tasked with implementing, ratifying, and approving the policies and practices of the Levy County Sheriff's Office (LCSO). Defendant McCallum, Jr. is the final policymaker for LCSO and at all times material was acting under color of law.

11.    At all times relevant, Defendant Corporal Chase Gregory—then a deputy in rank—was and is a sheriff's deputy for the Levy County Sheriff's Office and is otherwise *sui juris*. Gregory is being sued in his individual capacity.

12.    At all relevant times during the events at issue in this case, Gregory was acting under color of law.

13.    All conditions precedent to the filing of this action have occurred, accrued, or have been waived.

14.    Specifically, Plaintiff has timely complied with all applicable presuit notice provisions of section 768.28, Florida Statutes. Defendants have failed to fully comply with the presuit requirements of section 768.28(6), Florida Statutes.

15.    Plaintiff has been required to engage the services of the undersigned counsel and is entitled to an award of reasonable attorney's fees and costs.

## **FACTUAL ALLEGATIONS**

16.    At around 3:13 a.m. on or about May 25, 2019, LSCO was alerted to a possible battery involving a pregnant person.

17.    At around 3:58 a.m., LCSO Detective Wilkinson responded to the battery complaint and learned that Plaintiff's then 31-year-old son, Terry Dukes, Jr., had purportedly assaulted his girlfriend.

18.    Det. Wilkinson claimed to have probable cause to arrest Plaintiff's son.

19.    According to reports, Det. Wilkinson asked Deputy Blake Murphy to travel to 900 Patterson Street, Bronson, Florida 32621— Plaintiff's residence—to evaluate the scene. At that time, Plaintiff was asleep and there were no other persons in the home.

20.     Sometime after 5 a.m., Gregory, Murphy, Deputy Tucker Gaffey, and Corporal Franco Almeida were asked by Det. Wilkinson to go to Plaintiff's residence, purportedly to arrest Dukes, Jr.

21.     At all times material, Plaintiff owned his residence and was listed as its sole owner.

22.     At the time of their arrival, LCSO did not have any lawfully issued arrest warrant for Plaintiff's son or any search warrant for Plaintiff's residence. There were no exigent circumstances or fresh pursuit at the time that warranted any entry of Plaintiff's residence without a warrant. In its investigative report for Internal Investigation 2019-FI-08—regarding the events that transpired at Plaintiff's home on May 25, 2019—LCSO acknowledged that "[t]here was no fresh pursuit and no warrant existed at this point."

23.     According to the investigative summary LSCO created in that investigation—and to which Sheriff McCallum, Jr. "agree[d] with the findings"—and LCSO's written policies at the time, it was the policy of the agency to delay obtaining a warrant and instead "make attempts to locate and arrest a person when probable cause has been established." LCSO concluded that the application for a warrant "would not have been appropriate at this juncture of the investigation."

24.    According to the same investigative report, LCSO had, since April 2017, responded to 21 investigations involving Plaintiff's son—including an event a month earlier on April 18, 2019—at Plaintiff's residence.

25.    Gregory knew Plaintiff's son from previous encounters and knew what he looked like. During one such encounter, Gregory was physically present at Plaintiff's home during the arrest of Dukes, Jr., which Plaintiff called in because Dukes, Jr. had fired a gun on his property. Dukes Jr., is several inches taller than Plaintiff.

26.    Plaintiff had encountered Gregory on two occasions prior to the May 2019 event—once at his home on Patterson Street and once at his place of employment. At his place of employment, Gregory played a practical joke on Plaintiff, pretending that he was going to arrest him at work.

27.    At all times material, Gregory knew and would have known that Plaintiff was not Dukes, Jr.—the suspect of the alleged crime.

28.    When Gaffey, Murphy, Gregory and Almeida arrived at Plaintiff's residence, they claimed to have knocked on his door several times announcing, "sheriff's office."

29.     While the individual defendants were outside Plaintiff's house, Plaintiff heard nothing. Only when one of the officers shined a light through Plaintiff's window did he realize someone was home—he believed it was his son.

30.     Around that time, Plaintiff's son would routinely come and go and often show up late at night at Plaintiff's home. Because his father was hard of hearing—his son would shine a flashlight into the home to alert his father, who would wake and open the door for his son.

31.     That night, Plaintiff was woken by a knock on his house. He believed his son was home, seeing a flashlight at the window, and walked to the back door to let his son in the house.

32.     At the time, Plaintiff was naked; he used his phone's flashlight to navigate to the door.

33.     When Plaintiff opened the door, he did not say a word—he simply opened it and returned to his room to shower so that he could go to work.

34.     At no time did Plaintiff invite the individual defendants into his home or otherwise give consent for their entry.

35.     At no time did Gregory or any other officer request admittance into Plaintiff's home.

36.    Once Plaintiff opened the back door to his home, without uttering any words, Gregory entered Plaintiff's home without his permission.

37.    According to the post-incident reports, Gaffey announced on the radio that the back door was opened, and that Gregory entered; Gaffey then followed Gregory inside the house; Almeida followed Gaffey into the house.

38.    At no time were any of these individuals authorized by Plaintiff to be in his home nor did they ask to be invited into Plaintiff's home. According to the deputies, they never did anything other than announce their authority stating "Sheriff's Office."

39.    As the United States Supreme Court declared in 1980: "[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 590 (1980).

40.    According to its investigative report, LCSO contended that "[t]he opening of the door could be construed as an invitation to enter." It was clearly established at the time that the mere opening of a door to a home without an explicit request for admittance did not constitute implied consent to enter a home without a warrant or probable cause and exigent

8

circumstances. LCSO's well established and pervasive policy, practice, and custom permitting its deputies to enter an individual's residence without a warrant or exigent circumstances and probable cause with the mere opening of a door was and is unconstitutional.

41. According to his interview in connection with the investigative report, Gregory admitted that after the door was opened, he entered the house without being invited inside. The report—which Sheriff McCallum, Jr. approved—stated:

> The door was opened slightly by an unknown individual from inside, whom [Gregory] did not see. This person immediately turned and retreated back inside the home. [Gregory] explained that he is trained in tactics (SWAT) which are more advanced than that of other deputies in the same position as a patrol deputy and said he knew not to turn his flashlight on. [Gregory] explained this would have done two things: given away his position and illuminated himself making him a target; so he entered the doorway of the home.

42. In his narrative concerning the event, Gregory wrote on May 26, 2019, that "[a]s soon as this door opened, I walked up the steps and entered the residence through the open door." Gregory has testified under oath that he did not ask permission to enter the home.

43.    In an interview taken after the incident, Deputy Gaffey was asked whether Plaintiff said anything when Gregory went inside the home to which he replied: "I did not hear anything."

44.    Almeida, who was Gregory's superior officer at the time, stated in an interview after the incident that he heard over the radio that Gregory had gone inside the home. When asked whether he ran to the back door to enter after hearing that, he stated that he simply walked there because there didn't appear to be any commotion and he heard no yelling.

45.    He also stated that it was possible that "the door opened, and [Gregory and Gaffey] just followed someone in."

46.    At the time of entry into his home, Gregory:

        a.  Did not possess a warrant to arrest Plaintiff;

        b.  Did not possess a warrant to arrest Plaintiff's son;

        c.  Were not in hot pursuit of Plaintiff's son;

        d.  Were not in hot pursuit of Plaintiff;

        e.  Did not have exigent circumstances justifying entry into Plaintiff's home;

        f.  Did not possess a search warrant regarding Plaintiff's home; and

        g.  Did not have express or implied consent to enter Plaintiff's home.

10

47.    It was clearly established at the time of his entry into Plaintiff's home that such entry without a warrant, hot pursuit, exigent circumstances, or express or implied consent, violated the Fourth Amendment to the United States Constitution.

48.    At the time of Gregory's unlawful entry into Plaintiff's home, LCSO had an unconstitutional policy, custom, and practice of permitting and approving its officers' illegal entry into the homes of Levy County residents.

49.    The policy and practice at the time authorized LCSO officers to enter homes illegally to arrest suspects without a warrant, exigent circumstances or hot pursuit, or consent.

50.    Almeida expressly acknowledged LCSO's unconstitutional policy and practice at the time of entering residents' homes without consent even in the absence of a warrant or exigent circumstances. Almeida testified that he and his fellow officers interpret the opening of a door and the subject's movement away from the door after knocking and announcing as "interpreted as being invited into the home." Deputy Murphy, who was also on scene, testified that he understood LCSO policy and practice to permit him and his fellow officers to enter a home without exigency, a warrant, or hot pursuit if a resident opened a door and stepped back

11

without saying anything. Without a request for admittance and express or implied consent, it is clearly established that an officer cannot enter a home without a warrant, exigency, or hot pursuit.

51.     After the unlawful entry into Plaintiff's home, Sheriff McCallum, Jr., as the final policymaker for LCSO, agreed with his officers' unconstitutional acts by "agree[ing] with the findings" of the internal investigation into the conduct at Plaintiff's home and exonerating Gregory from all "allegations of violations of policy" determining that "no violation of any LCSO policy was discovered" with respect to the events that occurred at Plaintiff's home on May 25, 2019.

52.     Lieutenant Scott Tummond, who was in charge of the internal affairs investigation into Gregory's conduct at Plaintiff's home testified that if in reviewing a complaint he found a separate policy violation, it was the LCSO practice to "sub-serve" or add that violation to the investigation. Despite rendering a conclusion on whether Gregory's entry into Plaintiff's home was lawful, LCSO never "sub-served" Gregory on the issue of consent or unlawful entry, further evidencing that his actions were consistent with the agency's policies, practices, and customs.

53.    The internal affairs investigation not only concluded that Gregory lawfully entered Plaintiff's home—determining that Plaintiff's mere opening of the door was "an invitation" or consent—but it also exonerated Gregory for his use of force against Plaintiff.

54.    Specifically, once in Plaintiff's home, Gregory, Gaffey and Almeida, who stated they entered in turn, proceeded towards Plaintiff, who was naked and heading back towards his bedroom to get ready for work.

55.    Plaintiff entered his bedroom to turn on the lights before which Gregory snuck up on Plaintiff who was inside the bedroom by the door.

56.    Plaintiff then heard Gregory order him to get on the floor.

57.    Plaintiff complied.

58.    Gaffey, also entered the home, and asserted that he had his Taser pointed at Plaintiff. Almeida was also outside Plaintiff's bedroom and stated that he had his firearm drawn.

59.    Prior to hearing Gregory's order to get on the floor, Plaintiff had not heard any other orders from any of the officers.

60.    Plaintiff was unaware of the deputies' entrance into his home, he believed he had cracked the back door open for his son.

61.    Assuming that Gregory was there looking for his son—who had police encounters at Plaintiff's residence in the past, including with

Gregory—Plaintiff told Gregory that he was "Terry, Sr." and that his son was not at home. He also asked the officers why they were in his home and told them he needed to go to work.

62.    Plaintiff was on the ground in his bedroom, terrified and embarrassed to have strangers in his home while he was nude on the floor. He repeatedly told Gregory that he wanted to put on pants to cover his naked body.

63.    Plaintiff then moved forward in the direction of the bedroom door to reach for his pants and begun to put them over his legs while repeatedly telling the officers that he was putting on his pants.

64.    Plaintiff possessed firearm in his bedroom at the time—a revolver that was on his bed behind him. Plaintiff did not move towards the gun. At all times material, Plaintiff remained on the floor and only moved forward—away from the bed where the gun was located—to reach for and put on his pants.

65.    Without giving any commands, Gregory deployed his Taser, hitting Plaintiff in the right shoulder with one of the probes while he was putting on his pants:



66.    One probe struck Plaintiff in the shoulder from an inward angle with the barb protruding away from his chest. The other probe struck a nightstand towards the back of the room, but away from the bed and windows where the gun was located. It landed only a few feet from the ground and was angled down:



67.    According to the deputies, the gun was located on the left of the bed toward the windows as illustrated by the "x" on the bed below:



68.    Deputy Murphy, who testified that he was standing outside Plaintiff's window observing the scene, stated he saw the bright light of the deputies' flashlights in Plaintiff's bedroom without any intermittent periods

of darkness. According to him, Plaintiff was running towards the bed, facing it, when Gregory deployed the Taser striking Plaintiff in the back. But Plaintiff was struck from the front as illustrated above and depicted on the post-incident reports:



INDICATE BY EACH NOTED CONTACT THE WEAPON USED.

69.     At the time Gregory deployed his Taser, it was clearly established that an officer could not use force—including "less lethal" force—on a subject on the ground who was several feet from a firearm and was not moving in the direction of the firearm.

70.     Gregory's use of force against Plaintiff was not objectively reasonable in light of the facts and circumstances, including the location of the firearm, the fact that Plaintiff was naked on the floor, the fact that Plaintiff identified himself and Gregory knew both Plaintiff and the suspect, and the fact that Plaintiff moved forward towards the door and away from the gun when Gregory fired his Taser.

71.     After deploying his Taser, Gregory entered Plaintiff's bedroom, where Plaintiff was still reaching trying to pull his pants up to cover his naked body.

72.     Gregory, Gaffey, and Almeida permitted Plaintiff to continue to put on his pants.

73.     Plaintiff was then placed in handcuffs and taken outside with the Taser probe still lodged in his chest.

74.     He remained outside in the cold without a shirt or shoes and in handcuffs until paramedics arrived, who removed the probe from his chest.

75.     While waiting for paramedics, Plaintiff told the officers that what they had done was unlawful and that he would seek legal recourse.

76.     Plaintiff was then taken to the hospital for observation.

77.     Only after the incident at Plaintiff's residence did LCSO apply for and obtain a warrant for the arrest of Plaintiff's son.

78.    In connection with the incident, Plaintiff was charged with one count of resisting an officer without violence in the matter of *State of Florida v. Terry Carl Dukes, Sr.*, Case No. 38-2019-MM-471-A.

79.    Upon information and belief, Plaintiff was criminally charged based on his statements that he would pursue legal action for the unlawful entry and force.

80.    On June 6, 2019, the State Attorney's Office dropped the charges and filed a "No Information" with the court.

81.    Since the incident in May 2019, Plaintiff has experienced extreme mental and physical distress.

82.    Plaintiff could no longer perform his job functions due to the stress of the incident and was forced to retire early.

83.    Plaintiff has experienced suicidal ideations stemming from the incident and has sought mental health treatment and received a diagnosis of post-traumatic stress disorder.

84.    Plaintiff experiences extreme discomfort and stress in public and around other people as well as in his own home.

85.    Since the incident, Plaintiff no longer sleeps in his bedroom.

86.    Plaintiff also experiences physical pain due to an aggravation of a preexisting injury of his shoulder from the deployment of the Taser probe.

Since the incident, the injury has become exacerbated to the point that Plaintiff has resulting limited mobility and grip strength.

## Count I – Invasion of Privacy Under Florida Law
### (against Gregory)

Plaintiff repeats and re-alleges paragraphs 1 through 86 above, as if fully set forth herein and further alleges:

87.    The Florida Constitution provides for the right of the people to be secure in their houses against unreasonable searches and seizures. *See* art. I, § 12, Fla. Const.

88.    On or about May 25, 2019, Gregory intentionally and with malice and bad faith invaded Plaintiff's privacy in violation of state law, by entering onto Plaintiff's private property without consent, a warrant, or exigent circumstances justifying the warrantless entry.

89.    Gregory knew or reasonably should have known that there was no justification for entry into Plaintiff's residence because he did not have a warrant, exigent circumstances justifying warrantless entry, or permission from Plaintiff to support the unlawful entry.

90.    Gregory knew or reasonably should have known that their conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences.

21

91.    As a direct and proximate result of the actions by Gregory, Plaintiff suffered and will continue to suffer in the future, damage to his reputation, mental pain and suffering, physical injury, aggravation of preexisting injury, embarrassment, humiliation, deprivation of property, disgrace, and lost wages and benefits.

WHEREFORE, Plaintiff Terry Dukes, Sr. demands judgment against Defendant Chase Gregory for compensatory and exemplary damages, costs of this action, and such further relief as the Court deems appropriate.

## Count II – Trespass Under Florida Law
### (against Gregory)

Plaintiff repeats and re-alleges paragraphs 1 through 86 above, as if fully set forth herein and further alleges:

92.    On or about May 25, 2019, Gregory willfully, intentionally, and with malice and bad faith entered Plaintiff's residence.

93.    Gregory was not authorized, licensed, or invited to enter Plaintiff's residence.

94.    Gregory had notice that he was not authorized to enter Plaintiff's residence.

95.    Plaintiff did not provide consent, permission, or authorization to Gregory to enter his residence.

96.    Gregory committed trespass by entering Plaintiff's residence without his permission.

97.    Gregory knew or reasonably should have known that his conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences.

98.    As a direct and proximate result of the actions by Gregory, Plaintiff suffered and will continue to suffer in the future loss of enjoyment, use, and deprivation of property.

WHEREFORE, Plaintiff Terry Dukes, Sr. demands judgment against Defendant Chase Gregory for compensatory and exemplary damages, costs of this action, and such further relief as the Court deems appropriate.

## Count III – Unlawful Entry in Violation of the Fourth Amendment
### (against Gregory)

Plaintiff repeats and re-alleges paragraphs 1 through 86 above, as if fully set forth herein and further alleges:

99.    At all times material, Gregory was a sheriff's deputy and law enforcement officer employed by the Levy County Sheriff's Office and acting under color of state law.

100.   Absent consent, the Fourth Amendment to the United States Constitution is violated when a law enforcement officer enters a home (a) without a warrant or (b) absent probable cause *and* exigent circumstances.

101.   At all times, Plaintiff had a Fourth Amendment right to be free from unlawful entry into his home.

102.   On or about May 25, 2019, Gregory abused his position as law enforcement officer when he entered Plaintiff's residence without a warrant, exigent circumstances, or Plaintiff's express or implied permission.

103.   Gregory entered Plaintiff's residence for the sole purpose of searching for Plaintiff's son and intentionally disregarded Plaintiff's right to be free from unlawful entry into his home.

104.   Gregory knew or reasonably should have known that his conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences.

105.   During the unlawful entry into Plaintiff's home, he was arrested and subjected to excessive force.

106.   As a direct and proximate result of the defendant's unlawful entry in violation of the Fourth Amendment, Plaintiff has suffered mental and physical injuries and special damages.

107.   These damages include but are not limited to: the violation of Plaintiff's federal constitutional rights, a deprivation of liberty, humiliation, physical inconvenience, pain and suffering, physical injury, aggravation of preexisting injury, emotional damage, mental suffering and anguish, lost wages and benefits, and all other damages associated with this constitutional violation.

108.   Plaintiff has been required to engage the services of the undersigned counsel. Accordingly, Plaintiff is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff Terry Dukes, Sr. demands judgment against Defendant Chase Gregory for compensatory, exemplary, and punitive damages, costs of this action, reasonable attorneys' fees, and such further relief as the Court deems appropriate.

### Count IV – Unlawful Seizure in Violation of the Fourth Amendment
**(against Gregory)**

Plaintiff repeats and re-alleges paragraphs 1 through 86 above, as if fully set forth herein and further alleges:

109.   At all times material, Gregory was a sheriff's deputy and law enforcement officer employed by the Levy County Sheriff's Office and acting under color of state law.

110.   The Fourth Amendment to the United States Constitution applies to seizures conducted by law enforcement.

111.   The seizure of Plaintiff by Gregory was unlawful and in violation of Plaintiff's Fourth Amendment Rights.

112.   The arrest, handcuffing and detention of Plaintiff by Gregory was in violation of Plaintiff's Fourth Amendment Rights.

113.   A person has been seized within the meaning of the Fourth Amendment if in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.

114.   A reasonable person in Plaintiff's situation would not have felt free to leave.

115.   Seizures with the essential attributes of full custodial arrest by law enforcement officers are reasonable only if supported by probable cause.

116.   None of the officers had a valid warrant for Plaintiff's arrest.

117.   None of the officers had a valid warrant to search Plaintiff's residence.

26

118.  None of the officers had probable cause or arguable probable cause to arrest Plaintiff.

119.  None of the officers had a legal right to be present in Plaintiff's residence for the purpose of making an arrest or establishing probable cause.

120.  Gregory knew or reasonably should have known that his conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences.

121.   The Fourth Amendment also encompasses the right to be free from the use of excessive force during an arrest.

122.  During the arrest, Plaintiff was subjected to excessive force.

123.  As a direct and proximate result of Gregory's unlawful seizure in violation of the Fourth Amendment, Plaintiff has suffered mental and physical injuries and special damages.

124.  These damages include but are not limited to: the violation of Plaintiff's federal constitutional rights, a deprivation of liberty, humiliation, physical inconvenience, pain and suffering, physical injury, aggravation of preexisting injury, emotional damage, mental suffering and anguish, lost wages and benefits, and all other damages associated with this constitutional violation.

27

125.   Plaintiff has been required to engage the services of the undersigned counsel. Accordingly, Plaintiff is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff Terry Dukes, Sr. demands judgment against Defendant Chase Gregory for compensatory, exemplary, and punitive damages, costs of this action, reasonable attorneys' fees, and such further relief as the Court deems appropriate.

## Count V – False Arrest/False Imprisonment Under Florida Law
### (against Gregory)

Plaintiff repeats and re-alleges paragraphs 1 through 86 above, as if fully set forth herein and further alleges:

126.   At all times material, Gregory was a sheriff's deputy and law enforcement officer employed by the Levy County Sheriff's Office and acting under color of state law.

127.   Florida law protects a person from the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty.

128.   Gregory unlawfully detained Plaintiff and deprived him of his liberty.

28

129.   Gregory unlawfully detained Plaintiff against his will.

130.   Gregory unlawfully detained Plaintiff without legal authority or "color of authority."

131.   Specifically, Gregory detained Plaintiff without lawful basis or legal right to be in his residence.

132.   The detention of Plaintiff was unreasonable and unwarranted under the circumstances.

133.   Gregory acted with ill will, hatred, spite, and evil intent to arrest Plaintiff in his home without a warrant or probable cause.

134.   A person has been seized within the meaning of the Fourth Amendment if in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.

135.   Gregory knew or reasonably should have known that their conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences.

136.   As a direct and proximate result of defendant's unlawful arrest in violation of Florida law, Plaintiff suffered mental and physical injuries and special damages.

137.   These damages include but are not limited to: the violation of Plaintiff's federal constitutional rights, a deprivation of liberty, humiliation,

physical inconvenience, pain and suffering, physical injury, aggravation of a preexisting injury, emotional damage, mental suffering and anguish, lost wages and benefits, and all other damages associated with this violation.

WHEREFORE, Plaintiff Terry Dukes, Sr. demands judgment against Defendant Chase Gregory for compensatory, exemplary, and punitive damages, costs of this action, and such further relief as the Court deems appropriate.

**Count VII – Failure to Train/Supervise/Discipline**
**Under 42 U.S.C. § 1983**
**(against Sheriff McCallum, Jr.)**

Plaintiff repeats and re-alleges paragraphs 1 through 86 above, as if fully set forth herein and further alleges:

138.  Defendant McCallum, Jr., in his official capacity as Sheriff of Levy County, implemented, approved, ratified, and enabled a policy, practice, and custom of delaying warrant applications and permitting and encouraging warrantless entry into residents' homes and premises without consent or exigent circumstances and probable cause.

139.  This policy, practice, and custom amounts to the deliberate indifference of the rights of persons with whom the police come in contact because it permits LCSO deputies to violate the Fourth Amendment for the purpose of effectuating arrest without having to first seek an application for

30

a warrant from the court. This policy, practice, and custom further amounts to the deliberate indifference of the rights of persons with whom the police come in contact because it permits LCSO deputies to violate the Fourth Amendment by construing the opening of the door to a home to constitute implied consent for purposes of obviating the warrant requirement or need for exigency.

140.  The policy, practice, and custom were well settled and widespread within LCSO such that it was approved and condoned at the highest levels of LSCO.

141.  At all times material, Defendant McCallum, Jr. was the decisionmaker and policymaker for LCSO with respect to this unconstitutional policy, practice, and custom.

142.  Defendant McCallum, Jr. knew of a need to train, supervise, and/or discipline his deputies and officers on the requirements of the Fourth Amendment, but he deliberately chose not to take any action.

143.  Defendant McCallum, Jr. violated Plaintiff's rights by maintaining practices, customs, and policies that were the moving force of these constitutional violations.

144.  These policies, customs, and practices were able to exist and thrive within LCSO because Defendant McCallum, Jr. was deliberately indifferent to the problem, thereby effectively ratifying and approving it.

145.  Defendant McCallum, Jr. expressly approved LCSO's unconstitutional custom, policy, and practice when he exonerated Defendant Gregory in this case despite his admissions in the post-incident internal investigation that he entered Plaintiff's home without a warrant, consent, or exigent circumstances.

146.  Through his approval of the Investigative Summary and report for investigation no. 19-FI-08, Defendant McCallum, Jr. admits that LCSO maintained an unconstitutional practice, custom, and policy of permitting, condoning, and allowing LCSO deputies and staff to enter homes without warrants, probable cause and exigent circumstances, or consent. Specifically, Defendant McCallum, Jr.'s unconstitutional policy, custom, and practice permits law enforcement to enter a home without a warrant or exigent circumstances upon the opening as a door, which LCSO construes as an "invitation."

147.  By the officers' admissions following the incident at Plaintiff's home, LCSO's policy, practice, and custom existed prior to the unlawful entry into Plaintiff's home and formed the basis for the individual

defendants' actions. Accordingly, Defendant McCallum, Jr.—as the final policymaker for LCSO—had and opportunity to approve and ratify his deputies' unconstitutional warrantless entry practices construing the opening of a door after a show of authority as an "invitation" or consent to enter prior to the incident at Plaintiff's home.

148.   The constitutional violations were a plainly obvious consequence of Defendant McCallum, Jr.'s failure to train his deputies. The situation in which the incident occurred at Plaintiff's home is likely to recur, as the LCSO deputies involved in this case maintain that they are permitted to enter a home without a warrant, exigent circumstances, or hot pursuit when after knocking and announcing someone opens a door to a home and moves aside.

149.   It has been clearly established in this Circuit that an officer may establish implied consent from body language when in response to *requests for admittance* a subject yields the right of way to officers. However, entry into a home when a deputy merely follows a subject into the house but never asks for permission to enter violates the Fourth Amendment. Similarly, this Circuit has clearly established that no valid consent exists when an officer gains entry into the home by a show of force or "official authority." These principles have been repeatedly reaffirmed by

33

this Circuit prior to the May 2019 incident. Despite this, Defendant McCallum, Jr. has failed to adequately train his deputies on consent.

150.  In addition to failing to train and supervise his deputies, Defendant McCallum, Jr. also failed to discipline any of the deputies for their failure to obtain consent prior to entering Plaintiff's home.

151.  The need for more or different training, supervision, or discipline was so obvious that Defendant McCallum, Jr. can reasonably be said to have been deliberately indifferent to the need. Despite this need, all deputies who entered Plaintiff's home or participated in the incident have since been promoted.

152.  Defendant McCallum, Jr. violated Plaintiff's constitutional rights through the actions and failures to act by individuals with final policymaking authority for him.

153.  Plaintiff's injuries were caused by persons who acted per the foregoing policies, customs, and practices in engaging in the misconduct described herein.

154.  Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff Terry Dukes, Sr. demands judgment against Defendant Robert McCallum, Jr., in his official capacity, for compensatory and exemplary damages, costs of this action, reasonable attorneys' fees, and such further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

Dated: August 10, 2023.

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
SLATER LEGAL PLLC
113 S. Monroe Street
Tallahassee, Florida 32301
james@slater.legal
Tel. (305) 523-9023

*Attorneys for Plaintiff*