1  UNITED STATES DISTRICT COURT

2  NORTHERN DISTRICT OF FLORIDA

3  GAINESVILLE DIVISION

4  CASE NO.: 1:23-CV-45-AW-HTC

5

6  TERRY DUKES, SR.,

7   PLAINTIFF,

8

9  VS.

10

11  ROBERT MCCALLUM, JR., ET AL.,

12  DEFENDANTS.

13  _____/

14  VIDEOCONFERENCE DEPOSITION OF W.O. BRETT B. BEAUCHAMP,

15  LEVY COUNTY SHERIFF'S OFFICE

16  DATE:      AUGUST 14, 2023

17  REPORTER:  YIRSILY DE LA OLIVA

18  PLACE:     ALL PARTIES APPEARED VIA VIDEOCONFERENCE

19

20

21

22

23

24

25

407.423.9900
Fax 407.841.2779
Toll Free 855-MYDEPOS

MILESTONE I REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

401 EAST JACKSON STREET,
SUITE 2370
TAMPA, FL 33602

315 EAST ROBINSON STREET,
SUITE 510
ORLANDO, FLORIDA 32801
CORPORATE

1  depositions have been in your capacity as a member of

2  the Sheriff's office or in your individual capacity?

3      A.   One time individually.  A whole lot of times

4  as a law enforcement officer.  Excuse me.

5      Q.   And what was the individual time, sir?

6      A.   I got sued back in 2005 civilly for a car

7  crash.

8      Q.   And how many times have you given testimony

9  under oath before, sir, if you could give an estimation?

10     A.   Best I could tell you, 50 to 100.

11     Q.   Okay.  So I'm going to go over the rules, but

12  you probably know them very well.  So I'm going to ask

13  you a series of questions today.  As your counsel

14  stated, these are in your capacity as a -- as a -- the

15  corporate designee of the Sheriff's Office and not in

16  your individual capacity.  I'm going to ask you a series

17  of questions and you are going to answer them with, you

18  know, using words and not gestures, things like that. Do

19  you understand that, sir?

20     A.   Yes, sir.

21     Q.   Okay.  If there's anything that I ask you that

22  you don't understand, please let me know so that I can

23  rephrase the question or ask it in a different way to

24  help you understand it better.  Does that sound good to

25  you, sir?



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**       **www.MILESTONEREPORTING.com**       **Toll Free 855-MYDEPOS**

1     A.   Yes, sir.

2     Q.   And any -- if at any time you need a break

3  today, you just let me know.  The only thing I ask is

4  that if I'm in the middle of a question, we wait till

5  you have finished providing a response and then we can

6  take a break.  Is that -- does that sound fair to you,

7  sir?

8     A.   Yes, sir.

9     Q.   Are you taking any medication today Deputy --

10  Chief Deputy Beauchamp?

11     A.   I took some blood pressure medication.

12     Q.   Okay.  No medication that would affect your

13  ability to give testimony today?

14     A.   No, sir.

15     Q.   Could you please -- I understand you're the

16  chief deputy at the Levy County Sheriff's Office.  How

17  long have you been the chief deputy of your agency?

18     A.   Since January of 2013.

19     Q.   And what was your rank prior to that?

20     A.   I was non-employed with this agency before

21  that.

22     Q.   Where were you employed, sir?

23     A.   There -- it's a pretty long list.  You want

24  them all?

25     Q.   Why don't you get -- no -- why don't you just

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    then if he's -- he creates a tracking number if he's

2    asked to open an investigation and then it proceeds

3    through him and up to the sheriff.  Do you recall that

4    at all?

5         A.   Yes, sir.

6         Q.   Okay.  In determining -- once an investigation

7    is opened and assigned a tracking number, who in your

8    office is tasked with undertaking that investigation?

9              MS. ADKINS:  James, I'm going to place an

10        objection on the record because I think we're

11        outside the topics here of the 30(b)(6) deposition,

12        but I'll allow a little leeway here.

13             MR. SLATER:  Okay.

14             BY MR. SLATER:

15        Q.   Please respond, sir.

16        A.   The order from Sheriff McCallum will designate

17   who it is to conduct the investigation.  And I'd like to

18   clarify, I think what I understand you saying about the

19   tracking numbers.  Every complaint that comes in is

20   assigned a number.  If the sheriff decides that it is

21   worthy of a full-fledged internal investigation is given

22   another number at that --

23        Q.   Okay.  So everything is -- everything is given

24   a number, and then if the sheriff orders an

25   investigation, it's then given another number?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1     A.   Correct.

2     Q.   Okay.  It is my understanding from Lieutenant

3 Tummond's deposition that he is the person tasked with

4 undertaking those investigations; is that right?

5     A.   Most of the time, yes, sir.

6     Q.   Is there anyone else who would be?

7     A.   Lieutenant Joseph Gore, G-O-R-E, also does

8 some internal investigations.

9     Q.   It's my understanding that Gore renders those

10 investigations primarily in the jail setting; is that

11 right?

12     A.   Yes, sir.  That's his area of expertise,

13 but --

14     Q.   Okay.

15     A.   -- he's not restricted to that.

16     Q.   Okay.  When Lieutenant Tummond provides an

17 investigation, is he given discretion in making his

18 findings and conclusions?

19     A.   Yes, sir.

20     Q.   Okay.  Does the office depend on him carrying

21 out those internal affairs investigations?

22     A.   I -- I don't understand the --

23     MS. ADKINS:  James, I'm still going to object

24    to this entire line of questioning, but he can

25    answer.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

```
 1            BY MR. SLATER:

 2      Q.    You can answer, sir.

 3      A.    I don't understand the question.

 4      Q.    I'm trying to understand when -- and this is

 5 Subject Matter 8, the Agency's Reporting Investigation

 6 regard -- regarding the incident involving Plaintiff as

 7 described to the complaint, 9 in the topics, LCSO's

 8 Investigation.  I'm trying to understand sort of how the

 9 investigation plays out, sir, and I'm trying to

10 understand, Lieutenant Tummond, who rendered the

11 investigation concerning Mr. Dukes Senior, I'm trying to

12 understand his role.  So he undertook this

13 investigation.  He was --

14            MS. ADKINS:  Same objection.  8 and 9 are

15      specific to this investigation.  Your questions have

16      been more broad in terms of investigations

17      generally, and I think you've already had testimony

18      specifically from Lieutenant Tummond as to that

19      investigation, but again, I'll allow it.

20            BY MR. SLATER:

21      Q.    Sure.  And I'm just trying -- just -- I'm not

22 trying to -- let me just explain what I'm trying to ask.

23 I'm trying to understand, for purposes of Lieutenant

24 Tummond's deposition and for Lieutenant Tummond's role

25 in this investigation, whether the agency delegated
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  authority to him to carry out that investigation?

2      A.   Yes, sir.  That's the sheriff's role --

3          MS. ADKINS:  You may -- you may answer this

4      one.

5          BY MR. SLATER:

6      Q.   Okay.  The sheriff delegated authority to him

7  to undertake that investigation; is that right, sir?

8      A.   Yes, sir.

9      Q.   Okay.  And the Sheriff's Office depended on

10 him to carry out that investigation; is that fair?

11     A.   I -- I'm not sure about what you mean by the

12 word depend.  He was assigned the investigation, he --

13 and he completed it.

14     Q.   Okay.  Did you review, sir, any retention

15 policies in connection with your preparation for today's

16 deposition?

17     A.   What do you mean by retention?

18     Q.   Retention of documents?

19     A.   I did remember seeing the -- some specifics as

20 far as purging of internal affairs, and I don't remember

21 the other one.  I -- I did see something as part of the

22 other general policies, yes, sir.

23     Q.   Okay.  Could you be a little bit more

24 specific, please?

25     A.   No, sir.  I'd have to look back through them,

---

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

1  but it was retaining internal investigation files.  I

2  know I saw those.

3      Q.   Do you know how long internal investigation

4  files are retained?

5      A.   I want to say it said five years, but -- and I

6  think that's the number that sticks out.

7          MR. SLATER:  Okay.  I'm going to show you what

8      we'll mark as Plaintiff's Exhibit 3.

9              (EXHIBIT 3 MARKED FOR IDENTIFICATION)

10             BY MR. SLATER:

11     Q.   Can you see my screen, sir?

12     A.   Yes, sir.

13     Q.   I'm showing you a composite document that was

14  produced by your counsel.  It is 122 pages.  It begins

15  on Bates stamp Dukes T132 and ends on Dukes T253.  It is

16  a series of documents, including general orders and

17  directives by your office, photographs of Terry Dukes,

18  Senior, and Terry Dukes, Junior, sworn complaints, an

19  arrest warrant for Terry Dukes, Junior.  CAD details

20  regarding this incident, the internal affairs

21  investigation involving Terry Dukes Senior's complaint,

22  and the underlying incident reports and narratives

23  involving the incident, and finally Mr. Dukes, Senior's

24  complaint.  Do you see that, sir?

25     A.   I do.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1      Q.   Have you reviewed these documents prior to

2 today?

3      A.   Yes, sir.  Most of them, I did not go all the

4 way through those in preparation of the -- for the

5 deposition.

6      Q.   Are you familiar with -- are you familiar with

7 the findings and conclusions of the investigation into -

8 - the investigation referred to as 19FI08?

9      A.   I am.

10     Q.   If we go, I just need to find the correct

11 page. Direct your attention, sir, to the page that's

12 been Bates stamped Dukes T165.  At the top, it says,

13 "Investigative Summary 19FI08.  Lieutenant Scott

14 Tummond."  It has -- we've established that those are

15 Lieutenant Tummond's initials at the top.  Do you see

16 the document that I'm referring to, sir?

17     A.   Yes, sir.

18     Q.   Okay.  I'm looking at -- and this is the

19 subject Deputy Chase Gregory.  This is the investigation

20 into Gregory's conduct, and I'm seeing here on the same

21 page, it says, "Evidence collected.  Two written

22 statements from Complainant, CAD, and 911 audio."  Do

23 you see that, sir?

24     A.   I do.

25     Q.   Who in your office decides in an internal

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

0004577 Beauchamp Document 26-2 Filed Page 10

1 affairs investigation what evidence to collect?

2   A.   The investigator that gets assigned the

3 investigation.

4   Q.   And we were speaking about retention policies.

5 Would any evidence that's collected in connection with

6 an internal investigation be subject to the retention

7 policy you previously discussed?

8   A.   Can you say that again, please?

9   Q.   Sure, sir.  We briefly talked about the

10 retention policies for internal affair -- affairs

11 investigations and your understanding that it was a

12 five-year retention period.  Is that -- am I correctly

13 stating your testimony, sir?

14   A.   Yes, sir.  I do have -- I remember that being

15 part of the policy.

16   Q.   Okay.  So then the evidence collected with

17 respect to an investigation, your policy would establish

18 that for a period of five years, that evidence would

19 need to be maintained by your office, correct?

20   A.   I believe so.  And again, I'm going on my

21 memory of -- of that policy.  If it's not five years, I

22 -- I apologize.  Everything from the investigation

23 should have been retained until properly disposed of.

24   Q.   Okay.  Now, I'm looking at Dukes T166, the

25 next page, and there's a part where it says



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

1  hiring decisions at your office?

2     A.   Yes, sir.

3     Q.   Okay.  Who is it?

4     A.   Sheriff McCallum.

5     Q.   How long has Sheriff McCallum been the sheriff

6  of Levy County?

7     A.   Since January of 2013.  Or he may have started

8  in December.  I -- I was not here.

9     Q.   And you said Sheriff McCallum is the -- is he

10  the sole arbiter of who is hired at your agency?

11     A.   Yes, sir.

12     Q.   How does he make those decisions?

13     A.   From reviewing the application, the background

14  investigations.  He usually participates in -- in an

15  oral interview.

16     Q.   Is there a specific person at your agency who

17  is in charge of training your officers?

18     A.   Yes, sir.

19     Q.   Who is it?

20     A.   Today, it's Jeff Henry.

21     Q.   How long has Mr. Henry been in that role?

22     A.   Approximately a month.

23     Q.   Okay.  Prior to -- prior to him, who was --

24  who was the person in charge of training at your office?

25     A.   Lieutenant Franco Almeida.

**MILESTONE** | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      www.**MILESTONEREPORTING**.com      **Toll Free 855-MYDEPOS**

1     Q.    And how long was he in charge of training?

2     A.    I'm not sure.  Several years.

3     Q.    Was he in charge -- several years, sir?

4     A.    Yes, sir.

5     Q.    Was he in charge of training in 2019?

6     A.    I don't think so.

7     Q.    Do you know who would've been at that time?

8     A.    No, sir.  I can't remember.  I'm drawing a

9  blank.  I apologize.

10     Q.    How about promotions?  Is there a specific

11  person in your office who decides whether a deputy

12  should be promoted?

13     A.    Yes, sir.

14     Q.    And who is that?

15     A.    Sheriff McCallum.

16     Q.    Could you explain to me the sheriff's process

17  for determining whether a deputy should be promoted?

18     A.    They submit a written request for the

19  promotion.  Promotions to corporal and sergeant are

20  governed by the PBA agreement, the union contract, and

21  require testing, written testing, as well as an oral

22  board by -- made up of outside -- members of outside

23  agencies, and then they rank the applicants.

24     Q.    I'm sorry.  I didn't quite catch.  Who is

25  ranking the applicant, sir?



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900       www.MILESTONEREPORTING.com       Toll Free 855-MYDEPOS

1    A.  It's a combined -- it's a process where the

2  written test as well as experience within the agency and

3  their scores, scores from the oral board interviews, are

4  combined to give us a rank, a ranking hierarchy of the

5  applicant.

6    Q.   I see.  I see.  Okay.  And is there a specific

7  -- is there a specific number on that ranking that

8  someone would need to obtain in order to be considered

9  for a promotion?

10    A.   The contract allows the sheriff to pick any of

11  the top three applicants on -- in that ranking for a

12  promotion.

13    Q.   Is a deputy's disciplinary history taken into

14  account for a determination as to whether he or she

15  should be promoted?

16    A.   Yes, sir.

17    Q.   And how is that taken into account?

18    A.   I don't recall the specifics, but

19  substantiated violations will prevent someone from

20  applying or being considered if it's within a certain

21  time period.  I want to say it's 18 months.

22    Q.   And you said substantiated --

23    A.   Yes, sir.

24    Q.   -- discipline?

25    A.   Yes, sir.  Substantiated violations.  Certain

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      www.**MILESTONEREPORTING**.com      **Toll Free 855-MYDEPOS**

1   ones.

2       Q.   What do you mean by that?

3       A.   Again, I can't quote the policy, but if it's a

4   -- whatever designated violations, if it has occurred

5   within the prior 18 months, that -- if that -- if it was

6   substantiated, then that would prevent them from seeking

7   a promotion at that time.

8       Q.   When you say prevent them from seeking a

9   promotion, do you mean they couldn't go sit for the

10  orals or submit an application?

11      A.   Correct.

12      Q.   So there would be nothing -- if I understand

13  correctly, would there be anything that would prevent

14  someone who has a disciplinary history, but the -- but

15  the violations haven't been substantiated, from applying

16  for a promotion?

17      A.   If it's not substantiated, there -- that's not

18  a discipline history.  There's nothing to discipline.

19      Q.   How does -- how does -- is there a specific

20  person who is in charge of disciplining your deputies?

21      A.   I don't think -- I think that's going to come

22  from the sheriff most of the time.

23      Q.   Since you've been at the Levy County Sheriff's

24  Office, have any deputies been disciplined, to your

25  knowledge?



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1     A.   Yes, sir.

2     Q.   Okay.  Have any deputies been terminated as a

3 result of the discipline?

4     A.   I know we have terminated some personnel.  I'm

5 trying to remember if -- if they were, in fact, law

6 enforcement deputies, and I -- I don't recall.  I know

7 we've terminated some detention personnel, but more than

8 likely, yes.

9     Q.   Is there a specific type of violation that

10 would automatically result in termination from your

11 office?

12     A.   I'm not sure.  Are you talking about is it

13 written in the policy, or is that the -- sheriff

14 McCallum's philosophy or --

15     Q.   Yeah.  Is it written in the policy?

16     A.   I don't think there is an automatic written --

17 written in there.  There are some statutory.  The -- the

18 one that comes to mind would be a -- a criminal felony

19 conviction.

20     Q.   So besides the statutory, the statutory

21 violations or the statutory reasons for termination,

22 rather, it's -- is it your -- is it the agency's

23 position that it is in the sheriff's discretion whether

24 to terminate an officer's employment?

25       MS. ADKINS:  Form.

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

0003577 Beauchamp Document 26-2-4 2020 Page 0

1  the training.  Before that, Lieutenant Almeida.  And

2  what -- how do these -- when someone is designated to

3  train deputies, what does that entail?

4      A.   Scheduling classes and conducting the

5  necessary training.

6      Q.   Are there --

7      A.   And then keeping the records, of course.

8      Q.   Would this -- would this person be conducting

9  the classes themselves?

10     A.   It just depends on the person.  They're not --

11 they may not have the right certification to cut --

12 conduct every type of training, but they would --

13     Q.   How --

14     A.   -- be expected to do much of it.

15     Q.   How does your agency decide who to appoint as

16 the training -- as the training deputy for your

17 officers?

18     A.   The sheriff decides it.

19     Q.   Okay.  What are the criteria that the sheriff

20 employs to make that decision?

21     A.   It would be based on the applicant's request,

22 written request, and then an interview from the sheriff.

23     Q.   Is there any qualification required by that

24 deputy to become a training deputy?

25     A.   I'm confident a general instructor

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

0004577 Beauchamp Doe 26-2-4 2020 Page 9

1  certification is -- would be one, and I -- I'm not sure

2  beyond that.

3      Q.   What -- and I think you said that the training

4  deputy would be -- would handle many of the classes, but

5  assuming there's a subject matter that the training

6  deputy is not capable of teaching, how would your agency

7  go about teaching, training your officers in that

8  subject matter?

9      A.   Hopefully, we have somebody on staff that is

10  certified to teach the subject matter.  If not, we can

11  send folks out or import instructors from other

12  agencies.

13      Q.   Are your training officers ever passed with

14  training on Fourth Amendment issues?

15      A.   Yes.

16      Q.   What materials does your agency provide to its

17  trainers to help prepare them to teach your deputies on

18  Fourth Amendment issues?

19      A.   I'm not sure, but what comes to mind is -- is

20  the general deadly force instruction regarding, you

21  know, seizure of -- of citizens through use of deadly

22  force and arrest.  I -- I cannot speak to the exact

23  curriculum or -- or -- or class materials.

24      Q.   What about Fourth Amendment issues involving

25  entry into a residence or dwelling?



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

1      A.    We do have some written policy on that, and

2   occasionally the state attorney will also provide some

3   in-service training for us on general Fourth Amendment

4   issues.

5      Q.    I'm going to show you what we'll mark as

6   Plaintiff's 6.  Chief Deputy, can you see my screen?

7           (EXHIBIT 6 MARKED FOR IDENTIFICATION)

8      A.    Yes, sir.

9           BY MR. SLATER:

10     Q.    Okay.  I've pulled up a document titled Levy

11  County Sheriff's Office 806 Arrest Warrants.  Dukes T150

12  -- 1569 is the Bates stamp range through 157 -- wow.

13  1576.  Would this be one of the policies you're

14  referring to regarding entry into a -- into a home or

15  structure?

16     A.    Yes, sir.

17     Q.    Who created this policy?

18     A.    I don't know.

19     Q.    Someone employed with the Levy County

20  Sheriff's Office?

21     A.    According to what I'm seeing there on the

22  effective date, 2010 -- see at the top line?

23     Q.    Sure.

24     A.    I was not employed here then.

25     Q.    Let me ask you this, then.  When -- during

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  your employee at the Levy County Sheriff's Office, when

2  you are creating or amending policies, is that something

3  your office does internally?

4        A.    Yes, sir.

5        Q.    Has your office ever employed outside help to

6  help you prepare to either create or amend a policy?

7        A.    Was your question have we employed outside

8  help?

9        Q.    Sure.  Have you -- yes.  Have you ever used a

10  third party to help you implement -- or not implement,

11  help you create or amend a policy?

12        A.    Yes.

13        Q.    Okay.  Who would you -- who would you use?

14        A.    There's a file sharing database through the

15  Florida Sheriff's Association that allows us to view

16  policies used by other sheriffs' offices.  I know we use

17  that.

18        Q.    Okay.  Do you ever -- do you ever use outside

19  counsel to help you prepare to create a policy?

20        A.    I know that we've asked questions of the FSA

21  General Counsel regarding that, yes, and take

22  recommendations from them.

23        Q.    Okay.  What is your office's policy on

24  warrantless entry into a home?

25        A.    It's -- or it was contained in this document

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  that we're looking at here on the screen, but I can't

2  quote it to you.

3     Q.   Sure.  Here on page 1570, we have Florida Law

4  of Warrant Arrest, under Section C, Obtaining an Arrest

5  Warrant; D, Entry of Arrest Warrants; E, Warrant

6  Verification Procedures; F, Execution of Warrants; G,

7  Federal Warrants.  Where in here is your policy on

8  warrantless entry?

9     A.   I may have misspoke.  Maybe it's in 801.

10    Q.   Here.  I'll direct you -- let's direct your

11 attention, sir, to 1570, Florida Law of Arrest Warrant:

12 Section 3 details the right of an officer to break into

13 a building; B here, that deputies may, without consent,

14 enter a building under certain circumstances.  Do you

15 see that, sir?

16    A.   I do.

17    Q.   Okay.  And here it states that without

18 consent, there may be certain reasons for an officer to

19 enter a home.  Do you see that?

20    A.   I do.

21    Q.   Okay.  Here on page 1570, Subsection 3, it

22 cites the chapter -- it cites Section 901.191.  Do you

23 see that?

24    A.   I do.

25    Q.   Are you familiar with that statute, sir?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1       A.    Not in detail, no, sir.

2       Q.    Okay.  If a -- would this be a primary source

3   material for your training officer to teach on arrests

4   with and without warrants?

5       A.    Yes, sir.

6       Q.    Okay.  Do you know of any other document or

7   policy in your agency that a training officer would use

8   to teach on these subjects?

9       A.    I'm guessing 801, Search and Seizure, as well

10  as the Constitution itself.

11      Q.    Okay.  How do you -- how does your agency

12  teach the Constitution?

13      A.    Like, the 4th Amendment, you know, issues that

14  are relevant to law enforcement, we would -- we would

15  certainly quote the text.

16      Q.    What about interpretations of the text?

17      A.    We would try to use the -- the most up-to-date

18  ones, based on case law and advice from our prosecutor

19  and, again, Florida Sheriff's Association Counsel.

20      Q.    How would you -- how would -- how would your

21  training officers learn about interpretations -- the

22  most -- I think you said the most recent or most up-to-

23  date interpretations of the text?

24      A.    Usually, it's done through electronic mail

25  where we get updates from the prosecutor again, the



**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900       www.**MILESTONEREPORTING**.com       Toll Free 855-MYDEPOS

1  Sheriff's Association, and passed along that way.

2       MR. SLATER:  Okay.  Direct your attention now

3  to what we'll mark as Plaintiff's Exhibit 7.

4       (EXHIBIT 7 MARKED FOR IDENTIFICATION)

5       BY MR. SLATER:

6  Q.   Let me know when you can see my screen, sir.

7  A.   I can.

8  Q.   Okay.  This is titled Defendant Robert B.

9  McCallum Junior's Answer to Plaintiff's Second Set of

10 Interrogatories.  Do you see that, sir?

11 A.   I do.

12 Q.   Great.  And here it says that the people who

13 participated in responding were Sheriff McCallum, you,

14 Chief Deputy, and your -- and with assistance of your

15 counsel.  You see that?

16 A.   I do.

17 Q.   First page.  And here there are, I believe,

18 just three interrogatories.  Do you see that?

19 A.   Yes.

20 Q.   Numbers 11, 12, 13?

21 A.   Yes, sir.

22 Q.   Okay.  I want to direct your attention to

23 Number 11.  And this is with respect to the

24 investigative summary prepared by Lieutenant Tummond.

25 And it's your understanding that your office, your

**MILESTONE** | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  agency, agreed with the findings of Lieutenant Tummond

2  in the summary pertaining to my client's complaint

3  against Deputy Gregory; is that right?

4      A.   I'm sorry, you lost me.

5      Q.   Sure.  This interrogatory is about the

6  investigative summary -- the investigation -- you see,

7  there are some capitalized terms here, and the

8  investigation in the -- in the interrogatory definitions

9  is defined as this 19FI08.  And that is the

10 investigation related to Mr. Duke Senior's complaint

11 against Deputy Gregory; is that -- is that your

12 understanding?

13     A.   Yes, it is.

14     Q.   Okay.  And is it the agency's position -- now

15 let me step back.

16          Lieutenant Tummond authored an investigative

17 summary with findings and conclusions, and the agency

18 approved those conclusions; is that right?

19     A.   I guess that's fair to say, yes, sir.

20     Q.   You said, "I guess."  What -- what's -- what

21 would be any hesitation with that -- with unequivocally

22 agreeing to that?

23     A.   Well, we didn't conduct the investigation;

24 Lieutenant Tummond did.  We accepted his -- his

25 findings.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1       Q.   When you said that you didn't do it,
 2  Lieutenant Tummond did, Lieutenant Tummond is you -- is
 3  the person delegated to run the investigation; is that
 4  right?
 5       A.   Yes, sir.
 6       Q.   Okay.  So when he does it, it's -- is that any
 7  different from the agency doing the investigation?  I'm
 8  trying to understand what you're -- what you mean by "we
 9  didn't do it."
10       A.   Personal knowledge, if there was an error made
11  that we didn't know about, I mean, that -- that -- but
12  again, this speaking for the agency is new to me.
13       Q.   Yeah.  Sorry, what -- yeah.  When you say
14  "we," who do you mean?  Do you mean you personally?
15       A.   The command staff, Sheriff McCallum who
16  ultimately signs off accepting -- you know?  He -- he's
17  not -- he didn't know everything that was done in the
18  investigation.
19       Q.   Sure.  So he personally didn't conduct the
20  investigation?
21       A.   Correct.
22       Q.   But he delegated his authority to Lieutenant
23  Tummond to undertake the investigation, right?
24       A.   Yes, sir.
25       Q.   Okay.  And so it's not Lieutenant Tummond's
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1   personal investigation, it's the Levy County Sheriff's

2   Office's investigation; is that fair?

3        A.   Yes, sir.

4        Q.   And so here in the -- in the -- in the

5   summary, it says that there was no fresh pursuit; you

6   see that? And no warrant existed.  I'm just reading

7   through it.  I just want to make sure you're seeing what

8   I'm reading.

9        A.   Yes, sir.

10       Q.   Okay.  Does the agency agree that there was no

11  fresh pursuit and no warrant existed when the deputies

12  entered ███████████████████, the morning of May 25,

13  2019?

14       A.   Yes.

15       Q.   Okay.  And here -- and then it asks you to

16  state all facts supporting your contention that the

17  individual defendants -- and that was defined at the

18  time as Gregory, Gaffey, and Almeida -- had a lawful

19  basis to enter Plaintiff's home during the incident,

20  including whether there was fresh pursuit.  And you

21  write here, "I'm not aware of any facts supporting fresh

22  pursuit," right?

23       A.   Yes, sir.

24       Q.   And we -- and we just agreed that it's the

25  agency's position that there was not fresh pursuit, at

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1    arrest warrant?

2        A.   I do not.

3        Q.   And then I'm back on Plaintiff's Exhibit 7.

4    It says, "They knew at the time," meaning the deputies,

5    "that the suspect Terry Dukes Junior is a violent

6    convicted felon, that he has access to firearms, that he

7    regularly uses illegal narcotics and may not be in his

8    right mind, that Senior matched Junior's description in

9    the dim light."  Do you see that under Subparagraph D?

10        A.   Yes.

11        Q.   How did -- how did Senior match Junior's

12   description?

13        A.   That answer was based off written reports from

14   the deputies, that they were similar -- other than their

15   age, similar in appearance.

16        Q.   Okay.  I'm just going to turn now to the final

17   sentence, under the Answer to Interrogatory Number 11.

18   "The door was open in response to their," meaning the

19   deputies, "loud repeated knock and announce."  Do you

20   see that, sir?

21        A.   Yes, sir.

22        Q.   Okay.  Is it the agency's position that your

23   deputies have consent to enter a home when the door is

24   opened in response to knocking and announcing?

25        A.   Yes, sir.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1          MR. SLATER:  I believe -- Gwen, you are muted.
 2      I believe you objected to the form.
 3          MS. ADKINS:  Thanks for noticing.  Yes, I did.
 4          MR. SLATER:  Lucky I was actually looking at
 5      the screen.
 6          BY MR. SLATER:
 7      Q.   Okay.  I -- could you repeat your answer, sir?
 8      A.   Can you repeat your question?
 9      Q.   Sure.  Is it the agency's position that your
10  deputies have lawful -- have a lawful basis to enter a
11  home without a warrant, without exigent circumstances,
12  and without fresh pursuit, when a door is opened to that
13  residence in response to your officers knocking and
14  announcing?
15          MS. ADKINS:  Form.
16      A.   Previously, I think I said yes, but I want to
17  amend that answer to, in this particular set of
18  circumstances, based on the totality of these
19  circumstances, yes, in this --
20          BY MR. SLATER:
21      Q.   What do you mean --
22      A.   -- incident only.
23      Q.   Okay.  What do you mean by the totality of the
24  circumstances?
25      A.   Based on my understanding of how it's defined
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1     makes note of it.

2          A.   I couldn't understand what you said.  It is

3     the agency's position that the deputies in this incident

4     had consent to enter the house.

5               BY MR. SLATER:

6          Q.   Okay.  How does the agency form -- how does

7     the agency base that position, that they had consent?

8          A.   Based on my prior answer.  In addition, one

9     thing we didn't talk about was the fact that they were

10    all uniformed deputies with marked cars parked at the

11    residence.  That's an additional factor there.

12         Q.   Okay.

13         A.   Whoever opened the door knew who they were

14    and, at that hour, they had not come for a social visit.

15         Q.   Okay.  I want to walk you through -- and then

16    - - and then here you say, "There is no evidence the

17    deputies forced their way in."  Do you see that?

18         A.   Yes, sir.

19         Q.   Okay.  And then before we turn to the next --

20    the next document I want to look -- have you look at; I

21    want to turn to Interrogatory Number 13.  It says,

22    "Please state all facts supporting your contention that,

23    'the opening of the door could be construed as an

24    invitation to enter Plaintiff's residence, as you stated

25    in your investigative summary.'"  And your answer is,

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1        A.   Because they believed -- Deputy -- or Corporal
 2   Gregory now -- believed that the person -- that Terry
 3   Dukes Junior has opened the door.  And it's a reasonable
 4   belief, under the circumstances.
 5        Q.   Even absent fresh pursuit, or exigent
 6   circumstances?
 7        A.   Yes, sir.  I did specify Terry Dukes Junior,
 8   didn't I, in that answer?
 9        Q.   If you didn't, that's how I understood it.
10        A.   Good.
11        Q.   I understood you to mean that your
12   understanding is that if an officer, absent fresh
13   pursuit, exigent circumstances, or a warrant, sees a
14   suspect open the door of a home, but does -- that
15   suspect does not leave the home, right, that the deputy
16   may enter the home to effectuate an arrest?
17        A.   Yes, sir, and I think that's what happened
18   here.
19        Q.   Okay.  Is that -- so in that case, what I
20   think I'm understanding, and correct me if I'm wrong, is
21   that Gregory, in this instance, did not need to ask
22   permission to enter the home?
23        A.   Gregory was given permission by the opening of
24   the door --
25        Q.   Okay.
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1    A.   -- by somebody that he reasonably believed was

2  Terry Dukes Junior.

3    Q.   Okay.  Does it matter whether your deputies

4  knocked and announced prior to going in?

5    A.   Yes, sir.  That's part of the totality of the

6  circumstances.

7    Q.   But I think my understanding is it doesn't --

8  you're saying it doesn't matter, for that -- for that

9  analysis, whether Deputy Gregory asked to go into the

10  home -- used language, used words, to ask to go in the

11  home?

12    A.   Under this set of circumstances, it -- he --

13  he -- it does not.

14    Q.   Okay.

15    A.   He was not required to do so.

16    Q.   And how does the agency form its -- form its

17  basis for that -- for that belief?

18        MS. ADKINS:  Objection.  James, this has been

19    asked and answered multiple times now.

20        BY MR. SLATER:

21    Q.   You can answer, sir.

22    A.   Based on the totality of the circumstances in

23  my prior testimony.

24        MR. SLATER:  Okay.  I want to show you what

25    we'll mark as Plaintiff's Exhibit 9.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

```
 1        Q.   Apologies.  I want to -- I want to talk about
 2   your policies on applications for warrants.  I believe
 3   that's in Plaintiff's Exhibit 6.  Just make sure that
 4   that's -- on another one before I pull this up.  Second,
 5   sir.  Let's actually go to Plaintiff's Exhibit 3.  This
 6   is the composite of the investigative documents that we
 7   talked about, starting with Lieutenant Tummond's
 8   findings and Sheriff McCallum's -- I don't know what to
 9   call this on Dukes T132 approval or it says, agree with
10   the findings.  Is there a specific term for when the
11   sheriff agrees with the internal affairs investigation
12   findings?
13        A.   We call it hieroglyphics.
14        Q.   Well, I guess exoneration -- I -- just, he
15   says, "Agree with the findings of the investigation.  No
16   further action needed."  Is that -- do you folks call
17   that an approval?  What -- is there, like, a term of art
18   that you folks use?
19        A.   Not that I'm aware of.
20        Q.   Okay.  I want to take you now to the
21   investigative summary by Lieutenant Tummond, beginning
22   on Dukes T165.  Go down to his findings.  On Dukes T172,
23   at the bottom, the last paragraph talks about the
24   customs and policies to the office, as I understand, and
25   you can correct me if I'm wrong.  And it says, "It is
```

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1   customary to make attempts to locate and arrest a person

2   when probable cause has been established.  In the

3   absence of locating the person suspected of a crime

4   within a reasonable time, the deputy responsible for the

5   investigation would then seek a warrant."  Do you see

6   that, sir?

7       A.   Yes, sir.

8       Q.   Okay.  Is that the -- is that the policy of

9   your agency?

10      A.   That's the practice.  You're asking me if

11   that's in policy, I -- I can't point you to chapter and

12   verse.

13      Q.   Okay.  But that is the practice you're saying?

14   That is --

15      A.   Yes, sir.

16      Q.   -- that is what your deputies do.  So if

17   there's been probable cause established, your deputies,

18   generally speaking, I know that there are instances that

19   may diverge, right?  But generally speaking, will first

20   try to find the person before seeking a warrant; is that

21   right?

22      A.   Correct.

23      Q.   Okay.  Why is that the case?

24      A.   It's just a more efficient use of limited

25   resources.  The -- and we call it walking a warrant

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

1  document with several -- and it's my understanding from

2  Lieutenant Tummond's testimony that these are the

3  documents that were provided to the sheriff with the --

4  as a result of the investigation.  So this document on

5  the top, Lieutenant Tummond called his findings, which

6  the sheriff signed off on.  And everything else

7  underneath was part of the complaint and investigation,

8  including with Lieutenant Tummond's handwritten notes.

9  Or handwritten notations, rather.  So here on page Dukes

10 T173, it says at the second -- the last two paragraphs,

11 "Had Dukes, Senior complied with any of these" duties --

12 "deputies'" -- sorry -- "verbal commands, which he

13 himself confirmed hearing when the deputies entered the

14 home, these deputies would have deescalated as trained.

15 They simply wanted compliance from this unidentified

16 person to verify his identity and if this person had

17 been confirmed to be Dukes Junior, they would've simply

18 taken him into custody."  Do you see that, sir?

19        A.    I do.

20        Q.    Okay.  Can you describe to me the training

21 provided to your deputies on de-escalation?

22        A.    I know it's a major emphasis in training right

23 now.  Specifically what was done, you know, prior to

24 this incident, no, sir, I cannot in detail.

25        Q.    Okay.  But you can tell me what the -- what

**MILESTONE** | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1  the procedure is today?

2      A.   Well, I can tell you what the -- the use of

3  force policy is that, at that time and today, once

4  compliance is gained, you're the -- the use of force is

5  deceased.

6      Q.   But what are the methodologies that your

7  deputies are trained to try -- to try to get compliance

8  prior to having to use use of force?

9      A.   Can you help me with that term, methodologies,

10 please?

11     Q.   Yeah, so I think we can agree that there are

12 some situations where de-escalation may not be

13 appropriate.  For instance, if a suspect has a firearm

14 pointed at a deputy, probably in that situation, there

15 may not be time for de-escalation; is that fair?

16     A.   Would not be appropriate, no, sir.

17     Q.   Right.  So there -- so there are certain

18 instances where it just might not be -- the training may

19 be that you shouldn't -- that you don't have time to

20 deescalate or you have to just use your -- use your

21 other training to resolve a situation, but I -- but

22 there are probably -- and I know this is in policies and

23 we can look at them in a second.  There are situations

24 where the suspect isn't armed and there may be -- there

25 may be tactics to use and try in order to try to obtain

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1  the suspect's compliance; is that right?

2      A.   It is the policy and training of our agency to

3  use the least amount of force necessary to accomplish

4  the task at hand, to overcome the resistance being

5  offered.

6      Q.   Okay.  And taking that a step further then, if

7  there is no resistance, then any force would be

8  unlawful; is that right?

9      A.   That comes down to how you define force.  I

10 mean, according to the CJSTC, I mean, use of force

11 begins with, you know, at -- at your very presence.  You

12 know, that's -- that's -- so if you're -- if you're

13 defining it that way, we can't walk away and leave.  I

14 mean, we got to accomplish the task there.  Or if -- if

15 you're talking about force that -- that harms or -- or

16 does -- any kind -- inflicts any kind of pain on

17 somebody, yeah, that that would not be appropriate for a

18 non-resisting subject.

19     Q.   Let's take the example of the findings here.

20 The -- I believe that the findings here were that -- and

21 obviously we disagree with them -- but the findings of

22 your agency were that Mr. Dukes was in the room behind

23 the door and that he had gone towards a firearm on his

24 bed before Gregory deployed the taser.  Do you agree

25 that that is the findings of your agency with respect to

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

 1  this investigation?

 2      A.   Your client concealed himself, refused to

 3  follow commands, and moved towards a loaded firearm.

 4      Q.   So -- and based on those findings in this

 5  investigation, your agency exonerated Deputy, now

 6  Corporal Gregory, from unlawful -- or I guess not, but

 7  for use of force in violation of your policies; is that

 8  right?

 9      A.   Yes, sir.

10      Q.   Okay.  Assuming that there was the gun on the

11  bed, but my client did not move towards it, would use of

12  force on him violate your policies?

13          MS. ADKINS:  Form.

14      A.   No, sir.

15          MR. SLATER:  You can answer, sir.

16      A.   No, sir.

17          BY MR. SLATER:

18      Q.   Okay.  Why not?

19      A.   For the reasons I just stated, he concealed

20  himself from them and refused their commands to comply.

21      Q.   Okay.  I want to go up to my client's

22  statement.  Have you reviewed -- have you reviewed the

23  statements he provided prior to your testimony today,

24  sir?

25      A.   Yes, but it was not recently.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

1     questions along those lines.  He's not a taser

2     expert, has never claimed to be, and you never asked

3     for one.

4          BY MR. SLATER:

5     Q.   Apologies.  It's my understanding that Deputy

6  Gregory has been promoted; is that right?

7     A.   Yes, sir.

8     Q.   To a corporal?

9     A.   Yes, sir.

10     Q.   Who made the determination to promote him?

11     A.   Sheriff McCallum.

12     Q.   I want to direct your attention back to

13  Plaintiff's Exhibit 4.  These are your interrogatory

14  responses to our first set of interrogatories.  In

15  response to interrogatory number 3, you stated -- I

16  asked, "Please identify and describe every instance, if

17  any, between January 1, 2017 and the present in which

18  the policymakers identified, in interrogatory number 2

19  above -- undertook review -- undertook to review,

20  investigate, analyze, and cover, present, or determine

21  the prevalence of any misconduct deficiency,

22  shortcoming, or other problem related to the policies

23  and procedures identified above including what steps, if

24  any, were taken and when in response to the information

25  obtained through such inquiry, investigation, review, or

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  analysis." And you write, "The Sheriff's Office hasn't

2  placed a system of required reporting of use of force,

3  each of which is reviewed by a supervisor and

4  successively higher officer, or higher levels of"

5  supervisor -- I'm sorry -- "supervisor and successively

6  higher levels of supervisory review as needed or

7  appropriate." Do you see that, sir?

8      A.   I do.

9      Q.   What is the system in place for reporting use

10  of force?

11      A.   It is a form in -- in addition to your

12  incident report. Anytime, on the law enforcement side,

13  we do anything beyond handcuffing a compliant subject

14  where we fill out that form, it's called a Response to

15  Resistance or RTR form.

16      Q.   Sure. Let's see. I believe we have a copy in

17  Exhibit 3. Here we go. On Dukes T163 in Exhibit 3, is

18  this what you're describing, sir, the Subject Resistance

19  Report?

20      A.   Yes, sir.

21      Q.   Okay. And this would be the one for Terry

22  Dukes, Senior on May 25 , 2019. Do you see that at the

23  top?

24      A.   I do.

25      Q.   Okay. And so it identifies the officers

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

```
 1   involved, their badge numbers, their signatures, the

 2   types of resistance, the control measures.  You see

 3   that?

 4       A.   I do.

 5       Q.   Okay.  And it asks whether the subject was

 6   injured and here it says, "Yes."  Do you see that?

 7       A.   I do.

 8       Q.   Okay.  Do you know why the -- I'm back on the

 9   very top here of this -- of this collection of

10   documents, Dukes T132 -- why Deputy Gregory was

11   investigated for a violation of a policy not resulting

12   in injury?

13       A.   I do not.  I would -- I would need to look at

14   the -- the higher level, whether it's B-5 or something

15   like that, and compare the two, but I -- I don't know.

16       Q.   What do you mean?  What do you -- what do you

17   mean when you say B-5?

18       A.   1105.3(b)6 is what --

19       Q.   Oh, I see.

20       A.   I'm guessing it would be (b)5, the more severe

21   one, but --

22       Q.   Were you present when -- during Lieutenant

23   Tummond's deposition when we were talking about, in his

24   review, the ability to, "subserve" a violation?

25       A.   I believe so.  Yes, sir.
```

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TERRY DUKES, SR.,

     Plaintiff,

v.                                                    CASE NO. 1:23-cv-45-AW-HTC

ROBERT B. MCCALLUM JR., ET AL.,

     Defendants.

_____/

### DEFENDANT ROBERT B. MCCALLUM, JR.'S ANSWERS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

Defendant ROBERT B. MCCALLUM, JR., by and through counsel, answers

Plaintiff's Second Set of Interrogatories as follows:

10.    Please state the name and title of each person who participated in

responding to these Interrogatories and the interrogatory number(s) they

participated in responding to.

**ANSWER:**    **Sheriff Robert McCallum**
               **W. O. Beauchamp, III, Undersheriff/Legal Advisor**
               **With assistance of counsel.**

11.    In your Investigative Summary overviewing the Investigation, you

admit in the conclusion that "[t]here was no fresh pursuit and no warrant

existed" (Dukes, T. 000172) when the Individual Defendants entered Plaintiff's

residence. On the other hand, you denied the lack of "fresh pursuit" in your

1

answer to paragraphs 25 and 52 of the Complaint. Please state all facts

supporting your contention that the Individual Defendants had a lawful basis to

enter Plaintiff's home during the Incident, including whether there was "fresh

pursuit" at the time of the Incident.

**ANSWER:   I am not aware of any facts supporting fresh pursuit. The deputies had probable cause to arrest Terry Dukes, Jr. ("Suspect") for aggravated battery and other charges. They knew at the time:**

    a. **Suspect is a violent convicted felon;**
    b. **Suspect has access to firearms;**
    c. **Suspect regularly uses illegal narcotics and may not be in his right mind;**
    d. **Sr. matched Jr's description in the dim light;**
    e. **Suspect resided regularly at this location;**
    f. **Victim advised Suspect was likely at this location.**

**The door was opened in response to their loud, repeated, knock and announce.  There is no evidence the Deputies forced their way in.**


12.    Please state all facts supporting your contention that "[a]pplication for a

warrant would not have been appropriate at this juncture of the investigation"

(Dukes, T. 000172) as stated in your Investigative Summary in connection with

the Investigation.

**ANSWER: Deputies learned of the existing probable cause at approximately 0430 hours. Deputies acted immediately upon the probable cause and attempted to make the arrest. Obtaining an arrest warrant would have taken a minimum of three hours and would have required drafting the warrant application and then waking both the on-call ASA and Duty Judge. It may have also required drive time to and from Gainesville if the judge's original signature was required. The round trip would have been one hour at a minimum.**

13.     Please state all facts supporting your contention that "[t]he opening of the door could be construed as an invitation to enter" Plaintiff's residence (Dukes, T. 000173), as stated in your Investigative Summary in connection with the Investigation.

**ANSWER: Deputies knocked and announced multiple times. In response, the door was opened. All deputies involved were uniformed deputies driving marked Sheriff's Office vehicles. There is no evidence that deputies made forcible entry. Given the hour, the multiple negative contacts with law enforcement at that location, and the likely intoxication of Terry Dukes, Jr., they were not expecting a formal greeting or invitation.**

## Verification pursuant to 28 U.S.C. § 1746

I declare under penalty of perjury under the laws of the United States of America that the foregoing facts stated herein are true and correct to the best of my knowledge. Executed on this _8th_ day of July 2023.

**W.O. Beauchamp, III**
**Undersheriff/Legal Advisor**

3