<u>AFFIDAVIT OF CHIEF DEPUTY W. O. "BRETT" BEAUCHAMP, III</u>

STATE OF FLORIDA  )
         )
COUNTY OF LEVY   )

BEFORE ME, the undersigned authority, personally appeared W. O. "BRETT" BEAUCHAMP, III who after being duly sworn deposes and says:

1. My name is W. O. "BRETT" BEAUCHAMP, III. I am over eighteen years of age, and am competent to testify in a court of law.

2. I have been employed by the Levy County Sheriff's Office ("LCSO" or "the Department") as a sworn law enforcement officer and its Undersheriff/Chief Deputy since January 2013. I report directly to Sheriff Robert B. McCallum, Jr.

3. In my capacity as Undersheriff, I have personal knowledge of the facts stated herein, or am charged with knowledge of said facts as are documented by Department records.

4. For sworn deputy positions, LCSO only hires law enforcement officers who have been certified by the State of Florida and who have completed the mandatory law enforcement training approved by the Florida Department of Law Enforcement's Criminal Justice Standards and Training Commission. Additional training and recertification are required every four years.

5.     This academy currently requires more than 800 hours of training. It has changed over the years and at the time of Chase Gregory's attendance included 770 hours of training.

6.     Once hired, LCSO requires deputies to undergo additional field training on Department policies and procedures conducted by multiple in-house training deputies who have gone through additional training to be designated as Field Training Officers. We intentionally have more than one field training deputy train with deputies to be assigned to the patrol division and they have to agree that this person can be released to work on their own. This decision has to be approved by the chain of command before the patrol deputy is released to work individually. This process was true for Chase Gregory too.

7.     Chase Gregory himself became a Field Training Officer for LCSO after he completed the additional 40 hours of required training in March 2019. See Exh. A, attached.

8.     During his time at LCSO, Chase Gregory has also completed multiple trainings to be an instructor dating as far back as 2016.

9.     Chase Gregory was first employed by LCSO as a sworn deputy sheriff in 2013. He was certified by the State of Florida at that time and has met all requirements and continuously been recertified since.

10.     Chase Gregory was hired under Sheriff McCallum's predecessor for which the hiring process is not known. However, in September 2013, his background and employment history were reviewed and he was determined to meet all statutory and administrative requirements for the State of Florida. See Exh. B, attached.

11.     Nothing in Chase Gregory's background indicated he was unfit to be a sworn law enforcement officer or demonstrated an inability to perform the duties of that office in accordance with the law.

12.     Chase Gregory, like all sworn deputies under Sheriff McCallum, signed an Oath of Office. See Exh. C, attached.

13.     Chase Gregory received complaints before May 2019, some were unfounded and some were substantiated. None involved complaints of warrantless entry into a home in the lawful performance of his duties nor the use of excessive force. For the complaints when violations were found to have occurred, Sheriff McCallum disciplined Gregory.

14.     Additional complaints have been received against Chase Gregory after May 2019. Some were unfounded and some were substantiated. None involved complaints of warrantless entry into a home in the lawful performance of his duties nor the use of excessive force. For the complaints when violations were found to have occurred, Sheriff McCallum disciplined Gregory.

15.    Deputies are trained on Department policies when they are hired and continuously throughout their employment through on-the-job training and supervision at the squad level. New policies or amendments to policies are issued through LCSO's DMS (document management system) program which alerts deputies to the policy and requires their review and acknowledgment. Policies remain available to all deputies to access, review, and reference as needed.

16.    In addition to Department policies, procedures, and training, all announcements provided by the Florida Sheriffs Association to law enforcement on caselaw updates and other matters are distributed to LCSO employees for continuing education.

17.    Sheriff McCallum and his command staff and the successive levels of supervisors are constantly on alert to confirm that LCSO policies are being followed by employees. The Department corrects conduct, counsels employees, and disciplines employees for violations of agency policies. Accolades are also given to employees when deserved.

18.    Chase Gregory's personnel file reflects that he has received counseling, corrective measures, and formal discipline both before and after the Terry Dukes incident in May 2019. None of these issues were related to warrantless entries or use of force.

19.     LCSO is governed by a set of rules which include Directives and General Orders. These policies are written to meet the standards required by Florida and federal law and their Constitutions.

20.     True and correct copies of the following Department policies which were in effect and might relate to the May 25, 2019 incident involving Terry Dukes, Senior, are attached hereto as Exhibit D:

| | |
|---|---|
| Directive 643 | Domestic, Repeat, Dating & Sexual Violence Investigations, effective 12/01/2010 |
| Directive 801 | Constitutional Issues Involving Arrests Searches and Seizures, effective March 1, 2011 |
| Directive 806 | Arrest Warrants, effective 12/01/2010 |
| General Order 1100.1 | Misconduct Complaints, effective 08/18/2016 |
| General Order 1300.0 | Arrestee handling procedures, effective 05/15/2017 |
| General Order 1400.1 | Response to Resistance, effective 04/18/2018 |

**FURTHER AFFIANT SAYETH NOT.**

Dated this _____ day of October 2023.

_____
**W. O. "BRETT" BEAUCHAMP, III**
**CHIEF DEPUTY**
**LEVY COUNTY SHERIFF'S OFFICE**

STATE OF FLORIDA
COUNTY OF LEVY

The foregoing instrument was sworn to and subscribed before me by means of
☒ physical presence or ☐ online notarization, this __13__ day of October 2023
by W.O. "Brett" Beachamp, III, who is personally known to me.

Notary Public Signature _Paula E. Kennedy_                    (SEAL)
My Commission Expires: _February 22, 2024_
Printed Name: _Paula E. Kennedy_

PAULA E. KENNEDY
Commission # GG 936672
Expires February 22, 2024
Bonded Thru Troy Fain Insurance 800-385-7019

RON DESANTIS,
GOVERNOR

RICHARD L. SWEARINGEN,
COMMISSIONER
FLORIDA DEPARTMENT OF
LAW ENFORCEMENT

## STATE OF FLORIDA

# THE COMMISSION ON CRIMINAL JUSTICE STANDARDS AND TRAINING

Hereby awards to

**Coulter Chase Gregory**

**ADVANCED TRAINING CERTIFICATE**
**Field Training Officer Course For Law Enforcement Officers**
**40 HOURS**

For having fulfilled the requirements for training
as prescribed in Chapter 943
of Florida Statutes

EDWARD L. GRIFFIN, CHAIRMAN
CRIMINAL JUSTICE STANDARDS
AND TRAINING COMMISSION

DEAN REGISTER, DIRECTOR
CRIMINAL JUSTICE
PROFESSIONALISM

March 07, 2019

04-2019-809-1

**EXHIBIT "A"**

Dukes, T. 000565

# FDLE
Florida Department of
Law Enforcement

## REGISTRATION OF EMPLOYMENT
## AFFIDAVIT OF COMPLIANCE
Incorporated by Reference in Rule 11B-27.002(2), F.A.C.



CJSTC
60

**Please type or print in black or blue ink and use capital and small letters for names, addresses, and titles**

1. Social Security Number: 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
2. Officer's Name: Gregory, Coulter Chase
3. Date of birth: 9/11/1989
4. Ethnic group or race: White
5. Sex: Male
6. Education: High School

**Note:** To receive educational salary incentive, complete the Higher Education Report Form CJSTC-63.

7. Agency ORI: FL0380000
8. Agency Name: Levy County Sheriff's Office
9. Employment Date: 9/3/2013
10. Is this officer employed under a Temporary Employment Authorization? If yes, complete the Temporary Authorization form CJSTC-65.
    ☐ Yes   ☑ No

11. Employment Type & Class Part-Time  Law Enforcement
12. If officer completed auxiliary training, does agency have proof of required high liability training on file?
    ☐ Yes  Date: _____   ☐ No
13. Is this officer requesting an equivalency-of-training? If yes, maintain on file the following forms: Equivalency-of-Training form CJSTC-76 for out-of-state or Federal Officers and the Equivalency-of-Training Proficiency Demonstration form CJSTC-76A.
    ☐ Yes   ☑ No
14. Does the agency have the results of this officer's processed fingerprints on file: If yes, please indicate the date you received the fingerprint results from the Florida Department of Law Enforcement or the FBI.
    ☑ Yes   Date: 9/5/2012   ☐ No
15. Does the agency have on file the seven-panel controlled substance screening results as required in Rule 11B-27.00225?
    ☑ Yes   ☐ No
16. Has the agency completed a background investigation and have on file all documents required in Chapter 27, F.A.C.?
    ☑ Yes   ☐ No

I hereby certify that I have collected, verified, and am maintaining on file evidence that the applicant has met the provisions of Section 943.13(1)-(8) and 943.131, F.S., or any rule adopted pursuant thereto. I fully understand that this affidavit constitutes an official statement under the purview of Section 837.06, F.S., is subject to verification by the Criminal Justice Standards and Training Commission, and any intentional false execution of this affidavit constitutes a misdemeanor of the second degree.

17. _W.O. Beautt_
    Agency Administrator or Designee's Signature

18. _9-13-13_
    Date

19. _W.O. Beauchamp, Undersher. FL_
    Agency Administrator or Designee's Printed Name and Title

## AFFIDAVIT

20. STATE OF FLORIDA, COUNTY OF _Levy_. The foregoing instrument was acknowledged before me this
_9/12/13_ By: _W.O. Beauchamp_ who is personally known
or who has produced identification. Type of identification: _____

_Candace Turner_
Notary's Signature

Notary Seal: _____

CANDUIS TURNER
MY COMMISSION EXPIRES
February 28, 2014
#DD 955718
NOTARY PUBLIC, STATE OF FLORIDA

_____ Type or stamp Commissioned Name of Notary

Upon witnessing the agency administrator or designee's signing of this affidavit, the notary public shall complete the notary block.

An officer shall not be employed in a sworn status until all requirements of Section 943.13, F.S. have been met.

Effective 11/1/1995

_FDLE file review 1/13/2014_

Form Effective Date 6/9/2008



# LEVY COUNTY SHERIFF'S OFFICE

## *Oath of Office, Loyalty & Code of Ethics*
### *(Sworn - Employees)*

I, _Coulter Chase Gregory_ recognize and accept that I am given a special trust and confidence by the citizens and employees I serve and represent. I recognize the badge of my office as a symbol of public faith, and I accept it as a public trust. I recognize that the Office of Deputy Sheriff is a public office and is a direct extension of the Office of the Sheriff. In accepting that public trust, I will serve that office loyally and proudly. In furtherance of this pledge, I will abide by the following Code of Ethics:

- I will maintain safety and security for all;
- I will use the power of my position for the good of human-kind, especially for individuals who have little or no voice; and little or no power;
- I will treat citizens and one another, civilian and sworn, with dignity and respect;
- I will be honest and honorable in the face of great temptation to do otherwise;
- I will respect the Constitutional rights of all people;
- I will not use my position to secure privileges for myself or others;
- I will not use my position to engage in activities that constitute a conflict of interest;
- I also accept responsibility for encouraging others in my profession to abide by this code.
- I will keep my private life unsullied as an example to all.

As a citizen of the State of Florida and the United States of America, and being employed by the Levy County Sheriff's Office and a recipient of public funds as such employee or officer, do hereby solemnly swear or affirm that I will support, protect, and defend the Constitution of the United States and of the State of Florida; that I am duly qualified to hold office under the Constitution of the State; and that I will well and faithfully perform the duties on which I am about to enter, so help me God.

_Coulter Chase Gregory_
Employee Signature

_R.B. McCallum Jr._
Robert B. McCallum, Jr., Sheriff

1-2-13
Date

1/2/13
Date

Sworn to and affirmed before me this _2nd_ day of _January_, 20_13_.

_Candius Turner_
Notary Signature


CANDUIS TURNER
Commission # DD 955718
Expires February 23, 2014
Bonded Thru Troy Fain Insurance 800-385-7019

**EXHIBIT "C"**



# LEVY COUNTY SHERIFF'S OFFICE

## *643 – Domestic, Repeat, Dating & Sexual Violence Investigations*

**I.**   **Effective Date:**  December 1, 2010
**Rescinds:**  General Order 41 of May 17, 2000

**II.**   **Scope and Purpose:**  This directive applies to all Levy County Sheriff's Office (LCSO) personnel and establishes policy and procedures that will enable the LCSO to properly and lawfully enforce all laws related to domestic, repeat, dating and sexual violence, and stalking . The purpose of this policy is to reduce the incidence and severity of domestic violence, protect victims of domestic violence, provide them with support through a combination of law enforcement and community services, and build strong cases against suspects for the purpose of successful prosecutions and reduced recidivism.

**III.**   **Policy:**  Incidents of Domestic Violence, Repeat Violence, Sexual Violence and Dating Violence, as defined in Florida Statutes, shall be investigated the same as all other requests for law enforcement assistance in situations where there have been allegations of physical violence or the threat thereof.  The deputy's decision to make an arrest shall not be influenced by factors such as the lack of a court ordered injunction, potential financial consequences, victim's prior complaints, verbal assurance that the violence will cease, whether the arrest will lead to a conviction or disruption of the family unit as a result of the arrest.  Dispute mediation or other police intervention techniques shall not be used as a substitute for arrest when a crime of domestic violence has occurred.

**IV.**   **Procedures:**

   **A.**   **Applicable Florida Statutes:**

      1.   Chapter 415 – Protection from Abuse, Neglect, and Exploitation

      2.   Chapter 741 – Husband and Wife

      3.   Chapter 784.046 - Injunctions against Repeat Violence, Sexual Violence or Dating Violence

      4.   Chapter 784.048 – Stalking

      5.   Chapter 901 – Arrests

   **B.**   **Definitions:**

      1.   Violence - *"any assault, battery, aggravated battery, sexual assault, sexual battery, aggravated stalking, kidnapping, or false imprisonment, or any criminal offense resulting in physical injury or death, by a person against any other person."* FS 784.046(1)(a)

**EXHIBIT "D"**

# LEVY COUNTY SHERIFF'S OFFICE

### *643 – Domestic, Repeat, Dating & Sexual Violence Investigations*

2.  Repeat Violence - *"two incidents of violence or stalking committed by the respondent, one of which must have been within 6 months of the filing of the petition, which are directed against the petitioner or the petitioner's immediate family member."* FS 784.046(1)(b)

3.  Dating Violence - *"violence between individuals who have or have had a continuing and significant relationship of a romantic or intimate nature. The existence of such a relationship shall be determined based on the consideration of the following factors:*

    i.   *A dating relationship must have existed within the past 6 months;*

    ii.  *The nature of the relationship must have been characterized by the expectation of affection or sexual involvement between the parties; and*

    iii. *The frequency and type of interaction between the persons involved in the relationship must have included that the persons have been involved over time and on a continuous basis during the course of the relationship.  The term does not include violence in a casual acquaintanceship or violence between individuals who only have engaged in ordinary fraternization in a business or social context."* FS 784.046(1)(d)

4.  Domestic Violence - *"any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any criminal offense resulting in physical injury or death of one family or household member by another family or household member."* FS 741.28(2)

    The misdemeanor battery statute does not apply to a parent striking a child. If the striking rises to the level of a crime, the appropriate charge is child abuse which is a felony.

5.  Domestic Battery by Strangulation – *"if a person knowingly and intentionally, against the will of another, impedes the normal breathing or circulation of the blood of a family member or household member or of a person with whom he or she is in a dating relationship, so as to create a risk of or cause great bodily harm by applying pressure on the throat or neck of the other person or by blocking the nose or mouth of the other person."* FS 784.041(2a)

    *"A person who commits felony battery or domestic battery by strangulation commits a felony of the third degree"* FS 784.041(3)

6.  Sexual Violence - *"any one incident of:*

    i.   *Sexual battery, as defined in chapter 794;*



ii.    *A lewd or lascivious act, as defined in chapter 800, committed upon or in the presence of a person younger than 16 years of age;*

iii.    *Luring or enticing a child, as described in chapter 827; or*

iv.    *Sexual performance by a child, as described in chapter 827; or*

v.    *Any other forcible felony wherein a sexual act is committed or attempted, regardless of whether criminal charges based on the incident were filed, reduced, or dismissed by the state attorney."* FS 784.046(c)

7.    Family or Household Member - *"spouses, former spouses, persons related by blood or marriage, persons who are presently residing together as if a family or who have resided together in the past as if a family, and persons who are parents of a child in common regardless of whether they have been married. With the exception of persons who have a child in common, the family or household members must be currently residing or have in the past resided together in the same single dwelling unit."* FS 741.28(3)

8.    Stalking - *"Any person who willfully, maliciously, and repeatedly follows, cyberstalks or harasses another person commits the offense of stalking, a misdemeanor of the first degree..."* FS 784.048(2)

9.    Aggravated Stalking - *"Any person who willfully, maliciously, and repeatedly follows, harasses or cyberstalks another person, and makes a credible threat with the intent to place that person in reasonable fear or death or bodily injury, of the person, or the person's child, sibling, spouse, parent, or dependent, commits the offense of aggravated stalking, a felony of the third degree, FS 784.048(3);*

*or, any person who, after an injunction for protection against repeat violence or dating violence pursuant to 784.046;*

*or, an injunction for protection against domestic violence pursuant to FS 741.30;*

*or after any other court imposed prohibition of conduct toward the subject person or that person's property, knowingly, willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person commits the offense of aggravated stalking, a felony of the third degree, FS 784.048(4);*

*or, any person who willfully, maliciously and repeatedly follows, harasses or cyberstalks a minor under 16 years of age commits the offense of aggravated stalking, a felony of the third degree."* FS 784.048(5).

*"Any law enforcement officer may arrest, without a warrant, any person he or she has probable cause to believe has violated the provision of this section."* FS 784.048(6).



# LEVY COUNTY SHERIFF'S OFFICE

## *643 – Domestic, Repeat, Dating & Sexual Violence Investigations*

10. Cyberstalk - *"To engage in a course of conduct to communicate, or to cause to be communicated, words, images, or language by or through the use of electronic mail or electronic communication, directed at a specific person, causing substantial emotional distress to that person and serving no legitimate purpose."*

11. Address Confidentiality Program – a program created under s. 741.401-.409, and s. 741.465, Florida Statutes.  This program is administered within the Office of the Attorney General and allows a participant to use an address designated by the Attorney General as their address, in order to protect their actual address from disclosure.

C. **Responsibilities:**  Domestic violence investigations shall be actively pursued by the LCSO and an arrest shall be the preferred response in situations in which probable cause exists. High priority shall be assigned to ensure victim safety and referral to appropriate services.  Consistent with this, the following policy components are adopted.

1. Communications:

    a. Communications shall dispatch units in all situations involving domestic violence. The priority of a domestic violence call shall be gauged in accordance with the priority criteria prescribed by generally applicable agency procedures. Communications should dispatch domestic violence calls in accordance with the highest appropriate priority classification.

    b. Whenever possible, Communications should dispatch two deputies to the scene.

    c. In addition to the information normally gathered, Call takers should make an effort to determine the following and relay it to deputies responding to a domestic violence call:

        i. Whether there is a need for medical treatment;

        ii. Suspect's actions against the victim;

        iii. Whether the suspect is present and, if not, the suspect's complete name, relationship to victim, description and possible whereabouts;

        iv. Whether the suspect is aware that law enforcement has been called and/or has made any threats toward responding deputies;

        v. Whether weapons, dangerous animals or other threats to deputy safety are present at the scene;

        vi. Whether the offender is under the influence of drugs or alcohol;



# LEVY COUNTY SHERIFF'S OFFICE

## *643 – Domestic, Repeat, Dating & Sexual Violence Investigations*

      vii.      Whether there is anyone else at the scene, including children;

      viii.     Whether the victim has a current injunction or equivalent order;

      ix.      Complaint history at the location; and

      x.      If suspect has fled, a complete description of the vehicle.

d.      The Communications Operator shall not ask the victim whether s/he plans to participate in any later prosecution.

e.      If the crime is in progress, the complainant should be kept on the phone, provided the victim is not in any immediate danger. If the Communications Operator cannot remain on the telephone with the victim, they should attempt to call back periodically to check on the progress of events and relay this information to deputies.

f.      For 9-1-1 or other emergency call hang-ups where call location information is available, Communications shall dispatch a unit and make a call back to the victim.

g.      Communications shall not cancel the law enforcement response to a domestic violence complaint regardless if the request is made during the initial call or a follow-up call. However, the Communications shall advise the deputies of the request.

2.      Initial Response and Entry:  LCSO will respond to family and domestic disturbances according to normal operating procedures for responding to high hazard calls.

a.      If refused entry, the deputies should be persistent about seeing and speaking alone with the victim. If access to this person is refused, the deputies should request that the dispatcher attempt contact with the victim by phone.

b.      If access is still refused and the deputies have a reasonable belief that someone is in imminent danger, the deputies should use appropriate force to gain entry.

c.      After arriving inside the premises of a family or domestic disturbance call by invitation, the Deputy may remain there if;

      i.      The situation warrants it.

      ii.     If one of the occupants or spouses requests them to stay.



# LEVY COUNTY SHERIFF'S OFFICE

## *643 – Domestic, Repeat, Dating & Sexual Violence Investigations*

3.  On-Scene Investigation:  When an alleged incident of domestic violence is investigated, the Deputy should ensure the safety of all persons at the scene. This should include:

    a.  Separating the victim and offender physically, verbally, and, if possible, visually (if circumstances permit, move them into separate areas);

    b.  Taking possession of all involved weapons and securing any other weapons which pose an immediate threat at the scene, seizing only in accordance with law.

    c.  Assist an injured victim to obtain medical treatment if such is required as a result of the incident.

    d.  Locating and insuring the welfare of any children and others at the scene.

    e.  Advise the victim that there is a domestic violence center from which the victim may receive services.

    f.  Obtain, whenever possible, either a written, audio recorded or video recorded statement(s) from the victim and witness(es).

    g.  Complete the Public Records Exemption on the bottom of the Victim Notification Form.

    h.  Interview all parties and potential witnesses including children and neighbors, as appropriate. These persons should be interviewed separately and out of visual/hearing range of each other, if possible.

    i.  Record in writing or with a digital or video recorder (deputies are encouraged to use recorders):

        i.  Any statements of the victim, suspect, and/or witnesses which may be categorized as exceptions to the hearsay rule (including excited utterances and spontaneous statements).  Note the exact words used, using quotation marks; indicate the approximate time frame when the statements were made; and record the emotional condition of the speaker.

        ii.  Any relevant statements, including self-serving ones, made by the suspect.

    j.  If communications are impaired by the special needs of any party (for instance, the person is hearing impaired or does not speak English), the deputy, where possible, should request that appropriate resources be made available via phone or at the scene.

# LEVY COUNTY SHERIFF'S OFFICE

## *643 – Domestic, Repeat, Dating & Sexual Violence Investigations*

k.    Determine if the relationship is domestic (as defined by Florida law) and what crime(s) occurred.

l.    Determine the nature and extent of all injuries, including defensive wounds (e.g., on the inside of the arms or palms of the hands), pursuant to Chapter 741 F.S.

m.    Due to the possibility of serious injury due to strangulation, deputies should document any signs of strangulation including red marks, bloodshot eyes, and hoarseness in speaking.

n.    Ascertain whether a female victim is pregnant and identify if and how the suspect is aware of her pregnancy. Obtain the name of the victim's health care provider, if possible.

o.    Determine who is the primary aggressor, using the following factors and the deputy's judgment:

    i.    Extent of any injuries inflicted,

    ii.    Fear of physical injury because of past or present threats,

    iii.    Actions taken in self-defense or to protect oneself,

    iv.    History of domestic abuse perpetrated by one party against the other, and

    v.    Existence or previous existence of orders for protection.

p.    Collect and record physical evidence and take digital photographs of the victim's injuries regardless of whether they are visible at the time and any property damage.  Submit the photographs into evidence in accordance with current procedures.

4.    Criminal Investigations Division (CID) Assistance:  In incidents of unusual or aggravating events, CID may be contacted to provide additional resources.  The Deputy shall follow the normal protocol for requesting CID assistance.

5.    Probable Cause:  If, after proper investigation, the deputies determine there is probable cause to believe that a crime of domestic violence was committed, they will:

a.    As a general rule, physically arrest the primary aggressor(s) if they are still on the scene and/or they can be located within a reasonable time period.

# LEVY COUNTY SHERIFF'S OFFICE

## *643 – Domestic, Repeat, Dating & Sexual Violence Investigations*

b.     A sworn complaint may be filed in instances where the suspect can not be reasonably located.

c.     In certain cases where the facts are in dispute and/or neither party's side can be verified, no charges may be filed at all.

d.     It is the preferred response of LCSO Deputies investigating Domestic Violence calls to physically arrest subjects when probable cause exists that they have committed a crime of domestic violence.

e.     The arresting deputy should convey to the suspect that the State of Florida prosecutes violations of the law and that the state may proceed with or without the cooperation of the victim.

f.     If the victim comes forward after the arrest has been made or sworn complaint completed, requesting to drop or withdraw the charges, they should be directed to the Office of the State Attorney.  The LCSO will not dispose of a completed unsubmitted sworn complaint.

**D.     Exercising Discretion:**  As with any criminal investigation, Deputies investigating allegations of domestic violence always have the authority to exercise discretion whether a physical arrest is the <u>best course of action</u> under the circumstances.  If a Deputy determines after proper investigation that there are circumstances which indicate that a physical arrest is not the best course of action in a situation, the Deputy shall;

1.     Contact a supervisor prior to leaving the scene of the call and consult with him or her about how to proceed.

2.     If the supervisor concurs, the Deputy may elect to not make a physical arrest when sufficient mitigating circumstances exist.

3.     Indicate in the narrative of the incident report the reasons that a physical arrest was not made.

4.     However, if there is any concern for the continued safety of the victim(s) once the Deputy(s) leaves the scene, then a physical arrest will be made in cases where probable cause exists.

**E.     Seeking an Arrest Warrant:**  In instances of serious domestic violence (felony) where the suspect has fled the area prior to the Deputy's arrival and the Deputy has made a diligent effort throughout the shift, 24 hour period or over the weekend to locate the suspect to make a probable cause arrest, the Deputy with the approval of his supervisor may request the assistance of CID to obtain an arrest warrant.  The patrol deputy should:

# LEVY COUNTY SHERIFF'S OFFICE

## *643 – Domestic, Repeat, Dating & Sexual Violence Investigations*

1. Contact the On-call Investigator for assistance.

2. As soon as the warrant is obtained, CID will give notify Patrol and may also direct the Crime Analyst to prepare a wanted flyer.

**F.** **Investigation of Repeat Violence, Sexual Violence and Dating Violence:** Deputies will follow normal operational procedures similar to the investigation of domestic violence cases.

1. Deputies will vigorously enforce the laws related to these forms of violence, and take every appropriate and reasonable step to protect the innocent and prosecute suspects.

2. When suspects can be arrested on scene per the laws governing probable cause, then they will be as a general rule.  NOTE:  Simple misdemeanors under these three categories ARE NOT misdemeanor exceptions; unless they are also:

   a. Related to domestic violence.

   b. Are perpetrated in violation of an existing injunction for protection.

**G.** **FS 901 – Arrests:** Allows Deputies to arrest without a warrant any time <u>they have probable cause to believe that the person has committed</u>:

1. An act of **domestic violence** as defined in FS 741.28, or **child abuse**, as defined in 827.03.  NOTE:  The decision to arrest under these two statutes shall not require consent of the victim or consideration of the relationship of the parties.

   a. A criminal act according to one of the following violation of injunction stipulations:

      i. FS 790.233: possession of firearm or ammunition prohibited while under a FINAL injunction for domestic violence.

      ii. FS 741.31: violation of an injunction for protection entered pursuant to FS 741.30, domestic violence,

      iii. FS 784.047: violation of an injunction for protection entered pursuant to FS 784.046, repeat violence, sexual violence or dating violence; or a foreign protection order accorded full faith and credit pursuant to FS 741.315, over the objection of the petitioner, if necessary.

   b. An act that violates a condition of pretrial release provided in FS 903.047 when the original arrest was for an act of domestic violence as defined in FS 741.28. or when the original arrest was for an act of dating violence as defined in FL 784.046, FS 901.15(13).

# LEVY COUNTY SHERIFF'S OFFICE

## *643 – Domestic, Repeat, Dating & Sexual Violence Investigations*

i.    Deputies investigating domestic disturbance and violence calls should be alert for the possibility that the perpetrator may have recently been arrested for a previous act of domestic violence against the victim(s) of the current call, and is under pretrial release conditions.  The Communications Center will attempt to verify this information.

ii.    A person arrested under this section will be held in custody until his or her first appearance. FS 741.29(6)

c.    If a child is the victim of or witnesses to the domestic violence:

i.    The deputy is required by FSS 415 to call the DCF Abuse Registry (1-800-96-ABUSE or 1-866-LEABUSE).

ii.    The child will be listed in the LCSO reporting system

iii.    If, as a result of arrests and/or hospitalizations, there is no parent, legal guardian, or relative to care for the children, the deputy shall contact the Abuse Registry at the number above for purposes of determining placement. The deputy should indicate in the report the identity and address of the person taking custody of the children.

iv.    The ID Number and Name of the DCF call taker will be added to the Incident Report.

**H.**    **Care of Dependent Adults:** When an elderly or disabled adult is either a victim of the violence or reliant on the victim or suspect who can no longer provide care, the deputy shall call the Abuse Registry [1-800-96-ABUSE (2-2873)].

**I.**    **When complaints are received from two or more parties:**

1.    The LCSO shall discourage dual arrests, where there are allegations that each party assaulted the other.  Each complaint will be evaluated separately to determine whether there is probable cause for arrest.

2.    If there is probable cause to believe that two or more persons have committed a misdemeanor or felony, or if two or more persons have made a complaint, the Deputy will attempt to determine who the primary aggressor was.

3.    If the primary aggressor alleges that she/he is also the victim of domestic violence, then it is imperative that the deputy thoroughly investigate the allegation to determine whether it was an act of self-defense or an act of aggression.

# LEVY COUNTY SHERIFF'S OFFICE

## *643 – Domestic, Repeat, Dating & Sexual Violence Investigations*

4.   In assessing whether physical force was used in self defense, factors such as defensive wounds, disparity in physical size, use of weapons, circumstances of the onset of violence, reasonableness of fear of harm, signs of strangulation, etc., can be considered.

5.   Arrest is the preferred response only with respect to the primary aggressor and not the preferred response regarding a person who acts in a reasonable manner to protect or defend oneself or another family or household member from domestic violence.

6.   If dual arrests are made, the facts supporting each arrest must be clearly documented. Dual arrests are strongly discouraged except where clearly necessary.  This provision is consistent with the requirement of F.S. 741.29(4).

7.   Prior to making a dual arrest, contact your immediate supervisor for consultation.

**J.   Reporting:**

1.   Complete an Incident Report which will include;

a.   Information provided by communications personnel (the deputy should consider the evidentiary value of the 9-1-1 call);

b.   Descriptive information regarding the victim and suspect, including demeanor of ach;

c.   Written and oral statements obtained from the victim and suspect (including excited utterances, their approximate time frame, and the person's emotional condition), and an explanation if written or recorded statements were not obtained;

d.   A list of witnesses and their statements (including excited utterances and their approximate time frame) and the identities of all deputies on the scene;

e.   A description and location of observed injuries, description of medical treatment rendered and statement about whether an offer of medical treatment was refused.

f.   The name of the medical treatment provider and the names of any other health care providers, including EMS personnel;

g.   A description of all other physical evidence including photographs taken and of what;

h.   A description of steps taken to locate the suspect if s/he was not at the scene;



# LEVY COUNTY SHERIFF'S OFFICE

## *643 – Domestic, Repeat, Dating & Sexual Violence Investigations*

    i.     A list of indicators of threats to future victim and child safety (e.g., threats made, including history of abuse, killing of pets, use of substances, other unusual behavior);

    j.     Any evidence that the suspect tried to prevent the victim from reporting the crime to law enforcement (e.g., taking phone away from victim);

    k.    Information regarding whether children were present, their names and ages.

        i.     Whether they are related by blood or marriage to the victim or the perpetrator.

        ii.    If they were a witness to the domestic violence and whether the Department of Children and Families was contacted.

    l.     Information regarding whether an injunction/first appearance no contact order/conditions of probation is in effect and, if it is, reference to this incident;

    m.    A statement regarding any special needs (including language barriers, disabilities) of the parties involved;

    n.    An indication that the victim received the Victim Witness Assistance Guide and the Victim Notification Form;

    o.    If no arrest was made, an indication that the deputy advised the victim of the reasons why an arrest was not made and how a victim may seek additional review by contacting the State Attorney's Office;

    p.    Any information that may be relevant to the assessment of bond;

    q.    The name and phone number of a person (e.g., family member, clergy, or employer) who can contact the victim.

    r.    The reason(s) for arresting two or more parties.

2.    Florida Statute 741.29 (5) states that *"No law enforcement officer shall be held liable, in any civil action, for an arrest based on probable cause, enforcement in good faith of a court order, or service of process in good faith under this chapter arising from an alleged incident of domestic violence brought by any party to the incident."*

3.    When an incident of domestic violence is investigated, the investigating Deputy will complete his/her report before going off-duty and the Shift Supervisor will ensure it is forwarded to Records before the end of the shift.

4.  Per Florida State Statute 741.29, the Records Division will send/fax reports of domestic violence incidents to Another Way, Inc., the local certified domestic violence center, within 24 hours of receipt of the report, redacted of information that would reveal the identity of the victim of sexual battery, child abuse, or lewd or lascivious offense committed upon or in the presence of persons less than 16 years of age and active criminal intelligence or investigative information as stated in FS 119.07(3)(f).

5.  Felony incidents requiring additional follow-up will be referred to CID.

6.  If appropriate, the victim may be referred to other assistance agencies.  This may be accomplished by contacting the Domestic Violence Hotline (1-800-500-1119) or local 352-486-3305 for the victim and staying with him/her while the call takes place.

7.  If the victim requests to go to a domestic violence shelter, s/he shall be referred to a certified domestic violence center. In Levy County this is Another Way, Inc.  The deputy shall arrange for or provide transportation to the certified center if the victim is approved for center intake or arrange for or provide transportation for the victim to an alternative location of the victim's choice in the local area.

K.  **Domestic Violence Arrests and Baker Acts:**  Under circumstances where an offender meets the criteria for both a Baker Act and an arrest for any act of domestic violence, either misdemeanor or felony, the Patrol Shift Supervisor will contact the On-call Investigator.  The decision to transport to the CSU under the Baker Act or arrest the suspect for criminal charges shall be made after consultation with the CID On-call investigator.

L.  **Domestic Violence Involving LCSO or Other Agency Personnel:**

1.  The LCSO supports the position that it will have a zero tolerance of domestic violence involving LCSO personnel or other law enforcement agency personnel.  The LCSO should be as vigorous in our response to suspected crimes on the part of our own employees as we are to all other domestic violence suspects.

2.  However, the LCSO should also uphold our duty to our employee in terms of providing employee assistance; preventing harm to self or family; and continuing employment where appropriate, safe, and within department guidelines and the law.

3.  Any employee who witnesses or otherwise has firsthand or well-founded knowledge of a domestic violence incident involving another employee in the department must report that incident to a supervisor, who will cause an investigation to be initiated.

4.  If the employee is a first responder and/or likely to investigate high stress calls (including domestic violence calls), the department shall consider a temporary reassignment for the employee.

# LEVY COUNTY SHERIFF'S OFFICE

## *643 – Domestic, Repeat, Dating & Sexual Violence Investigations*

5. CID will respond to and investigate all incidents of domestic violence involving LCSO personnel in accordance with the guidelines set forth in this directive.

6. The exception will be incidents involving members of CID; these will be responded to and investigated by the Uniform Patrol Division.

7. The Professional Standards Division will be contacted as soon as practical by phone or in person when a domestic violence investigation is being initiated against an employee.

8. A copy of the Incident Report regarding an incident of domestic violence involving any LCSO employee will be forwarded to the Professional Standards Division by the lead investigator prior to the end of the shift.

9. If an LCSO employee is arrested for a domestic violence incident, s/he must notify his/her supervisor before the beginning of the next shift or as soon as possible.  A supervisor who is made aware that an employee is about to or has been arrested or is under investigation for domestic violence will make immediate notification to the Professional Standards Division.

10. If a sworn member of <u>another</u> law enforcement agency is the suspect in an incident, the investigating deputy shall notify his or her immediate supervisor, who shall notify the suspect's agency.

**M.    Injunctions for Protection Involving LCSO Employees:**

1. General Procedures:

   a. An employee who is either the petitioner or respondent of an injunction for protection in a domestic, repeat, dating or sexual violence case will make notification to their immediate supervisor immediately upon returning to work of such action and provide a copy of the injunction to the supervisor.  The supervisor will confer with their chain-of-command and evaluate the likelihood of violence towards the employee or others while the employee is at work to determine if any action is needed to include, but not limited to:  (See LCSO Directive 148 – Workplace Violence)

      i. Notification to the Command Staff;

      ii. Notification to co-workers;

      iii. Agency-wide e-mail notifying all employees of the potential threat;

      iv. Posting photograph(s) of the respondent at entry points of the LCSO facilities and ensuring that the photographs are not visible to the public.

# LEVY COUNTY SHERIFF'S OFFICE

## *643 – Domestic, Repeat, Dating & Sexual Violence Investigations*

b.   The petitioner/employee may be asked to provide a photograph of the respondent.

c.   If the respondent has violated the injunction by entering or remaining upon LCSO property which is identified as a protected area in the injunction, notification will be made immediately to law enforcement.

2.   Employees who have been served a Temporary Injunction for Protection as the Respondent shall promptly, and before the employee's next tour of duty, notify the Sheriff and the Professional Standards Division through the employee's chain-of-command in writing via an IOC.

   a.   In those cases where the Temporary Injunction DOES NOT require the respondent employee to surrender firearms, it will be decided on a case-by-case basis by the employee's chain-of-command and Professional Standards whether or not to initiate any administrative action against the employee.

   b.   In those cases where the Temporary Injunction DOES require the respondent employee to surrender firearms, the following administrative actions will be taken:

      i.   Law enforcement deputies will be immediately and temporarily placed into a non-sworn status by their Division Commander.

         •   The deputy will turn their agency issued weapons over to their immediate supervisor, who will provide the deputy with a signed receipt for the property.  The supervisor will turn the items into the Property Officer.

         •   The deputy will securely park their issued vehicle in the Fleet parking lot and turn their vehicle keys over to their immediate supervisor.  The supervisor will check the keys into Fleet.

      ii.   Correctional Division Officers/Deputies will immediately and temporarily only be assigned to "unarmed" duty posts and assignments.

         •   Any firearms permanently issued to the employee will be immediately turned into the employee's immediate supervisor, who will provide the employee with a signed receipt for the items.  The supervisor will turn the items into the Property Officer.

         •   The employee's supervisors will ensure that no temporary use firearms are issued to the employee while the injunction is in effect.



# LEVY COUNTY SHERIFF'S OFFICE

## *643 – Domestic, Repeat, Dating & Sexual Violence Investigations*

    c.     The employee's Division Commander will:

        i.     Be responsible for assigning the employee temporary restricted duties of an unarmed nature.

        ii.    Document actions taken and forward such documentation to the Sheriff via the chain-of-command, with a copy forwarded to Human Resources and Professional Standards.

    d.     Further administrative actions involving the employee's work status with the LCSO will be dependent on the outcome of the court case.

3.     Employees who have been served a Final Injunction for Protection as the Respondent shall promptly, and before the employee's next tour of duty, notify the Sheriff and the Professional Standards Division through their chain-of-command in writing.

    a.     Law enforcement deputies:  If not already done as a result of a temporary injunction, the deputy will be immediately and temporarily placed into a non-sworn status following the procedures set forth above.  The Sheriff will determine on a <u>case-by-case</u> basis whether to:

        i.     Offer the deputy a non-sworn position in the agency, with adjustments in salary and benefits accordingly; or to

        ii.    Allow the deputy to retain his or her deputy position and to make arrangements for the deputy to have a vehicle and weapons issued in and out each work day; or to

        iii.   Terminate the employee.

    b.     Correctional Division Officers/Deputies:  In cases where the Injunction impacts the duties of the employee's job assignment, the Sheriff will determine at that time on a case-by-case basis whether to:

        i.     Reassign the employee to a job that does not include the carrying of a firearm on duty; or

        ii.    Allow the employee to retain his or her detention deputy or officer position and to make arrangements for the employee to have a vehicle and/or weapons issued in and out each work day; or

        iii.   Terminate the employee.



# LEVY COUNTY SHERIFF'S OFFICE

## *643 – Domestic, Repeat, Dating & Sexual Violence Investigations*

    c.    Fitness for Duty Evaluation:  On a case-by-case basis, as part of the process of deciding what administrative action the LCSO will take, the employee may be sent for a psychological evaluation by an LCSO provider to determine the employee's fitness for duty and/or be referred to a batterer's intervention program.

**N.**    **For Information on Obtaining, Service or Enforcement of Injunctions for Protection Against Domestic Violence:**  See LCSO Directive 843 – Issuance & Service of Injunctions for Protection.

**O.**    **Address Confidentiality Program:**

    1.    Address Documentation - Individuals who have been accepted into this program will be issued a card by the Attorney General indicating their participation.

    2.    If a program participant wishes to use the address designated by the Attorney General as their address rather than their actual address, the responding Deputy will photocopy the card if possible, and use the address listed on the card as the individual's address for purposes of the person's section of the report.

    3.    If photocopying is not possible, the Deputy will note the authorization number listed on the card.

    4.    The Deputy will record the incident location which will be included on the face page of the report; however, if the incident location is the person's actual address, the Deputy will provide a notation in the comments field that the person's actual address is exempt from the Public Records law, per s. 741.465, F.S.

# LEVY COUNTY SHERIFF'S OFFICE

## *801 – Constitutional Issues Involving Arrests, Searches & Seizures*

**I.**    **Effective Date:**  March 1, 2011
           **Rescinds:**  General Order 28 of April 1, 1995

**II.**   **Scope and Purpose:**  This directive applies to all Levy County Sheriff's Office (LCSO) personnel and sets policy and procedures for dealing with issues relating to probable cause and other constitutional requirements involving arrests and searches/seizures.

**III.**  **Policy:**  The LCSO shall execute arrests, searches and seizures based on probable cause.

**IV.**   **Procedures:**

    **A.**    **Probable Cause:**

        1.    Probable cause is the Fourth Amendment standard by which all arrests and most searches are judged. Simply stated, probable cause for an arrest is a reasonable belief grounded on facts and circumstances within the deputy's knowledge that a crime has been or is being committed and that the defendant was or is the perpetrator. In judging whether a reasonable belief exists, the test is whether such a belief would be developed by a prudent person with the deputy's training and experience. Courts have considered the standard as non-technical and to be judged in the light of everyday experiences and not as an abstract legal formulation.

        2.    The standard deals with probability not certainty, thus, probable cause does not require the same degree of proof as that required to establish guilt at trial.

        3.    The concept of probable cause depends on the facts and circumstances of each particular case and any relevant, legally obtained evidence which may be considered even though the evidence might not be competent proof at trial. For example, hearsay or a suspect's prior criminal record can be considered, although probable cause cannot be based totally on hearsay.

    **B.**    **Arrest Powers:**

        1.    All deputies are authorized to make arrests with warrants issued by judicial authority, and to make arrests without a warrant for any offense committed in their presence, or for any felony if they have probable cause to believe the person to be arrested has committed or is committing such an offense.

        2.    All deputies are also authorized to make an arrest without a warrant for the following crimes not committed in their presence, provided there is probable cause:

            a.    Carrying concealed weapons - FS 790.01, 790.02.

**Page 1 of 9**

# LEVY COUNTY SHERIFF'S OFFICE

## *801 – Constitutional Issues Involving Arrests, Searches & Seizures*

b.    Loitering or prowling - When delay in procuring a warrant would allow the suspected loiterer or prowler to escape, FS 856.031

c.    Possession of marijuana under 20 grams - FS 893.13(3).

d.    Retail or farm theft - FS 812.015.

e.    Offense connected with traffic accident after investigation at scene - consistent with FS 318.14 - 316.645.

f.    Domestic violence, as defined in FS 741.28, or child abuse, as defined in FS 827.04(2) and (3), has been committed.

g.    Domestic violence committed in violation of a domestic violence injunction obtained pursuant to FS 741.30.

h.    Repeat violence committed in violation of a repeat violence injunction obtained pursuant to FS 784.046.

i.    Trespass upon grounds or facilities of a school - FS 810.097.

j.    Disorderly conduct on the premises of a public lodging establishment - FS 509.143.

k.    Stalking - FS 784.048.

l.    Violation of pre-trial release - FS 741.29(b).

m.    Battery - FS 784.03

n.    Criminal mischief or graffiti related offense - FS 806.13.

o.    Trespass into secure area of an airport - FS 901.15(14)

p.    Assault upon a law enforcement officer, firefighter, emergency medical care provider, public transit employee or agent, or other agents specified in s. 784.07, or has committed assault or battery upon any employee of a receiving facility (defined in s.394.455) who is engaged in the lawful performance of his or her duties.

q.    A violation of a safety zone, security zone, regulated navigation area, or naval vessel protection zone as described in FS 327.461.

# LEVY COUNTY SHERIFF'S OFFICE

## *801 – Constitutional Issues Involving Arrests, Searches & Seizures*

C.      **Legal Requirements:**

1.      <u>First Appearance</u> - Florida Criminal Rules of Procedure require that a non-adversarial probable cause determination must be made within 72 hours from the time of the defendant's arrest, which will be done at the first appearance hearing.

2.      <u>Miranda Warning</u> - A Miranda Warning card is issued to every deputy to be read to an arrestee or a subject under certain conditions so that this person can be informed of his/her rights. There is also a Waiver of Rights form, which may be utilized to advise an arrestee or subject of his/her rights and to record a willingness to talk to the deputy.

3.      <u>Search Incident to Arrest</u> - Few rules are as formally embedded in search and seizure laws as that which permits a search incident to arrest with or without an arrest warrant. The authority to search following an arrest is an exception to the search warrant requirement and allows a full and complete search for weapons or implements of escape, and the evidence of criminal activity or contraband. The purpose of the search is to protect the deputy(s), prevent escape, and preserve any evidence in possession of the arrestee. The right to search flows from the arrest and the nature of the crime, felony or misdemeanor.  See number 8 below for the scope of a vehicle search incident to arrest.

The search may be as thorough as necessary to protect the arresting deputy(s) and the arrestee or others at the scene, as well as to prevent escape and preserve any evidence. Resistance by the arrestee does not defeat the right to search; hence, a deputy may use a reasonable degree of force to affect the search. The area of immediate control is any place from which the arrested person may seize a weapon or destroy evidence, and can be viewed generally as the space within arrestee's reach and slightly beyond.

The search may include any portable personal property in his/her actual possession, such as clothing, purses, briefcases, grocery bags, etc. Items of personal property which fall within the area of immediate control and are accessible to the arrestee, such as an open desk drawer or an unlocked suitcase, may be searched.

If the arrest is made without probable cause and is an invalid arrest, the search incident to the arrest will also be invalid. The best assurance that the arrest and incidental search will survive attack by the defense is to obtain an arrest warrant before imposing custody.

4.      <u>Protective Sweep</u> - At the time of a lawful arrest made within premises, deputies may properly conduct a protective sweep. In addition, a protective sweep in other areas of the premises may be conducted if the deputy(s) possess a reasonable suspicion based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene. Reasonable suspicion must be based on facts known to the deputy(s), such as noises in an attic or the at-large status of a dangerous confederate. A protective sweep must be limited to a brief inspection of only places

within premises, which could conceal a person capable of interfering with the arrest. If a deputy(s), while conducting a protective sweep, observes evidence or contraband in plain view, it may be seized under that doctrine.

5.    <u>Search by Consent</u> - A search made with the voluntary consent of one authorized to give it is lawful as an exception to the search warrant requirement. A deputy requesting permission to search without a warrant must obtain consent from a person authorized to give consent. Only a person with lawful authority over the specific area(s) to be searched may give consent.  However, in cases where there are two persons authorized to give consent, both individuals are present, and one gives consent while the other does not, any search will not be valid against the person who did not give consent.

The critical issue in any consent search is voluntariness; that is, whether it is the result of a free and unconstrained choice. Ultimately, it is the deputy's burden to prove under the totality of the circumstances the consent was not coerced. Criteria utilized in determining voluntary consent includes such things as the number of deputies present, time of consent and search, manner of request, display of weapons, as well as the physical and mental condition of the person giving consent.

Another issue is the scope and/or duration of the consent. The person authorizing consent may place limitations on the scope or duration of a search; or the search may be limited by the situation itself. For example, a deputy who requests and receives consent to come into a house and search for a person, can only search in those places where a person could hide.

In order to assist in establishing the voluntary basis of a consent search, deputies should utilize the Voluntary Consent to Search form. However, remember that consent can be withdrawn at any time.

6.    <u>Search at Scene of Crime</u> - Although the United States Supreme Court has stated there is no such thing as a crime scene exception to the Fourth Amendment, deputies do have a responsibility to respond to emergency situations. The "exigent circumstances" exception to the Fourth Amendment allows warrantless entry when deputies reasonably believe that either a person within is in immediate need of assistance or to see if a suspect is still on the premises. They may then seize only evidence that is in plain view during the course of their legitimate emergency activities. A request by, or the consent of, a person with authority and control over the premises, will also resolve Fourth Amendment issues if a defendant has standing to raise them. If the premises being searched belongs to the suspect and consent to search is not given or is refused, a search warrant must be obtained to continue the search initiated by the investigative entry.

A deputy has the authority, in instances where a suspect who has "standing" refuses to give consent; to secure the premises (crime scene) to prevent the destruction or removal


# LEVY COUNTY SHERIFF'S OFFICE

## *801 – Constitutional Issues Involving Arrests, Searches & Seizures*

of evidence while a search warrant is being obtained. Efforts to obtain the search warrant must begin promptly. Standing is the legal term used to refer to an individual's interest in the issue at hand. For example, a passenger does not have standing to object to the search of a vehicle when the owner has consented to it. In a residential setting, in most cases, a mother or father has standing to grant consent to search the entire house, including children's rooms. However, if an area has been utilized exclusively by one person, that person manifests an intent to keep an area private, and this restriction has been recognized by other members of the house, then only that person will have standing to grant consent for a search.

7.  <u>Exigent Circumstances Searches</u>  - The delay necessary to obtain a search warrant may sometimes endanger public safety (placing safety of people in jeopardy) or defeat the end result of the search warrant by permitting disposal of evidence. The law therefore recognizes certain emergency circumstances under which the search warrant requirement is waived. In these recognized exceptions, a deputy may properly make a warrantless entry and search of a place normally prohibited by the Fourth Amendment.

    The exceptions are to (1) protect life or safety, (2) to seek out a fugitive while in hot pursuit, and (3) to preserve evidence which is in the process of destruction or removal. Searches of this nature must be made only under extraordinary circumstances and deputies must be prepared to justify their actions by articulable facts supporting a reasonable belief that an emergency existed which the deputy did not create.

8.  <u>Search of Motor Vehicles</u> - Constitutional prohibitions on unreasonable searches also apply to motor vehicles. Consequently, motor vehicles may be searched with a search warrant, by consent of a party having lawful possession.  Vehicles may also be searched pursuant to the arrest of the driver or other occupant, but only if the arrestee is unsecured and is within reaching distance of the passenger compartment at the time of the search. Vehicles may also be searched incident to arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.  As a general rule, the search incident to arrest may extend only to those areas within the immediate control of the arrestee at the time of the arrest (the Belton Rule). Areas construed to be within the immediate control of the arrestee are the entire passenger compartment, including any container located therein such as closed or open glove box, consoles, luggage, boxes, bags of clothing, etc., which could conceal a weapon. Note that the trunk of a vehicle is excluded under this principle.

    Motor vehicles may also be searched without a warrant under circumstances which would not permit the same action against other property due to their mobility, and the diminished expectation of privacy generally associated with motor vehicles. Under the Carroll Doctrine (named for a 1925 decision by the U.S. Supreme Court) if probable cause exists to believe that a vehicle contains evidence or contraband, it may be searched without a warrant. The search of a vehicle undertaken pursuant to probable cause is limited to the scope of the item which may be concealed. For example, if a deputy

# LEVY COUNTY SHERIFF'S OFFICE

## 801 – Constitutional Issues Involving Arrests, Searches & Seizures

believes a vehicle contains drugs, the search based on probable cause may extend to any portion of the vehicle, including closed containers. But, if the vehicle is believed to be concealing an illegal alien, the glove box or other small, closed containers could not be searched.

A vehicle may also be searched without a warrant when it is taken into custody by law enforcement for safekeeping. The inventory search, permissible under Colorado v. Bertine and Florida v. Wells, is conducted under several scenarios. For example, a vehicle which must be towed because it was left abandoned on an open road or other public place may be searched and its contents inventoried, as long as the agency has a policy and procedures authorizing and regulating these searches. Containers may be opened, as long as the policy specifically allows it.

9.     <u>Stop and Frisk FS 901.151</u> - A person legally detained on a reasonable suspicion that he/she has committed, is committing, or is about to commit a crime, or persons in a vehicle which has been lawfully stopped, may be subject to a limited search for weapons if a deputy has an articulable reason to believe or fear the suspect is armed with a dangerous weapon. Be aware that the stop and frisk rule does not permit frisks for routine "officer safety" purposes.  The deputy may conduct a "pat down" of the suspect's outer clothing for weapons only. A "frisk" implies a cursory, or brief, search of a person for weapons large enough to be detected through clothing. If, during the course of a frisk, the deputy feels what is, in his or her training or experience, a controlled substance, the deputy may remove it.

Some factors to be utilized in making a stop frisk are:

    a.     The type of suspected crime involved.

    b.     Reputation and criminal record of person detained.

    c.     Time and place of stop.

    d.     Sudden, abrupt or furtive movements by the subject.

    e.     Bulge in suspect's pocket or clothing.

10.     <u>Abandoned Property</u> - Abandonment of property, both real and personal, deprives the former possessor of the right to make an assertion that his/her Fourth Amendment protection was violated by an entry, search, or seizure. He/she has no standing to object, therefore, deputies may enter, search, or seize abandoned property without first obtaining a search warrant, as long as the abandonment has not been caused by a prior illegality, such as an unlawful arrest. Abandonment in the constitutional sense means the intentional and voluntary relinquishment of the reasonable expectation of privacy. Mere absence or involuntary absence due to arrest or incarceration is not abandonment.

# LEVY COUNTY SHERIFF'S OFFICE

## *801 – Constitutional Issues Involving Arrests, Searches & Seizures*

11.  Plain View Doctrine - Where deputies are lawfully present on the premises, such as during the execution of a search warrant, and they observe evidence in plain view, such evidence may be seized even though it is not described in the warrant and not relevant to the offense under investigation. In order to validate the seizure, a deputy must have probable cause to believe what he/she observes in plain sight is evidentiary and the discovery must be inadvertent or unanticipated.

12.  Third Party Premises - In the absence of consent or exigent circumstances, even though probable cause exists for an arrest, a search warrant shall be obtained before entry into a third party premises for the purpose of arrest. For example, an arrest warrant for John Doe will not permit entry into the residence of John Doe's cousin to effect the arrest; a search warrant for the cousin's residence must be obtained upon a showing that there is probable cause to believe John Doe is in the residence.

**D.  Interview and Interrogation:**

1.  Any suspect or detainee in a criminal investigation, or a person who has been arrested for a crime, who is secured in a room, space or area of the agency for questioning, testing or processing, shall be maintained under continuous supervision.

2.  The most important limitation on the admissibility of an accused's incriminating statements is the requirement that they be strictly voluntary and be obtained without violating the person's right to remain silent and right to an attorney. These rights are widely known as Miranda Rights. Some factors considered by the courts regarding voluntariness are:

    a.  Notification of charge;

    b.  Age, intelligence, experience of accused;

    c.  Physical condition of accused;

    d.  Overt force, physical abuse, use of weapons, number of deputies present;

    e.  Threats and psychological pressure;

    f.  Privations: food, sleep, medication;

    g.  Isolation, incommunicado interrogation;

    h.  Duration of questioning;

    i.  Trickery, ruse, deception;

**Page 7 of 9**

# LEVY COUNTY SHERIFF'S OFFICE

## *801 – Constitutional Issues Involving Arrests, Searches & Seizures*

j.      Advice of rights;

k.      Promises of leniency or other inducements.

**E.**    **Miranda Warnings:**  Miranda warnings must be given to a subject prior to questioning under the following circumstances:

1.      The person has been arrested and is in custody;

2.      The person is not under arrest but an arrest is clearly intended either during or upon conclusion of the interview;

3.      The person is significantly restricted in his/her freedom of action.

**F.**    **Request for Attorney:**  If the person wishes to speak with an attorney, either of his/her own choosing, or the Public Defender, if indigent, access to a telephone will be provided, and all questioning must cease.  Courts have ruled that a request for an attorney must be unequivocal; and law enforcement is not obligated to clarify an ambiguous request.  Confessions given after vague or ambiguous statements such as "maybe I need an attorney" have been deemed admissible.

**G.**    **Inventory Searches of Seized Vehicles or Other Property:**  Vehicle inventories are not designed or intended to be used as a search. However, if during a vehicle's inventory, items of contraband are discovered inadvertently, they will be seized and submitted into evidence pending the filing of appropriate criminal charge(s).

For the protection of the LCSO and safekeeping of an individual's property, the inventory shall include all areas of the vehicle including, but not limited to:

1.      Inside compartments such as the glove box, under the seats, ashtray, and all containers therein;

2.      The trunk area and containers therein;

3.      All exterior containers (boxes, truck beds, etc.); and,

4.      The engine compartment.

If possible, the inventory will be conducted in the presence of the operator or owner. If money, jewelry or other precious items are being inventoried, they should be inventoried in the presence of the suspect, if possible. The presence of another deputy should be requested to either assist or witness the inventory, when feasible.

# LEVY COUNTY SHERIFF'S OFFICE

## *801 – Constitutional Issues Involving Arrests, Searches & Seizures*

Any compartments or containers within the vehicle, locked or unlocked, will be opened and inventoried.

**H.**     **Arrest With or Without Warrant:**  The deputy should:

1.      Verbally tell the suspect that he/she is under arrest;

2.      Advise him/her of the charges;

3.      Properly handcuff and/or restrain the arrestee;

4.      Place him/her in the back of the LCSO vehicle;

5.      Advise him/her of the Miranda Warning before any interviewing takes place;

6.      If the arrestee is going to be interviewed or questioned at length, he/she may be taken to the Criminal Investigation Division;

7.      Transport to the appropriate detention facility.

# LEVY COUNTY SHERIFF'S OFFICE

## *806 – Arrest Warrants*

**I.**  **Effective Date:**  December 1, 2010
  **Rescinds:**  General Order 28 (Section VIII) of April 1, 1995

**II.**  **Scope and Purpose**:  This directive applies to all Levy County Sheriff's Office (LCSO) personnel who perform administrative, computer related, or actual arrest warrant functions and explains and outlines general and administrative arrest warrant functions and duties that they may be called upon to know and perform.

**III.**  **Policy:**  The service of arrest warrants within Levy County is a priority of the LCSO and must be in accordance with state law and LCSO guidelines and procedures.  Serving arrest warrants is a critical function in the criminal justice process and when performed properly, avoids serious legal consequences for the arresting deputy and the LCSO.

**IV.**  **Procedures:**

    **A.**  **Definitions:**

        1.  Arrest Warrant Execution - *The physical arrest and booking of a person based on an arrest warrant and the completion of an arrest mittimus.*

        2.  Booking - *Act of officially delivering, receiving and processing a prisoner into the Department of the Jail. To include, but not limited to, fingerprinting, photographing and entering charges against the prisoner into the Department of the Jail register, log, etc.*

        3.  Clerk of the Court - *An elected constitutional official who is the official custodian of court records.*

        4.  CourtView - *The local computer systems of the Clerk of the Levy County Courts. The system includes warrant and docket information.*

        5.  Confirmation - *Act of officially advising another agency or law enforcement officer that a local warrant is active, and may be executed.*

        6.  Criminal Summons - *A judicial command issued by a magistrate that orders a defendant to appear before the magistrate at a stated time and place.*

        7.  Florida Crime Information Center (FCIC) - *The "Florida Crime Information Center" is a computer system, housed and maintained by the Florida Department of Law Enforcement, designed to store and disseminate criminal history information, including warrant information entered by Florida jurisdictions.*

# LEVY COUNTY SHERIFF'S OFFICE

## *806 – Arrest Warrants*

8.  National Crime Information Center (NCIC) - *The "National Crime Information Center" is a computer system, designed to store and disseminate criminal history, including warrant information, entered by local, state and federal agencies across the nation.*

9.  "Off-Bond" Arrest - *An arrest made by a certified bondsman or his agent of a subject legally bonded by the bondsman, for the purpose of returning the subject to a confinement facility prior to breach of the bond. A bond is "breached" when the subject fails to appear before the court at a scheduled criminal preceding.*

10. Verification - *Act of <u>establishing from the originating agency</u> that a warrant is active and may be executed.*

11. Warrant - *An arrest, custody or commitment order originating from a court or other recognized authority. The term "warrant" must include any official arrest order to include: warrant, capias, arrest and commitment order, Governor's Warrant, juvenile pick-up order, custody endorsement, civil arrest order, and any and all other official documents mandating legal arrest and/or detention of an individual.*

**B.    Florida Law of Warrant Arrest:**

1.  Direction and Execution of Warrant - FS 901.04 states:  *"Warrants shall be directed to all sheriffs of the state. A warrant shall be executed only by the sheriff of the county in which the arrest is made unless the arrest is made in fresh pursuit, in which event it may be executed by any sheriff who is advised of the existence of the warrant. An arrest may be made on any day and at any time of the day or night."*

2.  Method of Arrest by Officer by a Warrant - FS 901.16 states: *"A peace officer making an arrest by a warrant shall inform the person to be arrested of the cause of arrest and that a warrant has been issued, except when the person flees or forcibly resists before the officer has an opportunity to inform the person, or when giving the information will imperil the arrest. The officer need not have the warrant in his or her possession at the time of arrest but on request of the person arrested shall show it to the person as soon as practicable."*

3.  Right of Officer to Break into Building - FS 901.19(1) states: *"If a peace officer fails to gain admittance after she or he has announced her or his authority and purpose in order to make an arrest either by a warrant or when authorized to make an arrest for a felony without a warrant, the officer may use all necessary and reasonable force to enter any building or property where the person to be arrested is or is reasonably believed to be."*

    a.  Case law has created specific procedural distinctions for the following types of residences:

# LEVY COUNTY SHERIFF'S OFFICE

## *806 – Arrest Warrants*

i.    First party residences:  In cases where the deputy has a reasonable belief, substantiated by observable facts that the person is presently located in the place where he/she currently resides (first party) then the authority granted by FS 901.19 is in effect. A search warrant is not required to search for the subject.

i.    Third party residences and private offices:

- If the defendant is believed to be presently located inside a building that is not where the defendant currently resides or is a private office (third party), and consent to search is not granted by some competent person having authority over the premises, then a search warrant naming the wanted person as the object of the search is required to conduct a forced entry and search the premises.

- A search warrant is obtained in a similar fashion as obtaining an arrest warrant.

b.    LCSO deputies may, without consent, forcibly enter residences to serve arrest warrants only in accordance with the following guidelines and will document the entire nonconsensual or forcible entry on an Incident Report.

i.    The warrant must either be for any felony, or a misdemeanor crime with violence.

ii.    The deputy must be able to clearly articulate why the subject is believed to be in the residence at the current time.

iii.    Absent exigent circumstances, the deputy must obtain prior permission from a supervisor to forcibly enter the residence or enter without the consent of an occupant at the residence.

- Examples of forcible entry are;

    - Breaking through a locked door
    - Breaking through a window
    - Picking a lock

- An example of a nonconsensual entry is, but not limited to, an

    - Entry which requires the Deputy to physically open a door or window without the assistance or actions of the occupant, and to enter said residence.

    - Nonconsensual entry does not include instances when occupant contact is made and the laws of search and seizure are explained.

# LEVY COUNTY SHERIFF'S OFFICE

## *806 – Arrest Warrants*

      iv.    The subject or occupants currently inside must be given an opportunity to cooperate by allowing consensual entry and search of the premises, providing that no exigent circumstances exist that would cause such advance warning to place the deputy or others in undue physical danger.

**C.**     **Obtaining an Arrest Warrant:**

1.     The deputy desiring to obtain an arrest warrant must first confer with their immediate supervisor or an on-duty supervisor to obtain permission to commence the process.

2.     The Deputy must complete a sworn complaint which clearly states facts and circumstances which form the probable cause for the belief that the named individual has committed the offense in question.

3.     An unsigned warrant draft must be printed out for the judge's signature.

      a.    Assistance in drafting and typing the warrant will be provided by the State Attorney's Office (SAO) or an Investigator will assist if requested.

      b.    Special units may receive previous approval by the SAO to write their own warrants.

4.     Florida Rules of Criminal Procedure 3.121 states:

      a.    "*An arrest warrant, when issued, shall:*

          i.    *be in writing and in the name of the State of Florida,*

          ii.    *set forth substantially the nature of the offense (i.e., describing the probable cause);*

          iii.    *command that the person against whom the complaint was made be arrested and brought before a judge;*

          iv.    *specify the name of the person to be arrested, or if the name is unknown to the judge, designate the person by any name or description by which the person can be identified with reasonable certainty;*

          v.    *state the date when issued and the county where issued;*

          vi.    *be signed by the judge with the title of the office; and*

          vii.    *in all offenses bailable as of right be endorsed with the amount of bail and the return date.*"

      b.    Subsection (b) states: "*No arrest warrant shall be dismissed nor shall any person in custody be discharged because of any defect as to form in the warrant, but the warrant may be amended by the judge to remedy such defect.*"

# LEVY COUNTY SHERIFF'S OFFICE

## *806 – Arrest Warrants*

5. Upon completion of the sworn complaint,

    a. Contact the SAO by phone to ascertain which Assistant State Attorney (ASA) is performing intake duties for the affected division.

    b. The SAO division assignments are currently determined by type of case, felony, misdemeanor, traffic, etc. and by the defendant's last name.

    c. Take the completed sworn complaint to the designated ASA for review.

6. The ASA may or may not accompany the affiant Deputy who completed the sworn complaint to the chambers of an available judge.

    a. The judge will review the sworn complaint and warrant draft for legal sufficiency.

    b. If satisfied, the judge will sign the arrest warrant and if applicable make a bail endorsement on the warrant.

7. Upon receiving the judges signature,

    a. Take the arrest warrant directly to the Clerk of the Court's Office so that it can be "clerked in", and properly recorded in their system.

    b. In the event the Clerk's Office closes before the signed warrant can be "clerked in", <u>the deputy is solely responsible</u> for delivering the originals to the LCSO Warrants Clerk as soon as possible.

    c. If the Warrants Clerk is unavailable, the warrant will be given to the on-duty Communications Center Shift Supervisor.

**D. FCIC/NCIC Entry of Arrest Warrants:**

1. All warrants will be entered by the LCSO Warrant Clerk during normal administrative hours.

2. If an arrest warrant is issued after hours, due to a serious felony case or special concern case, the warrant will be entered in FCIC/NCIC by the Communications Center.

**E. Warrant Verification Procedures:**

1. Deputies will only arrest a subject on an outstanding warrant after verifying the active status of the warrant through either:

    a. A Communications operator.

# LEVY COUNTY SHERIFF'S OFFICE

## *806 – Arrest Warrants*

      b.     The Warrants Clerk

      c.     Booking personnel.

2.     Circumstances of a particular incident may require that detention and handcuffing be made prior to actual verification of the warrant for officer safety purposes.

      a.     If a subject is detained in this manner and the warrant confirmation comes back negative, the subject should be immediately released, unless other criminal charges are going to be made against the subject.

      b.     The incident should be thoroughly documented in an Incident Report, describing why the Deputy believed it was necessary to take the subject into custody prior to a warrant confirmation.

3.     Positively establish that the person in question is the subject named in the warrant.

4.     An arrest shall be delayed if reasonable doubt exists as to the active status of a warrant or the identity of a subject.

      a.     With the approval of the deputy's supervisor, the Warrants Clerk, Communications, or the Criminal Investigations Division (CID) may be contacted by phone for immediate assistance.

      b.     The subject can be released after sufficient personal information has been obtained ensuring that the subject can be re-contacted.

      c.     Supervisor approval will be required prior to the release of a wanted subject.

5.     Out-of-county and out-of-state warrants will be verified in the same manner as a local warrant but with greater scrutiny as to the length of time since the confirmation is from outside our jurisdiction.

6.     A "positive" hit in the FCIC/NCIC system does not confirm that an active warrant exists.

      a.     Any existing out-of-county or out-of-state warrant confirmation that is over 24 hours old must be reconfirmed prior to executing the warrant.

      b.     Per FCIC rules, law enforcement agencies have ten (10) minutes to respond to warrant verification requests.

7.     The FCIC/NCIC operator is responsible for forwarding copies of the initial warrant hit, confirmations and related communications to the Jail.

# LEVY COUNTY SHERIFF'S OFFICE

## *806 – Arrest Warrants*

8.  The arresting Deputy is responsible for attaching copies of the initial warrant hit, confirmations and related communications to the Records Division along with other arrest related paperwork and Incident Reports.

**F.    Execution of Arrest Warrants (Adults):**

1.  Deputies will only serve arrest warrants after verifying the active status of each warrant.

2.  If a subject is arrested on probable cause and also has Levy County warrants, both charges may be listed on the same mittimus, with the same case number.

    a.  Warrant arrests should be listed on the mittimus as stated on the warrant.  Do not list as "warrant arrest."

3.  A wanted subject <u>will not</u> be booked on out-of-county charges until they have completed all Levy County charges.

    a.  A "Hold Sheet" will be completed and placed in the front of the inmates jail file and the hold will also be noted in Eagle.

4.  A wanted subject <u>will not</u> be booked on charges from multiple jurisdictions within the State of Florida at the same time.

    a.  Book the subject on the closest County's charge if of equal magnitude.

    b.  Book the subject for the county with the most serious charge if of different magnitudes.

    c.  Place a "Hold Sheet" in the front of the inmates jail file and note the holds in Eagle.

**G.    Federal Warrants:**

1.  Verifications must be obtained from the contact source indicated on the NCIC hit or from the U.S. Marshal's Office.

2.  Once verified, the subject should be physically arrested and transported to the Levy County Jail and a "Federal Hold" requested for the subject.

3.  A federal officer will perform the actual booking.

4.  Subjects being held on Federal warrants who are in transit or on loan should not be booked on any outstanding warrants or charges while they are held at Levy County Jail.

# LEVY COUNTY SHERIFF'S OFFICE

## *806 – Arrest Warrants*

**H.**   **Bondsmen and "Off-Bond" Cases:**

1.   When a judge has issued a bond revocation order which directs the Sheriff to re-arrest the subject currently out on bond and deliver him/her to the local jail, the LCSO will honor such arrest orders, providing they can be verified through normal channels.

2.   Per Florida Statute, Certified Bondsmen have the authority to perform an "off-bond" arrest by which they can take into custody, subjects who have been bonded by them and redeliver them to the original place of incarceration.

3.   LCSO deputies are <u>not</u> to become directly involved in the efforts of a Certified Bondsman to take into custody a subject out on bond.

**I.**   **Mittimus Distribution Procedures:**

1.   The original mittimus will be left with the jail booking officer.  The jail booking officer will place the original mittimus in the defendant's First Appearance folder to be filed with the Clerk of Court.  Additionally, the jail booking officer will make copies for the following:

   a.   Booking File

   b.   Classification File

   c.   Public Defender's Office

   d.   State Attorney's Office

2.   The arresting deputy will provide the Records Division with a copy of the arrest mittimus.

   a.   The Records Division will provide the Warrants Division with a copy of the mittimus.



# LEVY COUNTY SHERIFF'S OFFICE

**General Order 1300.0**
**Arrestee Handling Procedures**

| *EFFECTIVE:* | *REVISED or REVIEWED:* | *RESCINDS:* |
|---|---|---|
| 05/15/2017 | 01/29/2021 | 824 Arrestee handling procedures, Section G-T, January 20, 2011 |

## CONTENT

**A. Arrestee Rights:**
**B. Searching Arrestees**
**C. Proper Searches**
**D. Escape Prior to Transport**
**E. Transport Procedures of Arrestee**
**F. Transportation Procedures for Special Needs Arrestees**
**G. Notification of transport to Communication Division:**
**H**. **Incidents While Transporting:**
**I. Escapes During Transport:**
**J. Arrestees arriving at the Detention Bureau:**
**K. Property Not Receivable at the Detention Facility:**
**L. Transport Documentation:**
**M. Handling of Inmates for <u>Investigative</u> Purposes:**
**N. Discipline**

**PURPOSE:**
The purpose of this General Order is to establish a uniform policy, procedure and guidelines pertaining to the handling of arrestees during search and transport.

**POLICY:**
It is the policy of the Levy County Sheriff's Office to ensure the integrity of the Office by establishing procedures that will assure that all arrestees are searched and transported in the safest and most secure way possible.

**SCOPE:**
This General Order applies to all sworn/certified members of the Levy County Sheriff's Office.

**DISCUSSION:**
Proper conduct and technique when searching an arrestee and their transportation is essential for the safety of the deputy and subject.

**GLOSSARY:**
<u>Arrestee</u> - Persons taken into custody by deputies for violations of state statutes, local ordinances, or warrants or other court orders.

<u>Detainees</u> - Persons temporarily detained on reasonable suspicion grounds by deputies to conduct an investigative stop or contact.

Dukes, T. 001534

**Double Locking**-All LCSO approved handcuffs shall have two locking mechanisms. For security purposes, whenever hand restraints are applied both locking devices should be activated. Double locking is accomplished by inserting the tip of the handcuff key into the small hole on the side of the handcuff.

**Flexcuffs** - A wire reinforced, plastic band with a locking device that permits the strip to be formed into a loop and tightened over the wrists. Only commercially manufactured flexible handcuffs, specifically designed for this purpose shall be used. Pipe and wire straps are not authorized and shall not be used.

**Inmates** - Persons already in the custody of the Levy Count Detention Facility, Florida Department of Corrections, or other correctional facilities.

**Total Appendage Restraint Position** (TARP) - When the subject is handcuffed hobbled and seated in an upright position.

**Special Needs Handcuff Application** - Handcuffs are applied with the prisoner's hands in front of the body and palms facing outward.

**Waist Chain** - A restraining device that goes around the waist and is used to secure the inmate's hands to the side or back.

**PROCEDURE:**
**A. Arrestee Rights:**
1. **Miranda Warning** – In Miranda v. Arizona, the U.S. Supreme Court ruled that a suspect in custody must be advised of the Miranda Warning and a wavier obtained before any interrogation.
    a. Custody – The courts have held that custody begins when a person does not reasonably believe that he or she is free to leave or their freedom of movement has been curtailed by the words and/or actions of a law enforcement officer. It is the mindset of the person being questioned that shall determine a custodial interrogation, not the mindset of the law enforcement officer.
    b. Interrogation - Miranda Warning cards are provided to all sworn LCSO members. The Miranda Warning shall be read and a waiver of rights obtained for suspects who are questioned while in custody. A Miranda Warning is not required during investigations that include:
        i. Routine traffic stops
        ii. General interviews used in the fact finding area of an investigation. (Miranda Warning may be required if the fact finding phase becomes accusatory, restricting the freedom of movement of a suspect).
        iii. No questioning of a suspect is required.
        iv. A Stop and Frisk encounter shall require Miranda if a probable cause or warrant arrest is made and the questioning of a suspect continues.

**B. Searching Arrestees:**
1. Deputies and Detention Officers must **never** assume an arrestee has been adequately searched when accepting the arrestee from another law enforcement officer or facility.

2. Deputies and Detention officers are responsible for making sure that each arrestee or inmate has been thoroughly searched prior to transport. This includes subjects:
    a. arrested in the field,
    b. turned over by other LEO,
    c. transported from the detention facility to court and other destinations.
    d. transferred from one detention facility to another.

3. Arrestees shall be searched for the purpose of locating and seizing any contraband, weapons, articles that could be used as a weapon and any device or instrument for use in making, attempting or aiding in escape.

**C. Proper Searches:**

1. Deputies and Detention Officers shall wear protective gloves during all searches.

2. The arrestee/detainee should be asked if they have anything that could injure the deputy/detention officer

3. Deputies and Detention Officers shall perform a complete, systematic pat down of the arrestee/detainee for items concealed in and beneath clothing, including footwear, inside and out.

4. Caution should be used to avoid injuring oneself on sharp instruments concealed on the arrestee/detainee

5. All inmates shall be searched upon being checked out from a correctional or detention facility, and upon being checked into a facility.

6. Personal effects not considered evidence, contraband, weapons or potentially dangerous, may remain on the person at the discretion of the Deputy.

7. Deputies shall advise the booking personnel at the detention facility that the arrestee has personal effects on their person.

8. Searching persons of the opposite gender;
   a. whenever possible, a deputy or other law enforcement officer of the same gender as the arrestee should conduct the search.
   b. in certain high risk situations where safety or other practical considerations mandate, a deputy may be required to conduct the search of an arrestee of the opposite gender. These types of searches should be witnessed by another Deputy, Detention Officer, LEO or a third party witness if available and shall not compromise the arresting deputy's safety.

9. Under no circumstances shall arresting deputies conduct or authorize a "strip search" or body cavity search. If a deputy has reason to believe an arrestee needs to be "strip searched," the arrestee shall be transported to the Detention Facility. Procedures for strip searches and body cavity searches are covered in Detention Facility PGO 2201.1

**D. Escape Prior to Transport:**

1. The Deputy's primary responsibilities in the event of an escape is the apprehension of the escapee and safety of the general public.

2. The Deputy shall:
   a. Secure any remaining arrestees and remain with them until back-up arrives on the scene.
   b. If there are no remaining arrestees, make every reasonable effort to recapture the escapee(s); to include coordinating the efforts of other responding units.
      i. THIS EFFORT SHALL ONLY BE AFTER THE DEPUTY HAS ENSURED HIS/HER VEHICLE IS SECURE AND ANY EVIDENCE THAT HE/SHE MAY HAVE IN THEIR POSSESSION HAS BEEN SECURED.
   c. Notify the Communications Division of the escape or attempted escape providing all relevant information.

General Order 1300.0                                                    Page **3** of **7**
**Arrestee Handling Procedures**

Dukes, T. 001536

3. Communications shall notify on-duty patrol units and supervisors as well as other law enforcement agencies in the vicinity.

4. The involved Deputy shall thoroughly document the incident on the Incident Report. Any back-up deputies shall complete a supplement.

**E. Transport Procedures of Arrestee:**
1. A search shall be conducted on any transport vehicle, including the passenger compartment prior to and after transporting arrestees and inmates.

2. Whenever possible, for safety and security purposes the following shall be followed when transporting arrestees or inmates:
   a. The arrestee or inmate shall be transported in the rear of the vehicle with a security screen;
   b. Depending on the year, make and model of the Deputy's Agency issued vehicle
      i. the child safety locks feature shall be engaged to eliminate the ability of the arrestee to open the rear doors; or
      ii. in certain year/model vehicles, rear compartment door handles have been removed or otherwise rendered inoperative, rear
      iii. Compartment windows shall have been rendered inoperative, or the window locks feature shall be engaged on the deputy's driver's door at all times, rendering the windows inoperative from the rear of the vehicle.
      iv. Rear door locks can only be operated from the driver's area.

3. Ensure that **all** occupants use safety belts when the vehicle is in operation.

4. **Once an arrest is made, an arrestee shall not be out of eye sight of a deputy, even when placed in a law enforcement vehicle awaiting transport.**

5. The arrestee should not be allowed to communicate with anyone other than the transporting deputy or other LEO unless such communication is necessary to facilitate some aspect of an investigation.

6. Except in emergencies, adults and juveniles shall not be transported together unless they are arrested as participants of the same offense.

7. Male and female arrestee shall not be transported together unless;
   a. they have been arrested as participants of the same offense;
   b. they are married;
   c. they are blood relatives;
   d. there is no other acceptable means of transportation.

8. Violent or potentially violent arrestees shall not be transported with other arrestees.

**F. Transportation Procedures for Special Needs Arrestees:**
Unconscious, seriously ill or seriously injured persons shall not be admitted to the detention facility unless medically cleared.
1. Deputies shall use discretion in arresting persons who are seriously ill or who have a pre-existing serious injury; the deputy should:
   a. determine the nature of the special condition;
   b. decide if the need to arrest outweighs the costs and practicality associated with the transport and booking.

General Order 1300.0                                              Page **4** of **7**
**Arrestee Handling Procedures**

Dukes, T. 001537

c. determine if the person does or does not appear to be an immediate threat or danger to others. If an immediate arrest is not crucial or imperative, the Deputy may consider filing a sworn complaint or issuing a notice to appear for misdemeanor offenses.

d. notify a supervisor of the circumstances surrounding the decision to arrest or file a sworn complaint and/or notice to appear.

e. document thoroughly the incident obtaining sufficient information to relocate the person at a later time.

2. If the decision is to arrest, the Deputy shall:

a. determine the most appropriate transport method and destination;

b. make appropriate advance notifications to the receiving facility.

c. restrain all sick, injured and handicapped arrestees, who are conscious and considered dangerous, and a proper search of the person shall be completed. Restraints shall be applied to parts of the injured person's body not affected by the injury;

d. transport in same manner as other arrestees and inmates. Deputies are to use good judgment in applying this guideline.

e. remove arrestee from their wheelchair, if applicable, restrained, and properly secured in the vehicle. Both the arrestee and the chair shall be transported to the receiving facility.

f. document the incident in the LCSO Incident Report, including a description of all pre-existing conditions.

**G. Notification of transport to Communication Division:**

1. Before transporting an arrestee, the Deputy shall advise communications of the following information:

a. number of arrestees being transported;

b. the arrestee gender and whether the arrestee is an adult or juvenile;

c. beginning location and destination;

d. the odometer reading at beginning of transport and upon arrival at the destination.

**H. Incidents While Transporting:**

1. General principles of tort law impose a duty of care on the transporting Deputy to protect the arrestee from injury.

2. The primary duty of the transporting Deputy is the safe delivery of the arrestee. All arrestees and inmates shall be placed in a safety belt for transportation

3. A Deputy shall <u>not</u> engage in any vehicle pursuit, road block or other activity that would endanger the arrestee.

4. Deputies should only engage in secondary incidents such as rendering assistance or taking law enforcement action in cases that are:

a. Life threatening

b. The risk to third parties is clear and grave

c. The risk to the arrestee is minimal

5. Should a Deputy stop to provide assistance in an emergency situation, they shall first notify Communications of all pertinent information and request immediate response from other units.

6. The Deputy shall make every reasonable effort to maintain visual contact with, and be in proximity to, the transport vehicle and the arrestee while at the scene.

7. The Deputy shall clear from the scene as soon as relieved by competent authority and resume the transport function.

General Order 1300.0

**Arrestee Handling Procedures**

Dukes, T. 001538

**I. Escapes During Transport:**
1. The Deputy's primary responsibilities in the event of an escape are the apprehension of the escapee and the safety of the general public.

2. The Deputy shall:
   a. secure any remaining arrestees and remain with them until back-up arrives on the scene.
   b. notify Communications of the escape or attempted escape providing all relevant information.

3. Communications shall notify on-duty patrol units and supervisors as well as other law enforcement officers in the vicinity.

4. If there are no remaining arrestees, make every reasonable effort to recapture the escapee(s); to include coordinating the efforts of other responding units

5. If the escape occurs in another county or jurisdiction, the Deputies shall contact the agency with jurisdiction as soon as practical by the most appropriate means available.

6. The Deputy shall thoroughly document the incident on the Incident Report.

**J. Arrestees arriving at the Detention Bureau:**
1. All arrestees are to be delivered to the LCSO Detention Bureau via the prisoner entry sally port.

2. All firearms, ammunition and other weapons shall be locked in the officer's vehicle or placed in the gun lockers in the sally port prior to being permitted into the detention facility. If the officer has an arrestee; weapon(s) must be secured before any arrestee is allowed to exit the vehicle.

3. Detention personnel shall meet the arresting officer in the sally port and conduct a cursory pat search of the arrestee in custody. Detention personnel shall utilize the FDLE approved searching techniques as well as the hand held metal detector. When that search is conducted then the arrestee and officer shall be escorted into the facility.

4. The arresting or transporting deputy must maintain security of the arrestee until relieved by booking personnel.

**K. Property Not Receivable at the Detention Facility:**
1. The following hazardous property shall not be received with an arrestee at the Detention Bureau:
   a. A deadly weapon, dangerous instrument, or a knife (other than a common pocket knife).
   b. Any device or instrument for use in making, attempting or aiding an escape.
   c. Narcotics or intoxicating substances or paraphernalia to administer such substances.
   d. Flammable or caustic liquids.
   e. Tobacco products.

2. Any such items with or found on the arrestee shall be turned over to the arresting Deputy or Detention Officer at the time of booking.

3. Hazardous property shall either be placed in the LCSO evidence or disposed of appropriately by the arresting Deputy or Detention Officer.

Dukes, T. 001539

**L. Transport Documentation:**
    1. It is the responsibility of the arresting and/or Deputy and Detention Officer to:
       a. Insure that all necessary confinement paperwork is properly completed and exchanged
         with the receiving facility staff prior to departure from the facility.

**M. Handling of Inmates for <u>Investigative</u> Purposes:**
    1. Deputies or investigators shall review the criminal history and jail classification of the
      inmate prior to obtaining authorization from their immediate (or higher) supervisor
      concerning removing an inmate from the jail for investigative purposes. **Those inmates
      classified as "High Risk" shall not be removed from the jail facility without prior
      approval of the Command Staff.**
       a. The supervisor shall consider the circumstances; planned activities; risk; and potential
        benefit of removing the inmate from the detention facility.

    2. Inmates authorized for removal from the facility must remain under the direct supervision
      of a law enforcement officer at all times. When a "High Risk" inmate has been approved
      for removal from the facility, a second certified law enforcement officer must be present at
      all times.

    3. Restraints shall be used as previously outlined in this general order and general order
      1503. This may include the use of a device that attaches to the knee or leg and limits
      movement.

    4. If an inmate is away from the jail facility during normal meal times, the deputy or
      investigator that has custody of him/her at that time shall be responsible for arranging a
      meal for the inmate.

**N. Discipline**
    **1.** DISCIPLINARY ACTION SHALL BE TAKEN AGAINST ANY MEMBER WHO FAILS TO
    COMPLY WITH THE STANDARDS SET FORTH IN THIS GENERAL ORDER.
    The disciplinary action shall be based on the magnitude of the standard violated and
    shall follow the matrix found in General Order 1100 with final decision being at the
    discretion of the Sheriff.

Approved: _[signature]_
Sheriff Bobby McCallum

Dukes, T. 001540



# LEVY COUNTY SHERIFF'S OFFICE

### General Order 1100.1
### Misconduct Complaints

| EFFECTIVE: | REVISED: | RESCINDS: |
|---|---|---|
| August 18, 2016 | August 18, 2016; changes are underlined and italics. | General Order 1100-Misconduct Complaints; August 15, 2016; |

## CONTENT

A.   General Guidelines for Receiving Complaints against Members
B.   Complaints Handled by Division Commanders and Supervisors
C.   Complaints Handled by Professional Standards Division
D.   Professional Standards Division Guidelines and Procedures
E.   Rights of a Member While Under Investigation and During Interrogation
F.   Limitation Periods for Disciplinary Actions
G.   Criminal Complaints against LCSO Member
H.   Notification of Division Commander
I.   Notification of the Florida Department of Law Enforcement
J.   Internal Investigative Files
K.   Provisions for Releasing Information in Accordance with Florida Statute
L.   Purging of Professional Standards Division Files
M.   Reports

**PURPOSE:**

The purpose of this General Order is to establish a uniform procedure governing conduct for members of the Sheriff's Office and procedures for handling incidents of a member's misconduct by utilizing counseling sessions, oral reprimands, written reprimands, suspensions and termination.

**POLICY:**

It is the policy of the Levy County Sheriff's Office to ensure the integrity of the Agency by establishing procedures that shall assure prompt and thorough investigation of complaints and alleged or suspected misconduct by its members. It is important that members understand that misconduct allegations received by the Sheriff's Office shall be reviewed, documented and/or investigated. However, there is no presumption of wrongdoing, and the Sheriff's Office shall ensure the investigation is conducted in a consistent and professional manner.

**SCOPE:**

This General Order applies to all members of the Levy County Sheriff's Office.

**DISCUSSION:**

Proper conduct stimulates harmony and efficiency, facilitates coordination of effort, promotes high morale, and encourages public confidence. Misconduct must be met with fair, consistent, and progressive disciplinary action when a member's actions are inconsistent with the goals of the Sheriff.

Dukes 002951

*The Agency is aware that all current Directives do not have any assigned violation levels to misconduct complaints. The Sheriff or designee has the authority to evaluate and assign a violation level to future misconduct complaints until such time the Professional Standards Division has revised all General Orders this agency and its' members shall abide by.*

**GLOSSARY:**

This section of the General Order shall provide words found in or relating to a specific subject, with explanations; a brief dictionary:

**Member-** An individual who is assigned to any division or specialized unit within LCSO, both sworn and non-sworn.

**Allegation-** An accusatory statement offered with or without supporting evidence.

**Complaint of Misconduct-** Is any complaint or accusation against a member of the Sheriff's Office involving the possible violation of policy, procedure, rule, regulation or law. This does not include citizen complaints or grievances that result from a complainant's misunderstanding or disagreement with the application of law or Sheriff's Office policies or procedures.

**(CASOM) Complaint Against Sheriff's Office Member-** A written document/form used to report allegations of misconduct, violation of law, or of agency general orders by an agency member and the subsequent corrective or punitive actions as reported by other members or citizens. A CASOM may be filled out by the complainant or the *supervisor* receiving the complaint.

**Informal Disciplinary Action-** Is corrective in nature. Such measures include direct or on-the-spot verbal correction, admonition, or a corrective counseling session with a documented Letter of Counseling. These actions shall not be included in the member's permanent personnel or disciplinary file.

**Formal Disciplinary Action-** Includes training or remedial training, Letter of Reprimand, Disciplinary Probation, Suspension, Demotion or Dismissal.

**Administrative Review-** A Professional Standards investigation that reviews the facts and circumstances of an incident, complaint, or practice. The administrative review is primarily a management tool, not disciplinary and should determine whether policy, training, or equipment should be addressed or any other action taken.

**Division Investigation-** An informal, detailed investigation into an allegation of misconduct deemed a Level 1 through 3 violation that, if sustained, may result in verbal counseling, written letter of counseling or written reprimand.

**Professional Standards Investigation-** A formal, detailed investigation of alleged misconduct, a violation of law or agency directives or a moral character violation as defined by The Criminal Justice Standards and Training Commission. (CJSTC)

**Fast Track-** Admission of an alleged violation of a General Order made by an LCSO member upon notification of a formal Professional Standards investigation.

**Conclusions of Fact (Findings)-** Final determinations of facts arising out of a completed Professional Standards Division investigation.

**Exonerated-** An incident occurred but the subject member's actions were lawful and within policy.

**Policy Failure-** The policy or procedure does not properly address the allegation, or conflict in policy or procedure led to the alleged conduct.

**Sustained-** The allegation is supported by sufficient evidence.

**Unfounded-** The allegation was demonstrably false or there is no credible evidence to support the complaint.

**Unsubstantiated-** The investigation failed to disclose sufficient evidence to prove or disprove the allegation.

**Pre-Disciplinary Hearing-** Is a hearing with the Division Commander and/or Chief of Staff, in order to allow the member the opportunity to address the findings and proposed disciplinary action.

**Disciplinary Action-** Administrative action taken against a member for a violation of the Sheriff's Office General Orders and standard operating procedures affecting the terms or conditions of their employment, which are: suspension, demotion, salary reduction or dismissal.

**PROCEDURE:**
**A. General Guidelines for Receiving Complaints against Members:**
1. The Levy County Sheriff's Office shall investigate all complaints of misconduct by members. *All member complaints against a fellow member shall be forwarded on a completed CASOM through that member's Chain-of-Command.* It should be understood that citizen complaints are often the result of a misunderstanding of law or procedure of law. *Therefore, a supervisor/Division Commander shall respond to the complainant and try to rectify their complaint, if possible.* Every effort shall be made to understand the complainant's concern and provide information to clarify the complainant's understanding of the application of law or procedure in question. *If the supervisor is unable to resolve the complaint, the Supervisor/Division Commander can provide a copy of the CASOM or give instructions on how the complainant can locate this document from the Agency web site.* All Sheriff's Office members are responsible for courteously assisting any citizen making a complaint against any other Sheriff's Office member(s).

2. A CASOM (Complaint Against Sheriff's Office Member) shall be prepared and processed for all complaints of misconduct as defined in this General Order.

3. All members of the Levy County Sheriff's Office shall forward citizen complaints of misconduct to the appropriate Division Supervisor.

4. The supervisor in receipt of any CASOM shall be required to immediately contact the Professional Standards Division via agency email and request a tracking number.

5. Per a request from the Division Commander/Supervisor to the Professional Standards Division, all completed CASOMs shall be assigned a tracking number. After receiving tracking number, the Division Commander and/or Chief of Staff shall review the authenticity of the complaint. If the complaint is not considered credible, an investigation shall not be conducted; however, an explanation shall be documented by the Division Commander and/or Chief of Staff and approved. At the conclusion of the review or subsequent investigation, the CASOM in its' entirety shall be forwarded to Professional Standards Division to be retained for tracking purposes.

Dukes 002953

6. Complaints of misconduct initiated by members other than Sergeants and Lieutenants shall be documented on a CASOM and forwarded through the Chain-of-Command to the appropriate Supervisor or Division Commander.

7. Complaints received after normal business hours, shall be referred immediately to the Shift Supervisor, the complaint and the resolution shall be recorded on a CASOM. The Shift Supervisor, in his/her discretion shall determine if immediate action is needed to preserve the integrity of the Agency or the Sheriff. If no such action is required the CASOM shall be referred to the appropriate Division Commander at the start of the next work day, or sooner if required.

**B. Complaints Handled by Division Commanders and Supervisors**:

1. Complaints of misconduct that are minor violations are generally investigated at the division level. The Division Supervisor to which the accused member is assigned shall normally have the responsibility to investigate the alleged violations up to a Level 3. Supervisors have the discretionary authority and are encouraged to respond to a citizen misunderstanding or disagreement of a deputy's handling of law or policy.
   It is suggested that all members refer to General Order 1105, Conduct Standards and Violation Levels when trying to determine the level of his/her violation.
   The following alleged violations are a sample of the violations to be handled at the Supervisor level .

   a. Personal appearance – When acting as a representative of the LCSO in Court, In-Chamber, and Grand Jury, members are expected to wear the appropriate attire for their division:
      i. Class "A" Uniforms: Patrol, Community Relations Division, Detention Bureau members.
      ii. Business attire: Investigations, Drug Task Force, Victim's Advocate, Communication Division, Civil Division
      **When acting as a representative of the LCSO concerning testimony or deposition, members are expected to wear the appropriate attire for their division:**
      i. Uniform of the day: Patrol, Community Relations Division, and Detention Bureau
      ii. Business attire (collared LCSO shirts may be worn) shall be worn by: Investigations, Drug Task Force, Victim's Advocate, Communication/Dispatch, and Civil Division.
      All LCSO members shall be personally neat, clean and shall abide by the LCSO General Order on grooming and personal appearance.
      It is hereby further stated that any LCSO members appearing in court and in a non-work related court proceeding shall do so on their own time, and shall **not** be in uniform or wear any other attire or emblems that could inadvertently convey the message that they are in court as a representative of the LCSO.
   b. Any other lesser violation not requiring a formal investigation.

2. Supervisors shall forward all initial complaints on a CASOM, complete with a tracking number issued by the Professional Standards Division and any attachments that were obtained through their Chain-of-Command to the respective Division Commander and/or Chief of Staff.

3. Supervisors who receive complaints may speak to the involved member about the complaint and give the complainant's name and basis for complaint. If the complaint has been determined to be a Level 1 through 3 violation it shall be investigated by the Division Supervisor or Sergeant. Supervisors are reminded all sworn members are afforded their rights as described in Garrity. These warnings shall be read to the member prior to commencement of questioning.

Dukes 002954

Supervisors should not interview the member in detail if upon review of the complaint it is determined that the accusation could result in serious disciplinary action (i.e.: suspension without pay, demotion, or termination) the complaint must be investigated as is discussed in Administrative Review.

4. If the Supervisor determines that the allegation needs further investigation and may result in serious disciplinary action, the supervisor shall forward all documentation to the Division Commander and/or Chief of Staff for review. If the Division Commander and/or Chief of Staff determines that the allegation may result in informal discipline if sustained, the documentation shall be returned to the members' Supervisor for investigation. Upon the completion of the investigation the original CASOM shall be forwarded to the Professional Standards Division for review/tracking purposes. A copy shall be maintained by the Supervisor conducting investigation. The member may request a copy of the CASOM from the Professional Standards Division.

## C. Complaints Handled by Professional Standards:
Professional Standards Investigations are governed by Florida Statutes FS 112.532 through FS112.534 or commonly known as the "Law Enforcement and Correctional Officers' Bill of Rights". This statute governs all sworn members of the agency.
1. In compliance with this General Order, Professional Standards Division by virtue of the Sheriff or designee has the responsibility and authority to conduct investigations into the following allegations:
   a. Use of Deadly Force or Discharge of Firearm;
   b. Serious complaints alleging official corruption, bias-based profiling, criminal misconduct, breach of civil rights, misuse-excessive response to resistance;
   c. Any policy violation deemed a Level 4 or 5 which, if sustained, could result in a disciplinary action;
   d. Incidents requiring investigations that are extremely lengthy, time consuming, involving multiple units or divisions;
   e. Incidents involving escape or death of a person in custody;
   f. Agency vehicle crashes resulting in serious injury to the public or a member;
   g. Any investigation or administrative review assigned by the Sheriff or designee.

## D. Professional Standards Division Guidelines and Procedures
1. It is the duty of the Professional Standards Division to assign the complaint an internal control number. The Professional Standards Division shall be responsible for maintaining the Complaint Registration Log. The Complaint Registration Log shall contain the case number, member's name, complainant's name, nature of allegation, date complaint received, conclusion of fact and comments.
   a. **Formal Investigation Notification to Member:** Professional Standards shall, should no exigent circumstance prevent such, prior to commencement notify the member in writing of the investigation. The member shall be provided a copy of the order issued to conduct the investigation by the Sheriff or his designee to Professional Standards, a copy of the complaint form listing the General Order violation to be investigated, a copy of the General Order alleged to have been violated, and a copy of the member's Law Enforcement and Corrections Officer Bill of Rights.
   b. **Fast Track** – upon notification by Professional Standards of any formal investigation, the member can make a statement of admission to the alleged violation. Should such admission be made, no further investigative efforts shall be expended. The finding of SUSTAINED with a written report documenting the admission shall be forwarded to the Sheriff for disciplinary disposition.

2. The assigned investigator shall contact each complainant and advise them that the complaint has been received and is being investigated. At the conclusion of the investigation and when feasible, the complainant shall be notified of the Sheriff's findings of the complaint. When telephonic notification is provided, the date and time of such notification shall be included in the investigative file along with the name of the member making the notification.

3. The assigned investigator shall conduct a thorough investigation using all proper and legal investigative tools and procedures. All investigations shall be completed within 180 days from the date complaint is referred to the Professional Standards Division. All members shall cooperate with and assist Professional Standards Division, recognizing that all investigations as outlined in this General Order are conducted under the immediate authority of the Sheriff.

4. The member may be requested to submit to a Deception Detection Test, (i.e. Polygraph or other such instruments.) In addition, an employee may be subjected to mental, medical or laboratory examination to determine alcohol or drug usage or other related problems. The member may be required to be photographed to participate in a line-up and submit a financial disclosure statement when the actions are material to a particular internal investigation being conducted by the Professional Standards Division.

**E. Rights of a Member While Under Investigation and During Interrogation and in accordance with FL. Statute 112.531**

1. The member shall be notified in writing concerning the fact that they are the subject of an internal investigation and the allegation(s). The member shall be notified in writing of their rights and responsibilities relative to the investigation.

2. Members are required to answer all questions specifically directed and narrowly related to the performance of their duty and alleged misconduct as instructed during their Garrity notification. Members are protected under the Fifth Amendment against self-incrimination in criminal proceeding. However, failure to answer questions related to performance of duties may result in disciplinary action, including dismissal.

3. Members under formal interrogation shall be asked to secure all weapons including firearms, knives, OC spray, impact weapons, TAZER and all communication devices such as cellular telephones, recording devices and radios.

4. The interrogation of a member shall be conducted preferably during the member's general work schedule, unless the seriousness of the investigation warrants immediate action. The location of the interrogation shall be designated by the Professional Standards Division. Interrogating sessions shall be for reasonable periods and shall be timed to allow for such personal necessities and rest periods as are reasonably necessary.

   The interrogation shall be recorded in its entirety to include breaks, or otherwise preserved in such a manner as to allow a transcript to be prepared, and there shall be no unrecorded questions or statements. Upon the request of the interrogated member, a copy of any recording of the interrogation session must be made available to the interrogated member no later than 72 hours, excluding holidays and weekend, following said interrogation.

5. The member under investigation shall be informed of the rank, name and command of the officer in charge of the investigation, the interrogating officer, and all persons present during the interrogation. All questions directed to the member under interrogation shall be asked by or through one interrogator during any one investigative interrogation, unless specifically waived by the officer under investigation.

Dukes 002956

6. The complaint, witness statements, including all other member statements, and all other existing evidence, including, but not limited to, incident reports, GPS locator information, and audio or video recordings relating to the incident under investigation, must be provided to each member who is the subject of the complaint before the beginning of any investigative interview of that member. A member, after being informed of the right to review witness statements, may voluntarily waive the provisions of this paragraph and provide a voluntary statement at any time.

## F. Limitation Periods for Disciplinary Actions:

1. Except as provided in this subsection, disciplinary action, suspension, demotion, or dismissal may not be undertaken against a law enforcement officer or detention officer for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within 180 days after the date the agency receives notice of the allegation by a person authorized by the Agency to initiate an investigation of the misconduct. If the Agency determines that disciplinary action is appropriate, it shall complete its investigation and give notice in writing to the law enforcement officer or detention officer of its intent to proceed with disciplinary action, along with a proposal of the specific action sought, including length of suspension, if applicable. Notice to the officer must be provided within 180 days after the date the agency received notice of the alleged misconduct, except as follows:

   a. The running of the limitations period may be tolled for a period specified in a written waiver of the limitation by the law enforcement officer or detention officer.

   b. The running of the limitations period is tolled during the time that any criminal investigation or prosecution is pending in connection with the act, omission, or other allegation of misconduct.

   c. If the investigation involves an officer who is incapacitated or otherwise unavailable, the running of the limitations period is tolled during the period of incapacitation or unavailability.

   d. In a multijurisdictional investigation, the limitations period may be extended for a period of time reasonably necessary to facilitate the coordination of the agencies involved.

   e. The running of the limitations period may be tolled for emergencies or natural disasters during the time period wherein the Governor has declared a state of emergency within the jurisdictional boundaries of the concerned agency.

## G. Criminal Complaints against LCSO Member

All complaints which are criminal in nature upon verification through Administrative Review, shall be presented to FDLE for investigation and/or the Office of the State Attorney.

1. A parallel Professional Standards investigation shall be commenced and tolled until the conclusion of the criminal investigation and any prosecution.

2. Upon receipt of Criminal Prosecution Disposition, the Professional Standards investigation shall be completed and forwarded to CJSTC.

## H. Notification of Division Commander:

The Sheriff or designee shall provide the member and Division Commander with a written notice of the investigative findings.

## I. Notification of the Florida Department of Law Enforcement:

The Human Resource Director shall report any sustained allegation that is a violation of Florida Statute 943.13 (4) or (7) to the Florida Department of Law Enforcement, Division of Criminal Justice Standards and Training.

Dukes 002957

**J. Internal Investigative Files:**
1. All internal investigation files shall be maintained in a locked, secured area in the Professional Standards Division.

2. Only personnel authorized by the Sheriff shall have access to any internal investigation files.

**K. Provisions for Releasing Information in Accordance with Florida Statute 112.533:**
1. The Sheriff or designee, is not precluded by Florida Statute from acknowledging the existence of a complaint and the fact that an investigation is underway.

2. The investigation shall be confidential and exempt from the provisions of Florida Statute 119.07(1) until one of the following occurs:
   a. The investigation ceases to be active. An investigation shall be considered active as long as it is continuing with a reasonable, good faith anticipation that an administrative finding shall be made in the foreseeable future.; or
   b. The Sheriff or designee provides written notice to the employee that the investigation has concluded and the findings of the investigation.

3. The complaint and information shall be available to law enforcement agencies, correctional agencies, and state attorneys in the conduct of a lawful criminal investigation.

**L. Purging of Professional Standards Division Files:**
1. All Professional Standards Division files shall be reviewed, for purging, on a regular basis. In accordance with the State of Florida Public Records Retention Schedule and internal agency policy, records of internal investigation complaints must be retained as follows:
   a. Log/Record of complaints that are classified as unfounded or unsubstantiated must be retained for one (1) year;
   b. Records of complaints that are substantiated must be retained for five (5) years.

2. Files to be purged shall be sent to the Levy County Sheriff's Office Records Supervisor who shall dispose of the records in accordance with the procedures outlined by the Division of Archives (Ref. Sec. 119.041 Florida Statutes).

3. All cases in which litigation is known to be pending shall not be purged until final disposition.

**M. Reports:**
The Professional Standards Division shall compile statistical information based upon its reviews, to include:
1. The number of complaints received from citizens and the results of the investigation.

2. The number of complaints received from other sources and the results of the investigation.

3. The Professional Standards Division shall produce and submit to the Sheriff, an annual statistical report based upon records of Professional Standards investigations for the year.  This report shall be made available to members and the general public upon request after the Sheriff's review.

Approved: _Sheriff Bobby McCallum_
Sheriff Bobby McCallum

Dukes 002958



# LEVY COUNTY SHERIFF'S OFFICE

### General Order 1400.1
### Response to Resistance

| EFFECTIVE: | REVISED: | RESCINDS: |
|---|---|---|
| 04/18/2018 | 04/17/2018 | General Order 1400.0, Response to Resistance; 10/11/2016 |

## CONTENT

A.    Qualification and Training
B.    Authority
C.    Types of Force
D.    Response to Resistance perspectives
E.    Justification of Response to Resistance
F.    Legally, Tactically and Reasonable Responses to Resistance
G.    Matrix for Reporting Response to Resistance
H.    Use of Reasonable Force to make an arrest
I.    Force Guidelines Review
J.    Less-Lethal Force
L.    Three Criteria for making lethal force decisions
M     Restrictions on Lethal Force in a Response to Resistance
N.    Medical Aid after Response to Resistance Incident
O.    Reporting Response to Resistance Incidents
P.    Relief of Duty (non-disciplinary) Mandatory Psychological Support
Q.    In-Custody Deaths
R.    Analysis and Reporting
S.    Detention Bureau Specific
T.    Forms of Restraint for use within Detention Facility
U.    Principles Governing the Response to Resistance and Application of Restraints
V.    Restraint of Pregnant Inmates:
W.    Use of Less-Lethal Weapons
X.    Documentation for Response to Resistance within Detention Facility
Y.    Review Procedure of Response to Resistance Reports and Incident Reports

**PURPOSE**:
The purpose of this General Order is to establish a uniform policy, procedure and guidelines pertaining to the use of lethal and less-lethal force when responding to resistance as a sworn and/or certified member of the Levy County Sheriff's Office (LCSO).
**\*\*\*Legal Disclaimer: This general order is for agency use only and does not apply in any criminal or civil proceedings.  The Sheriff's Office policy should not be construed as a creation of higher legal standard of safety or care in an evidentiary sense with respect to third-party claims. Violations of this general order shall only form the basis of agency administrative sanctions. Violations of law shall form the basis for criminal and/or civil sanctions in a recognized judicial setting.**

**POLICY**:
It shall be the policy of Levy County Sheriff's Office that all sworn and/or certified members employ the minimum amount of control, that is reasonable and necessary to accomplish the lawful objectives and are expected to act within their official capacity. All members shall act in good faith

Dukes, T. 001607

when responding to resistance and shall conform to the provisions of Florida Statutes and agency written general orders. This applies to lethal and less-than lethal force.

**Every instance involving a response to resistance by LCSO members, as defined by this General Order, shall be reported to an on-duty supervisor as soon as practical and documented on a Response to Resistance Report and/or incident report. Reference Response to Resistance Reporting Requirements Matrix within this General Order for clarification on proper documentation.**

**SCOPE**:
This General Order applies to all sworn and/or certified members of the Levy County Sheriff's Office.

**DISCUSSION**:
All deputies/detention officers are taught that no response to resistance device or technique shall work 100% of the time. They must always have a backup plan. Deputies/detention officers are taught that with any response to resistance or technique utilized, there is a risk of death or serious bodily harm.

**GLOSSARY:**
**Response to Resistance-** (formally known as "**Use of Force**") the application of reasonable force to gain control of a subject who is resisting arrest or is non-compliant to verbal commands; and are necessary to accomplish a lawful duty to apprehend, restrain, or stop an attack. Any use of takedowns, pain compliance or other agency approved defensive tactics in order to gain compliance and make an arrest, including the pointing of any issued firearm at a civilian for any reason; shall be documented on the agency "Response to Resistance" form and attached to the offense incident report for supervisor approval. This does not involve the general application of wrist restraint devices applied to a compliant subject while affecting an arrest.

**Active Resistance-** a subject's use of physical evasive movements directed toward the member such as bracing, tensing, pushing, or pulling to prevent the member from establishing control over the subject.

**Aggressive Action-** is a physical assault and/or battery against a member that could lead to severe physical injury.

**Aggressive Resistance-** is a subject's attacking movements toward a member that may cause injury but are not likely to cause death or great bodily harm to the member or others.

**Aerosol Subject Restraint-** An aerosol device which propels a liquid chemical agent such as Oleoresin Capsicum (OC Spray)

**Appropriate Force-** is the amount of force reasonably necessary to gain compliance.

**Canine Apprehension-** Apprehension ascertained through the use of a working dog which has been procured and specially trained to execute a number of specific law enforcement and public service tasks which make use of the canine's speed, agility and sense of smell.

**Compliance-** The verbal and/or physical yielding to an officer's authority without apparent threat of resistance or violence.

**Control-** The method(s) a law enforcement officer/detention officer uses to neutralize the actions of a subject, or to protect the subject from injuring him/herself or others.

**Countermove-** Techniques that impede a subject's movement toward a deputy/detention officer or others such as, blocking, striking, distracting, kicking, parrying, dodging, weaving, redirecting or avoiding, followed by appropriate controlling techniques.

**De- Escalation-** Decreasing the response to resistance.

**Defensive Weapon-** Any readily available object or instrument used by a deputy or detention officer in a reasonable manner to defend against a violent attack in order to avoid being seriously injured or killed; and when other conventional weapons or response to resistance alternatives are not readily available under the exigent circumstances (Examples would be use of the issued flashlight, a stick or board as an impact weapon, use of a chair to keep someone at bay, etc.)

**Deployment-** The intentional discharge of an ECD/Taser at or towards a subject using either probes or drive/touch stun mode. "Deployment" does not include unintentional discharge, testing, training, and un-holstering or display of ECD/Taser without discharge.

**Disengagement-** Discontinuing a command or physical response to resistance.

**ECD (Electronic Control Device)-** An advanced conducted energy weapon which, through high voltage and low watts, is designed to disrupt a subject's or animal's central nervous system by deploying battery powered electrical energy sufficient enough to cause uncontrolled muscle contractions and override an individual's voluntary motor responses. ECD include hand held units (TASERS), electronic shields, and electronic security belts.

**Empty Hand Control Measures-** Physical control techniques and maneuvers that involve only the body of the deputy or detention officer, such as use of the hands, fists, elbows, knees, feet, etc., and do not involve the use of any weapons, devices, firearms, etc.

**Escalation-** Increasing the response to resistance or resistance.

**Excited Delirium-** is a state of extreme mental and physiological excitement characterized by the following physical signs: extreme agitation; unfounded fear and panic; shouting, nonsensical speech; bizarre behavior; hyperactivity and thrashing about; unexplained strength, endurance; shedding clothes/nudity; profuse diaphoresis (sweating).

**Exigent Circumstances-** Something arising suddenly out of the current events; any event or occasional combination of circumstances, calling for immediate action or remedy.

**Force-** The tactics and/or techniques utilized by a deputy/detention officer to control or regain control of a subject in self-defense, the defense of others, or to counter resistance by a subject. All force is a means of control however control can at times be achieved without the use of physical force.

**General Rule-** The concept that the stated procedure or prohibition in place is the normally expected policy to follow in a given situation. However members are authorized in limited, exigent circumstances to deviate from the stated procedure or prohibition if the member's actions can be reasonably defended.
**NOTE: The burden in such cases shall be on the deputy or detention officer to defend his or her actions which went against the "general rule."**
**Great Bodily/Physical Harm-** A bodily injury that creates a substantial risk of death, causes serious permanent disfigurement, or results in long-term loss or impairment of the functioning of any bodily member or organ.

Dukes, T. 001609

**Guidelines** – Identifying the parameters within which the person should operate.

**In-Custody Deaths-** A death or the on-set of physiological condition resulting in death that occurs while a subject is in law enforcement custody, or while an attempt is being made to take a subject into custody. The death may or may not involve the application of force. Deaths that occur as the result of vehicle crashes are not included.

**Imminent Danger**- Danger which is reasonably believed to be based on a present and impending threat to cause death or serious bodily/physical harm to a deputy, detention officer or other person which requires immediate action to avert or neutralize the threat.
**NOTE: A reasonable presumption can generally be made that an Imminent Danger exists when a subject: (1) is displaying a deadly force intent, OR is fleeing from a scene where he or she used or threatened to use deadly force, and (2) is reasonably believed by the deputy or detention officer to have a weapon or apparent capability to inflict death or great bodily/physical harm, and (3) has a realistic opportunity to carry out the deadly force intent. (FDLE Force Guidelines; 2008)**

**Impact Weapons-** Instruments or devices primarily designed for use by law enforcement to deliver less-lethal striking or leverage control techniques. (i.e. expandable and straight batons.)

**Impact Round-** These are less-lethal munitions that may be constructed of wood, foam or rubber and may or may not have a chemical component such as oleoresin capsicum powder in the tip of the projectile. (i.e. Powder Ball Projectile System/ Specialty Impact Munitions.)

**Inmate-** A subject who is in the custody of a state or local correctional system or facility.

**Intermediate Weapons-** Tools used when empty hand control is ineffective, but the subject's level of resistance does not merit lethal force.

**Interview Stance-**  A stance where the firearm or strong side leg is back; the non-firearm or support side leg is forward; the feet are about shoulder width apart; knees slightly bent, giving balance, control and a lower body center of gravity; equally distributed body weight; and the hands are up for guarding the upper body.

**Less- Lethal Munition-** Defined by F.S. 776.06(2) (a) to mean a projectile that is designed to stun, temporarily incapacitate, or cause temporary discomfort to a person without penetrating the person's body. These devices are not fundamentally designed to cause death or great bodily harm and therefore may fall under less-lethal force under the officer response options portion of this policy, depending on the intent and application by the member.

**Less-Lethal Force-** The defensive action that neither is likely nor intended to cause death or serious physical injury.

**Less- lethal Weapons- (F.S. 776.06 in part)** – Weapons designed for use by law enforcement and detention officers that are not fundamentally designed to cause death or great bodily harm, such as: Specialty impact munitions/projectiles used that are designed to stun, temporarily incapacitate, or cause temporary discomfort to a person without penetrating the person's body, expandable or straight batons, impact round launchers, chemical agent sprays.

**Lethal Force (LF) -** Force that is likely to cause death or great bodily harm. Lethal force must be used only as a last resort or in emergency situations where other means cannot be considered, consistent with Florida Statutes and Sheriff's Office General Orders.

Dukes, T. 001610

**Lethal Force Resistance**- A subject's hostile, attacking movements with or without a weapon that create a reasonable perception by the member that the subject intends to cause and has the capability of causing death or great bodily harm to the member or others.

**Non-Lethal Response to Resistance-** Force that is neither likely nor intended to cause death or great bodily harm. (i.e. - escort holds incapacitation and techniques).

**Pain Compliance**- The use of painful stimulus to control or direct a person or animal.  (i.e. bent wrist, finger lock, hammer lock, shoulder lock)

**Passive Resistance**- A subject's verbal and/or physical refusal to comply with a member's lawful direction causing the member to use physical techniques to establish control.

**Physical Contact**- To involve routine or procedural contact with a subject necessary to effectively accomplish a legitimate law enforcement objective. Examples include guiding a subject into a police vehicle, holding the subject's arm while transporting, handcuffing a subject who is complying and maneuvering or securing a subject for a frisk.

**Physical Control**- Achieving compliance or custody through the use of empty-hand or leverage-enhancing techniques, such as pain compliance, transporters, restraint devices, takedowns, and striking techniques.

**Physical Resistance** - A physical attempt to resist or elude control of a member.

**Preliminary Administrative Review-** A brief initial review conducted by the Sheriff or designee and/or Professional Standards Division, of facts surrounding an event involving the response to resistance by a member of the agency which results in death or serious bodily injury with appropriate contact to the FDLE.

**Pressure Points** – Techniques used to control resistant behavior by utilizing pain compliance by touching the location of a nerve or sensitive area and applying continual, uninterrupted pressure with the tip of the finger(s) or thumb until the subject complies. The following press point techniques may be used: Under the jaw, hollow behind the ear, hollow behind the collarbone, under the nose and hollow of the neck.

**Reasonable Belief-** A logical conclusion based on the apparent facts and circumstances of a situation which are known or perceived by the deputy or detention Officer at the time of the incident; combined with his or her own experience and /or training.

**Restraint Chair -** A special restraint device consisting of a specially designed chair mounted on a frame used to significantly restrict the movements of an inmate who is deemed to be a threat to themselves or others.
**NOTE**: A Response to Resistance Form *is required* to document the use of the Restraint Chair.

**Resistance-** The subject's attempt to evade a deputy's or detention officer's attempt(s) to establish control. The amount and type of resistance shall vary, based on a variety of factors.

**Reasonable Force -** The amount of force reasonably necessary to accomplish a lawful purpose. This is based on "objective reasonableness." The reasonableness of a particular response to resistance must be evaluated from the perspective of how a reasonable deputy or detention officer on the scene would respond, rather than from the 20/20 perspective of hindsight. To determine if a deputy's or detention officer's actions were objectively reasonable, the Courts and the Sheriff's Office shall evaluate the facts and circumstances the deputy/detention officer knew

when the incident occurred. The Courts and Sheriff's Office recognize that deputies and detention officers must make split-second judgments about the amount of force needed in a particular situation under circumstances that are tense, uncertain, and rapidly evolving.

**Show of Force**- The implied or threatened use of any agency issued equipment (i.e. pepper spray, TASER, fire arm) and includes, but not limited to verbal commands. Includes Agency issued fire arms except when the weapon is pointed at a civilian.

**Simple Escort** - When a directional command or touch may be utilized to direct or guide a subject who is verbally resistant, in a passive physical resistance mode, or simply in the need of protection.

**Take Down**- Techniques used to bring a resisting subject from a standing position to the ground making it easier to control him/her.

**Transporters**- Also known as an escort position- a technique used to move a subject from one point to another without using pain compliance.

**Unreasonable Force**- Is either punitive force, force that is used to punish rather than to achieve legitimate and proper results, force used when there is no legal authority to detain a subject or any force that is excessive under the totality of the circumstances.

**Verbal Resistance**- Is a refusal to comply with lawful orders or commands (i.e., verbal threats or assaults.)

**PROCEDURE:**
**A. Qualification and Training**
1. A deputy or detention officer shall not be allowed to make an arrest or carry a weapon or firearm on or off duty until he or she has:
   a. Demonstrated proficiency in its use, if applicable. Any deputy or detention officer, who fails to demonstrate proficiency with a particular weapon or firearm at time of issue, or during annual re-qualification, shall be required to complete remedial training with it prior to assuming or resuming official duties with said weapon or firearm. Refer to LCSO General Orders index under the category of "Equipment";
   b. During new-hire orientation, the member shall receive a copy of the Response to Resistance General Order and training of said general order.
   c. Deputies and detention officers shall also receive instruction on the Agency's "Response to Resistance" policy and guidelines annually during in-service training.

2. Only Agency approved weapons, ammunition and firearms are authorized for use both on and off duty. Members shall obtain written Command Staff approval for personally owned firearms to be carried on duty.

**B. Authority**:
Agency members derive their authority to use force, lethal and less lethal, in the lawful performance of their duties, from Florida Statutes (F.S. 776). Even though the Statute refers to "law enforcement" officers, the legal guidelines regarding response to resistance apply equally to Corrections and Law Enforcement. The Sheriff authorizes sworn and/or certified members to use the amount of force that is reasonable and necessary under the circumstances to protect themselves or others while performing their lawful duties. **Members who respond to resistance in any law enforcement action outside of Levy County are subject to the same Levy County Sheriff's Office General Orders as if the incident occurred in Levy County**

**C. Types of force**:

In a majority of cases, some level of physical force shall be necessary to affect an arrest or to protect others. The amount of physical force may be as low as placing a hand on a subject's shoulder or arm, and directing that subject to place his/her hand behind his/her back for handcuffing. Depending on the levels of resistance offered, the member may use techniques that may escalate to physically subduing the subject, to techniques that influence behavior by eliciting pain in order to apply handcuffs, using hand/leg strikes, impact weapons, electronic control devices, or even the use of a firearm, if the resistance offered is severe. In all cases, Florida Statutes indicate that members shall only use the force the member "reasonably" believes to be necessary. A deputy's reasons for using force must be consistent with Constitutional Law and Florida State Statutes. Additionally, a deputy's response to resistance must be consistent with agency policy and /or training. Response to resistance in the law enforcement environment is a seizure under the Fourth Amendment. Detention Officers must also consider that response to resistance may violate the Eighth Amendment's prohibition against cruel and unusual punishment.

1. Lethal-Force is <u>physical control</u> (see glossary) that is likely to cause death or great bodily harm

2. Less-lethal force is <u>physical control</u> (see glossary) that neither is likely nor intended to cause death or serious physical injury.

3. Show of Force is the <u>physical contact</u> (see glossary) that involves routine or procedural contact with a subject necessary to effectively accomplish legitimate law enforcement objective by the implied or threatened use of any agency issued equipment (i.e. pepper spray, TASER, fire arm) and includes, but not limited to verbal commands. Includes agency issued fire arms **except** when the weapon is pointed at a civilian.

**D. Response to Resistance perspectives**:

1. **<u>Resistance</u>**: The subject's attempt to evade a deputy's or detention officer's attempt(s) to establish control. The amount and type of resistance shall vary, based on a variety of factors.

2. **<u>Control</u>**: The method(s) a law enforcement officer uses to neutralize the actions of a subject, or to protect the subject from injuring himself/herself or others.
   a. To stop potentially dangerous and unlawful behavior;
   b. To protect the member or another from injury or death;
   c. To protect people from injuring themselves; and
   d. In the process of effecting lawful arrest when the subject offers resistance.

**E. Justification of response to resistance:**

1. Florida Statute 776 identifies two general areas in which a deputy's response to resistance is justified:
   a. To apprehend a subject and make an arrest; or
   b. to defend self or others.

2. Totality of circumstances is a term the court uses to refer to all the facts and circumstances known to the officer at the time or reasonably believed by the officer as the basis for a response to resistance decision.

**F. Concepts in making legally, tactically sound, and reasonable responses to resistance**

1. Escalation is increasing the type of force or resistance.

2. De-Escalation is decreasing the type of force or resistance.

3. Disengagement is discontinuing a command or physical use of force, for example, by breaking away from the subject.

4. Members are legally permitted to escalate their response to resistance as the subject escalates his or her level of resistance. The member's choices are determined by the subject's actions and the risk of physical harm posed to the member or others. Once the member achieves control or compliance, he or she must de-escalate the response to resistance.

5. Disengagement may be the best tactical option in some cases, such as when the member is waiting for backup, when the member is injured or outnumbered, or when the suspect has superior firepower.

**G. Resistance Matrix:**

**1. The Resistance Matrix** depicts the response to and levels of resistance approved and accepted by the Florida Department of Law Enforcement (FDLE) and State of Florida Criminal Justice Standards and Training Commission (CJSTC). All certified members shall be made aware of the contents and application of this matrix through new-hire training and in-service training sessions. The Resistance Matrix provides a framework to guide a deputy/detention officer to select effective, reasonable and legal force options in a verbal or physical encounter and describes appropriate decision making in a fluid and dynamic situation.

**a. Subject Resistance Levels**

i. <u>**Passive Resistance**</u> is a subject's verbal and/or physical refusal to comply with a member's lawful direction causing the member to use physical techniques to establish control. Examples:
   - The subject refuses to move at the officer's direction.
   - The subject refuses to take his hands out of his pockets or from behind his back.

ii. <u>**Active Resistance**</u> is when a subject's use of physically evasive movements directed toward the member such as bracing, tensing, pushing, or pulling, to prevent the member from establishing control over the subject. Examples:
   - The subject physically anchors himself to a person or object to prevent himself from being removed.
   - The subject braces or pulls away from the officer when the officer grips the subject's arm.
   - The subject attempts to run when the officer touches or attempts to grab the subject's arm or shoulder.

iii. <u>**Aggressive Resistance**</u> is a subject's attacking movements toward a member that may cause injury but are not likely to cause great bodily harm to the members or others. Examples:
   - The subject balls up his fist and approaches the officer.
   - The subject pushes the officer back as the officer tries to take the subject into custody.
   - The subject grabs any part of the officer's body.

iv. <u>**Lethal Force Resistance**</u> is a subject's hostile, attacking movements with or without a weapon that creates a reasonable perception by the member that the subject intends to cause and has the capability of causing death or great bodily harm to the member or others. Examples:
   - A subject refuses to drop a knife when ordered to by the officer and moves toward the officer.
   - A subject shoots or points a gun at an officer or other person.
   - A subject tries to run an officer down in a vehicle.

**b. Officer Response Options**: Members should always try to resolve a situation with the least amount of force necessary. Command presence and verbal communication often shall defuse many volatile situations. Sometimes, however, these are not enough or members may not have an opportunity to use them. Members need not apply force in gradually increasing steps in order to justify physical control or even lethal force. Instead, members need to respond with all the force reasonably necessary for the circumstances in each specific situations.

    i. **Physical Control** is achieving compliance or custody through the use of empty-hand or leverage-enhanced techniques, such as: (see glossary for definitions.)
- **Pressure point techniques**-
- **Pain compliance**
- **Empty- hand striking technique**
- **Transporters**-
- **Restraint devices**
- **Takedowns**
- **Countermove**

    ii. **Less-Lethal Weapons** are weapons that are not designed fundamentally to cause death or great bodily harm. Some examples of less-lethal weapons include, but are not limited to, electronic control devices (ECD), dart firing stun guns (i.e. Taser), expandable or straight batons, impact round weapons, aerosol subject restraint (OC Spray), and flashlights or other weapons of opportunity.

    iii. **Lethal Force** is force that is likely to cause death or great bodily harm.
Some examples of lethal force include, but are not limited to use of a firearm, eye gouges, empty-hand strikes to the throat, and impact-weapon strikes to the head or side of the neck.

**H. Use of Reasonable Force to make an arrest:**
Florida Statute 776.05 addresses the issue of a deputy using force to make an arrest: "A law enforcement officer, or any person whom the officer has summoned or directed to assist him or her need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest". The officer is justified in the use of any force:

1. Which he or she reasonably believes to be necessary to defend their self or another from bodily harm while making the arrest;

2. When necessarily committed in retaking felons who have escaped; or

3. When necessarily committed in arresting felons fleeing from justice. However, this subsection shall not constitute a defense in any civil action for damages brought for the wrongful use of lethal force unless the use of lethal force was necessary to prevent the arrest from being defeated by such flight and, when feasible, some warning had been given, and;
   a. The officer reasonably believes that the fleeing felon poses a threat of death or serious physical harm to the officer or others; or
   b. The officer reasonably believes that the fleeing felon has committed a crime involving the infliction or threatened infliction of serious physical harm to another person.

4. Additional factors that must be considered when making response to resistance decisions include:
   **a. Subject Factors**:
       i. Seriousness of crime committed by subject.
       ii. Size, age, and weight of subject
       iii. Apparent physical ability of subject.

Dukes, T. 001615

    iv. Number of subjects present who are involved, or who may become involved.
    v. Weapons possessed by or available to the subject.
    vi. Known history of violence by subject.
    vii. Presence of innocent or potential victims in the area.
    iix. Whether the subject can be recaptured at a later time.
    ix. Whether evidence is likely to be destroyed.
    x. Indicators of attack exhibited by the subject such as but not limited to; verbalization of
      a hostile/aggressive intent, hostile/aggressive posturing, muscular tensing of the body, etc.

  **b**. **Deputy/Detention Officer Factors**:
    i. Size, physical ability, and defensive tactics expertise of the deputy/detention officer
    ii. Number of deputies or detention officers present or available.
    iii. Immediate reaction in the case of sudden attack.
    iv. Weapons or restraint devices available to the deputy/officer.
    v. Legal justification
    vi. Agency policy and procedure.

The above listed subject and deputy/detention officer factors are not all inclusive. Any and all determining factors must be properly articulated by the deputy(s)/detention officer(s) employing physical force.

  **c. Environmental Factors:**
    i. Physical location.
    ii. General surroundings and the dynamics and dangers associated.
    iii. Lighting Conditions
    iv. Presence of other persons who may become involved as participants or victims.
    v. Weather.
    vi. The ability to escape for the subject, as well as the deputy/detention officer.

  **d. Special Factors**:
    i. **Excited Delirium** is neither a medical nor a psychiatric condition. It is a term used to
    describe the mental and physical effects of extreme drug abuse that can lead to
    death. Increased attention has been paid to the sudden and seemingly inexplicable
    deaths of some subjects being held in police custody. In most cases, the force
    required to subdue the suspect was not sufficient to cause death. Medical authorities
    have typically had extreme difficulty in identifying the cause of death. Signs and
    symptoms of excited delirium may include:

- Unbelievable strength, ability to offer resistance against multiple officers for an extended period of time, imperviousness to pain
- Hyperthermia( temperatures can spike to between 105-113 F); sweating, shedding of clothing or nudity
- Aggression, bizarre or violent behavior, hyperactivity
- Hallucinations, extreme paranoia, incoherent shouting or nonsensical speech, confusion or disorientation
- Foaming at the mouth, drooling, dilated pupils, grunting or animal-like sounds while struggling with officers
- Attraction to glass (smashing glass is common).

    Gaining physical control of the subject may be dangerous and difficult. If possible,
    request assistance before approaching the subject. The method for dealing with
    suspected excited delirium is to provide medical treatment to the individual according
    to substance abuse procedures and be aware of positional asphyxia.

**I. Force Guidelines Review:**
  1. **Establish Control**- The primary purpose for "response to resistance" by law enforcement
    and corrections is to overcome the resistance and/ or to establish control over the
    subject(s) who is resisting or creating the threat of physical harm to the deputy/detention
    officer or another person.

Dukes, T. 001616

2. **Escalation**- In the process of responding with an appropriate level or type of force to overcome a resisting subject, or detain a subject when force is justified, it is not a requirement to go step-by-step through the levels of response. Deputies and detention officers are justified in responding with any level or type of force deemed reasonable and necessary at the time to overcome resistance, defend against assault and/or achieve control.

3. **De-escalation of Force** – Once control has been gained in a situation, deputies and detention officers shall de-escalate their response to resistance as soon as practical to a point no greater than what can be reasonably expected to maintain control over the subject to accomplish lawful objectives.

4. **Decisive and Effective**- As mentioned earlier, deputies and detention officers shall attempt, where feasible and practical, to resolve all potential response to resistance incidents with non-physical measures. However, once it is apparent to a deputy or detention officer that force is going to be required for the deputy or officer to safely perform their duties, then the force that is reasonable and necessary should be delivered in a decisive and effective manner, followed up by appropriate controlling techniques in order to :
   a. End the confrontation as quickly as possible, thereby reducing the risk of injury to all parties, and;
   b. To prevent the situation from escalating to higher levels of resistance and response.

5. As a subject increases their resistance level from verbal to physical, deputies may have to increase the level of their own response until the resistance ceases and they are able to gain control of the subject. As soon as subject complies, deputies/detention officers must de-escalate their response level to the minimum force necessary for their control.

**J. Less-lethal force:** The defensive action that neither is likely nor intended to cause death or serious physical injury.
   1. <u>**Agency approved less- lethal Weapons-**</u>  **(F.S. 776.06 in part)**– are weapons designed for use by law enforcement and detention officers that are not fundamentally designed to cause death or great bodily harm, such as: OC Spray, expandable or straight batons, impact round launchers, ECD-Tasers and K-9. <u>**All devices described in this section of this general order shall be used only after successful completion of a course in the proper use and carrying of the device**</u>**.** As with any other response to resistance, less-lethal weapons are not to be used indiscriminately or without just cause. Members must be able to articulate the reason(s) for their use of these weapons. Reporting requirements for response to resistance described in this general order are listed in the attached matrix. **All members shall make themselves aware of the general orders pertaining to each of the listed response to resistance options by deputies and detention officers.**
   a. Aerosol Subject Restraint/ OC Spray
   b. Impact weapons/Expandable or straight batons
   c. Impact round launchers/powder ball projectile system/Specialty Impact Munitions
   d. Electronic Control Device/Tasers
   e. Canine Apprehension-
   f.  Stop sticks
   g. Restraint Chair

**LESS LETHAL WEAPONS**

| TYPE | DESCRIPTION | CLASSIFICATION |
|---|---|---|
| Aerosol Subject Restraint | 10% Oleoresin Capsicum (OC) 37 MM OC/CS 40 MM OC/CS OC/CS Expulsion Grenade | Less-Lethal |
| Dog Repellent OC Spray | Dog Repellent (less than 1% OC) | Less-Lethal |
| Violent Subject Restraint Chair | Restraint Chair | Less-Lethal |
| Less-Lethal Impact Weapons | Expandable Baton Issued Flashlight | Less-Lethal |
| Electronic Control Devices | Taser M-26 or X-26 Electronic Shields Electronic Security Belts | Less-Lethal |
| K-9 | Certified K-9 Handler & Agency Approved K-9 | Less-Lethal |
| Powder Ball Projectile System | Pepperball Pava Rounds (OC) | Less-Lethal |
| Tire Deflation Device | Stop Sticks | Less-Lethal |
| Specialty Impact Munitions | 12 Gauge Specialty Impact Rounds 37mm Specialty Impact Rounds 40mm Specialty Impact Rounds | Less-Lethal |

**K. Lethal Force**: As defined by Florida Statute 776.06 addresses the term "deadly force", referred to as "lethal force" in respect to this general order, means force that is likely to cause death or great bodily harm **and includes**, but is not limited to the following; the firing of a firearm in the direction of the person to be arrested, even though no intent exists to kill or inflict great bodily harm; and the firing of a firearm at a vehicle in which the person to be arrested is riding; and (Refer to section M of this General Order for LCSO policy)

1. The term "deadly force" does not include the discharge of a firearm by law enforcement officer or detention officer during and within the scope of his or her official duties which is loaded with a less-lethal munition. As used in this subsection the term "less-lethal munition" means a projectile that is designed to stun, temporarily incapacitate, or cause temporary discomfort to a person without penetrating the person's body; and

2. The use of lethal force may be a member's first and only appropriate response to a perceived threat. Lethal force does not necessarily mean that someone died from the force used. It can cause great bodily harm or no harm at all. For example, returning fire is lethal force even if the member misses the target.

3. Lethal Force is authorized to put down a dangerous animal(s) that poses an immediate threat of serious bodily/physical harm to a deputy, detention officer or other person; but only when other reasonable alternatives are unavailable and only when deadly force can be used without jeopardizing bystanders. A Supervisor shall be notified before the destruction of the animal, if practical.

NOTE: The putting down of an injured or sick animal by the use of a firearm does not normally constitute lethal force, nor shall it require a Response to Resistance Report. It does require an Incident Report.

**Discharge of a firearm during the performance of their official duties in a deputy's attempts to apprehend any subject constitutes lethal force.**
**Deputies should after responding to a subject's resistance be certain that the subject is properly restrained, (i.e. handcuffing.)**

**L Three Criteria for making lethal force decisions:**

Members should use the least amount of force necessary and reasonable for the situation. If ability, opportunity, and intent are present and the member cannot control the threat using lesser means, then lethal force is justified. When resistance de-escalates, so must the response.

1. **Ability** refers to the subject having the means to carry out his or her intent to cause death or great bodily harm. A member must determine whether the subject has the necessary means to cause death or great bodily harm to the member or others. A weapon is not required; a subject must only have the apparent ability to carry out his or her intention. If the subject seems physically able to cause death or great bodily harm, then he has the ability. For example, a 6'4", 250lb, muscular man threatening to do bodily harm to a member does not need a weapon. By virtue of his size and physical condition, he has the apparent ability.

2. **Opportunity** means the subject is capable of carrying out an intention to cause death or great bodily harm to the member or others. The subject's weapon often determines opportunity. For example, a suspect armed with a knife may not be an immediate threat to a member standing far away. However, the same person standing closer or carrying a firearm certainly has the opportunity to carry out his intent to cause death or great bodily harm.

3. **Intent** is a reasonably perceived, imminent threat to a member or another person based on the subject's actions. It is a perception derived from the totality of the circumstances. If ability and opportunity are present, a member may assume the subject has intent to cause death or great bodily harm.

**M. Restrictions on Lethal Force in a Response to Resistance:**
**No distinction shall be made relative to the age of the intended target of lethal force. Self-defense and imminent threat shall be the only policy guidelines for employing lethal force.**

1. Deputies shall not use lethal force to prevent the escape of a person suspected of committing a misdemeanor, traffic or other minor offenses except when there is a high probability of harming a person other than the fleeing felon. (Example: A felon fleeing into a crowd of people, or towards other persons in the direct line of fire of the deputy or detention officer.)

2. Deputies of the Levy County Sheriff's Office are not authorized to fire warning shots.
   a. The firing of warning shots is considered an act of lethal force by state statute, even when no intention is made to injure another person.
   b. Firing warning shots is dangerous practice with unpredictable results and is prohibited as a general rule.

3. Deputies shall not fire at a moving vehicle or from a moving vehicle or otherwise attempt to disable an occupied vehicle or other occupied conveyance using a firearm, except in an instance where the totality of the circumstances dictate the use of lethal force is reasonable and does not endanger innocent persons.
   a. Lethal force may be justified when a suspect rams, attempts to ram or uses a vehicle to engage in conduct that poses an imminent danger of death or serious bodily harm to the deputy or others. A deputy must be able to articulate that an imminent danger exists and that the suspects' actions did not result in incidental or accidental contact between vehicles

4. Deputies shall not intentionally place themselves in the path of an oncoming vehicle and attempt to disable the vehicle by discharging their firearms.

Dukes, T. 001619

**N. Medical Aid after Response to Resistance Incident:**
   **In all cases of subject injury, a supervisor shall be notified.**
   1. When a member uses lethal or less-lethal force to overcome a subject's resistance and injury occurs, the member shall immediately secure the subject, request for EMS and shall administer first aid as soon as safely possible.

   2. Injuries received during the process of arrest and upon advice by EMS, the subject shall be transported to the appropriate medical facility prior to incarceration by the deputy for final medical clearance.

   3. Minor injuries caused by hands, feet, falls, etc. in minor resisting arrest type cases may be treated at the scene by EMS. If transport by EMS is necessary, the arresting deputy or a deputy designated by the supervisor shall accompany the subject to the hospital.

   4. Photos shall be taken of any injuries to the subject and included in the Response to Resistance Form

**O. Reporting Response to Resistance Incidents:**
   1. As a subject increases their resistance level from verbal to physical, deputies may have to increase the level of their own response until the resistance ceases and they are able to gain control of the subject. As soon as subject complies, deputies must de-escalate their response level to the minimum force necessary for their control.

   2. A *Response to Resistance Report* and an *Incident Report* shall be submitted when:
      a. A member takes an action that results in more than just handcuffing of a compliant arrestee;
      b. When force is applied by using less-lethal or lethal weapons including the pointing of the member's weapon at any civilian; and/or
      c. physical control. (i.e. forcefully taking the subject to the ground, use of pressure points for compliance, ).

   3. Circumstances which involve a <u>Show of force</u> (refer to glossary) do not require a Response to Resistance Report.
      a. This General Order shall not preclude a member from completing a *Response to Resistance Report* for extenuating circumstances or upon direction from a supervisor.

   4. It is a deputy's responsibility to be knowledgeable in the Response to Resistance Reporting Requirements Matrix.

**Response To Resistance Reporting Requirements Matrix** <span style="color:red">(DOES NOT APPLY TO DETENTION BUREAU)</span>

| Response Level | Response to Resistance Report | Incident Report |
|---|---|---|
| Pressure Point Techniques | YES | YES |
| Pain Compliance | YES | YES |
| Transporters | YES | YES |
| Take Downs | YES | YES |
| Counter Moves | YES | YES |
| Restraint Devices | YES | YES |
| Empty-hand striking technique | YES | YES |
| OC Spray **@ person** | YES | YES |
| Taser **@ person** | YES | YES |
| Powder Ball Projectile System | YES | YES |
| Specialty Impact Munitions | YES | YES |
| Canine Apprehension | YES | YES |
| Incapacitation | YES | YES |
| Stop Sticks | YES | YES |
| Firearm **@ person** | YES | YES |

5. The Response to Resistance Report should reflect the totality of the circumstances involved. Any statement made by the subject should be quoted. Detail the care given to the person after control was established accompanied with pictures of the subject's injuries. The deputy's perceptions based upon their training and experience should also be stated.

6. Special Considerations – Enforcement:
The arrest report also must contain certain information about the deputy's response to the subject's resistance. In the narrative portion of the form, document the circumstances that necessitated the action and specify the amount and type of response used to counter the subject's resistance. Factors constituting Reasonable Belief should be clearly described. A copy of the Arrest Report shall be attached to the Response to Resistance Report when it is submitted for Supervisory review. If no Arrest Report is written, a statement by the involved deputy shall be attached to the Response of Resistance Report.

**P. Relief of Duty (non-disciplinary); Mandatory Psychological Support**:
1. A member who is involved in any incident resulting in death or serious physical injury to themselves or others shall be removed from the line-of-duty immediately and shall be placed on administrative leave until completion of the preliminary administrative investigation review. This leave shall be without loss of pay or benefits.

2. The leave shall not be interpreted to imply that the deputy has acted improperly.
Upon approval of the Sheriff, the deputy may be assigned administrative duties.

3. In all cases where a person has been seriously injured or killed, the member(s) involved in the incident shall undergo a mandatory psychological evaluation and counseling as soon as possible after the incident.
   a. The purpose of the evaluation and counseling is to assist the member(s) in dealing with the psychological aftereffect of the incident.
   b. The psychological appointment shall not be related to any investigation of the incident and nothing discussed in the debriefing shall be reported to the Agency.
   c. The Sheriff's Office shall provide for such evaluation and counseling by a professional Psychologist selected at the discretion of the Sheriff.
      i. At the earliest convenience the Chief of Staff (Colonel) /or designee shall contact the Human Resources Division to request an appointment for the affected member(s).
      ii. HR shall communicate directly with the LCSO member advising them of the facility and date and time of the first scheduled appointment.
   d. The psychologist shall advise the Agency, via a letter to the Sheriff that the deputy has been counseled. The psychologist's determination of fitness for duty shall be based on this counseling session and shall note if follow up visits are needed.

4. While on administrative leave, the member(s) shall be available for Agency interviews and shall be subject to recall to duty at any time.

5. When the member(s) is eligible to return to duty, the Division Supervisor and/or Chief of Staff is responsible for notifying the deputy and coordinating the deputy's return.

6. Upon returning to duty, the member(s) may be assigned to administrative duties for a period deemed appropriate by the psychologist and the Sheriff.

**Q. In-Custody Deaths**

1. In-Custody Death is death, or the on-set of physiological condition resulting in death, that occurs while a subject is in law enforcement custody, or while an attempt is being made to take a subject into custody. The death may or **may not** involve the application of force. Deaths that occur as the result of vehicle crashes are not included.

2. Procedural duties of members are outlined in General Order 1401.

3. In-custody deaths shall be reported to the Florida Department of Law Enforcement Statistical Analysis Center to facilitate the requirements of the Deaths in Custody Act of 2000.

**R. Analysis and Reporting**

Professional Standards Division is responsible for conducting annual administrative review and analysis of all Response to Resistance Reports. The findings are submitted to the Sheriff in the Professional Standards Division's Annual Report.

**S. Detention Bureau Specific**

The following guidelines are related specifically to the Detention Bureau of the Sheriff's Office and are to be used within the detention setting. Detention members shall use physical force only as a last resort and only after all reasonable alternatives (i.e., verbal persuasion, warning or show of force) have been exhausted or are considered inappropriate. DETENTION BUREAU MEMBERS SHALL MAKE THEMSELVES FAMILIAR WITH BOTH GENERAL ORDERS OF THE ENTIRE AGENCY ALONG WITH THE PROCEDURAL GENERAL ORDERS OF THE DETETION FACILITY.

Physical force shall be defined as anytime an officer uses his/her body, chemical agent, stunning device or weapons on an inmate to compel him/her to do something he/she is otherwise unwilling to do.

**1. Authority:** As set forth by Florida Statutes, no member shall apply physical force to a visitor or an inmate except and only to the degree that is reasonably necessary in self-defense, to prevent escape, to prevent injury to a person or to property, to quell a disturbance, or when the visitor or inmate exercises resistance to a lawful command.

**2. Types of Force:**

When an inmate acts violently or appears on the verge of violent action(s), if necessary, officers shall use reasonable physical force and/or restraints to prevent him/her from harming self, others, and/or property.

**a. Immediate response to resistance**: An "immediate-response to resistance" situation is created when an inmate's behavior constitutes a serious and immediate threat to self, staff, another inmate, property, or the security and orderly operation of the facility. In that situation, an officer may respond without a supervisor's direction or presence.

**b. Calculated Response to Resistance and/or Application of Restraints**:
If an inmate is in an isolated location (i.e., a locked cell, or other locked enclosure) where there is **no immediate threat to the inmate or others**, the officer(s) shall take the time to assess the possibility of resolving the situation without resorting to force and request assistance (back-up) from other certified detention officer prior to entering.

**c.** Detention officers shall not use an excessive amount of physical force.

**d**. The supervisor on duty must be on the scene before any calculated response to resistance. He/she shall direct the operation, continuously monitoring officers compliance with policy and procedure. The supervisor shall not participate except to prevent impending officer(s) or staff injury. Whenever possible, a health services professional shall be present to observe and immediately treat any injuries.

    **e. At no time shall physical force be used as punishment.**

    **f.  Any inmate involved in a response to resistance incident shall be examined by a physician or other medical personnel, as soon as practical following the incident. The examination shall be documented in the inmate's medical file.**

**T. Forms of Restraints for use within Detention Facility**: All use of mechanical restraints and Use of Force Gear shall be documented. Equipment shall be inspected quarterly for wear and mechanical problems and to insure that risk to the inmate is minimal. Detention members shall use acceptable techniques or approved special equipment when the use of physical force is necessary.

   1. Handcuffs;

   2. Leg Irons: stainless steel, meet National Institute of Justice standard;

   3. Waist or Belly Chain;

   4. Soft Restraints: Vinyl type with soft arm and leg cuffs containing soft belts with key locks;

   5. Plastic cuffs: disposable;

   6. Ambulatory Restraints: soft and hard equipment that provides freedom of movement sufficient for eating, drinking and taking care of basic human needs without staff intervention.

**U. Principles Governing the Response to Resistance and Application of Restraints:**

   1. Immediate use of restraints is warranted to prevent the inmate from harming self or others, or from causing serious property damage. If, after the inmate is under control, the continuing use of restraints appears necessary, **supervisor approval is required.**

   2. Additional restraints may be applied to an inmate who continues to resist after officer(s) achieve physical control. If a restrained inmate refuses to move or cannot move because of restraints, officer(s) may lift and carry the inmate to the appropriate destination. The restraints shall not be used for lifting or carrying an inmate, unless exigent circumstances exist.

   3. Officer(s) shall attempt to gain the inmate's willing cooperation before using force.

   4. Officer(s) shall use only that amount of force necessary to gain control of the inmate.

   5. Under no circumstances shall mechanical restraints be used as punishment.

   6. Restraints shall not be placed on an inmate in such a manner as to cause injury.

   7. Restraints shall not remain on the inmate longer than necessary.

   8. Officer(s) may not remove restraints until the inmate has regained self-control.

   9. Fellow members shall not knowingly permit any subordinate, inmates or other person to commit any act or engage in any conduct which would violate these rules and regulations.

  10. Medication shall not be used to subdue an uncooperative inmate for officer(s) or staff convenience. Medication must be prescribed and administered by licensed medical personnel, for medical purposes only.

**V. Restraint of Pregnant Inmates:**

1. Restraints may not be used on an inmate who is known to be pregnant during labor, delivery, and postpartum recovery, unless the corrections official makes an individualized determination that the inmate presents an extraordinary circumstance (i.e.; is violent or has been arrested for a violent crime and the potential by being unrestrained poses a real threat to society), except that:
   a. If the doctor, nurse, or other health care professional treating the inmate requests that restraints not be used, the detention officer, or other officer accompanying the pregnant inmate shall remove all restraints; and
   b. Under no circumstances shall leg, ankle, or waist restraints be used on any pregnant inmate who is in labor or delivery.

2. If restraints are used on a pregnant inmate pursuant to paragraph (1):
   a. The type of restraint applied and the application of the restraint must be done in the least restrictive manner necessary.

3. During the third trimester of pregnancy, or when requested by the doctor, nurse, or other health care professional treating the pregnant inmate:
   a. Waist restraints that directly constrict the area of pregnancy may not be used;
   b. If wrist restraints are used, they must be applied in such a way that the pregnant inmate is able to protect herself in the event of a forward fall; and
   c. Leg and ankle restraints that restrain the legs close together may not be used when the inmate is required to walk or stand.
   d. Use of leg, ankle, or waist restraints is subject to the provisions of subparagraph (1)b

4. In addition to the specific requirements of 1-3 of this section, any restraint of an inmate who is known to be pregnant must be done in the least restrictive manner necessary in order to mitigate the possibility of adverse clinical consequences.

**W. Use of Less-Lethal Weapons**: The shift supervisor may authorize the use of less lethal weapons if the inmate:

1. Is armed and/or barricaded; or

2. Cannot be approached without danger to self or others; and

3. A delay in controlling the situation would seriously endanger the inmate or others, or would result in a major disturbance or serious property damage; and

4. Staff shall contact medical staff before using OC spray or other less lethal weapon(s) unless escalating tension make such action unavoidable. When possible, medical staff shall review the inmate's medical file for a disease or condition that a less lethal weapon could seriously exacerbate, including, but not limited to asthma, emphysema, bronchitis, tuberculosis, obstructive pulmonary disease, angina pectoris, cardiac issues, or congestive heart failure.

**X. Documentation for Response to Resistance within Detention Facility: Response to Resistance shall include the pointing of a firearm, TASER, or other response to resistance weapon or device at a specific subject in an intimidating fashion for the purpose of taking a person into custody or achieving control.**

1. Officer(s) shall prepare a detailed Subject Resistance Report and an Incident Report of all incidents involving the response to resistance, as well as document the use of restraints on each inmate who becomes violent or displays signs of imminent violence and submit completed forms to his/her immediate supervisor prior to going off duty. A copy of the report

shall be placed in the inmate's correction file. Response to Resistance Report and Incident Report may be found in JMS Jail Management System under the subsection FORMS. All reports shall be written and retained in accordance with the facility logs and records policies.

| Response Level | Response to Resistance Report | Incident Report |
|---|---|---|
| Pressure Point Techniques | YES | YES |
| Pain Compliance | YES | YES |
| Transporters | YES | YES |
| Take Downs | YES | YES |
| Counter Moves | YES | YES |
| Restraint Devices | YES | YES |
| Empty-hand striking technique | YES | YES |
| OC Spray @ **person** | YES | YES |
| Taser @ **person** | YES | YES |
| Powder Ball Projectile System | YES | YES |
| Specialty Impact Munitions | YES | YES |

2. Response to Resistance Reports and Incident Reports shall contain:
   a. A detailed description of the situation to include the conclusion; location where inmate was placed and reason; and
   b. Names of all members involved; and
   c. Name of inmate(s) involved and witnesses; and
   d. Extent of injuries sustained; and
   e. Statement of medical treatment (name/date/time); and
   f. Check by medical personnel shall be documented on the Response to Resistance Report;
   g. Description of restraints used for security or to prevent self-inflicted injuries.

**Y. Review Procedure of Response to Resistance Reports and Incident Reports**
1. The member's immediate Supervisor shall forward the original Subject Resistance Report and copies of all Incident Report to the Chief of Security or designee before the end of shift.

2. The Chief of Security or designee shall complete a Report of Investigation and promptly submit a copy of both reports to the Chief of Staff. If the member involved was the Chief of Security, a written and signed statement of the force used and circumstances under which it was used shall be submitted to the Chief of Facility Operations.

3. The Chief of Staff or designee shall review the reports submitted by the Chief of Security and approve or disapprove the force used. The Chief of Security shall investigate or have investigated all incidents involving a subject to resistance. Under no circumstances shall a participant in the altercation be assigned as the investigator.

4. DISCIPLINARY ACTION SHALL BE TAKEN AGAINST ANY MEMBER WHO USES UNJUSTIFIED PHYSICAL FORCE ACCORDING TO THE ESTABLISHED PROCEDURE. The disciplinary action shall follow the matrix found in General Order 1100, with final decision being at the discretion of the Sheriff.

5. A report is not necessary for the general use of restraints (for example, the routine movement or transfer of inmates).

Approved: _Bobby B. McCallum_
Sheriff Bobby McCallum