UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TERRY DUKES, SR.,

    Plaintiff,

v.                                          CASE NO. 1:23-cv-45-AW-HTC

ROBERT B. MCCALLUM JR., ET AL.,

    Defendants.

_____/

### DEFENDANTS' RULE 26(a)(2) DISCLOSURE

Pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, this Court's Scheduling Order [Doc.8], and the agreement of the parties, Defendants SHERIFF ROBERT B. McCALLUM, and CHASE GREGORY, make the following expert witness disclosure by attaching the report of Paul J. Kiley, an expert in the area of police practices.

Respectfully submitted this 18th day of August 2023.

*/s/ Gwendolyn P. Adkins*



Gwendolyn P. Adkins, (FBN: 0949566)
gadkins@coppinsmonroe.com
jclark@coppinsmonroe.com
kwillis@coppinsmonroe.com

COPPINS MONROE, P.A.
2316 Killearn Center Blvd., Ste. 202
Tallahassee, FL 32309
Office: 850-422-2420 ׀ Fax: 850-422-2730

EXHIBIT 1

2

ATTORNEYS FOR DEFENDANTS
ROBERT B. MCCALLUM, JR. and CHASE GREGORY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have served the foregoing via electronic mail on all counsel of record this 18th day of August 2023, as follows:

> James Slater, Esq.
> Slater Legal PLLC
> 113 S. Monroe Street
> Tallahassee, FL 32301
> james@slater.legal
> andrew@slater.legal
> eservice@slaterlegal.com
>
> ATTORNEY FOR PLAINTIFF

*/s/ Gwendolyn P. Adkins*
Attorney

**EXHIBIT 1**

Terry Dukes Sr. vs Robert B McCallum, et al  Case # 1:23-cv-45-AW-HTC

I was retained in the above referenced case to review the facts and circumstances of the incident resulting in Levy County Sheriff's Office, Deputy Sheriff Chase Gregory , interactions with Terry Dukes Sr. on May 25,2019. I have been retained to offer my opinion related to training, education and experience regarding police policy, police practices and police procedures. My opinions are based on my 31 years and 4 months of experience as a police officer, police detective, police sergeant, police detective sergeant, police captain and police major along with my current position as a police academy director of law enforcement training. In addition are my education and my professional police executive training.

**Summary of Incident:**

On 5/25/2019, Levy County Sheriff's Office ( LCSO) Detective Michael Wilkinson responded to a report of an individual identified as Shaquanda Sheffield who was at Shands Hospital. Det. Wilkinson met with Ms. Sheffield who reported injuries she had received on 5/24/19, during a domestic altercation, she reported had transpired at 900 Patterson Street, Bronson, Fl. Ms. Sheffield recounted how she was the victim of domestic violence on 5/24/19, at approximately 2:30 am when she was sleeping at 900 Patterson Street, Bronson, Fl.

Ms. Sheffield told the detective she had been physically attacked by Terry Dukes Jr. when he placed his fingers in her mouth to the back of her throat, bit her cheek, punched her eye and the side of her head, picked her up and slammed her onto her stomach and back. The victim also told the detective she asked Terry Dukes Jr., during the attack, what was wrong and she stated he told her he was smoking molly. ( Molly is a common street term for the illegal drug MDMA or ecstasey.) Ms Sheffield stated to the detective she was able to leave the residence at 900 Patterson St, Bronson, Fl and walk to Chiefland, Fl.  She secured transportation to her mother's home. She also told the detective at the time of the incident she did not have a phone for her to call 911.

Ms. Sheffield also informed the detective on Friday 5/24/19, Ms Sheffield, after staying with her mother she experienced  medical issue, called 911, and was transported by ambulance to Shands Hospital. Detective Wilkinson observed her injuries and confirmed she was eight weeks pregnant. Ms. Sheffield told the

**EXHIBIT 1**

detective Terry Dukes Jr. knows of her pregnancy and Mr. Dukes Jr. told her it is not his child, accusing her of becoming pregnant with another man. M.s Sheffield also told Detective Wilkinson she wanted to file for a protection order because she was afraid of Terry Dukes Jr. (LCSO police report # 201905002270) The police report provides physical description of Terry Carl Dukes b/m 2/19/88, and his address listed in the police report as 900 Patterson Street, Bronson, Fl.

The last known location of Mr. Dukes Jr., according to the victim Ms Sheffield, was 900 Patterson Street, Bronson, where she had been attacked.

On 5/25/19, Detective Wilkinson contacted LCSO Corporal Almedia and informed him of the incident and the probable cause for the arrest of Terry Dukes Jr. Detective Wilkinson," wanted to send somebody to Terry Dukes' house and see if somebody was there." ( Taped interview of Deputy Gregory 8/13/19) with Lt Timmin of LCSO office of professional standards.) In that same interview Deputy Gregory stated, "So I am familiar with Dukes, Jr. a little bit and know his history and know he ain't somebody that you would want to deal with by yourself, let alone two people. So it was 4:30-5:00, toward the end of the shift. So I told him I would go over there with him and help him try locating him."

Deputy Gregory also told Lt. Timmin he had responded to calls for service several years ago, " …at 900 Patterson Street involving Terry Dukes and the girl he would be dating at the time and those allegations of abuse on her and his drug habits." The deputy included, "The female, the victim in this case I believe conveyed to Detective Wilkenson that he ( referring Dukes Jr.) was currently using molly and is possibly under the influence of molly or MDMA." Deputy Gregory explained his professional experience with people who were under the influence of MDMA. During the same statement Deputy Gregory included, " I thought it was Terry Dukes Jr's house. Every time I have dealt with him or his name ever came up, that is the address I have always been give."  It is clear, on 5/25/19, Deputy Gregory believed 900 Patterson Street, Bronson, Fl, was the home of Terry Dukes Jr.

On 5/25/19, at approximately 5:15am, Deputies Gregory, Gaffey, Murphy and Corporal Almeida drove to 900 Patterson Street, Bronson, Fl, to arrest Terry Dukes Jr. on the probable cause of Aggravated Battery on a Pregnant Woman. Prior to arriving at the house the four formed a plan to safely approach the house with the

**EXHIBIT 1**

intention of not alerting Terry Dukes Jr. before their arrival. The plan was for Corporal Almedia and Deputy Murphy to approach the front of the house and Deputy Gaffey to accompany Deputy Gregory to the rear. Deputy Gregory had been to the house on previous calls for service and knew there were steps at the back door.

Deputy Murphy, at the front of the home, banged on the house and announced, "Sheriff's Office." The deputy banged several times. After a short period of time 20 or 30 seconds, Deputy Gregory, at the back door could hear movement in the house. Deputy Gregory heard footsteps from inside the house and saw the back door open. Through the open door the deputy could see into the house and saw someone going back into the house. Deputy Gregory shone his flashlight at Deputy Gaffey to get his attention and Deputy Gregory entered the house.

The fact the door was opened by Mr. Terry Dukes Sr. is not in dispute. The homeowner, Mr. Terry Dukes Sr., explained in his statement he opened the door believing his son was trying to access the home and it has been their practice for Mr. Dukes Sr., to open the door and then return into the house to shower and ready himself for work.

Mr. Dukes Sr. described "cracking" the door open.

Deputy Gregory described ," …where I was standing the door didn't open all the way."

Deputy Gregory entered the home only after the deputy who banged on the front of the home repeatedly announcing "Sheriff's Office" and finally having someone in the home move towards the back door.  The door was opened by the homeowner, Mr. Terry Dukes Sr. providing a non verbal invitation to enter.

Deputy Gregory witnessed the door open and a person retreat from the doorway back into the house and he was concerned about the suspect in the investigation reportedly under the influence of MDMA. The deputy knows from his professional experience the irrational behavior some people exhibit when they are under the influence of MDMA. He also knew from professional experience of Mr. Terry's Dukes' Jr.'s reputation as an abuser of illegal drugs.

EXHIBIT 1

The house was not illuminated and was described by the deputies as so dark they thought there was "no power in the house."

Deputy Gregory accepted the door being opened, after Deputy Murphy repeatedly announced Sheriff's Office while banging on the house, as an invitation for him to enter the house. He responded to the open door, and his concern to arrest a person known to be violent, by not illuminating his position of entry with his flashlight. He removed himself from the doorway quickly so as not to remain in what is well known in law enforcement training language as the fatal funnel, entered the house and announced Sheriff's Office. Deputy Gregory entered the house and took what he described as the kitchen area and can see a bedroom door. The deputy used his flashlight once he was inside the door. He saw a male enter the bedroom and he announced Sheriff's Office and he asked if Terry Dukes was there. The deputy told Lt Timmin he heard a male voice from the bedroom. The deputy knocked on the bedroom door and what he heard was a male voice asking him what he was doing. The deputy reported he stated I told him he needed to identify himself and come out from behind the door. He again identified himself to the unidentified person behind the closed door. The deputy continued in his statement to professional standards. He described an African American male opening the bedroom door slightly and stuck his right arm out the door. The deputy told him to open the door and identify himself. While he was speaking to the male behind the door the door was opened and the male asked, "who I was" and, " why I was there and my light shining through the room. Passed him where he was standing was his bed and on the bed I could see a gun. It looked like a revolver. Black handgun on the bed."

It is important to note the gun is on the bed behind the male later identified as Terry Dukes Sr. Both Mr. Dukes Sr. and the gun are in the bedroom. Outside of the bedroom door is Deputy Gregory who is directing Mr. Dukes Sr. to identify himself and come out from behind the door. In addition to Deputy Gregory are Deputies Almedia and Gaffey inside the house through the back door. Deputy Murphy was at the front of the house and looking through a window witnessed Mr. Dukes Sr. behind the closed door and Deputy Murphy also saw the handgun on the bed. Mr. Dukes Sr's actions of only opening the door slightly and not complying with the commands and trying to close the door. This raised the safety concerns of the deputies who had clearly announced their presence while outside and inside of the home. After the observation of the gun was announced by the deputy the

**EXHIBIT 1**

greatest concern was to separate the yet to be identified African American male further from the gun by having the male not move closer to the gun. Deputy Gregory saw Mr. Dukes Sr. who was approximately eight feet from the bed, "walk away from the door, he turned to the right as if he was going straight to his bed." The actions of Mr. Dukes Sr. moving closer to the bed with the gun gave the deputy seconds to make a critical decision.

Deputy Gregory was able to kick the door open and deploy his taser and eliminate the possibility of Mr. Dukes Sr. reaching the handgun. That decision resulted in no injuries to anyone in the house except for the one probe of the taser making contact with Mr. Dukes Sr. It was only after Mr. Dukes Sr. was in handcuffs did the deputies identify him as Senior and not Junior.

**Opinions:**

1. LCSO deputies went to 900 Patterson St, Bronson, Fl, on 5/25/19 at approximately 5am to arrest a suspect previously known to them as a violent offender who is a drug user. The probable cause was for a felony. It was with lawful purpose the deputies went to the Bronson address to take the suspect into custody as soon as possible. The victim of Mr. Terry Dukes Jr. was about to be released from the hospital and there was concern for her safety. If Mr. Dukes Jr. was under the influence of MDMA his actions would be less than predictable. Additionally, it was not prudent or necessary for the deputies to seek a search warrant at that hour of the day as the probable cause arrest would be lawfully executed.
2. Mr. Dukes Sr. stated on 6/26/19, his son had issues with drugs.
3. Mr. Terry Dukes Sr. described opening the door to his house, although he said he was expecting his son, there is no way the deputies would have known.
4. It has been my professional experience through years or narcotics investigations as a detective and as a detective sergeant there are many occasions residents open their home to the police. There have been occasions when people were arrested or we had an interest in questioning suspects or we were following up on investigative leads and we would contact a resident. On many occasions it has been my experience residents will open the door without a formal verbal greeting and the non verbal

EXHIBIT 1

invitation with the opening of the door allowed us access. Frequently police officers will employ an investigative tactic know n as knock and talk. The tactic to knock on the door of a home, never standing directly in front of the door to expose yourself to an attack through the door, and ask to speak with the homeowner. Most often the response is to have the police enter the home so neighbors and others to not see the police at the front door. My experience includes arriving in vehicles that are not marked police cars and reducing the profile of police at the home. This tactic very often creates a relationship with the home owner that can reduce attention from the neighborhood and gain a positive relationship by observing their concern form nosey neighbors. On numerous occasions the door was opened and the homeowner backed away from the door while we gained quicker access. There were times when we received verbal approval and there were times when the approval was a non verbal invitation.

5. It is my professional opinion is was very reasonable for Deputy Gregory to understand the door being opened, after the banging and announcing Sheriff's Office, the open door was an invitation to enter.
6. It is well within reason the deputies inside a residence only illuminated with their flashlights and a B/M hiding behind a bedroom door, refusing to identify himself and struggling to push the door back from their advancement would raise their suspicion.
7. The effort was made by Deputy Gregory to de-escalate the situation by repeatedly asking the unidentified African American male to open the door and identify himself. Deputy Gregory knew Mr. Terry Dukes Sr. and even Mr. Dukes Sr. made that observation in retrospect.
8. It would have been very reasonable for Mr. Dukes Sr. to open the door, identify himself as Dukes Sr, showing his hands, inform the deputies he was not clothed and allowed the situation to diffuse. It was not until Mr. Dukes Sr. was in handcuffs that Deputy Gregory identified him as Senior. If he had shown his face rather than choosing to hide his face behind the bedroom door, the situation would have had a different outcome. At a minimum the deputies would have known they did not have probable cause to arrest him and they could have informed him they were looking for his son.
9. It is also well within reason of their response to resistance when they see a handgun within reach of the unidentified African American male who may

**EXHIBIT 1**

be the suspect in the probable cause arrest, who may be under the influence of MDMA, for them to react with extreme caution. The overt act they witnessed of the suspect refusing to respond to commands to identify himself and not to move towards the gun, while moving closer to the handgun, only emphasized the response to take action. It was very responsible thinking in a highly stressful situation for the deputy and Terry Dukes Sr. to deploy a taser to gain control of Mr. Dukes Sr. rather than lethal use of force.

10. After Mr. Dukes Sr. was handcuffed he clarified with the deputies was Dukes Sr. and not Dukes Jr. believing they were looking for his son. Had he clarified his identity when he was repeatedly asked the incident could have been avoided.

11. The deputies executed well planning caution when they approached the home at 900 Patterson St, Bronson, Fl. The planned on how to approach the home safely not to raise any suspicion. The repeated banging on the home, a mobile home feels the impact of banging more than a CBS structure and the repeated announcement while outside the home and inside the home to have clear understanding they were sworn deputy sheriffs as well as they each were in full class B uniform. They used every precaution to have the safest interaction at the home for themselves and anyone in the home.

12. Aside from being contacted by one prong from the taser Mr. Dukes Sr. was not injured. No one else was injured on 5/25/19.

13. The documents I reviewed including training, policies and actions taken are generally accepted police practices taught at police academies and within bounds of the 4th amendment.

The items I reviewed are listed below.

Depositions

Interrogatories

Interview Audio

Interview Transcripts

LCSO General Orders

<p style="color:red; text-align:center;">EXHIBIT 1</p>

Complaint

Incident Report and Narratives

Report Det Michael Wilkinson

Terry Dukes Sr. Handwritten Complaint

**Opinion.** The opinions I offer in the report are based on training, education and experience. Including on my 31 years and 4 months as a sworn police officer in the State of Florida, including my experience as a field training officer, my development in supervision as a supervisor as a police sergeant, a detective sergeant, my development as a police administrator as a police captain and my promotion to the rank of police major,( the highest tested position within the Fort Lauderdale Police Department) my training as a police executive at the Senior Management Institute for Police, my experience as a Florida certified law enforcement instructor with experience creating training courses. My experience included formal education earning a Bachelor of Science degree in Law Enforcement from Boston State College, in Boston, Ma, and Master's of Science degree in Management from St Thomas University in Miami, Fl.

My experience includes my present position that I have held since 2011, as the director of the police academy, including basic training and career development, at Miami Dade College. I also serve on the basic training committee and the selection center committee with the Florida Department of Law Enforcement Criminal Justice Standards and Training Commission. In my current position as the director of the police academy I oversee the implementation of the state mandated curriculum for the basic training program of 770 hours for law enforcement certification. Additionally, I oversee the implementation of a 24 hour course created for the basic training program to include 8 hours of procedural justice training, 8 hours of Fair and Impartial Policing training and 8 hours of de-escalation training. The responsibilities as the director of the police academy include overseeing the career development courses that are delivered to current Florida certified active duty police officers and deputy sheriffs within the Florida

**EXHIBIT 1**

Department of Law Enforcement training region of Miami-Dade County and Monroe County, Fl.

Please let me add, I have not had anything published in the past ten years and I have not provided any expert testimony within the past four years. I have provided expert testimony on one occasion through a deposition in the case of Harrison v Warwin, et al., FLMD Case No.3:21cv00746. My fee schedule is attached.

Paul J. Kiley

*/s/ Paul J. Kiley 6/18/23*

**EXHIBIT 1**