Exhibit B

to

Slater Declaration

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TERRY DUKES, SR.,

    Plaintiff,

v.

ROBERT McCALLUM, JR., *et al.*,

    Defendants.

Case No. 1:23-cv-45-AW-HTC

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO
CHASE GREGORY'S FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Terry Dukes, Sr. states his responses and objections to Defendant Chase Gregory's First Set of Interrogatories propounded on April 20, 2023 as follows:

**GENERAL OBJECTIONS**

1.    Plaintiff objects to the Interrogatories and their definitions and instructions to the extent they seek disclosure of information protected under attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Specifically, Plaintiff objects to the terms "you" or "your" as inclusive of Plaintiff's attorneys. Plaintiff has construed the terms "you" and "your" to expressly exclude Plaintiff's attorneys.

## RESPONSES AND SPECIFIC OBJECTIONS

Subject to and without waiving his general objection, Plaintiff responds as follows:

1.     Describe in detail each act or omission on the part of Defendant Gregory individually with respect to the May 25, 2019 incident, described in your Complaint for Damages.

**RESPONSE: Plaintiff objects to this request to the extent it seeks information not fully developed or available to Plaintiff at this stage in the proceedings. Discovery has just begun and is ongoing. Subject to and without waiving the preceding specific objection, Plaintiff states:**

**Deputy Gregory arrived at my home early in the morning on May 25, 2019. He and Deputy Gaffey and Corporal Almeida entered my home without a warrant, permission, or exigent circumstances. After seeing a flashlight in my window—believing that my son Terry Dukes, Jr. wanted me to let him in my house—I got up from my bed, still naked, and walked to the back door. I cracked the back door open, and without saying a word or realizing that there were sheriff's deputies at my door, and not my son, I began to walk back to my room to shower and get ready for work. It is my understanding that as soon as I walked away from the cracked back door, Deputy**

Gregory walked into my house without any invitation or permission. It is also my understanding from the LCSO reports, that Deputy Gaffey claims to have announced on the radio that Deputy Gregory walked into my house. According to Deputy Gregory's post-incident interview, it is my understanding that he admitted to going into my house without my permission because he believed that my son had retreated inside my house and based on his SWAT training, he reasoned that he should not turn his flashlight on but instead enter my house without saying anything and chase after me—as I was slowly walking back to my bedroom to shower and get ready for work. I also understand that according to Deputy Gregory's post-incident narrative, which he prepared the day after he entered my house, he wrote "[a]s soon as this door opened, I walked up the steps and entered the residence through the door." I also understand that in a later interview Deputy Gregory told LCSO that "looking back now I probably shouldn't have done that" when asked about entering my home without my permission. After Deputy Gregory entered my home without my permission, he admitted that he did not turn his flashlight on. After I cracked open the back door—believing I was letting my son in the house—I, naked, walked back to my room and did not see any lights turned on. At the time of the incident, my home

3

was connected to utilities and the lights could have been turned on. Once I got to my bedroom, I was about to turn on the bedroom lights when Deputy Gregory snuck up on me and ordered me to the floor. This is the first time I heard anyone speak to me. I got down to the floor and Deputy Gregory had his Taser pointed at me. I told Deputy Gregory that I was "Terry, Sr." Deputy Gregory had been to my house and work before and knew what I looked like. Having seen me, Deputy Gregory should have known that I was not my son. I asked Deputy Gregory and the others why they were in my home and explained that I needed to get to work. I repeatedly told Deputy Gregory that I wanted to put my pants on to cover my naked body. As I reached forward to grab my pants, without giving any command and knowing that I identified myself as "Terry, Sr.," who Deputy Gregory knew, he deployed his Taser, striking my shoulder. I was then placed under arrest for resisting arrest, which charges were dropped.

  2. State all facts upon which you base your contention that Defendant Gregory "entered without consent" as you allege in paragraph 38 of the Complaint for Damages.

  **RESPONSE: Plaintiff objects to this contention interrogatory as premature, as discovery has just begun. Plaintiff further objects**

4

**to this interrogatory on grounds that it calls for a legal conclusion. Subject to and without waiving those specific objections, Plaintiff directs Defendant Gregory to his response to Interrogatory No. 1.**

3. State all facts upon which you base your contention that Defendant Gregory "intentionally and with malice and bad faith" towards the Plaintiff.

**RESPONSE: Plaintiff objects to this contention interrogatory as premature, as discovery has just begun, and to the extent it calls for a legal conclusion as to malice, intentionality, and bad faith. Subject to and without waiving that specific objection, Plaintiff directs Defendant Gregory to his response to Interrogatory No. 1.**

4. State all facts upon which you base your contention that Defendant Gregory "knew or reasonably should have known that there was no justification for entry into Plaintiff's residence because they did not have a warrant, exigent circumstances justifying warrantless entry, or permission from Plaintiff," as you allege in paragraph 91 of the Complaint for Damages.

**RESPONSE: Plaintiff objects to this contention interrogatory as premature, as discovery has just begun. Subject to and without waiving that specific objection, Plaintiff directs Defendant Gregory to his response to Interrogatory No. 1.**

5. State all facts upon which you base your contention that Defendant Gregory "knew or reasonably should have known that his conduct would naturally or probably result in injury and with such knowledge disregarded the foreseeable injurious consequences" as you allege in paragraph 92 of the Complaint for Damages.

**RESPONSE: Plaintiff objects to this contention interrogatory as premature, as discovery has just begun, and to the extent it calls for a legal conclusion as to foreseeability. Subject to and without waiving that specific objection, Plaintiff states:**

**After Deputy Gregory and the other deputies entered my home without a lawful basis, they injured me physically, mentally, and emotionally. Had these officers sought my permission to enter my home, I would have gotten dressed and immediately informed them that I had a firearm in my home. They would have also immediately recognized that I was Terry Dukes Sr., not my son, Terry Dukes, Jr., the alleged suspect. Because they did not obtain my permission, they entered my home and found me naked in my bedroom with my lawfully purchased firearm located behind me on my bed. Because of the unlawful acts, I now suffer from aggravation of a preexisting physical injury and debilitating mental health issues and embarrassment from the trauma because Deputy Gregory tazed me**

when I was trying to cover my naked body with clothes. Deputy Gregory knew and admitted that he walked into my home without permission and that he chose not to further make his presence known until I was in my bedroom. He then drew his Taser and pointed it at me despite having no reason or permission to be in my house. The fact that these deputies came into my home at night, where I live in a remote area, and without me knowing that they were in my home is dangerous to law enforcement and residents, and particularly to me, because I am hard of hearing. As I expressed in my statement to LCSO, I usually carry my firearm when I get up to go to the door. If I had done that, someone could have been killed or injured because I was not aware that anyone had entered my home.

6. Describe in detail the notice or knowledge Defendant Gregory possessed "that they were not authorized to enter Plaintiff's residence" as you allege in paragraph 96 of the Complaint for Damages.

RESPONSE: At the time of the incident, I had signs on my property that warned trespassers. The officers allege that my son had attacked his then-pregnant girlfriend. She was at the hospital by the time they learned those facts. Instead of going to obtain a warrant, Deputy Gregory and the other individual defendants came to my home, where my son sometimes would stay, and entered my

7

home without my permission. I was awoken in the morning by a light shining through my house, which is how my son would wake me when he would come early in the morning. Without getting dressed, I walked to the door to crack it open for my son, and then returned to my bedroom to shower and get dressed for work. At all times before I was told to get down to the ground by the deputies, I believed I had opened the door for my son. I never spoke to the deputies before they ordered me to the ground. I never gave permission to come into my house or uttered a word to Deputy Gregory or the other defendants until I was on the ground in my bedroom telling them that I was "Terry Sr.," not my son, who I assumed they were looking for. The deputies never showed me any warrant that permitted them to be in my house and it is my understanding that they did not possess any warrant to be in my home that morning. It is my understanding from reading the reports, that Deputy Gregory admitted that he entered my house without permission, following me into the house without turning on his flashlight or announcing himself after I cracked the back door. That is exactly what he did. I opened the door a crack, in the dark, without looking to confirm that it was my son entering the house. I was then followed back to my room by Deputies Gregory. There was no reason for him to follow me into my home, which he

**admitted to LCSO when he said he "probably shouldn't have done that."**

Dated: May 26, 2023.

                                     AS TO OBJECTIONS ONLY:

*/s/ James M. Slater*
James M. Slater (FBN 111779)
SLATER LEGAL PLLC
113 S. Monroe Street
Tallahassee, Florida 32301
james@slater.legal
Tel. (305) 523-9023

*Attorneys for Plaintiff Terry Dukes, Sr.*

## Certificate of Service

I hereby certify that on May 26, 2023, I served a copy of these responses and objections to Chase Gregory's First Set of Interrogatories to counsel for Mr. Gregory via email.

                      By: */s/ James M. Slater*
                             James M. Slater

## Verification of Interrogatory Answers

I believe, based on reasonable inquiry, that the foregoing answers to Defendant Gregory' First Set of Interrogatories are true and correct to the best of my knowledge, information, and belief. I verify under penalty of perjury that the foregoing is true and correct.

By: *Terry C. Dukes Sr.*
Terry Dukes, Sr.