UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TERRY DUKES, SR.,

    Plaintiff,

v.                                               CASE NO. 1:23-cv-45-AW-HTC

ROBERT B. McCALLUM JR. and
CHASE GREGORY,

    Defendants.
_____/

### DEFENDANT GREGORY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [Doc.30]

Pursuant to Federal Rule of Civil Procedure 56 and N.D. Fla. Loc. R. 56.1, Defendant CHASE GREGORY, individually, ("Deputy Gregory"), responds in opposition to Plaintiff's Motion for Partial Summary Judgment [Doc.30] as follows:

Plaintiff's Motion seeks summary judgment on all claims brought against Defendant Gregory individually, specifically the state law claims of Invasion of Privacy (Count I), Trespass (Count II), and False Arrest/False Imprisonment (Count V), and the Fourth Amendment claims of Unlawful entry (Count III), and Unlawful seizure (Count IV). [Doc.11, Amended Complaint]. Defendant Gregory has filed his own Motion for Summary Judgment on these same claims. [Doc.28]. Because his arguments *against* Plaintiff's Motion for Partial Summary

Judgment have largely already been set forth in his Motion for summary judgment in *his* favor, Defendant Gregory does not repeat the arguments and caselaw here. Instead, Defendant Gregory adopts his Motion [Doc.28] as if set forth herein[1] and focuses this Memorandum on supplemental caselaw and argument or on matters not already addressed in his Motion.

The parties' respective summary judgment motions make it apparent that neither the material facts nor the issues of law framed by statutes and caselaw are truly in dispute. It is merely the application of the law to the facts upon which the parties' views starkly differ. This is appropriate for the court's determination on summary judgment.

> Plaintiff's Section II.A.1. [Doc.30, p.10]. Gregory was acting under color of state law.

Plaintiff acknowledges Gregory was acting under color of state law as he must to state a claim pursuant to 42 U.S.C. §1983. *See, e.g., Almand v. DeKalb Cnty., Ga.*, 103 F.3d 1510, 1513 (11th Cir.1997).

> Plaintiff's Section II.A.2. [Doc.30, p.11]. Gregory did not violate the Fourth Amendment when he entered Plaintiff's home.

Contrary to Plaintiff's introductory sentence, it is absolutely disputed – in fact denied – that Gregory violated the Fourth Amendment when he entered

---

[1] It is not counsel's intent to be indolent but rather to not belabor the points or unnecessarily give the Court more to read. Should the Court prefer everything be incorporated into a single document, counsel will promptly re-submit.

Plaintiff's home. As set forth in Section II.A. of Defendants' Motion for Summary Judgment [Doc.28, beginning at p.27], Deputy Gregory's entry was lawful because Plaintiff's actions implied consent for Gregory to enter the home. The test is one of the "totality of the circumstances," and no specific "request" for entry needed to be made. [Doc.28, pp.28, 31, and fn.21 (citing *Gill as Next Friend of K.C.R. v. Judd,* 941 F.3d 504, 524 (11th Cir. 2019) (consent implied from physical conduct despite no explicit request for entry having been made).

### Plaintiff's Section II.A.3. [Doc.30, p.18]. Gregory's entry was lawful as were the detention of Plaintiff and any use of force.

The lawfulness of Deputy Gregory's entry into the home is addressed in the preceding section. Defendant Gregory analyzes the lawfulness of his use of force and the temporary detention of Plaintiff in Sections II.B. of Defendants' Motion [Doc.28, at pp.34-42]. Plaintiff's Motion concedes that he does not make a separate excessive force claim but that any such unlawful use of force is subsumed into his Fourth Amendment unlawful seizure claim. [Doc.30, p.18, and fn.8.].

### Plaintiff's Section II.A.4. [Doc.30, p.20]. Gregory is entitled to qualified immunity.

Plaintiff's first argument against qualified immunity is that his action of entering Plaintiff's residence violated the Fourth Amendment. [Doc.30, p.21]. That, of course, is relevant only for purposes of determining whether qualified

immunity need be considered at all. *Saucier v. Katz,* 533 U.S. 194, 201 (2001) (The threshold question when considering qualified immunity is whether the facts alleged show the officer's conduct violated a constitutional right.) If Deputy Gregory's conduct was lawful as is demonstrated in his Motion for Summary Judgment, then he is entitled to summary judgment because no constitutional violation occurred and this Court need not consider the question of qualified immunity. *See Saucier,* 533 U.S. at 201.

Next, Plaintiff implicitly acknowledges Defendant Gregory is entitled to qualified immunity arguing for a change in the law and citing a recent concurring opinion, "Hopefully one day soon the Supreme Court will see fit to correct [the qualified immunity doctrine we have today]." [Doc.30, p.22]. Qualified immunity may change in the future, but the law today is the only one we can apply.

Defendant Gregory has asserted his affirmative defense of qualified immunity and demonstrates in great detail his entitlement to it in Section III. of Defendants' Motion for Summary Judgment [Doc.28, pp.42-46]. As there is no dispute that Gregory was acting within his discretionary authority,[2] it is

---

[2] A government official acts within his discretionary authority when "his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Roberts v. Spielman,* 643 F.3d 899, 903 (11th Cir. 2011). Making arrests are generally part of the duties of a law enforcement

incumbent upon Plaintiff to demonstrate he violated clearly established law. *See Patel v. Lanier Cnty. Georgia,* 969 F.3d 1173, 1181 (11th Cir. 2020). Plaintiff offers no caselaw to demonstrate that any right which may have been violated was clearly established at the time.

To the extent Plaintiff relies on his earlier argument that the entry was unlawful to suggest the law was clearly established, he proves Gregory's entitlement to immunity. The cases cited by Plaintiff all deal with issues of warrantless entry (forced entry, show of force, exigent circumstances, no consent – explicit or implied) but not in circumstances which are sufficiently similar to those Gregory encountered so as to place him on notice that his actions were unlawful. They provide only the "high level of generality" on the issue that the Supreme Court pronounces insufficient. The law must be particularized to the facts of the case. "While this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly,* 580 U.S. 73, 79 (2017) (Cleaned up).

As further support that there was no clearly established law that Plaintiff's actions could not be implied consent under *these* particular

---

officer. *Pair v. City of Parker FL Police Dept.,* 383 Fed. Appx. 835, 839 (11th Cir. 2010).

circumstances, Defendant Gregory points to the following cases in addition to those discussed in his Motion at II.A. [Doc.28, pp.27-33; and 42-46].

In *Fish v. Brown,* 838 F.3d 1153, 1165–66 (11th Cir. 2016), the plaintiff responded "all right" in response to an introduction of law enforcement officers. The Eleventh Circuit Court of Appeals upheld this Court's application of qualified immunity to the deputies entering the plaintiff's home finding that "any reasonable person would have considered" the plaintiff's affirmative response "as explicit verbal consent for the officers to enter his home." In the case at bar, Plaintiff's affirmative acknowledgment that "I'm coming" in response to deputies knocking and announcing coupled with his action of opening the door, provided that same reasonable belief to Deputy Gregory.

The case most similar factually to the circumstances presented Deputy Gregory is from another jurisdiction. Though not precedential, it is persuasive. Last year, a district court in West Virginia found qualified immunity entitled deputies to summary judgment on an unlawful entry because they reasonably believed they had implied consent to enter when the door opened in response to a knock and announce. The circumstances were nearly identical to those facing Deputy Gregory:

> [T]here is no material dispute as to the facts as perceived by the officers. They banged on the door and announced their presence, identifying themselves as law enforcement officers. The door was locked and secured from the inside when they began their

6

announcement. After the second K-9 announcement, the door opened. The door had a handle on the outside without a standard doorknob, and the door opened outward. **Any reasonable officer would presume that the door opened because an occupant of the house opened it in response to their knock and announce.**

\* \* \*

[T]he relevant facts are those perceived by the officers at the time. They perceived that the previously locked door opened in response to their knock and announce.

A person opening a door would not necessarily constitute consent to enter. Any citizen might open a door in response to a knock, expecting the person on the other side of the threshold to explain the reason for their visit prior to determining whether to invite them in. In these circumstances, however, **the door swung open without anyone waiting on the other side to limit or specify the scope of their consent to entry or an interaction with the deputies. Anyone at the door would presume that someone opened the door, then stepped back into the darkened house away from the entrance.**

To the extent that there is any doubt about whether the Kanawha Deputies violated the Plaintiffs' Fourth Amendment rights by entering the house when the door opened as they conducted a K-9 knock and announce, they are protected from liability by qualified immunity. **The Fourth Circuit has not considered a case with sufficiently analogous facts to definitively determine whether entering a residence when a previously locked door opens in response to officers knocking, but no one comes to the door or interacts directly with the officers in any way, violates the Fourth Amendment.** Thus, the Court finds that any mistake of law was reasonable, because there is no clearly established law to inform officers that opening a door in response to a knock and announce, then stepping away from the entrance, does not constitute implied consent to enter. Likewise, any mistake of fact was reasonable. **The question does not turn on whether the Plaintiffs actually intended to consent to the Defendants' entry,** and so their testimony that no one unlocked the door is irrelevant in the face of the undisputed evidence that the door was locked, then opened as the officers conducted their knock and announce.

7

*Quinn v. Zerkle,* 2:21-CV-00421, 2022 WL 15316600, at *7–8 (S.D.W. Va. Oct. 26, 2022) (Emphasis added).³

Critical here, the Eleventh Circuit Court of Appeals confirmed earlier this year that consent *can be implied by physical conduct*. *Jiles v. Lowery*, 2023 WL 2017354, at *3 (11th Cir. Feb. 15, 2023). At a minimum, it was reasonable for Deputy Gregory to believe that he had implied consent. See *Santana v. Miami-Dade Cnty.,* 688 Fed. Appx. 763, 768 (11th Cir. 2017); and *Whittier v. Kobayashi,* 581 F.3d 1304, 1308–09 (11th Cir. 2009) ("The issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion.") (Internal citation omitted). This is all that is necessary for qualified immunity to apply. Whether his belief was ultimately mistaken is immaterial. *Whittier,* 581 F.3d at 1308.

### Plaintiff's Section II.B.   [Doc.30, p.24]. Defendant Gregory, not Plaintiff, is entitled to summary judgment on liability for his state-law claims.

Plaintiff argues for summary judgment on his state law claims against Deputy Gregory⁴ in his Motion [Doc.30], in Section B beginning on p.24.

---

³ The *Quinn* court all but held that these circumstances indeed constituted implied consent and that no constitutional violation occurred. It declined to make such holding, however, because the finding was not necessary to the determination of the case. *Quinn,* 2:21-CV-00421, 2022 WL 15316600, at *8, fn.6 (S.D.W. Va. Oct. 26, 2022).

⁴ Count I – Invasion of privacy, Count II – Trespass, and Count V – false arrest and imprisonment.

8

Defendant Gregory has already addressed his argument for summary judgment in his favor (and against Plaintiff) in his Motion in Section IV. A. and B. [Doc.28, beginning at p.46]. With respect to Deputy Gregory's sovereign immunity, he supplements his memorandum of law below.

Plaintiff does not contend Deputy Gregory was acting outside the course and scope of his employment. He is therefore entitled to sovereign immunity under F.S. §768.28 unless one of the exceptions apply.

> The first two exceptions, in bad faith and with malicious purpose, are synonymous with each other under Florida law. Another way to put it is that Florida courts have equated bad faith with the actual malice standard. The actual malice and malicious purpose exceptions apply when the conduct was committed with ill will, hatred, spite, or an evil intent. We will refer to these synonymous phrases as the actual malice exception.

*Coleman v. Hillsborough Cnty.,* 41 F.4th 1319, 1325-1326 (11th Cir. 2022) (All internal quotations and citations omitted.) (The district court erred when determining 768.28 immunity for the officer by applying the *legal* instead of the *actual* malice standard. The former does not require proof of evil intent or motive, the latter does.). "Florida's waiver of sovereign immunity clearly contemplates that an agent can commit a wrongful, and even intentional, act and still lack bad faith." *Dunn v. City of Boynton Beach*, 192 F.Supp.3d 1310, 1325-26 (S.D. Fla. 2016) (citing *Duyser by Buyser v. Sch. Bd. Of Broward County*, 573 So.2d 130, 131 (Fla. 4th DCA 1991)).

Plaintiff does not contend the actual malice exception applies to deprive Deputy Gregory of sovereign immunity. Rather, Plaintiff argues that Gregory's failure to speak to Plaintiff or make his presence known, along with his "split-second decision using his tactical training" was conduct that exhibited "wanton and willful disregard of human rights, safety, or property" thereby stripping him of the statutory immunity. [Doc.30, p.29].

This third category of conduct which vitiates state sovereign immunity for state actors – the wanton and willful disregard exception – is

> conduct that is worse than gross negligence. Wanton means with a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons or property. Willful means intentionally, knowingly and purposely. Together those terms describe conduct much more reprehensible and unacceptable than mere intentional conduct.

*Coleman,* 41 F.4th 1319, 1325 (11th Cir. 2022) (All internal quotations and citations omitted.).

There is no evidence that Deputy Gregory acted with conscious knowledge – or intentional indifference – to causing damage to Plaintiff. The evidence of record demonstrates Gregory did not initiate the underlying case or make the decision leading to his presence at Plaintiff's residence on the morning of May 25, 2019. At the request of a fellow detective, Gregory and other deputies were assisting locate and apprehend Plaintiff's son, Terry Dukes Junior, a known violent suspect and convicted felon reported to be on drugs

10

and to have weapons. Gregory and other deputies had been to this residence in the past for Junior. Gregory reasonably believed the opening of the door in response to his fellow deputy's loud knocking and announcing was an implicit invitation to enter the home. Plaintiff himself argues Gregory made a "split-second" decision based on his tactical training. [Doc.30, p.29]. A decision, based on lawful training and made in the moment, even if erroneous, cannot plausibly be described as conduct so reprehensible as to establish willful and wanton actions on the part of Deputy Gregory.

In *Coleman v. Hillsborough Cnty,* 41 F.4th 1319 (11th Cir. 2022), multiple Tampa police officers accompanied an animal services investigator to serve a search warrant at the plaintiff's residence. The plaintiff arrived home during the search and was subsequently arrested on scene for multiple charges. After he was acquitted of all charges, the plaintiff sued officers bringing a variety of claims and alleging their actions included *inter alia* kicking the plaintiff's foot multiple times, pressing him against a patrol car, securing his feet, leaving him in a patrol car for nearly two hours, and searching him multiple times. The district court denied sovereign immunity to the individual officers on the state law claims.

Reversing the lower court, the Eleventh Circuit Court of Appeals explicitly made the decision for the trial court instead of leaving it for determination on

remand, finding the allegations insufficient to show willful and wanton disregard of rights or property.

Of note, the appellate court in *Coleman* cited two instances where conduct might be considered by a jury to exhibit willful and wanton disregard: *Peterson v. Pollack*, 290 So. 3d 102, 110 (Fla. 4th DCA 2020) (factfinder could determine the deputy's failure to confront a school shooter and his failure to take any other protective action for the students and teachers, choosing instead to remain outside to ensure his own safety, constituted wanton and willful disregard of human rights or safety); and *Thompson v. Douds*, 852 So. 2d 299, 309 (Fla. 2d DCA 2003) (a genuine issue of material fact existed as to whether officers responding to a call for backup were entitled to sovereign immunity defense when they used "knee blasts" on a suspect and used their body weight to hold down the cuffed and bound suspect until he "went limp"). *Coleman,* 41 F.4th at 1329. [5]

---

[5] *See also Martin v. Snyder,* 21-14469-CIV, 2023 WL 6566477, at *7 (S.D. Fla. Oct. 10, 2023) (Willful and wanton conduct shown where deputy repeatedly falsified evidence and knew or reasonably should have known that his actions would naturally or probably would result in the deprivation of Plaintiffs' constitutional rights, yet disregarded those consequences.); and *Adkins v. Edenfield*, 5:18CV271-MCR/MJF, 2022 WL 20508217, at *11 (N.D. Fla. Sept. 22, 2022)(Planting of evidence by deputy necessarily constitutes bad faith and willful disregard of rights). Conduct meeting the willful and wanton standard under §768.28(9)(a), must be "worse than gross negligence" and "more reprehensible and unacceptable than mere intentional conduct." **It requires the subjective intent to do wrong.** *Sierra v. Associated Marine Inst.*, 850 So.2d

Both cases cited by the *Coleman* panel involve acts or omissions far more reprehensible than the physical conduct alleged by the *Coleman* plaintiff and certainly more egregious than the actions attributed to Deputy Gregory in the case at bar. The split-second training-based decision described by Plaintiff – like the conduct alleged by the plaintiff in *Coleman* – "is not conduct that is worse than gross negligence or more reprehensible and unacceptable than mere intentional conduct, and it does not establish that [Deputy Gregory] acted with a conscious and intentional indifference to consequences and with the knowledge that damage was likely to be done to persons or property." *Coleman,* 41 F.4th 1319, 1329 (11th Cir. 2022) (Internal quotations and citations omitted, alterations accepted). Moreover, there is no evidence Deputy Gregory had the *subjective* intent to do wrong.

Deputy Gregory is entitled to the sovereign immunity afforded him under Florida Statute, §768.28 as to all of the state law claims against him.

## Conclusion

As demonstrated in his Motion for Summary Judgment and here in response to Plaintiff's Motion for Partial Summary Judgment, Defendant Gregory acted reasonably and in good faith in the lawful performance of his duties, did not violate any constitutional right of Plaintiff's, did not engage in

---

582, 593 (Fla. 2d DCA 2003) (emphasis added) and *Richardson v. City of Pompano Beach*, 511 So.2d 1121, 1123 (Fla. 4th DCA 1986).

any tortious conduct, and is ultimately entitled to the protections of qualified immunity on any federal claims and to the immunity of Florida Statutes, §768.28, for any state law claims. Defendant Gregory is entitled to summary judgment in his favor as to all claims against him.

## WORD LIMIT CERTIFICATION

The undersigned certifies that the foregoing memorandum complies with the word limits provided by Local Rule 56.1 as it contains 3009 words in its entirety.

Respectfully submitted this 10th day of November 2023.



*/s/ Gwendolyn P. Adkins*



Gwendolyn P. Adkins, (FBN: 0949566)
gadkins@coppinsmonroe.com
jclark@coppinsmonroe.com
kwillis@coppinsmonroe.com

Coppins Monroe, P.A.
2316 Killearn Center Blvd., Suite 202
Tallahassee, FL 32309
Office: 850-422-2420 ı Fax: 850-422-2730

ATTORNEYS FOR DEFENDANTS
ROBERT B. McCALLUM JR. and
CHASE GREGORY

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b)(3) and N.D. Florida Local Rule 5.1, this document is being filed electronically and service shall be through the Court's transmission facilities on all persons appearing before this Court.

*/s/ Gwendolyn P. Adkins*
Attorney