UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TERRY DUKES, SR.,

    Plaintiff,

v.

ROBERT B. McCALLUM, JR., *et ano.*,

    Defendants.

Case No. 1:23-cv-45-AW-HTC

## PLAINTIFF'S REPLY IN SUPPORT OF HIS
## MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Local Rule 56.1(D), Plaintiff Terry Dukes files this brief reply in support of his motion for partial summary judgment against Defendant Corporal Chase Gregory. (Doc. 28). Plaintiff responds to Gregory's opposition (Doc. 39), to address the arguments he raised on issues about whether the entry was a constitutional violation, qualified immunity, as well as to clarify that there is an important material factual issue in dispute vis-à-vis consent: specifically, how far Plaintiff opened the back door to his home.[1] (*Id.* at 2) (arguing in opposition that no material facts on the issue of consent were disputed).

---

[1] Plaintiff has consistently testified that he only "cracked" open the back door, opening it somewhere between 4-8 inches wide. (Doc. 29-1 at 42:13-22, 54:9–55:8, 152:5-16); (Doc. 26-9 at 5:12-22, 9:13-25). Gregory testified in his deposition that Plaintiff opened the door up wide enough that he didn't have to open it further when entering the home. (Doc. 26-3 at 62:15-23). But, in his earlier recorded sworn statement, he stated that the door

**Introduction**

Plaintiff is entitled to summary judgment on liability because Gregory could not rush into Plaintiff's home only after deputies knocked and announced without more. The Court should not credit Gregory's versions of events as to how the door opened because they are inconsistent—he has asserted in sworn testimony that it was wide enough to walk through but in an earlier statement he could only see Plaintiff's hand in the "little, tiny itty-bitty gap" of the door.[2] Further, crediting Plaintiff's version of events—that the door was only cracked open—Gregory cannot invoke qualified immunity to defeat Plaintiff's motion or succeed on his cross-motion because it was obvious and clearly established that cracking a door open in response to knocking-and-announcing was not express or implied consent under the Fourth Amendment to enter a home without a warrant. *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("We then answer the legal question of whether the defendant is entitled to qualified immunity under [the plaintiff's] version of the facts," quoting *Thornton v. City of Macon*, 132 F.3d 1395, 1397 (11th Cir. 1998)) (alteration added).

---

opened up "halfway" and that from his vantage point there was a "little, tiny itty-bitty gap" where he could just see "what appeared to be like a hand in the gap." (Doc. 29-4 at 21:00-40). He was asked by Lt. Tummond: "So nothing distinctive about that particular instance?" To which he responded: "no." (*Id.* at 21:40-50).

[2] Gregory's testimony was also inconsistent as to whether Plaintiff was "mumbling" when he approached the door, but it is undisputed that once the door was opened, neither Plaintiff nor Gregory said anything. (Doc. 30 at 6–7).

**Argument**

## I. Gregory's entry into the home with request only after a coercive show of force violated the Fourth Amendment.

Gregory asserts in his opposition that Plaintiff's motion fails and that he should prevail on his cross-motion because Gregory's actions were lawful under the totality of the circumstances. (Doc. 39 at 3). As explained in his response to Gregory's motion for summary judgment (Doc. 38 at 12–14), the caselaw is clear that consent "where a defendant has yielded the right-of-way" has only been established when there is a request for admission to the home. *See Jiles v. Lowery*, 2023 WL 2017354, at *3 (11th Cir. Feb. 15, 2023) (citing *United States v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002)). Otherwise, "whatever relevance the implied consent doctrine may have in other contexts, it is inappropriate to sanction *entry* into the home based upon inferred consent." *McClish v. Nugent*, 483 F.3d 1231, 1241 (11th Cir. 2007) (quoting *United States v. Gonzalez*, 71 F.3d 819, 830 (11th Cir. 1996)) (emphasis in original).[3]

Taking the undisputed facts and crediting Gregory's versions of events as to how far the door was opened and what Gregory saw (a silhouette of a body with the door wide open or just a hand with the door partially opened), it is undisputed that Plaintiff did not yield the right of way. It defies logic that Gregory would have

---

[3] The Eleventh Circuit in *McClish* went on to say that, of course a suspect may still surrender to police, relying on *Payton v. New York*, 445 U.S. 573 (1980). *Id.* But there is no evidence that the occupant of the house was surrendering, that Gregory definitively knew he was the suspect, or that Gregory knew the person opening the door had any authority to consent to his entry.

3

reasonably believed that Plaintiff invited him into the back of his home—while officers were knocking and announcing at the *front door*—by opening the *back door* and walking away. And Gregory admits that he only saw either a silhouette or a hand. That is not an invitation to enter. His argument that he knew Junior was in the house is also flawed—it is speculative considering the deputies knew that Plaintiff also resided there, Gregory knew Junior would stay elsewhere, and the alleged crime occurred more than 24 hours before Gregory arrived at the house. (Doc. 30 at 4; Doc. 38 at 3). It is also unavailing that Gregory assumes Plaintiff responded to the officers' show of authority instead of the loud banging on his home and light shone into his window.

But even if the Court concluded that Plaintiff did invite Gregory into the home by opening the back door in response to knocking and announcing at the front door and turning back to the interior of the home without any cues to Gregory (and only seeing a silhouette or hand), no case supports lawful entry into the home when a defendant yields the right of way only after officers have knocked and announced with requesting admittance or making some informative statement to the suspect—the Eleventh Circuit has consistently found consent under those circumstances coercive and therefore involuntary. Here, taking Gregory's version, Plaintiff partially opened an entirely different door in the dark and there was no one standing at the threshold when he did so, and no words were spoken. That is not an invitation.

4

As explained in Plaintiff's response to Gregory's cross-motion, *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504 (11th Cir. 2019), on which Gregory relies in his opposition, does not hold that "consent [can be] implied from physical conduct despite no explicit request for entry having been made." (Doc. 39 at 3). There, the issue was whether the jury properly concluded that the officer's announcement that he was at the home to arrest a minor occupant was an "informative statement" or coercive show of authority. (Doc. 38 at 12) (quoting *Judd*, 941 F.3d at 519). Here, it is undisputed that the only communication *to Plaintiff* was a coercive show of authority: knocking and announcing, "Sheriff's Office." (Doc. 29-2 at 158:10-23). *Judd* does not help Gregory.

Gregory also argues in his opposition that *Jiles* confirms that consent can be implied from physical conduct. (Doc. 39 at 8). There, the Court reaffirmed that implied consent has been found where an officer *requests admission* and the suspect yields the right of way. *See McClish*, 483 F.3d at 1241 (implied consent comports with *Payton* only in limited context of yielding). But the circumstances in *Jiles* went even further—there, the suspect closed the door in the officer's face and attempted to close a second door. 2023 WL 2017354, at *3. But Plaintiff need not show that he expressly denied Gregory entry into the house. His burden here is to show that it was objectively unreasonable for Gregory to believe he had consent to enter the home. It was because Gregory entered while hidden away from the door in the dark, without speaking to or confronting Plaintiff or even saying a word, where Plaintiff opened the

5

door—all the way or part of the way, viewing the evidence in the most favorable light to Gregory, though Plaintiff expressly denies that is the case—where the only communication was knocking-and-announcing, and all Gregory could see was a silhouette or Plaintiff's hand. Gregory's entry violated the Fourth Amendment.

## II.  Gregory is not entitled to qualified immunity on consent.

Gregory asserts that if his "conduct was lawful as is demonstrated in his Motion for Summary Judgment, then he is entitled to summary judgment because no constitutional violation occurred and this Court need not consider the question of qualified immunity." (Doc. 39 at 4). As explained above, in his cross-motion, Gregory relies on his version of the events with respect to how far the door was opened. (Doc. 28 at 9). He fails to credit Plaintiff's version and cannot show that his conduct was lawful when he entered in response to the door being cracked open.  The same is true for his invocation of qualified immunity. *Lee*, 284 F.3d at 1190. Each of Gregory's arguments are addressed in turn.

First, Gregory argues that Plaintiff "implicitly acknowledges" that he is entitled to qualified immunity by arguing that the text of the Ku Klux Klan Act of 1871 expressly prohibits that defense. (Doc. 39 at 4). As Plaintiff argued in detail, common-law immunity is expressly precluded by the so-called Notwithstanding Clause of the plain text of the Ku Klux Klan Act of 1871, which was not properly transcribed into the United States Code (and which is only prima facie *evidence* of the text of a law). The text matters. *Myers v. TooJay's Mgmt. Corp.*, 640 F.3d 1278, 1286 (11th Cir. 2011)

6

("When presented with the plain text of a statute, we do not gaze at it blurry-eyed, attempting to see some hidden image formed by the broad purpose that lies behind the legislation."); *Babb v. Wilkie*, 140 S. Ct. 1168, 1172, 206 L. Ed. 2d 432 (2020) (to interpret a statute, "we start with the text of the statute."). Plaintiff acknowledged in his motion that the Supreme Court has not grappled with the discovery that the 1871 Act was improperly transcribed into the U.S. Code. Nothing in that argument is a concession, but to preserve his argument, Plaintiff made a textualist argument against Gregory's possible invocation of qualified immunity.

Second, qualified immunity is Gregory's initial burden. *Singleton v. Dep't of Corr.*, 277 F. App'x 921, 923 (11th Cir. 2008) ("the burden of establishing an affirmative defense lies on the defendant, not on the plaintiff"). Gregory asserts that it is undisputed that he was acting within his discretionary duty to satisfy his initial burden, *see Lee v. Ferraro*, 284 F. 3d 1188, 1194 (11th Cir. 2002); (Doc. 39 at 4), but he has failed to present any argument about why his conduct meets that burden.

Third, Gregory cannot invoke qualified immunity because he violated Plaintiff's constitutional right to be free from unlawful entry under the Fourth Amendment and that right was clearly established at the time of the conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). To resolve the issue of qualified immunity, Plaintiff's version of events is credited. *Lee*, 284 F.3d at 1190. Thus, the Court should consider whether Gregory can invoke qualified immunity when he entered Plaintiff's home where the only communication was knocking-and-announcing, to which Plaintiff stated "I'm

7

coming," after which Plaintiff cracked open the door a few inches and returned to his room, while Gregory was down to the right of the steps hidden from sight without any flashlight on and where said nothing to Plaintiff and Plaintiff said nothing to him. (Doc. 30 at 7) (collecting sworn statements from Gregory that Plaintiff said nothing when the door was opened); (Doc. 29-1 at 42). For the reasons stated in Plaintiff's motion and above, Gregory cannot demonstrate that his entry into the home was lawful.

Not only was the entry unlawful, but it was clearly established in May 2019 that such conduct violated the Fourth Amendment. This Circuit holds that a plaintiff may establish that a right is clearly established if he shows: (1) "that a materially similar case has already been decided, giving notice to the police;" (2) "that a broader, clearly established principle should control the novel facts in this situation;" or (3) "this case fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary." *Mercado v. City of Orlando*, 407 F. 3d 1152, 1159 (11th Cir. 2005).

The law was clearly established then that an officer could not enter a home without a warrant, exigent circumstances, hot pursuit or express consent when an individual comes to the door and cracks it open. *See McClish*, 483 F.3d at 1241. The cases referenced in Plaintiff's motion are materially similar cases that gave Gregory fair warning that warrantless entry into the home without both probable cause and either exigent circumstances or consent violated the Fourth Amendment. Specifically,

8

those cases demonstrate that an officer cannot rely on consent as an exception to the warrant requirement when there is only a show of authority and the door opening a crack without any body language or request/informative statement:

- *U.S. v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002): implied consent based on "body language" after a request for admittance (but Gregory could not see body language with the door cracked and no request);

- *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1329 (11th Cir. 2006): no consent where deputy followed suspect into home without request for admittance (Gregory never requested admittance);

- *United States v. Edmondson*, 791 F.2d 1512, 1514–15 (11th Cir. 1986): no consent where officers yelled "FBI. Open the door," and suspect opened door and put hands on head;

- *Moore v. Pederson*, 806 F.3d 1036, 1046 (11th Cir. 2015): no consent to enter house where officer told plaintiff he planned to arrest him and plaintiff, who was inside doorway of house, simply put his arms behind his back;

- *United States v. Tovar-Rico*, 61 F.3d 1529, 1535–36 (11th Cir. 1995): no consent where five police officers knocked on defendant's door, announced their identity, and asked for permission to enter—and then rushed into the home with guns drawn as soon as defendant opened the door.

Although consent has been found where a suspect steps aside and acquiesces to entry, *Holmes v. Kucynda*, 321 F.3d 1069, 1078–79 (11th Cir. 2003), *McClish* makes it clear that other than express consent, that is the only type of implied consent that does not violate the Fourth Amendment under *Payton*. Here, Gregory claims he could only see Plaintiff walk away from the door and nothing more, and that is based on his version of the events, which is not credited in this analysis. It defies logic that Plaintiff could

9

have yielded the way by cracking the door several inches. Instead, this case is just like *Bashir*, where when the suspect went into the home, the officer simply followed him in. Without a request, with only a show of authority, and the mere cracking of the door, it was obvious and clearly established that Plaintiff had not given consent for Gregory to enter. Even if the Court were to conclude that caselaw did not give Gregory fair notice, it was obvious that he could not enter Plaintiff's home under the circumstances here. *See McClish*, 483 F.3d at 1241.[4] Plaintiff's motion should be granted and Gregory's cross-motion denied on that basis.

To salvage his argument, Gregory asserts in his opposition that Plaintiff's statement "I'm coming" constituted "explicit verbal consent." (Doc. 39 at 6) (citing *Fish v. Brown*, 838 F.3d 1153 (11th Cir. 2016)). But *Fish*, when read carefully, instead supports Plaintiff's argument. There, two deputies entered the home while accompanying the occupant's former paramour to retrieve her belongings. While in the home, the deputies observed weapons and arrested the occupant for violating an injunction prohibiting his possession of firearms. When the paramour and deputies entered part of the home, the paramour stated, "I brought them to watch so I don't steal nothing of yours, okay?" to which the occupant responded "All right." 838 F.3d

---

[4] Gregory relies on the out-of-circuit case *Quinn v. Zerkle*, 2022 WL 15316600, (S.D. W.Va. Oct. 26, 2022) as a supposedly factually similar case. But *Quinn* confirms that this Circuit has held in *McClish* that the relevance of implied consent "is inappropriate to sanction *entry* into the home based upon inferred consent." 2022 WL 15316600, at *7 (quoting *McClish*, 484 F.3d at 1241) (emphasis in original).

at 1159. The Eleventh Circuit held that the occupant consented to the deputies' entry because his affirmative response to the paramour's "introduction of the officers" was reasonably considered explicit consent. *Id.* at 1166. The occupant argued that even if he was deemed to have consented, it was not effective because it was prompted by a show of official authority. *Id.* (citing *Ramirez-Chilel*, 289 F.3d at 751 ("A suspect does not consent to a search of his residence when his consent to the entry into his residence is prompted by a show of official authority.")). The court held that the occupant's consent was not prompted by any showing of official authority as the deputies had not brandished their weapons "and neither demanded entry." *Id.* Instead, "the Deputies simply followed [the paramour] inside after plaintiff said it was 'All right.'" *Id.*

Here, unlike in *Fish*, Plaintiff did not respond to an "introduction" to officers or an "informative statement." *Judd*, 941 F.3d at 526. The officers only communication was a show of official authority—by knocking and announcing "Sheriff's Office"—and Plaintiff did not acquiesce to any invitation. And even if the Court were to construe the response "I'm coming" to be "explicit verbal consent" to enter, it could only be perceived objectively as being prompted by the knocking, announcing, or light shining through the bedroom window. All that occurred was an official show of authority, not an invitation or request. Even if it could be construed that Plaintiff consented, such consent could only be coercive, which fails to satisfy the consent exception to the warrant requirement. And even then, unlike *Fish* where the

occupant let the officers come into the home and follow the paramour in to collect her belongings, here the door was cracked, and Gregory stormed the home without uttering a word. Gregory's action was a clear and obvious violation of the Constitution, excusing any need for prior caselaw, *Mercado*, 407 F. 3d at 1159, but, even so, his conduct contravened the clearly established and similar factual circumstances in *Ramirez-Chilel*, *Bashir*, *Moore*, *McGlish*, *Payton*, and others.

## Conclusion

For all these reasons, Plaintiff Terry Dukes, Sr. requests that the Court enter summary judgment on liability for Counts I-V in the First Amended Complaint.

Dated: November 17, 2023.

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
Slater Legal PLLC
113 S. Monroe Street
Tallahassee, Florida 32301
james@slater.legal
Tel. (305) 523-9023

*Attorneys for Plaintiff*

## Certification Pursuant to L.R. 7.1(F)

Pursuant to Local Rule 7.1(F), I hereby certify that the above document contains 3,106 words, inclusive of headings, footnotes, and quotations, but exclusive of the case style, signature block and certificates.

By: */s/ James M. Slater*
James M. Slater