UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TERRY DUKES, SR.,

    Plaintiff,

v.                                           CASE NO. 1:23-cv-45-AW-HTC

ROBERT B. McCALLUM JR. and
CHASE GREGORY,

    Defendants.

_____/

### DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE [Doc.38] IN OPPOSITION TO THEIR MOTION FOR SUMMARY JUDGMENT

Sheriff McCallum and Deputy Gregory reply to Plaintiff's Response [Doc.38] in Opposition to their Motion for Summary Judgment as follows:

I. **Disputed Issues of Non-Material Facts**

Plaintiff's response in opposition to Defendants' Motion for Summary judgment recites a mantra that the facts are in dispute and that Plaintiff's version of events must be accepted as true. This argument is specious. Only disputed issues of *material* fact preclude summary judgment, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Though the facts must be viewed in a light most favorable to Plaintiff, it is only those facts known to Deputy Gregory at the time which are relevant. *See Hernandez v. Hansell*, 2016 WL 8943279, at *1 (M.D. Fla. 2016), *aff'd,* 695 Fed. Appx. 523 (11th Cir. 2017).

Entry

Plaintiff argues "the deputies" knew that Plaintiff owned the house and that his son Junior sometimes lived with him [Doc.38, p.3, Section I] but ignores Deputy *Gregory's lack of knowledge* that Senior lived in this house. Any time Deputy Gregory had been to this address in the past, it was for Junior. [Doc.26-3, pp.131-132]. He had never before seen Plaintiff at the Patterson Street address and believed that Senior lived off of School Street. [26-3, pp.131, 132, and 161]. The information he was given that morning was that Junior was reported to be at this house. [Doc.26-3, p.149; 26-11, ¶3].

Inside the home

Accepting as true that Plaintiff told law enforcement certain things such as his identity, his son's absence, or his intent to reach for pants, such remarks are immaterial to and not determinative of summary judgment. Whatever Plaintiff may have said, there is no evidence that Deputy Gregory heard or understood any words. The only words deputies in the home could comprehend were the male's asking why and what were they doing.[1] [Doc.26-3, pp.208-209; Doc.26-6, pp.63-64; Doc.26-4, p.49]. *See, e.g., Shepard v. Hallandale Beach*

---

[1] The fact that Deputy Murphy, standing outside at the open window, may have heard Plaintiff say he was naked and needed to get pants [Doc.38, p.4] does not impute knowledge to Gregory. Nor would such knowledge be material to the substantive elements.

2

*Police Dept.,* 398 Fed. Appx. 480, 482, 483, fn.1 (11th Cir. 2010) (upholding summary judgment for officer who did not hear the plaintiff ask for a warrant, and finding no error given that fact not contradicted by evidence or internally inconsistent) (Internal citation omitted). Plaintiff does not, and cannot, demonstrate evidence to the contrary.

Nor is it contested that Plaintiff's identity was not known until after the Taser was deployed and deputies entered the room. Despite Plaintiff's acknowledgment that he and Gregory were familiar with each other, at no time does Plaintiff state he could see sufficiently well to recognize Gregory or call him by name until after he was handcuffed. [Doc.38, p.4; and Doc.26-7, pp.42+ referring to deputies as "they" and not to Gregory by name]. He could see well enough to make them out as sheriff's deputies. [Doc.26-7, p.78, ll.14-18]. The only artificial light was from Plaintiff's phone. [Doc.38, p.3].

Finally, any subjective intent on the part of Plaintiff to don pants[2] does not negate Gregory's observation that the male moved[3] in the direction of an unholstered gun on the bed.[4] *See Leonard v. Silva,* 21-60627-CIV, 2022 WL 18493119, at *11 (S.D. Fla. Dec. 26, 2022), *aff'd sub nom. Leonard v. Tony,* 23-10244, 2023 WL 6142188 (11th Cir. Sept. 20, 2023) (Deputies entitled to "qualified immunity because it is reasonable, and therefore constitutionally permissible, [] to use deadly force against a person who poses an imminent threat of serious physical harm to the officer or others. [Deputies] were not required to try and divine Plaintiff's subjective intent or wait and see what might happen.") (Cleaned up). Whether Plaintiff was standing or sitting, what direction Plaintiff turned, whether Plaintiff walked at an angle, are immaterial details that do not contradict Gregory's observation that the unidentified male was moving

---

[2] It is impossible to tell from Plaintiff's testimony the location of the pants: "right in front of me," "the table between the door and the bathroom," "I can't exactly remember," "I had a lot of little tables [ ] to put my clothes on," "It may have been a dresser," [Doc.26-7, p.73]; "they would have been pretty close, but it wasn't on or near the bed, I don't think;" "all of it was right there pretty much together." [Doc.26-7, p.75]. Plaintiff is clear that "when [he] reached for the pants," is when Deputy Gregory deployed the Taser. [Doc.26-7, p.45].

[3] Plaintiff does not deny he was moving, merely that he "wasn't moving a whole lot," that he "moved real easy," and that he "was *trying* to keep eye contact." [Doc.26-7, p.81, ll.11-15 (Emphasis added)].

[4] Plaintiff first states the gun was at the edge of the bed then states it was in the middle. [Doc.26-7].

4

in the direction of the gun and formed the basis for his use of force and detention of Plaintiff.

There is hearty dispute as to whether the bedroom door was opened or closed after Plaintiff entered the room which Plaintiff contends alone precludes summary judgment for Gregory. As Defendants illustrate in their initial Motion [Doc.28], the bedroom door being open, closed, or even nonexistent, is immaterial because regardless, there is no evidence Gregory could identify the male as Senior until the Taser was deployed and deputies drew closer. [Doc.26-3, p.227].

Critically, Plaintiff admits that he recognized the outfits and knew they were deputies [Doc.26-7, p.78], that they were giving him directives to "get on the ground" [Doc.26-7, pp. 43, 76], and that he did not comply because knew *he* was "in no trouble." [Doc.26-7 p. 76].

Plaintiff's Injuries

Plaintiff's response expounds on his emotional injuries (which culminated a year later with George Floyd's death). [Doc.38, p.7]. Emotional damages are irrelevant to the use of force analysis which considers the physical injury inflicted as one of six factors. See *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Levy County's Process

5

As demonstrated *infra,* Plaintiff's "facts" related to the Levy County Sheriff's record-keeping and investigation of Plaintiff's complaint against Gregory are irrelevant to the application of law on any of Plaintiff's claims. Nevertheless, Defendants are obliged to correct the misstatement that Lieutenant Tummond concluded merely opening a door is an invitation to enter under Fourth Amendment law. [Doc.38, p.9]. The actual statement is the single sentence found in the conclusion of his lengthy 122-page investigation: "The opening of the door *could be construed* as an invitation to enter." [Doc.37-5, p.73 (emphasis added)]. As Lt. Tummond's letter to Mr. Dukes regarding the IA investigation explains:

> Based upon the totality of the circumstances, of some you were not aware of at the time of the occurrence, Deputy Chase Gregory was exonerated as no violation of any LCSO policy was discovered.

[Doc.26-8, ECF p.44].

II.  **Material Facts**.

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Substantive law identifies "which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be

counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (Emphasis added).

### III. No constitutional violation.

Once again, in the interest of not overburdening the Court with the unnecessary repetition of Defendants' arguments, they adopt and incorporate the arguments already set forth in their Motion for Summary Judgment [Doc.28, and in their Response in Opposition to Plaintiff's Motion for Partial Summary Judgment [Doc.39]. Defendants briefly add:

The factual discrepancies alleged by Plaintiff are not material to the legal elements of the claims of unlawful entry, detention, and use of force. Consent is an "objective" inquiry that does not turn on the suspect's subjective intent. *See Florida v. Jimeno*, 500 U.S. 248, 251 (1991). Only those facts known to Deputy Gregory are relevant to Defendants' Motion for Summary Judgment. *See Hernandez v. Hansell*, 2016 WL 8943279, at *1 (M.D. Fla. 2016), *aff'd,* 695 Fed. Appx. 523 (11th Cir. 2017) ("For purposes of summary judgment, the Court recites the facts in a light most favorable to Plaintiff and considers only those facts known to Defendants [ ] at the time of the incident.").

Any opinion of Plaintiff's police practices expert Clark fails to take into account the information known to Deputy Gregory. Clark's recitation of events [Doc.37-7, beginning at p.13], focuses on what Mr. *Dukes* heard or saw, not on the information known to Deputy Gregory. The plaintiff's outward conduct must

be considered only in the context of the "totality of the circumstances" *actually known to officers*. *See Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 524 (11th Cir. 2019); and *Jackson v. West,* 787 F.3d 1345, 1358 (11th Cir. 2015) ("Expert report which suggested "deliberate indifference *across the board"* was defective because it did not address the subjective knowledge possessed by each individual defendant.").

Plaintiff scoffs at Gregory's motion using "his version" of the events for the analysis. But that's the law. *Hernandez,* 2016 WL 8943279, at *1 (M.D. Fla. 2016), *aff'd,* 695 Fed. Appx. 523 (11th Cir. 2017). Defendants' Motion still considers the events in the light most favorable to Plaintiff (e.g., we can assume that Plaintiff merely "cracked" the exterior door and that his subjective intent was to open it for his son, that the bedroom door was not closed, or that he believed he was telling officers what he was doing), but Defendants do not factor in any allegation by Plaintiff that is immaterial or contrary to the record evidence known to Deputy Gregory at the time of the events. *Hernandez,* 2016 WL 8943279, at *1. S*ee also Hammett v. Paulding Cnty.,* 875 F.3d 1036, 1050 (11th Cir. 2017) (The plaintiff's theory of surrender and retreat, while a possible inference from the record, did not change the critical facts known to the officers and undisputed by the plaintiff that they knocked and announced, announced

their identity inside the dark house, and gave orders with which the decedent did not comply.).

Binding jurisprudence remains devoid of any ruling that requires an explicit request for admittance for consent to be inferred by one's actions, or that a door be unlatched any specific distance to be considered "opened." It is established, however, that consent can be implied by physical conduct. *See Jiles v. Lowery*, 2023 WL 2017354, at *3 (11th Cir. Feb. 15, 2023) (citing *United States v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002)).

Accepting Plaintiff's contention that he was handcuffed as long as 30 minutes[5] while waiting on emergency medical personnel, and assuming *arguendo* that this was a full arrest, deputies had probable cause to believe he had committed the crime of resisting, obstructing, or opposing the execution of their legal duties by refusing to comply with their commands in violation of §843.02 *Florida Statutes*. The arrest was based on probable cause and therefore lawful. *See e.g. Hadden v. Loar*, 2016 WL 10520024, at *7 (S.D. Fla. Dec. 27, 2016) (granting summary judgment in a "mistaken identity" case where the plaintiff "was arrested because, at the time of contact, he was suspected to be [another person/suspect] and, in the course of that encounter, he was

---

[5] Plaintiff "guess[ed] about at least 20 or 30 minutes, if not longer," but admits, "I don't know." [Doc.37-1, p.87].

9

alleged to have obstructed the investigation."). He could have lawfully been kept in handcuffs and taken to jail at that time.

Plaintiff's argument against summary judgment on the claims inside the house amount to nothing more than a hypothetical which did not occur: *If* the facts were different (*e.g. if* Gregory had known this was Senior – a condition negated by the record evidence), *then* Deputy Gregory's actions in using force and detaining Plaintiff may not have been reasonable. These are not the record facts. The court cannot impute factual knowledge to Deputy Gregory that he did not have. *See, e.g., Graham v. Gagnon,* 831 F.3d 176, 184 (4th Cir. 2016) ("Even assuming events unfolded as Graham asserts, the officers would still not have "actually possessed" information about a conversation they were not in a position to hear.").

"In excessive force cases, we are mindful that officers make split-second decisions in tough and tense situations, and that the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Hammett,* 875 F.3d at 1050 (Internal quotations and citations omitted) (Though the decedent's death was a tragedy, the testimony of his wife and son, both present at the time of the incident, did nothing to challenge the officers' version of the facts.).

"The ultimate touchstone of the Fourth Amendment is reasonableness … [and] to be reasonable is not to be perfect." *Braddy*, 11 F.4th at 1308 (11th Cir. 2021).

IV. <u>Qualified immunity.</u>

Defendant Gregory's entitlement to qualified immunity is demonstrated in his Motion for Summary Judgment [Doc.28, Section III, beginning at p.42] and in his Response in Opposition to Plaintiff's Motion for Partial Summary Judgment [Doc.39, beginning at p.3]. Here, Gregory merely highlights the Supreme Court mandate that clearly established law should not be defined at a high level of generality. *White v. Pauly*, 580 U.S. 73, 79 (2017) (quotation omitted). Rather, "the clearly established law must be particularized to the facts of the case." *Id*. (quotation omitted).

What is clearly established is that consent <u>can</u> be inferred from overt physical acts. *See e.g. Fuqua*, 996 F.3d at 1153 (11th Cir. 2021); *Ramirez-Chilel*, 289 F.3d at 752 (11th Cir. 2002); *Holmes v. Kucynda*, 321 F.3d 1069 (11th Cir. 2003); *Judd*, 941 F.3d at 525 (11th Cir. 2019). If the *magnitude* of the aperture of a door is determinative of consent and a Fourth Amendment violation as Plaintiff suggests, then Deputy Gregory is unquestionably entitled to qualified immunity as no clearly established law tells him so.

In addition to other deputies and an expert witness, at least one federal judge found implied consent in virtually identical circumstances. *Quinn v. Zerkle,*

11

2:21-CV-00421, 2022 WL 15316600, at *7–8 (S.D.W. Va. Oct. 26, 2022). It cannot be said that no reasonable person could have interpreted Plaintiff's actions as consent. Deputy Gregory's interpretation was reasonable.

And no clearly established law would have instructed Gregory that the use of a Taser under these conditions would violate the Fourth Amendment. The particular circumstances facing Deputy Gregory (in general, a noncompliant suspect who was armed) are articulated in his Motion for Summary Judgment [Doc.28, Section II.B., beginning at p.34]. Substantial case law confirms that use of a Taser in similar circumstances is constitutional. *See Barfield v. Rambosk,* 641 F. App'x 845 (11th Cir. 2015) (taser did not violate plaintiff's constitutional rights where he refused commands, resisted arrest, and reached towards his waistband, which the officer feared held a weapon) and other caselaw at Doc.28, pp.37–38.

Plaintiff analogizes his case to *Chaney v. City of Orlando,* 2005 WL 8159900, at *12 (M.D. Fla. Dec. 2, 2005), where the district court denied qualified immunity to an officer who used a Taser. He likens himself to the *Chaney* plaintiff saying that he too was compliant, in plain sight, on the ground, and not near the gun on his bed, not resisting, etc. [Doc.38, pp.22-23]. These "facts" may be Plaintiff's beliefs or conclusions, but they are not the facts,

supported by evidence, known to Deputy Gregory, which must inform any analysis of qualified immunity.

## V. State law immunity.

As Deputy Gregory discusses in great detail in his Motion for Summary Judgment [Doc.28] and Response in opposition to Plaintiff's [Doc.39], he is immune from suit as to the state-law claims. Individual sovereign immunity under § 768.28(9)(a), *Fla. Stat.*, was designed to protect officers from liability for mistakes made in the good faith performance of their duties. If Deputy Gregory's actions were wrong, they were merely negligent and Deputy Gregory is entitled to good faith immunity here.

## VI. Sheriff McCallum not liable under 42 U.S.C. § 1983

Plaintiff's argument against Sheriff McCallum's entitlement to summary judgment on the single §1983 claim against him for failure to train, supervise, or discipline is distilled to the "single-incident" theory. Recognizing that there is no evidence of a policy, custom, or practice of unconstitutional conduct, Plaintiff argues the "need for training on the lawful bases to enter a home was 'so obvious' that the failure to do so constitutes 'deliberate indifference.'" [Doc.38, p.25]. His proffered support is two-fold: one, Lieutenant Tummond (to whom Sheriff McCallum delegated responsibility for investigations) opined that the opening of a door after a knock and announce is an invitation; and two, the lack

of a formal tracking of investigations before 2017 prohibits Plaintiff from proving a practice of unlawful entries. Plaintiff's claims are fallacious.

Even if Lt. Tummond believed the Fourth Amendment explicitly defined a door being opened as consent, Directives 643, 801 and 806 [Doc.26-12] make clear that is not the policy of the Levy County Sheriff's Office. Furthermore, Deputy Gregory's determination that the consent implied by Plaintiff's act of opening the door was based on the totality of the circumstances known to him at the time. [Doc.26-11, ¶5; Doc.26-3, pp.223-224, and Doc.28, fn.8].

Plaintiff's focus on the Levy County Sheriff's Office process for keeping records and processing complaints prior to 2017 is meaningless. Abandoning any argument for an unconstitutional policy, Plaintiff turns to the single incident theory. A single violation is sufficient only when the plaintiff can prove the defendant "has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Thompson v. Sheriff of Indian River Cnty., Fla.*, 2022 WL 1124801, at *3 (11th Cir. 2022) (Citation omitted).

Plaintiff cites to *City of Canton, Ohio v. Harris*, 489 U.S. 378, 381–82 (1989), to support his claim for *Monell* liability of Sheriff McCallum based on this single incident of a warrantless entry based on consent. Finding that certain matters are so obvious training must be provided, the *Canton* Court gave the

example that "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force," is obvious. *Canton,* 489 U.S. at 390, fn.10. *Canton* merely leaves open the possibility that there may be a situation where the need for training is so obvious and recognizing it only as a hypothetical example. *See, Gold v. City of Miami,* 151 F.3d 1346, 1352 (11th Cir. 1998) (citing *Board of County Commissioners v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

      The facts and circumstances of Deputy Gregory's entry are not the hypothetical "obvious need" that supports a single-incident theory of §1983 liability. There is no plausible argument, and no caselaw mandate, that entering a home *with consent* is the type of obvious need which requires training. Nonetheless, Deputy Gregory (and other agency deputies) were trained on Fourth Amendment procedures on multiple occasions, starting with their time in the law enforcement Academy. [See Doc.28, Section IV.]. "The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Thompson v. Sheriff of Indian River Cnty., Fla.*, 2022 WL 1124801, at *3 (11th Cir. 2022) (Citation omitted).

15

## VII. Conclusion.

Deputy Gregory is entitled to summary judgment because he was acting in the good faith execution of his duties, because a reasonable officer in the same circumstances would have believed that consent had been given to enter the home, because the deployment of a Taser in these circumstances did not constitute excessive force, and because Plaintiff's temporary detention was reasonable under the Fourth Amendment. Even if he was mistaken, Gregory's actions constituted mere negligence and he is entitled to immunity under Florida Statutes for the state claims, and to qualified immunity on the federal claims.

Sheriff McCallum is entitled to summary judgment because no constitutional violation occurred, and because even if one occurred, it was not caused by an unconstitutional policy, custom, or practice. Nor was the purportedly unlawful entry based on consent the type of recurring situation which presents an obvious need for training that was not provided.

WORD LIMIT CERTIFICATION

The undersigned certifies that this Reply Memorandum contains 3199 words in compliance with Local Rules 56.1(I) and 7.1(F).

Respectfully submitted this 17th day of November 2023.

/s/ Gwendolyn P. Adkins



Gwendolyn P. Adkins, (FBN: 0949566)
gadkins@coppinsmonroe.com
jclark@coppinsmonroe.com
kwillis@coppinsmonroe.com

Coppins Monroe, P.A.
2316 Killearn Center Blvd., Suite 202
Tallahassee, FL 32309
Office: 850-422-2420 ǀ Fax: 850-422-2730

ATTORNEYS FOR DEFENDANTS
ROBERT B. McCALLUM JR. and
CHASE GREGORY, individually

CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b)(3) and N.D. Florida Local Rule 5.1, this document is being filed electronically and service shall be through the Court's transmission facilities on all persons appearing before this Court.

/s/ Gwendolyn Adkins
Attorney