IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**TERRY DUKES, SR.,**

    **Plaintiff,**

v.                                                              Case No. 1:23-cv-45-AW-HTC

**ROBERT McCALLUM, JR., in his
official capacity as Sheriff of Levy
County, et al.,**

    **Defendants.**

_____/

## ORDER ON SUMMARY JUDGMENT

After he was tased in his bedroom, Plaintiff Terry Dukes, Sr., sued Sheriff's Deputy Chase Gregory (in his individual capacity) and Levy County Sheriff Robert McCallum, Jr., (in his official capacity). ECF No. 11. Defendants moved for summary judgment on all claims, ECF No. 28, and Dukes moved for partial summary judgment, ECF No. 30. Having considered the parties' written arguments and the cited record portions,[1] I now deny Dukes's motion, deny Defendants' motion as to claims against Deputy Gregory, and grant Defendants' motion as to the claim against the Sheriff.

---

[1] Parties must cite "particular parts of materials in the record" to support factual assertions. Fed. R. Civ. P. 56(c)(1)(A). And "[t]he court need consider only the cited materials." Fed. R. Civ. P. 56(c)(3). In my discretion, I decline to consider materials not pinpoint cited in the briefs or addressed in this order. *See* N.D. Fla. Loc. R. 56.1(F).

### STANDARD

To prevail on summary judgment, the movant must show "there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court considers cross-motions separately, with each movant bearing the burden for his respective motion. *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004). In determining each motion, the court must draw all reasonable inferences and resolve all disputes in the evidence in favor of the non-moving party. *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1299 (11th Cir. 2018).

### BACKGROUND

Some basic facts are undisputed.[2] The Levy County Sheriff's Office was investigating a report that Dukes's son, Terry Dukes, Jr., assaulted his pregnant girlfriend.[3] ECF No. 26-1 at 6-7, 29. Officers were warned Junior may be armed and on drugs. ECF Nos. 26-3 at 45, 51-52; 26-14 at 5.

Junior stayed at Dukes's home periodically, so officers thought they might find him there. Deputy Gregory and others went to Dukes's home before sunrise and approached the home from different sides. ECF Nos. 26-3 at 55-56; 29-1 at 6-7; 26-

---

[2] All page citations are to the CM/ECF-generated numbers.

[3] To avoid confusion, this order will refer to Plaintiff as Dukes and to the son as Junior.

5 at 18. The home's back door had an elevated stoop with handrails on the sides, and Deputy Gregory positioned himself against the home, standing on the ground just outside the handrail. ECF Nos. 29-13; 29-2 at 30-31. One officer, Deputy Murphy, announced "Sheriff's Office" and knocked once on the side of the home and twice at the front door. ECF No. 26-5 at 6-7. Dukes responded "I'm coming," opened the back door (where there had been no knocking), and immediately turned and walked away, leaving the back door open. ECF No. 29-1 at 10-12. Deputy Gregory then entered through the open back door. ECF No. 29-2 at 32-34. He did not have a warrant. ECF No. 29-2 at 18.

The home was dark; the only light came from Dukes's phone and officers' flashlights. ECF No. 26-7 at 7-8. Dukes, who was naked, retreated to a bedroom, where there was a firearm on the bed. *Id* at 10-11, 14. The officers told Dukes to get on the ground. *Id.* at 11-13.

There is disagreement about what happened next, although all agree that at least one officer drew his gun, that Deputy Gregory tased Dukes, and that Dukes was handcuffed and detained some fifteen to thirty minutes. ECF Nos. 29-1 at 18, 20; 29-13; 37-1 at 10.

**DISCUSSION**

**Counts I-V (Deputy Gregory)**

Dukes asserts five claims against Deputy Gregory. Counts I, II, and V are state law claims of invasion of privacy, trespass, and false arrest/imprisonment.[4] Counts III and IV are § 1983 claims of unlawful entry, excessive force, and unlawful seizure.[5] Both parties seek summary judgment as to these claims.

Starting with the state law claims, I conclude Deputy Gregory is entitled to summary judgment based on statutory immunity. Under Florida law, officers are not personally liable for actions within the scope of their employment unless they "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). Dukes claims Gregory acted with wanton and willful disregard, ECF No. 30 at 29, which requires conduct "worse than gross negligence" or "more reprehensible and

---

[4] "[U]nder Florida law, 'false arrest and false imprisonment are different labels for the same cause of action.'" *See Rankin v. Evans*, 133 F.3d 1425, 1430 n.5 (11th Cir. 1998) (quoting *Weissman v. K-Mart Corp.*, 396 So. 2d 1164, 1164 n.1 (Fla. 3d DCA 1981)).

[5] Though Dukes labels Count IV as unlawful seizure, he presents arguments relating to both unlawful seizure and excessive force. *See Bashir v. Rockdale Cnty.*, 445 F.3d 1323, 1332-33 (11th Cir. 2006) (distinguishing between a discrete excessive force claim "predicated on the unreasonableness of the quantum of force used under the circumstances" and a subsumed excessive force claim predicated solely on the officers' "lack[ing] the right to make the arrest"). I therefore interpret Dukes's complaint as presenting two separate claims.

unacceptable than mere intentional conduct*,*" *see Coleman v. Hillsborough Cnty.*, 41 F.4th 1319, 1325 (11th Cir. 2022) (quoting *Peterson v. Pollack*, 290 So. 3d 102, 109 (Fla. 4th DCA 2020)).

For purposes of this analysis, I accept as true Dukes's version of events. But even under that version, Gregory's actions do not rise to the level of wanton and willful disregard. Dukes testified that he opened the back door, left it cracked, and walked away. ECF No. 29-8 at 3; ECF No. 29-1 at 11, 16. Deputy Gregory entered and followed Dukes. ECF No. 29-8 at 3-4; ECF No. 29-2 at 33-34. Even if the door was only cracked (as Dukes contends), under all the circumstances, Deputy Gregory's entry was neither "worse than gross negligence" nor "more reprehensible and unacceptable than mere intentional conduct." There is no showing of anything more egregious than Deputy Gregory's misconstruing Dukes's conduct as consent to enter. Deputy Gregory is entitled to summary judgment based on statutory immunity for invasion of privacy and trespass.

The actions in the bedroom present a closer call, but they still do not show "wanton and willful disregard to human rights, safety, or property." Deputy Gregory started directing orders at Dukes and drew his weapon, as Dukes entered his bedroom where a gun laid on the bed by him. ECF No. 26-7 at 11-14. At first, Dukes did not hear or notice Deputy Gregory; once he became aware, he tried to explain they had the wrong person and he needed to get dressed for work. ECF No. 29-1 at

12. Deputy Gregory continued ordering Dukes to get on the ground. *Id.* Dukes eventually obeyed but reached forward to retrieve his pants and cover himself. ECF No. 29-8 at 5. In response, Deputy Gregory tased him. *Id.* He was then put in handcuffs for approximately twenty to thirty minutes. ECF No. 37-1 at 10.

Assuming Dukes's version of events, he was simply retrieving his pants which were not in the same direction as his gun. But he was still moving against Deputy Gregory's orders, while in a dark room with at least one weapon present. A single shot of a taser to stop Dukes in this circumstance—even if inappropriate—does not meet the high bar for wanton and willful disregard. *See Butler v. Gualtieri*, 41 F.4th 1329, 1339-40 (11th Cir. 2022) (noting "Florida's courts have refused to find wanton and willful conduct, as a matter of law, when a police officer grabbed an arrestee by the throat and kicked him, or when three officers sat on top of an ill, diabetic man until he went 'limp'" (citations omitted)); *Coleman*, 41 F.4th at 1328 (finding an officer's actions did not amount to wanton and willful disregard—even if it was enough to amount to battery—when the officer kicked a suspect's feet, pushed and pressed him against the police car, and searched him in a manner that caused temporary pain). And neither does the time Deputy Gregory left Dukes in handcuffs while waiting for the ambulance, when Dukes was emotional and "talking trash." ECF No. 37-1 at 9-10 ("I said, 'I'm going to sue y'all.' That's what I told them. I started to cuss, but I didn't cuss. . . . But I wasn't talking too much trash because I

6

was hurting and mostly crying and everything."); *see also Alexandre v. Ortiz*, 789 F. App'x 169, 174, 177 (11th Cir. 2019) (finding no question of fact as to wanton and willful disregard when the officer made a split-second judgment in tense circumstances, used minimal force in making the arrest, and did not use additional force on the suspect once the takedown measure was complete). Deputy Gregory is entitled to summary judgment based on statutory immunity for the state-law false arrest claim.

As to the federal claims, though, neither side is entitled to summary judgment because there are material factual disputes.

As noted above, it is undisputed that officers knocked and announced themselves, that Dukes announced that he was coming, that Dukes then opened the back door, and that Dukes then turned and retreated inside before Deputy Gregory entered. ECF No. 26-5 at 6-7; ECF No. 29-1 at 10-12; ECF No. 29-2 at 33-34. But the parties disagree about whether Dukes's conduct implied consent to enter.

Whether there was implied consent turns on what "the typical reasonable person [would] have understood by the exchange between the officer and the suspect." *See Florida v. Jimeno*, 500 U.S. 248, 251 (1991). And that turns on a careful consideration of all the circumstances. *See Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 524 (11th Cir. 2019) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 233 (1973)). On Deputy Gregory's telling, a reasonable person would

believe Dukes at least implied consent by "yielding the right-of-way" to allow him inside. *United States v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002); *see also Judd*, 941 F.3d at 525 ("[C]onsent need not be verbal to be valid. Non-verbal cues can signal consent."). On the other hand, a jury might conclude Dukes did not even see Deputy Gregory (who was against the house by the railing) and could not have implied permission for him to enter. *Cf. United States v. Gonzalez*, 71 F.3d 819, 829 (11th Cir. 1996) ("For consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice. . . . [A]s a matter of law, it cannot be said that failure to object to a search equals consent to the search." (cleaned up)), *abrogated on other grounds by Davis v. United States,* 564 U.S. 229, 240 (2011).

And even if a jury concluded Dukes yielded the right-of-way and invited entry, it could still conclude the consent did not extend to Gregory's walking through the kitchen hall to the bedroom, behind a naked Dukes. *See United States v. Blake*, 888 F.2d 795, 800 (11th Cir. 1989) (finding the scope of consent "is defined by the scope of actual consent in the same way that the scope of a search based upon a search warrant is defined by the warrant" (quoting *United States v. McBean*, 861 F.2d 1570, 1573 (11th Cir.1988) (per curiam))). A jury—after considering all the circumstances—could decide either way as to implied consent to enter. Therefore, neither side is entitled to summary judgment on this issue.

The factual disputes also preclude summary judgment based on qualified immunity.[6] "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[7] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To show violation of a clearly established right, Dukes must show that the circumstances are "sufficiently clear that every reasonable officer would have understood" he was not consenting to entry. *See Fuqua v. Turner*, 996 F.3d 1140, 1150 (11th Cir. 2021).[8] But this question still hinges on controverted facts. Dukes's opening the door wide enough that Deputy Gregory could easily be seen and enter, and then making some outward conduct

---

[6] The court's conclusion about statutory immunity (see above) does not resolve the qualified immunity issue. *See Barnett v. MacArthur*, 715 Fed. Appx. 894, 904 (11th Cir. 2017) (noting that "the legal standards for qualified immunity and the state immunity provided by Florida statute differ significantly").

[7] Gregory asserts he was acting within the scope of his discretionary authority during the incident, ECF No. 28 at 43, which Dukes does not dispute. So the burden is on Dukes to prove (1) Gregory violated a statutory or constitutional right and (2) that the right was clearly established at the time. *Fuqua v. Turner*, 996 F.3d 1140, 1146 (11th Cir. 2021). Dukes argues that qualified immunity for § 1983 claims should not exist, contending the concept is inconsistent with § 1983's text. ECF No. 30 at 20-24. This is a nonstarter because this court is bound by precedents holding that qualified immunity is a defense.

[8] "In rare cases, the words of a federal statute or federal constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful. More frequently, however, we must look to case law existing at the time of the violation to see if the right was clearly established." *Bashir*, 445 F.3d at 1331 (cleaned up).

acknowledging Deputy Gregory as he advanced to the bedroom would be different to a reasonable officer than Deputy Gregory responding to a mere cracked open door by following Dukes all the way to the bedroom. *Compare Ramirez-Chilel*, 289 F.3d at 751-52 (finding qualified immunity when there were few officers, their guns were not drawn, and the occupant voluntarily yielded the right-of-way by opening the door and stepping aside), *with Moore v. Pederson*, 806 F.3d 1036, 1052-53 (11th Cir. 2015) (clearly establishing that failure to close the door "without any separate affirmative act or speech demonstrating *voluntary* and *free* consent does not amount to consent to entry to arrest"). On at least one view of the facts, Deputy Gregory's entry was under circumstances that no reasonable officer would have inferred consent. Therefore, Deputy Gregory is not entitled to summary judgment based on qualified immunity as to the unlawful entry claim.

The facts surrounding the unlawful seizure and excessive force claims are similarly murky. An unlawful seizure occurs when an officer makes an arrest without probable cause, meaning an arrest was not objectively reasonable based on the totality of the circumstances. *See Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). But a defendant is entitled to qualified immunity so long as arguable probable cause exists. There is arguable probable when "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as

permitting the arrests." *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023) (quoting *D.C. v. Wesby*, 583 U.S. 48, 50 (2018)).

In addition, an officer may still be liable for excessive force (either together with unlawful seizure or as a discrete claim) if the force was unreasonable considering "(1) the severity of the crime; (2) whether the individual 'pose[d] an immediate threat to the safety of the officers or others'; and (3) whether the individual 'actively resist[ed] arrest or attempt[ed] to evade arrest by flight'" as well as (4) the need for force to be applied; (5) the amount of force applied in light of the nature of the need; and (6) the severity of the injury. *Patel v. City of Madison*, 959 F.3d 1330, 1339 (11th Cir. 2020) (citation omitted).

The factual disputes surrounding the entry carry over here. In addition, Dukes points to his multiple statements clarifying that he was not his son and that he was trying to put on pants. *See* ECF No. 38 at 4; *see also* ECF No. 26-7 at 10 ("Look, I'm just trying to tell you who I am. I'm Terry Dukes Senior. Junior didn't come home last night."); *id.* at 11 ("I'm just trying to explain to you, I'm trying to go to work, you know."). He also points to evidence that Deputy Gregory himself responded to at least one of the statements. *See* ECF No. 38 at 5 ("Gregory responded by saying something to the effect of 'you ain't going to work.'"). Although Deputy Gregory testified that he could not understand what Dukes was saying, *see* ECF No. 26-3 at 98, and that he did not realize it was Dukes rather than Junior until after

11

the deploying the taser, ECF No. 26-14 at 6, a jury could conclude otherwise from the circumstances. Finally, there is a dispute about where Gregory's pants were and the way he reached for them when Deputy Gregory tased him. *Compare* ECF No. 26-7 at 11 ("So I got on the floor on my butt, naked, got on the floor and reached—when I reached for the pants, I say—I kept eye contact with him."), *with* ECF No. 29-10 at 7 ("I then witnessed the male walk from behind the door and toward his bed where the gun was.").

In Dukes's version, Gregory entered Dukes's home without a warrant or consent, then tased and cuffed him despite his statements that he was not the suspect whom Gregory had probable cause to arrest. Based on these circumstances, a jury could find that neither probable cause nor arguable probable cause existed. And even if it concluded there was probable cause, a jury could still find unlawful arrest or excessive force based on the tasing despite Dukes's obeying orders. *See Patel*, 959 F.3d at 1340 ("Proportionality is preeminent in the excessive-force context, and a reasonable jury could conclude that the swift and decisive force [the officer] employed was drastically in excess of what [the suspect's] minor movements warranted.").

On the other hand, Gregory's version establishes he believed the suspect to be Junior until after the tasing and cuffing. Taken as true, a jury could find probable cause (or at least arguable probable cause) existed for the arrest. Further, a jury could

view the use of a taser, in light of the circumstances, as reasonable. *See Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003) ("This circuit has made clear that some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense."). *Compare Rodriguez v. Farrell*, 280 F.3d 1341, 1348-49 (11th Cir. 2002) (finding qualified immunity when officer arrested wrong person who had similar physical features but five-inch height difference with the suspect), *with Cannon v. Macon Cnty.*, 1 F.3d 1558, 1564-65 (11th Cir. 1993) (finding no qualified immunity when officer was on notice that the suspect may not be the perpetrator because of the suspect's repeated assertions of mistaken identity); *and compare Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (finding qualified immunity when officer's tasing to effectuate arrest "was reasonably proportionate to the difficult, tense and uncertain situation that [the officer] faced in this traffic stop" when suspect did not comply with officer's requests), *with Fils v. City of Aventura*, 647 F.3d 1272, 1292 (11th Cir. 2011) (finding no qualified immunity when officer tased "even though [suspect] committed at most a minor offense; he did not resist arrest; he did not threaten anyone; and he did not disobey any instructions"). Neither side is entitled to summary judgment as to Counts III or IV.

**Count VII (Sheriff McCallum)**

Count VII alleges a § 1983 failure-to-train claim against Sheriff McCallum. To prevail, Dukes must show that the officers were inadequately trained or supervised, that the failure to train was the Sheriff's policy or custom, and that the policy caused the officers to violate Dukes's constitutional rights. *See City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989). Because Dukes has not provided evidence to show a policy or custom of inadequate training, the Sheriff is entitled to summary judgment—even assuming there was a constitutional violation. *Great Lakes Ins. SE v. Wave Cruiser LLC*, 36 F.4th 1346, 1357 (11th Cir. 2022) ("Where the non-moving party bears the burden of proof on an issue at trial, the moving party may prevail on summary judgment by showing that the non-moving party has no evidence to support its case." (cleaned up)).

Without a written policy of inadequate training procedures, a pattern of similar constitutional violations by untrained officers to prove "deliberate indifference to the rights of persons" is ordinarily necessary. *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *City of Canton*, 489 U.S. at 388). And in rare circumstances, a single incident reflecting deliberate indifference to a "highly predictable consequence" may suffice. *Id.* at 64 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 398 (1997)).

Sheriff McCallum offered evidence that he provided his officers with over 700 hours of training and ample written policies for lawful entry, use of force, and disciplinary procedures. *See* ECF No. 28 at 18-22; ECF No. 26-12 at 2; ECF No. 26-2 at 13-22. In response, Dukes makes two arguments. One, he argues (without supporting evidence) that the Sheriff maintained inadequate record-keeping before 2017, ECF No. 38 at 25-26, but this is beside the point. This incident was in 2019, and Dukes points to nothing showing any pattern of similar constitutional violations. Two, Dukes points to Lt. Tummond's testimony that the mere opening of a door after a deputy knocks and announces is an invitation to enter, "[o]therwise the door wouldn't have been opened." *Id.* at 25. But Dukes overstates Tummond's position. The record shows this statement was regarding the specific incident and not a general proposition. ECF No. 37-5 at 13. At any rate—even taking Tummond's statement as a broad proposition—the single agent's view does not establish any Sheriff's policy of entering whenever there was an opened door.

Dukes has not pointed to evidence from which a reasonable jury could infer inadequate training showing deliberate indifference. The Sheriff is entitled to summary judgment.

## Conclusion

Plaintiff's motion for partial summary judgment (ECF No. 30) is DENIED. Defendants' motion for summary judgment (ECF No. 28) is DENIED as to Counts

III and IV and GRANTED as to Counts I, II, V, and VII. (There is no Count VI.) Counts I, II, V, and VII are dismissed on the merits.

    SO ORDERED on December 22, 2023.

                                                    s/ *Allen Winsor*
                                                    United States District Judge