UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

| | |
|---|---|
| TERRY DUKES, SR., <br><br> Plaintiff, <br><br> v. <br><br> DEPUTY CHASE GREGORY, <br><br> Defendant. | Case No. 1:23-cv-45-AW-HTC |

**PLAINTIFF'S OMNIBUS MOTION IN LIMINE**
**AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Rules 401, 403, 404 and 609 of the Federal Rules of Evidence, Plaintiff Terry Dukes, Sr. files this Omnibus Motion in Limine and incorporated memorandum of law seeking entry of an order excluding evidence or argument on these matters:

1.   Any reference to Terry Dukes, Sr.'s DUI arrests, including any references to such information in any documents admitted into evidence because such evidence is inadmissible pursuant to Rule 609 and any probative value it may have is substantially outweighed by the risk of unfair prejudice to Mr. Dukes under Rule 403.

2. The sworn criminal complaint and any incident reports pertaining the May 25, 2019 incident should be excluded as hearsay and lacking trustworthiness, or, to the extent the Court disagrees with a blanket exclusion, the out-of-court statements in those reports should be redacted as inadmissible hearsay.

3. The results of the Levy County Sheriff's Office's (LCSO) internal affairs investigation into Deputy Gregory's use of force on Mr. Dukes, including the actual report and witness summaries, as untrustworthy as to the results, findings, and investigation and inadmissible double hearsay as to the witness summaries.

4. "Good" character evidence, such as commendations, letters of recognition, awards, etc., should not be introduced by Deputy Gregory or any other law enforcement witnesses.

5. Speculation about Mr. Dukes' alcohol consumption or possible intoxication on the morning of the incident should be precluded.

6. Argument or evidence of Mr. Dukes' post-incident drug or alcohol use should be excluded under Rules 401, 403, and 404.

7. Any reference to payment of medical expenses or bills by collateral sources should be precluded.

8. Deputy Gregory should be precluded from argument that any award should be set off based on Mr. Dukes's SSDI benefits.

9.     Deputy Gregory and any officer witnesses offered by him should not be permitted to render impermissible argument about community safety or officers risking their lives in the course of their employment.

10.    Deputy Gregory should be prohibited from using any police databases to conduct juror research.

11.    Deputy Gregory should be precluded from introducing any evidence of dismissal of claims or parties from this lawsuit.

12.    Deputy Gregory should be precluded from introducing any out-of-court statements in EMS records generated after the incident as hearsay to which there is no exception.

13.    Deputy Gregory cannot introduce evidence of his financial condition with respect to Mr. Dukes's punitive damages claims because he failed to disclose such evidence to Mr. Dukes in his disclosures or otherwise.

As detailed below, each of these categories of evidence, as well as any associated arguments related to such evidence, should be excluded.

Undersigned counsel for Mr. Dukes met and conferred with counsel for Deputy Gregory by email and a brief teleconference in a good-faith effort to resolve these issues. Deputy Gregory's counsel has not provided a position on these issues yet but indicated that Deputy Gregory would provide any position on agreement, if any, in his response to this motion.

## Memorandum of Law

### A. Legal Standard

The relevance of evidence is a threshold determination for the Court. Fed. R. Evid. 104. Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Even if relevant, evidence "may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *see also Williams v. Consol. City of Jacksonville*, 2006 WL 305916, at *10 (M.D. Fla. Feb. 8, 2006) (granting motion in limine precluding reference to collateral matter "which could confuse the issues, mislead the jury, and lead to a mini-trial on collateral issues causing undue delay"). In determining the relevance of evidence, the Eleventh Circuit has defined "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *U.S. v. Hooks*, 147 F. App'x 956, 957-58 (11th Cir. 2005) (internal quotation marks and citations omitted).

### B. Specific Matters to Be Excluded.

#### 1. Mr. Dukes's DUI Arrests Should Be Excluded.

Trial courts have broad discretion when ruling on the admissibility of prior convictions. *See United States v. Pedroza*, 750 F.2d 187, 202 (2d Cir. 1984). Federal Rule of Evidence Rule 609(b) "prohibits the admission of evidence of past convictions for impeachment purposes if the convictions are more than ten years old, 'unless the

4

court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.'" *Powers v. Target Corp.*, No. 19-cv-60922-BLOOM/Valle, at *11 (S.D. Fla. Apr. 27, 2020) (citing *United States v. North*, No. 1:16-CR-309-WSD, at *5 (N.D. Ga. Nov. 9, 2017) (quoting Fed. R. Evid. 609(b)); *see also Lordeus v. Torres*, No. 1:17-cv-20726, at *1 (S.D. Fla. Mar. 1, 2018). Rule 609 applies when a party uses a prior conviction to attack "a witness's character for truthfulness," and it accordingly applies "in those cases where the conviction is offered only on the theory that people who do certain bad things are not to be trusted to tell the truth." *United States v. Young*, 574 F. App'x 896, 899 (11th Cir. 2014) (quoting Fed. R. Evid. 609(a)).

In the Eleventh Circuit "there is a presumption against the use of prior crime impeachment evidence over ten years old; such convictions 'will be admitted very rarely and only in exceptional circumstances.'" *Powers*, No. 19-cv-60922-BLOOM/Valle, at *11–12 (citing *United States v. Pritchard*, 973 F.2d 905, 908 (11th Cir. 1992) (quoting *United States v. Tisdale*, 817 F.2d 1552, 155 (11th Cir. 1987)). "The danger in admitting stale convictions is that while their remoteness limits their probative value, their prejudicial effect remains." *Pritchard*, 973 F.2d at 908. The proponent must show "exceptional circumstances justifying the use of an over-age prior conviction." *North*, No. 1:16-CR-309-WSD, at *5 (quoting *United States v. Hairston*, 627 F. App'x 857, 860 (11th Cir. 2015)); *see also Young*, 574 F. App'x at 902 ("temporal remoteness of the [prior conviction] depleted . . . any force of probity").

5

Here, Mr. Dukes was arrested for driving under the influence twice—once about two decades ago in Pinellas County, and a second instance in 1996 in Volusia County, in which Mr. Dukes was also charged with unlawful speeding. Mr. Dukes does not recall the disposition of the Pinellas case—a misdemeanor offense—and it does not appear on the public online docket. The Volusia case resulted in Mr. Dukes pleading no contest to misdemeanor DUI and not guilty to speeding. Despite the disposition of the first case, given the lack of recency and probative value, the arrests and dispositions of the criminal cases should be excluded.

### 2. The Officers' Incident Reports and the Sworn Criminal Complaint Should Be Excluded.

After the May 25, 2019 incident, the officers involved generated incident reports detailing their version of the events. Deputy Gregory also issued a sworn criminal complaint against Mr. Dukes, accusing him of resisting arrest, which LCSO ultimately asked the state attorney to abandon. (Doc. 30 at 8–9).  Although a police report may—though hearsay—fall under the Rule 803(8)(c) exception, "[c]ourts considering the issue have held that incident reports by officers involved in excessive force incidents lack the indicia of trustworthiness required for admission under either the business records or public records exceptions to the hearsay rule." *Cook v. Dunn*, 2022 WL 14022105, at *1 (M.D. Fla. Oct. 24, 2022) (citing *Fleming v. Hinds Cnty.*, 2017 WL 1730971, at *2-3 (S.D. Miss. May 1, 2017) (collecting cases for that proposition). Here, the reports and sworn complaint are unreliable and lacking trustworthiness as

documents created by Deputy Gregory and his colleagues—some of whom were previously defendants in the case—, who maintained a self-interest "in portraying their actions in the most reasonable light and the actions of [Mr. Dukes] in the most unfavorable light." *Kokoska v. City of Hartford*, 2014 WL 4724875, at *3 (D. Conn Sept. 23, 2014); *see also McGrew v. Roundtree*, 2011 WL 1789963, at *3 n.2 (M.D. La. Mar. 9, 2011), *report and recommendation adopted*, 2011 WL 1752246 (M.D. La. May 9, 2011) (expressing view that incident reports prepared by security officers who faced potential liability as defendants were self-serving and inherently untrustworthy, and therefore inadmissible hearsay, not subject to the hearsay exceptions set forth in Rules 803(6) and 803(8)); *Lewis v. Velez*, 149 F.R.D. 474, 485-86 (S.D.N.Y. 1993) (holding that incident reports prepared by prison officials involved in excessive force incident lacked indicia of reliability and thus were not admissible as business records).

To the extent the Court disagrees that the entire documents should be excluded, Mr. Dukes alternatively contends that the officers' narratives and statements should be redacted from the reports subject to introduction if the hearsay exceptions are met at trial.

### 3. The Internal Affairs (IA) Investigation Should Be Excluded.

Shortly after the May 25, 2019 incident at his home, Mr. Dukes filed a sworn citizen's complaint with LCSO. (Doc. 38 at 8). In connection with that complaint, the Professional Standards Division of LCSO initiated an investigation on June 17, 2019. (Doc. 26-8 at 31). The Professional Standards investigation into Deputy Gregory

7

ended on September 19, 2019, with a finding that he acted in accordance with LCSO policy. (Doc. 26-8 at 31). Accordingly, Deputy Gregory was exonerated for excessive or unnecessary force not resulting in injury. (*Id.*). During the internal affairs investigation, Lt. Scott Tummond—the investigating officer—took sworn statements of Mr. Dukes, Deputy Gregory, and the other officers, and generated a report with witness summaries, summarizing the recorded sworn statements, and conclusions based on his investigation.

Mr. Dukes contends that the IA report and any testimony about the investigation should be precluded from trial because it is riddled with hearsay, double hearsay, and because of the inherent bias associated with a law-enforcement related investigation. Each point is addressed in turn.

*First*, the report contains Lt. Tummond's summaries of witness interviews in which he paraphrases what Mr. Dukes, Deputy Gregory, and the other officers—some previously defendants here—stated under oath in recorded interviews. For example, where Deputy Gregory stated that Mr. Dukes opened the door so that there was a "little, tiny itty-bitty gap" where he could just see "what appeared to be like a hand in the gap," (Doc. 40 at 1 n. 1) (quoting Doc. 29-4 at 21:00-40), Lt. Tummond wrote in the IA report that Deputy Gregory stated, as summarized, that "[t]he door was opened slightly by an unknown individual from inside, whom he did not see. This person immediately turned and retreated back inside the home." Lt. Tummond's impressions of the recorded statements are inadmissible double hearsay.

8

While factual findings in an IA report may sometimes be admissible as an exception to the hearsay rule, "summaries of interviews that are contained in those reports are also double hearsay that cannot be admitted at trial. . . ." *Jessup v. Miami-Dade Cty.*, 697 F. Supp. 2d 1312, 1322 (S.D. Fla. 2010) *aff'd*, 440 F. App'x 689 (11th Cir. 2011). The summaries are also cumulative of the testimony that the parties will elicit at trial—as the involved officers and Mr. Dukes are anticipated to testify.

    *Second*, the Court should find that the rest of the report—its findings and conclusions—and any testimony about the investigation is not subject to a hearsay exception because the investigation and its result lack trustworthiness. *See United States v. Brown*, 9 F.3d 907, 911 (11th Cir. 1993). According to the Eleventh Circuit in *Brown*, "Congress was aware of the inherent bias that might exist in reports prepared by law enforcement officials in anticipation of trial. Congress, therefore, excluded such matters from the public records exception." *Id.* (citing S.Rep. No. 1277, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 7051, 7064). There is a distinction between a routine police record prepared in a "non-adversarial setting and those resulting from a more subjective investigation and evaluation of a crime." *Id.* (collecting cases). In *Brown*, the Eleventh Circuit believed that the "mechanical record[ation]" of a property receipt was within the type of record envisioned by the drafters of Rule 803(8). *Id.* at 912. Similarly, as the Fifth Circuit observed in *United States v. Quezada*, in the case of "documents recording routine, objective observations, made as part of the everyday function of the preparing official or agency, the factors

9

likely to cloud the perception of an official engaged in the more traditional law enforcement functions of observation and investigation of crime are simply not present." 754 F.2d 1190, 1194 (5th Cir. 1985). Without any motivation other than to "mechanically register an unambiguous factual matter […] such records are, like other public documents, inherently reliable." *Id.*

But that is not the case here. The IA report and underlying investigation was created expressly to determine whether Deputy Gregory was guilty of misconduct. It stemmed from Mr. Dukes' complaint and it involved an investigation of the other officers involved, many of whom were initially named as defendants here. Unlike the mechanical recordation of a receipt, this report and investigation was undertaken by a single officer at LCSO to determine whether his subordinate was guilty of a policy violation. In his deposition, Lt. Tummond explained that he decided not to "sub-serve" Deputy Gregory with a violation related to his entry into the home; his position is that if someone knocks and the door cracks, that's an "invitation to enter" because "otherwise the door would not have opened." (Doc. 30 at 9). The Court should not permit any reference to the investigation, its results, or the findings, absent a party opening the door or for impeachment.

### 4. The Court Should Preclude "Good" Character Evidence.

Deputy Gregory and any defense officer witnesses should be prohibited from introducing police commendations, awards, or similar evidence as impermissible character evidence. *See In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2021 WL

954785, at *1 (N.D. Fla. Mar. 14, 2021) (citing *Leahy v. Salem*, 2011 WL 13263541, at *4 (E.D. Pa. Feb. 4, 2011) (finding plaintiffs could not introduce evidence of plaintiff's military commendations or possible acts of heroics because such evidence did not speak to his truthfulness)). Any such evidence is not probative and goes beyond background evidence. *In re 3M Combat Arms Earplug Pprod. Liab. Litig*, 2021 WL 954785, at *1 (citing *United States v. Brown*, 503 F. Supp. 2d 239, 242 (D.D.C. 2007) (finding evidence of prior police commendations and awards went beyond background evidence). To the extent there is any probative value of this type of evidence, it is substantially outweighed by the risk unfair prejudice under Rule 403.

### 5. Deputy Gregory Should Not Be Allowed to Speculate About Mr. Dukes's Alcohol Consumption.

During his deposition, Mr. Dukes testified that he didn't remember how much he had drank the night of May 24, 2019—his birthday—but that it may have been a 4- or 6-pack of beer before bed. (Doc. 26-7 at 5). Deputy Gregory offered no evidence of Mr. Dukes's blood-alcohol level, nor has he made any statements here or during the internal affairs investigation that suggested Mr. Dukes was intoxicated at the time of the incident. He should be barred from speculating at trial as to whether Mr. Dukes was inebriated on the morning of May 25, 2019.

### 6. Evidence of Post-Incident Drug or Alcohol Use Be Excluded.

Mr. Dukes has testified to, and his medical records reveal, that since the incident he has had excessive alcohol consumption and some minor drug consumption. To the extent Deputy Gregory intends to introduce this evidence, it would constitute improper character evidence under Rule 404, lacks relevance under Rule 401, and any relevance would be outweighed by the unfair prejudice to Mr. Dukes under Rule 403. *Douglas v. Zachry Indus., Inc.*, 2015 WL 12838969, at *3 (M.D. Fla. Sept. 1, 2015).

### 7. Reference to payment of medical expenses and bills by collateral sources should be precluded.

After the incident, Mr. Dukes was treated by various providers, including a hospitalization at the psychiatric ward at Shands at the University of Florida and later at outpatient treatment at Meridian Behavioral. Payments by insurers or collateral sources for those or any other related post-incident treatment should not be referenced or admitted into evidence at trial. *Lizarazo v. Greaves*, 2018 WL 8224944, at *1 (S.D. Fla. June 21, 2018).

### 8. Deputy Gregory may not ask the jury to consider an offset in damages.

After the incident, Mr. Dukes was considered eligible to receive Social Security Disability Insurance, in which he received a retroactive payment along with entitlement to prospective monthly payments. Since the Supreme Court's decision in

*Nw. Airlines, Inc. v. Transport Workers Union of Am.*, 451 U.S. 77, 87–88, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981), a majority of courts have held that there is no right to contribution or setoff for section 1983 cases. *See Katka v. Mills*, 422 F. Supp. 2d 1304, 1308 (N.D. Ga. 2006) (collecting cases). This Court should similarly find that Deputy Gregory may not argue for setoff against Mr. Dukes's SSDI payments, as much as Deputy Gregory intends to raise that issue at trial.

### 9. Deputy Gregory should not confuse or inflame the jury with arguments about officer and community safety.

Based on his earlier sworn statements presuit and during this case, Deputy Gregory will likely argue that his actions—in which he entered Mr. Dukes's home in the dark without a warrant, without greeting Dukes, and admitting that at most he could see a hand in an "itty bitty tiny gap"—were done in a way to ensure officer safety. He will likely also argue about the dangers Junior posed to the community—he had committed a violent act on his pregnant girlfriend—and the necessity to raid the home that morning rather than waiting for a warrant.

Deputy Gregory should be precluded from such arguments because they could have the effect of "heroizing" his actions, which could inflame or confuse the jury on the issues relevant to Mr. Dukes's Fourth Amendment claims. *See Jones v. City of Chicago*, 2017 WL 413613, at *8 (N.D. Ill. Jan. 31, 2017) ("Any general arguments or mentions of police officers risking their lives or their heroism are irrelevant and overly prejudicial to merit admission."); *see also Dyson v. Szarzynski*, 2014 WL 7205591, at *2

13

(N.D. Ill. Dec. 18, 2014) ("'[H]eroizing' the deeds of police officers might unfairly sway a jury into the consideration of matters outside the scope of fact finding.").

### 10. Deputy Gregory should be prohibited from using any police databases for juror research.

To the extent Deputy Gregory intends to use police systems or databases to conduct juror research at trial, the Court should preclude him from doing so. *See Gonzalez v. Olson*, 2015 WL 3671641, at *8 (N.D. Ill. June 12, 2015) ("Police defendants are not in a special position such that they should be able to use private databases to aid them in selecting a civil jury when others cannot, even if [ ] they propose to share their findings with a plaintiff.").

### 11. Deputy Gregory should be precluded from introducing any evidence of dismissal of claims or parties.

The Court should preclude Deputy Gregory from introducing any evidence of Plaintiff's dismissal of several deputies prior to summary judgment and this Court's dismissal of parties and claims at the summary judgment stage. Such dismissals are not relevant and their probative value is "doubtful" and would lead to jury confusion. *See Wajcman v. Investment Corp. of Palm Beach*, 2009 WL 465071, at *4 (S.D. Fla. Feb. 23, 2009) (collecting cases precluding introduction of evidence of settlement with other defendants). Testimony about other claims or defendants would only confuse the issues for the jury and would lead to low probative value, if any.

12. **Deputy Gregory should be precluded from introducing any out-of-court statements in the EMS records as hearsay.**

After the incident, EMS arrived on scene and ultimately transported Mr. Dukes to the hospital. Within the documents generated by EMS, there are narrative statements that describe the state of Mr. Dukes and the events that happened after. (*See, e.g.*, Doc. 26-15 at 3–4). Some of those statements are possibly subject to an exception under the hearsay rules—specifically Rule 803(4)—where Mr. Dukes's out-of-court statements are allegedly captured in the EMS record. But apart from those statements, there are statements and observations that are hearsay to which there is no exception. If Deputy Gregory seeks to introduce this document, with the proper foundation and authentication, then he should not introduce any portions of the document that are not subject to a hearsay exception, the only one being Mr. Dukes's purported out-of-court statements captured in the record.

13. **Deputy Gregory should not be permitted to introduce evidence of his financial condition.**

In his pleadings and Rule 26 disclosures, Mr. Dukes has included a punitive damages claim against Deputy Gregory for his Fourth Amendment claims. Normally, evidence of a defendant's financial condition can be admissible at trial and relevant to the issue of punitive damages. *See Shores of Panama Resort Cmty. Ass'n Inc. v. Halberthal*, 2015 WL 3466127, at *1 (N.D. Fla. June 1, 2015). There is an exception, however, when defendant does not disclose such evidence to plaintiff during the proceedings. *Valdes v. Miami-Dade Cnty.*, 2015 WL 7253045, at *14 (S.D. Fla. Nov. 17, 2015) (citing

*Wharton v. Preslin*, 2009 WL 1850085, at *6 (S.D. Ohio June 26, 2009) (stating that "[i]f [the d]efendant wishes to present evidence of his net worth, [the d]efendant must pursuant to Rule 26(a)(1) and other discovery rules have provided [the p]laintiff with a copy of, and the description or location of, the documentation of his net worth so that [the p]laintiff can have an opportunity to prepare adequately for trial.")). Here, Deputy Gregory disclosed no documentation of his net worth. He should therefore be barred from introducing any such evidence at trial.

    To the extent the Court disagrees and permits Deputy Gregory to introduce evidence of his net worth, then Mr. Dukes should alternatively be entitled to introduce evidence of Deputy Gregory's indemnity under the Florida Sheriffs Self Insurance Program coverage agreement, which includes coverage for damages against Deputy Gregory "as punitive damages unless determined by a court to be contrary to public policy." *See* Coverage Agreement § III(3), attached as **Exhibit 1**. *See In re Wright Med. Tech. Inc.*, 2015 WL 6690046, at *3 n. 7 (N.D. Ga. Oct. 30, 2015) (finding authority under Florida law for the proposition that "insurance coverage for punitive damage awards is relevant and admissible evidence to rebut a defendant's assertion that a punitive damages award would impact its finances").

## Conclusion

    For these reasons, Plaintiff Terry Dukes, Sr. asks the Court to grant this motion.

Dated: January 1, 2024.                    Respectfully submitted,

                                           */s/ James M. Slater*
                                           James M. Slater (FBN 111779)
                                           Slater Legal PLLC
                                           113 S. Monroe Street
                                           Tallahassee, Florida 32301
                                           james@slater.legal
                                           Tel. (305) 523-9023

                                           *Attorneys for Plaintiff*

## Local Rule 7.1(F) Certification

Pursuant to Local Rule 7.1(F), I hereby certify that the above document contains 3,807 words, inclusive of headings, footnotes, and quotations, but exclusive of the case style, signature block and certificates.

                                    By: */s/ James M. Slater*
                                        James M. Slater

## Local Rule 7.1(B) Certification

On December 28, 2023 during a telephone conversation regarding other pretrial matters, the undersigned endeavored to confer on the above in limine issues with counsel for Deputy Gregory. After briefly discussing one or two of the issues, on the same date, the undersigned emailed defense counsel the complete list of 13 in limine items so that she may provide Deputy Gregory's position. At this time, Deputy Gregory has not provided a position but indicated that he is considering the issues and to the extent he agrees to any he will so indicate in his response.

                                    By: */s/ James M. Slater*
                                        James M. Slater