UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TERRY DUKES, SR.,

      Plaintiff,

v.

CHASE GREGORY,

      Defendant.

Case No. 1:23-cv-45-AW-HTC

## PLAINTIFF'S OPPOSED MOTION TO EXCLUDE TESTIMONY OF PAUL J. KILEY

Pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrel Dow Pharms., Inc.*, 509 U.S. 579 (1993) and its progeny, Plaintiff Terry Dukes, Sr. files this opposed motion to exclude the anticipated testimony of defense police practices expert Paul J. Kiley.[1] As set forth below, the opinions offered by Mr. Kiley in his report are the product of an unreliable methodology, constitute improper legal conclusions, are conclusory, or speculative. On this basis, the Court should preclude the defense from offering Mr. Kiley as an expert.[2]

---

[1] Mr. Kiley's expert report was filed at Docket Entry 27-1.

[2] As Mr. Dukes's counsel indicated during January 28, 2026 conference, it is Mr. Dukes's position that neither side's police practices expert is needed at trial. And thus, should the Court grant this motion, Mr. Dukes would also stipulate to the Court's entry of an order excluding his police practices expert Roger Clark.

# I.    DEFENSE EXPERT PAUL J. KILEY'S OPINIONS

The parties will try a Fourth Amendment unlawful entry claim, where the sole legal issue to be decided on liability is whether Deputy Gregory had consent to enter Mr. Dukes's home without a warrant or exigent circumstances.[3]

Deputy Gregory intends to call retired law enforcement officer Paul J. Kiley to offer <u>13</u> purported opinions at trial. (Doc. 27-1 at 7–9). Some of these statements couched as "opinions" are not opinions at all. For example, opinion no. 2 is a statement by Mr. Dukes that his son "had issues with drugs." (*id.* at 7). Opinion no. 12 is that only Mr. Dukes was injured. (*id.* at 9). Additionally, opinions nos. 6-10 relate to what occurred inside the home after the deputies entered, which are not relevant for determining liability in this case. As to the issue of consent or the propriety of entering the home without a warrant, Mr. Kiley offers the following opinions, numbered 1, 3-5, 11 and 13:

1. […] It was with lawful purpose the deputies went to the Bronson address to take the suspect into custody as soon as possible. […] Additionally, it was not prudent or necessary for the deputies to seek a search warrant at that hour of the day as the probable cause arrest would be lawfully executed.

3. Mr. Terry Dukes Sr. described opening the door to his house, although he said he was expecting his son, there is no way the deputies would have known.

---

[3] The remaining issues to be tried go to damages, as the events that occurred in the home after Deputy Gregory's entry have been subsumed into Mr. Dukes's unlawful entry claim.

4.  It has been my professional experience through years or narcotics investigations as a detective and as a detective sergeant there are many occasions residents open their home to the police. There have been occasions when people were arrested or we had an interest in questioning suspects or we were following up on investigative leads and we would contact a resident. On many occasions it has been my experience residents will open the door without a formal verbal greeting and the non verbal invitation with the opening of the door allowed us access. Frequently police officers will employ an investigative tactic know n as knock and talk. The tactic to knock on the door of a home, never standing directly in front of the door to expose yourself to an attack through the door, and ask to speak with the homeowner. Most often the response is to have the police enter the home so neighbors and others to not see the police at the front door. My experience includes arriving in vehicles that are not marked police cars and reducing the profile of police at the home. This tactic very often creates a relationship with the home owner that can reduce attention from the neighborhood and gain a positive relationship by observing their concern form nosey neighbors. On numerous occasions the door was opened and the homeowner backed away from the door while we gained quicker access. There were times when we received verbal approval and there were times when the approval was a non verbal invitation.

5.  It is my professional opinion is was very reasonable for Deputy Gregory to understand the door being opened, after the banging and announcing Sheriff's Office, the open door was an invitation to enter.

11. The deputies executed well planning caution when they approached the home at 900 Patterson St, Bronson, Fl. The planned on how to approach the home safely not to raise any suspicion. The repeated banging on the home, a mobile home feels the impact of banging more than a CBS structure and the repeated announcement while outside the home and inside the home to have clear understanding they were sworn deputy sheriffs as well as they each were in full class B uniform. They used every precaution to have the safest interaction at the home for themselves and anyone in the home.

13. The documents I reviewed including training, policies and actions taken are generally accepted police practices taught at police academies and within bounds of the 4th amendment.

As set forth below, Mr. Kiley should not be permitted to testify to these, or any other, opinions set out in his report, because he provides no methodology, the opinions are conclusory or speculative, or they constitute improper legal conclusions.

## II.    MEMORANDUM OF LAW

### A. Legal Standard Under *Daubert*

When determining expert admissibility, courts consider: (1) the qualifications of the expert to competently testify to the matter at hand; (2) whether the methodologies underlying the conclusions conform with *Daubert*; and (3) whether the testimony's scientific, technical, or specialized nature will be helpful to the jury to understand a fact in issue. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs; each prong is distinct, and courts must take care not to conflate the prongs. *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d at 1333, 1341–42 (11th Cir. 2003)). Finally, even if the expert is qualified and the methodology is reliable, a court may still exclude testimony if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ...." *Daubert*, 509 U.S. at 595 (quoting Fed. R. Evid. 403).

**B. Defense Expert Paul J. Kiley's Inadequate Rule 26(a)(2) Disclosures <u>Warrant His Exclusion</u>**

Here, the entirety of the defense's expert disclosures for Mr. Kiley in this case were filed at Docket Entry 27-1. The sole document attached to the disclosure is Mr. Kiley's report. The defense Rule 26(a)(2) disclosures contain no curriculum vitae for Mr. Kiley or fee schedule, but the report does state that Mr. Kiley has had no publications in the last 10 years and has only provided testimony in a single case in the past 4 years. (Doc. 27-1 at 11). The failure to provide a CV and fee schedule call for exclusion. *Castang v. Kim*, 2023 WL 2370961, at *2 (N.D. Ga. Feb. 2, 2023) ("Failure to make these disclosures ordinarily would result in the testimony being excluded. Fed. R. Civ. P. 37(c)(1)."). Specifically, "[a] party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). It is Deputy Gregory's burden to demonstrate that the failure to comply with the rule is harmless. *Abrams v. Ciba Specialty Chemicals Corp.*, 2010 WL 779283, n. 13 (S.D. Ala. March 2, 2010). Here, while Mr. Kiley provides some educational and experiential background in his report, it is not clear whether the information provided is complete.

C. **<u>Defense Expert Paul J. Kiley's Qualifications</u>**

From the background provided in narrative form in the report, Mr. Dukes addresses Mr. Kiley's qualifications to provide testimony as an expert witness.

The first requirement for the admissibility of expert testimony is that the expert is qualified to testify competently regarding the matters he or she intends to address. *City of Tuscaloosa v. Harcros Chems., Inc*., 158 F.3d at 563. Rule 702 permits a person to qualify as an expert based upon knowledge, skill, experience, training, or education. *Frazier*, 387 F.3d at 1260–61.

Here, Mr. Kiley bases his qualifications on 30-plus years of police experience as well as training experience with the police academy. Mr. Dukes does not doubt that, based on those qualifications, Mr. Kiley can speak to police practices and training. However, where an expert relies solely or primarily on experience to establish the reliability of his opinion, the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* at 1261 (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.)). To fulfill its gatekeeping function, the court must do more than "simply 'taking the expert's word for it.'" *Id.* at 1261 (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.)). Even where an expert's qualifications are not in dispute, a proponent of expert testimony bears the burden to establish that the testimony is

reliable. *Quiet Tech*, 326 F.3d 1333, 1341–42 (11th Cir. 2003). The proponent

must demonstrate that it is more likely than not that the proposed expert testimony

will meet the admissibility requirements of Rule 702, as governed by Rule 104(a).

See Fed. R. Evid. 702 advisory committee's note (2023 amends.) The 2023

amendment also stresses the importance that an expert's opinion must "stay within

the bounds of what can be concluded from a reliable application of the expert's

basis and methodology" under Rule 702(d). *Id.* ("[The amendment] does not

permit the expert to make claims that are unsupported by the expert's basis and

methodology.").

### D. <u>Mr. Kiley's Opinions Lack Reliability and Helpfulness</u>

The court's "reliability" inquiry focuses on an expert's methodology, not his

conclusions, and the proponent of expert testimony need not show that the opinion

proffered is scientifically correct, but only, based upon a preponderance of the

evidence, that the opinion is reliable. *See Daubert*, 509 U.S. at 595; Fed. R. Evid.

702 advisory committee's note (2000 amends.). Nonetheless, an expert must know

"facts which enable him to express a reasonably accurate conclusion as opposed to

conjecture or speculation," *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th

Cir. 1988), and an expert's assurances that he has used generally accepted

scientific methodology are insufficient, *McClain v. Metabolife Intern., Inc.*, 401

F.3d 1233, 1244 (11th Cir. 2005) (citation omitted).

To evaluate the reliability of scientific expert opinion, courts consider, to the extent practicable: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique and (4) whether the technique is generally accepted in the scientific community. *See Frazier,* 387 F.3d at 1261–62. These factors are not exhaustive. *See id.* "As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

Here, Mr. Kiley's opinions fail the reliability and helpfulness prongs under *Daubert*. Each opinion is addressed in turn.

### 1. Opinion 1 on the prudence or necessity of a warrant and facts surrounding the decision to go to Mr. Dukes's home that morning

Mr. Kiley's first opinion summarizes the facts about Mr. Dukes's son and the offense leading the officers to go to Mr. Dukes's home. It explains that the purpose of the visit was "lawful"; there was a concern for safety; statements about Mr. Dukes's son's possible drug use and state of mind; and a statement about it not

8

being prudent or necessary for Deputy Gregory and his fellow officers to first obtain a warrant before going to Mr. Dukes's home.

These statements fail the reliability prong because they are recitations of facts, conclusions on "lawfulness" and whether the officers should have waited to obtain a warrant. This is not a methodology under *Daubert*. There is no identifiable principle, framework, or body of knowledge that generates a reproducible answer to whether officers *should have* obtained a warrant. The opinion rests on Mr. Kiley's subjective judgment about officer decision-making, not on any testable or peer-reviewed standard. There is no field of expertise that produces conclusions about whether a particular warrant decision was prudent. And the opinion would be the same regardless of who the expert was or what training they had, which is a signal that the opinion reflects advocacy rather than expertise. These statements are therefore both unreliable and unhelpful.

While the Court may acknowledge Mr. Kiley's general qualifications, "to allow [him] to give a subjective opinion merely because he is an expert and experienced in the field would eliminate the requirement of reliability." *King v. Cessna Aircraft Co.*, 2010 WL 1980861, at *4 (S.D. Fla. May 18, 2010). *See also Banuchi v. City of Homestead*, 606 F. Supp. 3d 1262, 1269 (S.D. Fla. 2022) ("Reliability of the methodology requires 'an exacting analysis of the proffered expert's methodology.'") (citation omitted); *Cordoves v. Miami-Dade Cnty.*, 104 F.

Supp. 3d 1350, 1363 (S.D. Fla. 2015) (granting motion to strike expert testimony where the findings were "not based on reliable principles and methods"); *United States v. Masferrer*, 367 F. Supp. 2d 1365, 1375–76 (S.D. Fla. 2005) (finding the proffered expert's proposed testimony to be unreliable because it was merely conclusory ... and fails to specifically identify the methodology or reasoning he used to" draw his conclusion).

### 2. Opinion 2 on whether Mr. Dukes stated his son had issues with drugs

Simply put, this is not an opinion. There is no methodology or basis to allow Mr. Kiley to opine about Mr. Dukes's statement regarding his son. Mr. Kiley's conjecture or statements about this would similarly be unhelpful to the jury.

### 3. Opinion 3 on whether the deputies knew Mr. Dukes was opening the door for his son

Mr. Kiley's testimony on whether the deputies knew or could know that Mr. Dukes intended to open the back door to his son is not the province of an expert. Deputy Gregory and his fellow officers can testify about that. Otherwise, Mr. Kiley's testimony on this subject is only bolstering or advocacy based on unsupported belief. *See Silcox v. Hunter*, 2018 WL 3633251, * 29 (Fla. M.D. July 31, 2018). Mr. Kiley was not there at Mr. Dukes's home, and he cannot provide an opinion about what the parties knew or believed. *Goldberg v. Fla. Int'l Univ. Bd. Trs.*, 2019 WL 692780, at *2–3 (S.D. Fla. Feb. 7, 2019) (holding an expert could

not testify to information provided by the retaining party or to conclusions he reached based solely on information "provided to him by [the p]laintiff's counsel" on data that "he had conducted no independent research or analysis" on).

### 4. Opinion 4 on invitations to enter the home by residents

Here, Mr. Riley opines that "there are many occasions residents open their home to the police" and provides some anecdotes from his career about entering a home without a warrant.

The opinion has no methodology whatsoever. It is a recollection of Mr. Riley's career experiences, with no analytical framework connecting those experiences to any principle. Consider what is being offered: Mr. Riley is opining, in essence, "during my career, people often let us into their homes." That is an anecdote, not an expert opinion. It has not been peer reviewed, and it reflects no generally accepted standard in any relevant field. Even experience-based expert testimony must demonstrate that the expert applied their experience reliably and with appropriate methodology to the specific facts at hand. This opinion does neither. It does not even attempt to connect the Mr. Riley's general career observations to the specific issue here about Deputy Gregory's entry into the home. The constitutional validity of consent turns on the specific circumstances of each encounter, including whether consent was voluntary, uncoerced, and undertaken as a result of "meaningful communication." *Dukes v. Sheriff of Levy Cnty., Fla*., 155

F.4th 1291, 1299–1300 (11th Cir. 2025); *see also, e.g.*, *United States v. Burwell*, 763 F. App'x 840, 847 (11th Cir. 2019) (politeness of the specific encounter militated towards consent).

The proposed testimony here amounts to a post-hoc rationalization of police conduct, not an independent expert assessment. Indeed, there exists robust social and behavioral science on the voluntariness of consent and underlying psychology, *see, e.g.*, Vanessa K. Bohns & Roseanna Summers, *Consent searches and underestimation of compliance: Robustness to type of search, consequences of search, and demographic sample*, JOURNAL OF EMPIRICAL LEGAL STUDIES (Dec. 26, 2023), https://doi.org/10.1111/jels.12375, yet Mr. Kiley does not cite to any such research or studies to render his anecdotal conclusions that people generally let police into their homes without a warrant. Here, where the opinion is merely "connected to existing data only by the *ipse dixit* of the expert." *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)). It is therefore both unreliable and unhelpful and must be excluded.

### 5.  Opinion 5 that opening the door was an invitation to enter

Mr. Kiley's next opinion is an effort to invade Court's role to be the jury's only source of law. *Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness also may not testify to the legal implications of

conduct; the court must be the jury's only source of law."). Indeed, whether it was "reasonable" for Deputy Gregory to believe that the opening the door was an invitation is based on application of facts and law, and not any scientific methodology. Moreover, allowing Mr. Kiley to tell the jury that Deputy Gregory had implied consent to enter the home "would essentially remove from the jury the task of applying standards of reasonableness and replace it with the task of evaluating the testimony" of the expert. *Lizarazo v. Greaves*, 2018 WL 8224943 (S.D. Fla. June 1, 2018) (citation omitted).

Not only that, but Mr. Kiley's reliance on his training and experience here does not neutrally evaluate whether a civilian like Mr. Dukes experience coercion. There is no neutral scientific methodology. Permitting Mr. Kiley to testify that the encounter was consensual because of Mr. Kiley's training and experience creates a tautology: the encounter was consensual because it fits within Mr. Kiley's background. That is a rationalization, not an empirical methodology, as defined by *Daubert*. More troubling is that Mr. Kiley's anecdotes about invitation do not consider that there was no "meaningful communication" in this instance, as required by controlling precedent. To the extent that Mr. Kiley would opine that this encounter was reasonable, his opinion, while anecdotal, unscientific, and unreliable, would also be contradicted by Fourth Amendment jurisprudence.

Moreover, Mr. Kiley's opinions are unhelpful. Although an expert may testify as to ultimate issues of fact, he may not tell the jury what result to reach. *See Cordoves v. Miami-Dade Cnty.*, 104 F. Supp. 3d 1350, 1364 (S.D. Fla. 2015) (citing *Montgomery*, 898 F.2d at 1541. Put differently, an expert cannot testify to the "legal implications of conduct" or "explain to the jury what the applicable legal standards are." *Id.* (quotation marks and citations omitted); *Bouton v. Ocean Properties, Ltd.*, 2017 WL 4792488, at *14 (S.D. Fla. Oct. 23, 2017) (same). The "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262–63 (alteration added; citing 4 Weinstein's Federal Evidence § 702.03(2)(a)). That is the case here.

### 6.  Opinions 6-10 on the events that occurred inside the home are irrelevant

Next, Mr. Kiley plans to testify about the reasonableness of the officers' conduct inside the home. Because the issues on liability have narrowed since Mr. Kiley's report, these opinions have no relevance, as the sole legal question on liability is whether Deputy Gregory had consent to enter to home without a warrant or exigent circumstances. *Signature Pharmacy, Inc. v. Soares*, 2010 WL 8400099, at *1 (M.D. Fla. July 1, 2010) ("Nevertheless, given the narrow issues to be tried, the Court sees little relevance in his testimony."); *Daubert*, 509 U.S. at 591 (expert testimony must be "relevant to the task at hand"); *see also* Fed. R. Evid. 402.

14

### 7. Opinion 11 on the reasonableness and safety used in approaching the home and the acoustic effects of banging on a mobile home versus a concrete block structure

First, Mr. Kiley is not being offered, as far as his report explains, as an expert on acoustics or building structures. He offers no methodology, experience, or qualifications or basis for his opinion that "a mobile home feels the impact of banging more than a CBS structure." (Doc. 72-1 at 9). The Court should not permit him to testify on something for which he has no reliable methodology or qualification.

Second, Mr. Kiley's opinions regarding safety and precaution, such as that the officers employed "every precaution to have the safest interaction" at Mr. Dukes's home, are unsupported by any reliable methodology or empirical evidence, other than Mr. Kiley's speculation or *ipse dixit*. *Joiner*, 522 U.S. at 146. Such opinions are therefore unhelpful and unreliable.

### 8. Opinion 12 on injuries

Mr. Kiley opines that Mr. Dukes alone was injured during the incident. This is undisputed, but also not within the province of expert testimony. Mr. Kiley should not be permitted to testify regarding injuries for which he has no first-hand knowledge or medical expertise.

### 9. Opinion 13 on review of unnamed documents and whether they comport with the Fourth Amendment

Mr. Kiley's final opinion is that the "documents [he] reviewed including training, policies, and actions taken are generally accepted police practices taught at police academies and within the bounds of the 4th amendment." (Doc. 72-1 at 9). This opinion fails for several reasons.

First, Mr. Kiley fails to list specifically what policies or training materials he reviewed. Other than reports and discovery materials, the only matters identified by Mr. Kiley are "LCSO General Orders." But what orders? And how do those specific orders demonstrate generally accepted police practices? Again, Mr. Kiley offers a broad-sweeping opinion unmoored from any methodology or accepted practice. He does not explain how a specific policy is relevant to anything here.

Second, even if Mr. Kiley could identify a specific policy, training, or practice, the sole legal question on liability is whether during this specific interaction Deputy Gregory had consent to enter the home. The training and policies of the Sheriff's Office are not relevant to determining whether the facts at hand here demonstrate knowing and voluntary consent or meaningful communication. Thus again, Mr. Kiley's opinions would invade the Court's function of being the sole authority of the law for the jury.

Third, if Mr. Kiley is qualified to speak about generally accepted Fourth Amendment practices, nothing in the report explains that qualification or methodology other than his experience that "during my career, people often let

16

[police] into their homes." That is simply not helpful or reliable expert testimony. And if it were, it would serve only to bolster Deputy Gregory's arguments for consent.

Essentially, taking Mr. Kiley's argument, the jury would conclude that because Mr. Dukes opened the door, he was letting Deputy Gregory into the home. That is, the opinion implicitly asks the jury to accept a legal conclusion—that a homeowner opening a door without speaking, constitutes consent to enter—without providing any methodological basis for that conclusion. The Fourth Amendment's consent doctrine requires voluntariness assessed under the totality of the circumstances. Absent a request for admittance or "meaningful communication"—here there was none—it is not lawful for an officer to enter a home under these circumstances without a warrant or exigency.

In sum, the jury would not be aided by this testimony. They would simply be told to defer to Mr. Kiley's career impression, which is the opposite of what the helpfulness and reliability prongs require.

### III.    <u>CONCLUSION</u>

For all these reasons, Plaintiff Terry Dukes, Sr. requests that the Court enter an order excluding defense expert Paul J. Kiley from testifying at trial.

Dated: March 5, 2026.

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
Slater Legal PLLC
2296 Henderson Mill Rd NE #116
Atlanta, Georgia 30345
james@slater.legal
Tel. (404) 458-7283

*Attorneys for Plaintiff Terry Dukes, Sr.*

## Certification Pursuant to L.R. 7.1(B)

Pursuant to Local Rule 7.1(B), I hereby certify that I have conferred with counsel for Defendant Deputy Gregory on the relief requested herein. Deputy Gregory opposes this motion.

By: */s/ James M. Slater*
James M. Slater

## Certification Pursuant to L.R. 7.1(F)

Pursuant to Local Rule 7.1(F), I hereby certify that the above document contains fewer than 4,400 words, inclusive of headings, footnotes, and quotations, but exclusive of the case style, signature block and certificates.

By: */s/ James M. Slater*
James M. Slater