UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TERRY DUKES, SR.,

   Plaintiff,      CASE NO. 1:23-cv-45-AW-HTC

v.

ROBERT B. McCALLUM JR.
and CHASE GREGORY,

   Defendants.

_____/

## DEFENDANT CHASE GREGORY'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF PAUL J. KILEY

Pursuant to Local Rule 7.1(E), Defendant Chase Gregory ("Gregory") hereby responds in opposition to Plaintiff's Motion to Exclude Testimony of Paul Kiley [Doc. 66], Gregory's designated expert. For the reasons stated herein, the motion should be denied.

## Background

A single claim remains pending in this case. Count III sues Chase Gregory, individually, for his allegedly unlawful entry into Plaintiff's home on May 25, 2019. The claim is brought via 42 U.S.C. §1983 as an

alleged violation of Plaintiff's Fourth Amendment right against unreasonable search and seizure.

On October 15, 2023, pursuant to Fed. R. Civ. P. 26(a)(2), Gregory disclosed Paul J. Kiley ("Kiley") as a testifying expert witness, along with Kiley's signed report which explained that Kiley intended to offer expert opinions "regarding police policy, police practices, and police procedures." [Doc.27-1, p. 3].

Kiley stated that his opinions were based upon his "31 years and 4 months of experience as a police officer, police detective, police sergeant, police detective sergeant, police captain, and police major," along with his "current position as a police academy director of law enforcement training." [Doc.27-1, p. 3]. Later in his report, Kiley elaborated further on his education, training, experience, and role as training director. [Doc. 27-1, pp. 10-11].

Kiley's report went on to explain that, in reliance upon certain facts in this case, and based upon his application of a methodology arising from certain aspects of his expertise in police training, practices, and procedures, he had reached certain expert opinions related to, among

other things, some of the circumstances leading up to Gregory's decision to enter Plaintiff's home. [Doc. 27-1, pp.3-8].

Plaintiff now moves to exclude Kiley's testimony in its entirety pursuant to Fed. R. Evid. 702, and Daubert v. Merrel Dow Pharms., Inc., 509 U.S. 579 (1993) and its progeny. In support, Plaintiff argues that Gregory's Rule 26(a)(2) disclosure was inadequate and that Kiley's opinions lack reliability and helpfulness. [Doc. 66, pp;. 5-17].

As will be shown, Gregory's disclosure complied with Rule 26(a)(2), save the inadvertent omission of Kiley's fee schedule from his report, which was harmless and has been curred now that Plaintiff has finally brought it to Gregory's attention. Further, under the standards imposed by Rule 702 and Daubert, Kiley is well-qualified and his reported opinions are both reliable and helpful to the jury. Consequently, they are admissible.

I.    **Gregory's disclosure complied with Rule 26(a)(2), save an inadvertently omitted fee schedule. That error was harmless and has been cured.**

Fed. R. Civ. P. 26(a)(2) requires that a party retaining a witness to provide expert testimony in a case must disclose the witness's name and

the witness's signed, written report containing specific information about the witness's qualifications and opinions.

Fed. R. Civ. P. 37(c)(1) enumerates sanctions that a Court may choose to impose if a party fails to provide information required by Rule 26(a), including the exclusion of that witness or information from trial, unless the failure "was substantially justified or is harmless." For purposes of this analysis,

> "substantial justification" is justification "to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." Hewitt v. Liberty Mut. Grp., Inc., 268 F.R.D. 681, 682 (M.D. Fla. 2010) (quotations omitted). "A failure to timely make the required disclosures is harmless when there is no prejudice to the party entitled to receive disclosure." Id. at 683. The party that failed to comply with Rule 26(a) bears the burden of establishing that its untimely disclosure was either substantially justified or harmless. Bresler v. Wilmington Trust Co., 855 F.3d 178, 190 (4th Cir. 2017); Wilson v. Bradlees of New England, Inc., 250 F.3d 10, 21 (1st Cir. 2001); Hewitt, 268 F.R.D. at 683. "The district court has broad discretion in determining whether a violation is justified or harmless." Abdulla v. Klosinski, 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012).
>
> [. . .]
>
> When exercising its discretion to determine whether a Rule 26 violation is substantially justified or harmless for purposes of a Rule 37(c)(1), courts may consider the following factors:
>
> > (1) the extent of the surprise to the party against whom the evidence would be offered;

(2) the ability of the parties to cure the surprise and its effects;

(3) the extent to which allowing the evidence would disrupt the trial;

(4) the importance of the evidence;

(5) the party's explanation for its untimely disclosure of the evidence; and

(6) whether it appears that that disclosing party was merely negligent or acted intentionally to obtain an unfair advantage.

See Howe v. City of Akron, 801 F.3d 718, 747 (6th Cir. 2015); CQ, Inc. v. TXU Min. Co., 565 F.3d 268, 280 (5th Cir. 2009); Romero v. Drummond, Co., 552 F.3d 1303, 1321 (11th Cir. 2008); OFS Fitel, LLC, 549 F.3d at 1365; S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 596-97 (4th Cir. 2003); Abdulla, 898 F. Supp. 2d at 1359. Courts should differentiate between "innocent" mistakes which truly are harmless from intentional acts by a party that are designed to game the system. Bisig v. Time Warner Cable, Inc., 940 F.3d 205, 219 (6th Cir. 2019); OFS Fitel, LLC, 549 F.3d at 1365 (analyzing the facts surrounding a failure to produce an expert report to determine if it was the result of "willful delay or stonewalling").

Lamonica v. Hartford Ins. Co., 336 F.R.D. 682, 685 (N.D. Fla. 2020).

Here, with the minor exception of Kiley's fee schedule, which was mentioned as "attached" but inadvertently omitted, see [Doc.27-1,p.11], Kiley's report completely complied with the requirements of Rule 26(a)(2):

"(i) a complete statement of all opinions the witness will express and the basis and reasons for them;" <u>See</u> [Doc.27-1, pp.7-11].

"(ii) the facts or data considered by the witness in forming them;" <u>See</u> [Doc.27-1, pp.3-11].

"(iii) any exhibits that will be used to summarize or support them;" <u>See</u> [Doc.27-1, pp.9-10].

"(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;" <u>See</u> [Doc.27-1, pp.10-11].[1]

"(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition;" <u>See</u> [Doc.27-1, p.11].

"(vi) a statement of the compensation to be paid for the study and testimony in the case." <u>See</u> [Doc.27-1, p.11 ("My fee schedule is attached.")].

<u>See</u> Fed. R. Civ. P. 26(a)(2).

The inadvertent omission of Kiley's fee schedule is harmless to Plaintiff, and the undersigned has since provided it to Plaintiff's counsel. There is no "surprise" as to Plaintiff's anticipated testimony, nor is there any delay of trial. Indeed, Plaintiff has had Kiley's report for **years** and

---

[1] Plaintiff asserts without support that this requirement somehow compels the inclusion of a "curriculum vitae (CV)." Such a requirement ignores the plain language of the rule and would needlessly put form over function. Kiley's report very clearly lays out his qualifications over the course of several paragraphs, recounting in detail his professional training and experience, as well as his post-secondary education, which included earning both a bachelor's and master's degree. [Doc.27-1,pp. 3, 10-11].

has only now brought the issue to Defense Counsel's attention through his instant motion. Clearly, its temporary omission has not prejudiced Plaintiff in any way.

For the foregoing, no sanction is warranted, let alone the extreme sanction of excluding Kiley's testimony altogether.

## II.    Under Rule 702 and <u>Daubert</u>, Kiley is well-qualified and his opinions are both reliable and helpful to the jury.

The admissibility of expert testimony is governed by the three-pronged test mandated by Fed. R. Evid. 702 and <u>Daubert</u>: whether "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." <u>Hendrix v. Evenflo Co.</u>, 609 F.3d 1183, 1194 (11th Cir. 2010).

While this Court must serve as a gatekeeper in its application of the three prongs, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." <u>Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.</u>, 326 F.3d 1333, 1341 (11th Cir.

2003). Rather, the proffering party must simply show admissibility by a preponderance of the evidence. See Fed. R. Evid. 702; Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

The qualification prong is a low hurdle. An expert is qualified if they possess "knowledge, skill, experience, training, or education" that will help the jury understand the evidence or determine a fact at issue. Fed. R. Civ. P. 702. Thus, "so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." Vision I Homeowners Ass'n v. Aspen Specialty Ins. Co., 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (cleaned up) (citing Kilpatrick v. Breg, Inc., Case No. 08-10052-CIV, 2009 U.S. Dist. LEXIS 76128, 2009 WL 2058384 (S.D. Fla. June 25, 2009); Hendrix v. Evenflo Co., Inc., 255 F.R.D. 568, 585 (N.D. Fla.2009)).

To his credit, Plaintiff's motion concedes the sufficiency of Kiley's qualifications vis-à-vis the subject of his anticipated expert testimony in this case, acknowledging: "Here, Mr. Kiley bases his qualifications on 30-plus years of police experience as well as training experience with the police academy. Mr. Dukes does not doubt that, based on those qualifications, Mr. Kiley can speak to police practices and training." See

[Doc. 66, p. 6]. It is those matters, within the context of the facts of this case, about which Kiley will opine, and he is clearly qualified to do so. <u>See</u> [Doc. 27-1, pp. 3, 10-11]. <u>See, e.g.</u>, <u>Feliciano v. City of Miami Beach</u>, 844 F. Supp. 2d 1258, 1263 (S.D. Fla. 2012) (finding former law enforcement officer with approximately 25 years of experience qualified to render opinions concerning police practices, and noting that any weaknesses in the witness's opinions may be the subject of cross-examination at trial).

Plaintiff's motion instead focuses on the second and third admissibility prongs: reliability and helpfulness. As a threshold matter, Gregory agrees there may be some opinions expressed in Kiley's report which will not be relevant given the elimination of some claims.

The bulk of Plaintiff's argument with respect to the rest of Kiley's opinions repeatedly contend that the opinions arise from a methodology premised upon Kiley's training and experience, and that this methodology fails to satisfy the "scientific" factors discussed by the Eleventh Circuit in <u>United States v. Frazier</u>, 387 F.3d 1244 (11th Cir. 2004). [Doc. 66, pp.7-13, 15]. Therefore, Plaintiff concludes, Kiley's opinions are inadmissible for lack of reliability. [Doc. 66, pp. 7-13, 15].

Plaintiff's argument ignores: (1) the <u>Frazier</u> Court's caveat that scientific factors—such as testing, peer review, error rates, and general acceptance—are "illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion[,]" <u>id.</u> at 1262; (2) the reality that Kiley is not offering scientific opinions; and (3) that "[a]lthough an opinion from a non-scientific expert should receive the same level of scrutiny as an opinion from an expert who is a scientist, some types of expert testimony will not naturally rely on anything akin to the scientific method, and thus should be evaluated by other principles pertinent to the particular area of expertise." <u>Washington v. City of Waldo</u>, No. 1:15CV73-MW/GRJ, 2016 U.S. Dist. LEXIS 91790, at *7-8 (N.D. Fla. Mar. 1, 2016) (citing Fed. R. Evid. 702, Advisory Committee Notes (2000)).

In his report, Kiley explains that his opinions in this case regarding Defendant Gregory's perception and understanding of the circumstances, as they bear upon the issue of Plaintiff's consent to Gregory's entry into Plaintiff's home, are based upon Kiley's training, experience, and expertise in police training, practices, and procedure applied to those

10

facts. [Doc. 27-1, pp. 7-8]. This includes Kiley's years of experience in residential contacts in which people were arrested or questioned following the application of a law enforcement tactic known as "knock and talk." [Doc. 27-1, pp. 7-8]. Kiley goes on to elaborate that his training and experience includes associated decisions regarding the existance of consent based upon the circumstances presented, including *inter alia* the variety of verbal and non-verbal consents to entry that law enforcement officers must parse during those interactions. [Doc. 27-1, pp. 7-8].

Contrary to Plaintiff's bare assertions to the contrary, "there is nothing inherently unreliable" about this type of methodology applied by a police practices expert. Gomez v. Koffinas, No. 6:23-cv-1824-GAP-RMN, 2025 U.S. Dist. LEXIS 200249, at *8-9 (M.D. Fla. Oct. 9, 2025); Indeed, Florida District Courts appear to routinely deny Daubert challenges on the basis argued by Plaintiff. See, e.g., id.; Washington v. City of Waldo, No. 1:15CV73-MW/GRJ, 2016 U.S. Dist. LEXIS 91790, at *7-8 (N.D. Fla. Mar. 1, 2016); Kobie v. Fifthian, No. 2:12CV98, 2014 U.S. Dist. LEXIS 56438, 2014 WL 1652421, at *8 (M.D. Fla. Apr. 23, 2014); Bussey-Morice v. Kennedy, No. 6:11CV970, 2012 U.S. Dist. LEXIS 187903, 2012 WL

11

7992419, at *3 (M.D. Fla. Dec. 28, 2012)). Respectfully, this Court should do so here.

Plaintiff next argues that Kiley's recitation of particular facts are impermissible as they do not constitute opinions. [Doc. 66, pp.8-9]. While Plaintiff is correct that statements of fact are not opinions, that does not automatically render them inadmissible. "[A]n expert is . . . permitted to base his opinion on a particular version of the disputed facts[.]" <u>See Feliciano v. City of Miami Beach</u>, 844 F. Supp. 2d 1258, 1265 (S.D. Fla. 2012) (quoting <u>Walker v. Gordon,</u> 46 F. App'x 691, 695-96 (3d Cir. 2002)). Moreover, a version of the disputed facts may arise even from "facts or data which would otherwise be inadmissible, such as hearsay, if other 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion.' " <u>Broussard v. Maples</u>, 535 F. App'x 825, 828 (11th Cir. 2013) (quoting Fed. R. Evid. 703).

The facts at issue included in Kiley's report are clearly those he believed to be true and that informed his application of his training and experience methodology when forming his subsequent opinions.[2] <u>See,</u>

---

[2] Plaintiff's motion does not dispute the truth of the asserted facts themselves or their supporting evidence, so Gregory will not recount and attached the sources here. Suffice it to say, Kiley's facts arose from the

e.g., [Doc.26-1, p. 7 (Kiley notes the fact that "[Plaintiff] stated on 6/26/19,

his son had issues with drugs," and begins a subsequent opinion with the

assertion that "It has been my professional experience through years of

narcotics investigations as a detective and as a detective sergeant [. . .]").

Therefore, Kiley's recitation of the limited facts at issue is permissible.

Once these statements are offered to the jury, however, it will be up to

the jury to decide whether they **also** believe the fact that Kiley relied

upon, and to assign more or less credibility to Kiley's associated opinions

accordingly. See, e.g., Feliciano, 844 F. Supp. 2d at 1265.

### III.   Plaintiff's additional arguments are without merit.

The remainder of Plaintiff's motion presents two straw man

arguments that will be addressed in turn.

First, Plaintiff argues "Mr. Kiley's testimony on whether the

deputies knew or could know that [Plaintiff] intended to open the back

---

documents he reviewed and listed in his report, like law enforcement incident reports and sworn deposition, many of which are already part of the record in this case. [See Docs. 26; 27-1 pp. 9-10; 29; 37]. "This evidence is precisely the kind reasonably relied on by experts in the field" of police practices. Knight v. Miami-Dade Cty., 856 F.3d 795, 809 (11th Cir. 2017). Should this Court's ruling turn on the need for the documents, Gregory respectfully requests to be permitted to amend this response in order to provide them.

door to his son is not the province of an expert" and "is only bolstering or advocacy based on unsupported belief." [Doc. 66, p. 10].

That argument misrepresents Kiley's report and is without merit. Kiley did not include in his report an opinion about what the deputies knew about Plaintiff's intentions at all. Rather, Kiley opined in his report only that "there is no way the deputies would have known" that Plaintiff "was expecting his son" when Plaintiff was "opening the door to his house." [Doc. 27-1, p. 7]. Further, contrary to Plaintiff's bare assertion otherwise, Kiley's opinions are directly supported by his understanding of the facts leading up to Gregory's actions at Plaintiff's door. See [Doc. 27-1, pp. 3-7]. Upon Kiley's application of his police training and practices methodology to those facts, he offers his opinion. [Doc. 27-1, p. 7].

As the Eleventh Circuit explained in its recent opinion in this case, the issue at bar—"whether [Plaintiff] consented to Officer Gregory's entry—turns on the 'totality of all the circumstances.' " Dukes v. Sheriff of Levy Cty., 155 F.4th 1291, 1297 (11th Cir. 2025) (quoting Gill v. Judd, 941 F.3d 504, 522 (11th Cir. 2019)).

Kiley's testimony would inform the jury of the relevant police training and practices given officers to inform their view of the "totality

14

of all the circumstances." Put more pointedly, Kiley's testimony will help the jury to understand whether, somewhere in the "police training and practices" totality not readily understandable to the layman, there existed a reasonable belief of consent to Gregory's entry.[3] The opinions of a police practices expert are clearly helpful to the trier of fact on the issue of the reasonableness of an officer's actions under the circumstances. See, e.g., Gomez, No. 6:23-cv-1824-GAP-RMN, 2025 U.S. Dist. LEXIS 200249, at *11.

Plaintiff's second straw man argument asserts that Kiley's opinion that Plaintiff's "opening the door was an invitation to enter" and Kiley's opinion of "whether it was 'reasonable' for Deputy Gregory to believe that opening the door was an invitation" are an impermissible application of facts and law that would invade the province of the jury. [Doc. 27-1 pp. 12-13].

---

[3] While the "absence" and "presence" of consent are two sides of the same coin, it must be remembered that evidence can support each concept in isolation. See Dukes, 155 F.4th at 1297 ("Here, the parties do not dispute that Officer Gregory lacked a warrant or an exigency to enter, or the legal proposition that a warrantless entry without consent or exigency violates the Fourth Amendment. They dispute whether the evidence is sufficient for a jury to find an absence of consent.").

Again, Plaintiff misrepresents Kiley's report and his argument is without merit. In Kiley's report, he does not state that Plaintiff's opening the door was an invitation to enter. Rather, upon applying his police training and practices methodology to the facts, he opined it "was very reasonable for Deputy Gregory to understand the door being opened, after the banging and announcing Sheriff's Office, the open door was an invitation to enter." [Doc. 27-1, p. 8]. Through his experience, Kiley knows and teaches to other officers, that law enforcement encounter situations in which consent to enter may be nonverbal.

This anticipated testimony speaks to the opposite side of the coin as the last, and will help the jury to understand whether, somewhere in the "police training and practices" totality not readily understandable to the layman, there existed evidence of the presence of consent to Gregory's entry. This bears directly on the issue of a reasonable officer's actions under the circumstances.

Rule 702(a) requires that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." As shown, Kiley's testimony

regarding the two opinions attacked by Plaintiff's straw man arguments will help the jury do both, and are therefore admissible.

## Conclusion

For the foregoing reasons, Kiley's anticipated testimony satisfies Rule 702 and <u>Daubert</u> by a preponderance of the evidence, and Plaintiff has failed to demonstrate otherwise. Wherefore, Gregory respectfully requests the Court deny Plaintiff's motion.

## <u>WORD LIMIT CERTIFICATION</u>

The undersigned certifies that this Response contains 3,574 words, in compliance with Northern District of Florida Local Rule 7.1(F).

Respectfully submitted this 19th day of March 2026.

*/s/ Gwendolyn P. Adkins*



Gwendolyn P. Adkins, (FBN: 0949566)
gadkins@coppinsmonroe.com
kflemming@coppinsmonroe.com
kwillis@coppinsmonroe.com

Coppins Monroe, P.A.
2316 Killearn Center Blvd., Suite 202
Tallahassee, FL 32309
Office: 850-422-2420 ⏐ Fax: 850-422-2730

ATTORNEYS FOR DEFENDANTS
ROBERT B. McCALLUM JR. and
CHASE GREGORY, individually

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b) and N.D. Florida Local Rule 5.1, this document is being filed electronically and service shall be through the Court's transmission facilities on all persons appearing before this Court.

*/s/ Gwendolyn Adkins*

18