UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TERRY DUKES, SR.,

     Plaintiff,

v.                                 CASE NO. 1:23-cv-45-AW/HTC

CHASE GREGORY,

     Defendant.

_____/

## **DEFENDANT'S FIRST OMNIBUS MOTION IN LIMINE**

Defendant Chase Gregory moves in limine for an order excluding, or limiting in advance of trial, the categories of evidence, testimony, references, and argument identified below and states:

### I.    Introduction.

This is a narrow Fourth Amendment case, with the only remaining liability issue for trial being whether, under the totality of the circumstances, it was objectively reasonable for Deputy Gregory to believe that Plaintiff's conduct communicated or implied consent to enter the home. Issues regarding Plaintiff's seizure, detention, and the force used on Plaintiff are not independent liability claims; they are subsumed

into the unlawful-entry claim for liability purposes and remain relevant only as alleged damages if Plaintiff first proves an unlawful entry.

A motion in limine is proper to obtain pretrial rulings on evidence likely to arise at trial, particularly where the evidence could inject prejudice that cannot be cured efficiently after the jury hears it. See *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The Court retains discretion to revisit any limine ruling if trial developments materially alter the evidentiary context. *Ohler v. United States*, 529 U.S. 753, 758 n. 3 (2000).

The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial. *Stewart v. Hooters of America, Inc.*, No. 8:04-cv-40, 2007 WL 1752873 *1 (M.D. Fla. June 18, 2007).

## II.    Stipulated Issues.

Plaintiff stipulates the exclusion of the following arguments or evidence at trial:

1. References to Insurance or Self-Insurance, subject to the Parties' Joint Stipulation on the admission of net worth evidence in relation to punitive damages. *See* Fed. R. Evid. 411 and 403.

2. Any testimony, argument, or evidence that any actions or conduct in the case were unlawfully based on the Plaintiff's race, gender, age, or other protected classification.

3. Any testimony, argument, or evidence that the Sheriff maintained an unlawful custom, policy, or practice.

4. Testimony by Plaintiff or other lay witnesses as to the *causation* of any medical or psychiatric condition allegedly suffered by Plaintiff. This stipulation does not prohibit Plaintiff, or other lay witnesses, from testifying as to their personal experiences or lay perceptions, including Plaintiff's own perceptions regarding effects or changes to his mind or body.

5. Any testimony in the form of *a legal conclusion* that Defendant or any Deputy "violated the Fourth Amendment," "broke the law," engaged in "unconstitutional" conduct or actions, or similar commentary. This stipulation does not prohibit Plaintiff from testifying as to non-legal opinions, such as opinions that certain actions were unnecessary or unjustified in the particular circumstances being discussed. The Parties recognize that testimony at the intersection of these areas must necessarily be determined on a case-by-case basis during trial.

6. Any testimony, argument, or evidence regarding allegations of misconduct or alleged constitutional violations other than the specific conduct and alleged constitutional violation to be tried in the case, including any prior complaints, IA investigations, or disciplinary actions of Defendant or any other Deputy, unless the Defendant "opens the door" to such issues during trial of the case and such is used for the purpose of impeachment.

7. Any testimony, argument, or evidence regarding the previous decisions or opinions of the trial or appellate courts on issues related to summary judgment or qualified immunity.

8. Any argument, testimony, or evidence regarding general or allegedly problematic nationwide police issues facing modern

society, or specific law enforcement persons and events, other than those specific persons and events at issue in the case to be tried. This stipulation, however, does not cover or include testimony by Plaintiff regarding the alleged effect of George Floyd's death on him for the purposes of damages, which remains in dispute and is addressed in Section II(A), below.

9. Any testimony from Economist Kristi S. Kirby regarding damages or damage calculations not disclosed or included in her timely disclosed Rule 26(a)(2) Report, including but not limited to testimony regarding any alleged reductions/losses in Plaintiff's future FRS retirement benefits, past medical expenses, future medical expenses, or the cost of any support or services. This stipulation does not address Ms. Kirby's testimony regarding "updates" to her disclosed damage calculations regarding lost earnings due to the passage of time, although Defendant reserves all objections to such testimony as may be appropriate.

## III.   Contested Issues.

### A.   Any argument, testimony, or evidence regarding the alleged emotional impact or effect of George Floyd's death on Plaintiff.

Plaintiff has withheld from the above stipulation to exclude argument, testimony, or evidence concerning national controversies about law enforcement unrelated to the May 25, 2019, incident, an exception to reference "George Floyd" and his May 25, 2020, death in Minneapolis, Minnesota, because of its allege emotional "impact" on Plaintiff for the purposes of establishing damages.

The death of George Floyd occurred more than a year after the incident giving rise to this lawsuit. It involved different officers, a different department, a different state, a different type of force, a different category of suspected offense, and a different factual setting in every material respect. It did not *involve* Plaintiff in any way. It, like every other nationally publicized police-citizen incident, tells the jury nothing about the events at issue or relevant to this case. But for the alleged "impact" the event had on Plaintiff's post-incident emotional state, the event would be clearly excludable as entirely irrelevant under Rules 401 and 402.

But any marginal relevance the specific mention of "George Floyd" has as background to Plaintiff's damages, is substantially outweighed by the danger of unfair prejudice under Rule 403 (authorizing the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of...unfair prejudice, confusing the issues...[or] misleading the jury."). "Unfair prejudice," "means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 (advisory committee's note; *accord Old Chief v. United States*, 519 U.S. 172, 180 (1997)). The

Eleventh Circuit has long applied that standard to "inflammatory, "shocking," or "sensational" matters whose only real work in the courtroom is to "induc[e] decision on a purely emotional basis." *See, e.g.*, *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069 (11th Cir. 2014); *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983); *United States v. Ellisor*, 522 F.3d 1255, 1268 (11th Cir. 2008).

George Floyd is among the most charged names in modern American policing discourse. The video of his death, the criminal conviction of Officer Derek Chauvin, the nationwide protests and "BLM" movements that followed, and the broader debate over policing have produced strongly held views across the political spectrum. Inviting the jury to consider *any of that* in this case is precisely the "undue tendency to suggest a decision on an improper basis, commonly…an emotional one," that Rule 403 was written to prevent. Such would invite the jury to punish Defendant Gregory not for what *he* did, but for what other officers, in other jurisdictions, in other contexts, are alleged to have done—a quintessential improper basis.

Defendant does *not* seek to bar Plaintiff from describing, in general terms, that watching news coverage of generically described police

<u>matters in the years following the events of this case caused him distress</u>. What the Plaintiff should not be permitted to do is import the specific name of "George Floyd" into the courtroom to make that point when less prejudicial alternatives exist. <u>The probative value of this *specific* reference is no greater than the probative value of a *generalized* reference</u>. <u>Plaintiff's claimed emotional response can be fully and fairly described by testimony that "news coverage of police encounters caused me distress"—without naming this specific, single, and highly inflammatory event</u>.

Indeed, Rule 403 requires the Court to consider "the availability of other means of proof" and to choose the less prejudicial alternative when probative value is equivalent. Fed. R. Evid. 403 (advisory committee's note).

Because any specific reference to George Floyd would be unreasonably "inflammatory, "shocking," and "sensational" compared to its limited probative value—and because an equivalent probative value may be established through generic references, Defendant requests an Order permitting Plaintiff to testify only in general terms as to how post-incident media coverage of police encounters allegedly affected him,

while precluding any specific reference to George Floyd, "BLM," or related persons or matters.

**WHEREFORE**, the Defendant requests that the Court enter an order *in limine* on the above issues as follows:

A. That Plaintiff's counsel be instructed not to mention or bring before the jury either directly or indirectly upon *voir dire* and examination, opening statement, interrogation of witnesses, in argument, objections before jury, or by any other means or in any other manner, inform the jury or bring to the jury's attention, any of the matters set forth above unless and until any such matters have been first called to the Court's attention out of the presence and hearing of the jury and a favorable ruling received from the Court as to the admissibility and relevance of any such matters;

B. That Plaintiff's counsel be specifically instructed to inform, and counsel with, all of their witnesses and their client not to volunteer, interject, disclose, state, mention in the presence of the jury or in any other way refer to any of the matters stated in the above paragraphs, unless and until specifically questioned thereon after prior favorable ruling by the Court; and

C. That Plaintiff's counsel be instructed that a violation of any of the Court's instructions, if any, in connection with this Motion would be likely to constitute undue harm to Defendant's case and deprive it of a fair and impartial jury trial, and that such violation and failure to abide by the Court's order may bring about a mistrial and/or result in sanctions.

## CERTIFICATE OF CONFERAL

The undersigned counsel for Defendant certifies that they corresponded with counsel for Plaintiff on the issues raised herein and that the above Motion identifies those issues to which there is agreement, and the issues to which no agreement was reached.

Respectfully submitted this <u>11th</u> day of May 2026.

*/s/ Scott J. Seagle*

 Gwendolyn P. Adkins, FBN: 0949566
Scott J. Seagle, (FBN: 57158)
sjseagle@coppinsmonroe.com
kflemming@coppinsmonroe.com
kwillis@coppinsmonroe.com

COPPINS MONROE, P.A.
2316 Killearn Center Blvd., Suite 202
Tallahassee, FL 32309
Office: 850-422-2420   Fax: 850-422-2730

ATTORNEYS FOR DEFENDANT
DEPUTY CHASE GREGORY

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b) and N.D. Florida Local Rule 5.1, this document is being filed electronically and service shall be through the Court's transmission facilities on all persons appearing before this Court.

*/s/ Scott J. Seagle*
Attorney

9