UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TERRY DUKES, SR.,

    Plaintiff,

v.                             CASE NO. 1:23-cv-45-AW/HTC

CHASE GREGORY,

    Defendant.

_____/

## **DEFENDANT'S TRIAL BRIEF**

Pursuant to this Court's Order for Pretrial Conference [Doc.70], Defendant Chase Gregory files the following trial brief regarding disputed issues of law.

### I.  **Plaintiff's proposed Jury Instructions and Verdict form misstate the law.**

The majority of the disputes of law between the Parties are highlighted by Plaintiff's proposed Jury Instructions and Verdict form, which Defendant opposes for the reasons described below.

### a)  **Plaintiff has the sole burden to prove that it was unreasonable for Defendant to believe his actions communicated consent.**

Plaintiff's proposed Jury Instructions and Verdict Form assert that the warrantless entry into Plaintiff's home "is presumed unreasonable," and that, as a result, "[Defendant] bears the burden of proving that his entry was justified by consent." This is not the law.

"[I]n a § 1983 action, the plaintiff bears the burden of persuasion on every element." *Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 970 (11th Cir. 2002). The Eleventh Circuit's civil pattern instruction for a Fourth Amendment unlawful-search claim thus places the burden on the Plaintiff to prove each element of the claim by a preponderance of the evidence. *See Pattern Jury Instructions (Civil Cases) of the United States Court of Appeals for the Eleventh Circuit*, Instr. 5.3. Nothing in the pattern instruction tells the jury that the defendant bears the burden of persuasion to prove consent.

The Eleventh Circuit has expressly addressed the impact of the asserted "presumption" in consent cases in civil § 1983 trials and held, in accordance with Fed. R. Evid. 301, that a defendant has only a "burden of production" to "present evidence" of consent. *Gill v. Judd*, 941 F.3d 504, 522 (11th Cir. 2019). If such evidence can be produced, the presumption is rebutted, and Plaintiff retains the burden of persuasion to prove the lack of consent at trial.

The issue in *Judd*, as here, was whether the plaintiff's non-verbal physical conduct (opening the door and stepping aside) implied consent for officers to enter his home without a warrant. While *Judd* recognized that "searches and seizures inside a home without a warrant are presumptively unreasonable," the court clarified that the plaintiff retained the ultimate burden at trial. The Court explained:

### a. The Parties' Burdens at Trial

Often when we are tasked with reviewing a determination of consent, it is because a defendant has challenged the validity of her conviction or is seeking to suppress certain evidence based on an unlawful search….We have explained that because "[a] warrantless, nonconsensual entry into a suspect's home to make a routine felony arrest is presumed to be unreasonable," *Edmondson*, 791 F.2d at 1514, the burden is on the government to rebut that presumption and prove that the consent was voluntary…That's all true in criminal cases.

It's not in civil cases. "[I]n a § 1983 action, the plaintiff bears the burden of persuasion on every element." *Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 970 (11th Cir. 2002). That burden is on the plaintiff even where the government would be bear it in criminal case. *See id.* (stating that it was the plaintiff's "burden to show that the County lacked reasonable suspicion to search her" and holding that her claims failed as a matter of law because she "failed to produce any evidence indicating that the [jail] personnel lacked reasonable suspicion that she was concealing weapons or contraband"); *Rankin*, 133 F.3d at 1436 ("[P]laintiffs had the burden of demonstrating the absence of probable cause in order to succeed in their § 1983 claim."); *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir. 1997) ("In order to establish a Fourth Amendment violation, [the plaintiff] must demonstrate that a seizure occurred and that it was unreasonable."). "There is no question, therefore, that [K.C.R.] ultimately b[ore] the burden of persuasion in this case.*" Am. Fed'n of State, Cty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 880 (11th Cir. 2013).

Once a plaintiff shows that an arrest occurred in her home and that it was conducted without a warrant, it is the burden of <u>production</u> that shifts to the government to present evidence justifying the arrest. *See* Fed. R. Evid. 301 ("The party against whom a presumption is directed has the burden of producing evidence to rebut the presumption.").

> Thus, for example, when a plaintiff asserts that the police conducted an unconstitutional warrantless search, and the government claims that its search was legal under an exception to the warrant requirement…the plaintiff meets its initial burden by demonstrating the absence of a search warrant. At that point, it is the government that bears the burden of coming forward with evidence that an exception to the warrant requirement applied.

*Am. Fed'n,* 717 F.3d at 881-82.

> That shift of the burden of production, however, "does not shift the burden of persuasion, which remains on the party who had it originally." Fed. R. Evid. 301. So here, once K.C.R. showed that there was a warrantless arrest that was presumptively unreasonable (which she did), and once McKinney came forward with some evidence that the consent exception applied (which he did), it became K.C.R's burden once more "to show either that [her father] never consented or that the consent was invalid because it was given under duress or coercion." *Valance v. Wisel,* 110 F.3d 1269, 1279 (7th Cir. 1997). **In other words, it was her burden, not McKinney's, to persuade the jury on the one question before it.**

*Judd* at 523 (bold emphasis supplied).[1]

---

[1]    *Judd* is in accord with the majority of Circuits to address the issue. *See Valance v. Wisel,* 110 F.3d 1269, 1279 (7th Cir. 1997) ("Even if a presumption of unreasonableness arises from the fact of a warrantless search, that does not serve in a civil case to shift 'the burden of proof in the sense of the risk of nonpersuasion.' Fed. R. Evid. 301. The presumption merely serves to impose on the defendant 'the burden of going forward with evidence to meet or rebut the presumption' (id.), which a defendant would do by presenting evidence that the plaintiff consented to the search. In order to prove that the search was unreasonable, then, the plaintiff would be required to show either that he never consented or that the consent was invalid because it was given under duress or coercion."); *Ruggiero v. Krzeminski,* 928 F.2d 558, 563 (2d Cir. 1991) ("It is true that searches and seizures conducted without warrants are

Federal Rule of Evidence 301 states that, unless a federal statute or other rule provides otherwise, "the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption," but the rule "does not shift the burden of persuasion, which remains on the party who had it originally." Fed. R. Evid. 301. *Gill* applied Rule 301 directly to a § 1983 Fourth Amendment implied consent issue. 941 F.3d at 523.

*Judd* and Rule 301 are dispositive. So long as Defendant can produce some evidence of consent, the burden to prove that no reasonable person in Defendant's position could have believed such conduct implied consent lies solely with Plaintiff. This is reflected in the Eleventh Circuit Pattern Jury Instruction No. 5.3.

Accordingly, any instruction that Gregory "bears the burden of proving that his entry was justified by consent" is legally wrong because it converts a

---

presumptively unreasonable…[But] the operation of this presumption, contrary to the Ruggieros' contention, cannot serve to place on the defendant the burden of proving that the official action was reasonable. Rather, the presumption may cast upon the defendant the duty of producing evidence of consent or search incident to an arrest or other exceptions to the warrant requirement. However, the ultimate risk of nonpersuasion must remain squarely on the plaintiff in *accordance with established principles governing civil trials."); Crowder* v. Sinyard, 884 F.2d 804, 825 (5th Cir. 1989) (plaintiff bears the burden of proof in a section 1983 action alleging a warrantless search even where the defendant seeks to justify the search under an exception to the warrant requirement); *Larez v. Holcomb*, 16 F.3d 1513, 1517 (9th Cir. 1994) (same); *Der v. Connolly*, 666 F.3d 1120, 1128 (8th Cir. 2012).

burden of production into a burden of persuasion. That is exactly what Rule 301 forbids and *Gill* rejects. Fed. R. Evid. 301; *Gill*, 941 F.3d at 523.

Further, both this Court and the Eleventh Circuit have already determined the evidence creates a triable consent issue; any instruction telling jurors the entry is "presumed unreasonable" would place the thumb on the scale of the very factual issue they must decide. The proper instruction should instead tell the jury that Dukes bears the burden to prove his Fourth Amendment claim by a preponderance of the evidence and that, in deciding whether Defendant's entry was reasonable, the jury may consider whether the totality of the circumstances.

### b) <u>Plaintiff's proposed "meaningful communication" instruction is misleading and contrary to well-settled law.</u>

Plaintiff proposes to instruct the jury:

> "[A]n officer must have meaningful communication with the home's occupant to conduct a warrantless entry or search."

The instruction is not a correct statement of the governing law, improperly converts appellate qualified-immunity reasoning into a merits instruction, and would mislead the jury by replacing the well-settled "objective reasonableness," "totality of the circumstances," and what "the typical reasonable person [would] have understood by the exchange" standard with a new bright-line requirement. *See Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *Gill ex rel. K.C.R.*

*v. Judd*, 941 F.3d 504, 522 (11th Cir. 2019); *Fuqua v. Turner*, 996 F.3d 1140, 1151 (11th Cir. 2021).

The Eleventh Circuit's interlocutory opinion in this case did not announce a new element of consent. To the contrary, the court framed the first question as whether, viewing the evidence in the light most favorable to Plaintiff, "a jury could find that Officer Gregory entered Dukes's home without his consent," and it answered only that "a reasonable jury could find that Dukes never consented, either explicitly or implicitly, to Officer Gregory entering his home." *Dukes v. Gregory*, No. 24-10014, slip op. at 7, 9 (11th Cir. Oct. 16, 2025). The panel further confirmed that the consent question "turns on the totality of all the circumstances." *Id.* at 8 (quoting *Judd*, 941 F.3d at 522).

The phrase at issue—"meaningful communication"—appears only in the court's second-step qualified-immunity discussion about clearly established law. *Id.,* p.13. There, the court explained only that *Judd* could not have suggested to a reasonable officer that he could lawfully enter a home "without a warrant, exigency, or any meaningful communication with the home's occupant:

> Even though we held in *Judd* that consent need not be verbal and explicit, that precedent could not have suggested to a reasonable officer that he may enter a home without a warrant, exigency, or any meaningful communication with the home's occupant.

[*Id.*].

7

This observation rejected an overreading of *Judd* for qualified-immunity purposes; it did not announce "meaningful communication" as a new, standalone, mandatory element of valid consent in every warrantless-entry case. Stated differently, while *Judd* did not hold that entry without meaningful communication was "clearly established" *to be lawful*, it also did not go so far as to change the well-established standards by which consent is ultimately judged.

The Supreme Court and the Eleventh Circuit have long recognized the standard to simply be what an objectively reasonable person would have understood by the exchange. *See Fuqua v. Turner*, 996 F.3d 1140, 1151 (11th Cir. 2021) ("The standard for measuring the scope of consent is an objective one—the question is 'what would the typical reasonable person have understood by the exchange between the officer and the suspect?'") (quoting *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803-04, 114 L. Ed. 2d 297 (1991)).

Qualified-immunity rulings do not rewrite the merits elements for the jury. The Eleventh Circuit has explained that, when qualified immunity is raised at summary judgment, the court must identify the defendant's conduct in the light most favorable to the nonmovant and then decide whether that assumed conduct violated clearly established law. *Dukes*, slip op. at 5–7. That framework confirms why "meaningful communication" cannot now be elevated into a conclusive jury instruction: the appellate court's phrasing was part of a qualified-

8

immunity analysis on assumed facts, not an instruction on the elements the jury must find at trial.

The better instruction is the standard one: absent a warrant or exigent circumstances, entry into a home is lawful if the occupant consented, which is determined from the totality of the circumstances, judged objectively by what a reasonable person would have understood from the exchange and conduct of the parties. *See Judd*, 941 F.3d at 522; *Fuqua*, 996 F.3d at 1151; *Jimeno*, 500 U.S. at 251.

Plaintiff remains free to argue from the evidence that the communications here were too limited, too ambiguous, or too one-sided to convey consent. Defendant, in turn, is entitled to argue that Plaintiff's actions and the surrounding circumstances communicated permission to enter. What Plaintiff may not do is enlist the Court to instruct the jury that "meaningful communication" is itself a required element of consent, because no Supreme Court or Eleventh Circuit decision has adopted that formulation as the governing merits standard. *See Judd*, 941 F.3d at 522–26; *Fuqua*, 996 F.3d at 1151; *Dukes*, slip op. at 7–13.

Plaintiff's proposal also improperly asks the Court to comment on the *weight* of the evidence by singling out one factual consideration— communication—and suggesting its legal primacy over all other circumstances. But consent is assessed from the whole interaction, including words, gestures,

9

movements, timing, setting, and what a reasonable officer and occupant would have understood. *See Judd*, 941 F.3d at 522–26; *Jimeno*, 500 U.S. at 251. The Court should not isolate one evidentiary fact and effectively tell the jury that, unless it finds "meaningful communication," consent is legally impossible.

In sum, Plaintiff is trying to turn a qualified-immunity fair-warning explanation into a new merits element, but the Eleventh Circuit's own opinion confirms that the consent question remains for the factfinder under the totality of the circumstances. For these reasons, the Court should decline Plaintiff's proposed "meaningful communication" instruction and instead instruct the jury using the settled Fourth Amendment consent standard grounded in "objective reasonableness," the "totality of the circumstances," and what "the typical reasonable person [would] have understood by the exchange."

c) **The fact that Plaintiff opened his door in response to a knock is part of the totality of the circumstances the jury will consider and the jury should be advised on how they must interpret such evidence.**

Plaintiff proposes to instruct the jury:

> "The fact that a person answers a knock at the door does not mean he agrees to let the person who knocked enter."

The instruction is unduly argumentative and misleading.  The statement is misleading because it highlights only one possible inference (no consent) and

not its logical counterpart (possible consent). Jury instructions should not subtly endorse one side's theory about how the jury must view a factual event.

If the Court were to instruct in the asymmetrical way Plaintiff suggests, the jury would be affirmatively told that opening the door "does not mean" agreement, but would receive no corresponding guidance that the same act also "does not mean" disagreement. A fair formulation of this instruction would be: *"The fact that a person answers a knock at the door does not establish either that he agrees or that he does not agree to let the person who knocked enter,"* which demonstrates both why the proposed instruction is misleading and why even a corrected instruction would be unhelpful.

The instruction also seeks to enlist the Court to instruct on how to view and weigh the evidence. Isolating this one fact and giving it a special instruction elevates it above all other circumstances, risking confusion among jurors about the governing legal standard (the "totality of the circumstances") and improperly signaling that opening the door is entitled to diminished weight as a matter of law.

Further, by instructing that opening the door "does not mean" agreement to entry, the Court would be telling the jury how to interpret a specific fact in evidence rather than articulating a general rule of law. The instruction singles out a particular item of key evidence and suggests that the Court disfavors the inference that consent could be inferred from that evidence, which intrudes upon

11

the province of the jury. When, how, and why Plaintiff opened the door in response to the deputies' knock and announce are all factors the jury may consider in deciding whether a reasonable officer would have understood consent to enter. That is exactly the kind of inference the parties should argue in closing, not the kind of inference the Court should encode in the charge.

The Court should instead instruct the jury using the standard Fourth Amendment consent formulation—focusing on the totality of the circumstances and an objective reasonable-person standard—and allow counsel to argue the meaning of Plaintiff's conduct. Under that framework, the jury's job is to look at *everything* that happened, and then decide, from the standpoint of a reasonable person in the officers' position whether it was reasonable to believe that consent was given. Plaintiff's instruction that isolates one fact (answering the knock) and tells the jury what that fact "does not mean" is inconsistent with that holistic, objective approach.

**d) <u>The jury will not decide whether Plaintiff actually consented to Defendant's entry into his home.</u>**

Plaintiff proposes to instruct the jury:

> "You must determine whether the facts demonstrate that Deputy Gregory had consent to enter Mr. Dukes' home."

The instruction misstates the governing Fourth Amendment standard and risks misleading the jury into deciding a question of actual/subjective

consent rather than the objective reasonableness of Defendant's belief that Plaintiff had consent to enter.

Plaintiff's formulation focuses the jury on whether Plaintiff *in fact* consented to entry, as if the Fourth Amendment turns on Plaintiff's subjective state of mind rather than on what a reasonable officer could understand from the parties' interaction. That is not the law. The Fourth Amendment "protects individuals from <u>unreasonable</u> searches and seizures," not from every mistaken but objectively reasonable judgment an officer may make in rapidly evolving circumstances. *United States v. Braddy*, 11 F.4th 1298, 1307 (11th Cir. 2021) (emphasis added) (internal quotation marks omitted).

The "touchstone of the Fourth Amendment is reasonableness," *Florida v. Jimeno*, 500 U.S. 248, 251 (1991), and "[t]he Fourth Amendment protects individuals [only] from *<u>unreasonable</u>* searches and seizures." *United States v. Braddy*, 11 F.4th 1298, 1307 (11th Cir. 2021) (e.s.). The Supreme Court has emphasized that "[t]o be reasonable is not to be perfect," and the Fourth Amendment thus "allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014) (*quoting Brinegar v. United States*, 338 U.S. 160, 176 (1949)).

Thus, in the context of consent, the governing inquiry is not the suspect's actual/subjective consent, but rather "what would the typical reasonable

13

person have understood by the exchange between the officer and the suspect?"

*Jimeno*, at 251 (1991). This Court applied that same objective standard in its

summary-judgment Order:

> Whether there was implied consent turns on what "the typical reasonable person [would] have understood by the exchange between the officer and the suspect." *See Florida v. Jimeno*, 500 U.S. 248, 251 (1991). And that turns on a careful consideration of all the circumstances. *See Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 524 (11th Cir. 2019) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 233 (1973)).

[Doc.42].

Plaintiff's language blurs this crucial distinction. It suggests that the

dispositive question is whether consent *in fact* existed, which misleads the jury

and risks an inconsistent verdict. The jury could find that Defendant acted

reasonably based on what he saw and heard, yet still feel compelled to answer

"no" to whether he "had consent" if they believe, based on Plaintiff's testimony

alone, that he did not actually want *him* inside.

Thus, while Plaintiff's actual intent when opening the door may be

*relevant* to assessing the reasonableness of Defendant's belief that consent was

given (*see* Section II, below), it is not dispositive as Plaintiff's proposed

instruction suggests. Because Plaintiff's instruction would only confuse and

mislead the jury as to the actual question it must decide, it should be excluded.

14

**e) <u>There is no triable issue of duress or coercion.</u>**

Plaintiff proposes to instruct the jury:

> "Consent must be voluntary and not the product of duress or coercion but the product of an essentially free and unconstrained choice…Some factors that you can consider are how many officers were present; whether the officers were armed, whether the arms were visible, and whether they are drawn….

This is correct as a general statement, the Supreme Court has held that consent must be "freely and voluntarily given" and not "the product of duress or coercion, express or implied." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). But jury instructions must be tailored to the evidence and the issues actually in dispute. *See United States v. Williams*, 728 F.2d 1402, 1404 (11th Cir. 1984) ("If the instruction does not concern factual issues properly before the jury or if it is otherwise confusing, it need not be given at all."). An instruction that accurately states an abstract principle of law is still improper if it invites the jury to decide issues that are not part of the case. *Id.*

Here, Plaintiff does not claim that he consented to the deputies' entry but that his consent was involuntary due to duress or any coercive show of force. Instead, his position is that he did not even know any law-enforcement officers were at his door when he opened it, and that he did not become aware of deputies' presence until they were already inside his home and at his bedroom. Under these circumstances, instructing the jury to weigh "how many officers were

15

present; whether the officers were armed, whether the arms were visible, and whether they are drawn," *etc.*, as factors bearing on "duress or coercion" at the moment of consent would misdirect their attention.

Because there is no triable issue of duress or coercion, the proposed instruction would only serve to mislead and confuse the jury and should be excluded. *See United States v. Barr*, 21- 11487, 2023 WL 20024, at *3 (11th Cir. Jan. 3, 2023) ("The question is not whether the defendant wanted the search to occur—only whether he was coerced into consenting to the search.").

II.   **Plaintiff's "intent" when opening his outside door to invite the person outside to come into his home is not *determinative* of consent, but it *is relevant* to how a reasonable person would interpret Plaintiff's conduct.**

Plaintiff's Motion in Limine seeks to exclude argument about Plaintiff's admitted intent to open his door to admit the person knocking outside into his home as "irrelevant" to the question of whether Defendant reasonably interpreted Plaintiff's act of opening the door as an invitation to enter. [Doc.76, pp.20-22].

Plaintiff's argument is without merit. Plaintiff's own testimony about what he was trying to do—open the door to allow the person knocking outside to come inside—is plainly relevant under Rules 401–402, and does not present any Rule 403 danger that substantially outweighs that probative value.

16

"The standard for what constitutes relevant evidence is a low one." *United States v. Macrina*, 109 F.4th 1341, 1349 (11th Cir. 2024). "[E]vidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Kruse*, 601 F. App'x 827, 831 (11th Cir. 2015) (quoting *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002) (quoting Fed. R. Evid. 401). "Evidence is relevant if it has any probative value, however slight." *Thigpen v. Thigpen*, 926 F.2d 1003, 1013 (11th Cir. 1991).

Here, the *key* question for trial is whether it was objectively reasonable for Defendant to *interpret* Plaintiff's conduct as communicating consent to enter. Even though Plaintiff's intent when opening the door was not known to Defendant, Plaintiff's admitted purpose in opening the door—to allow the person knocking outside to come inside—plainly has "a tendency" to make it more probable that a reasonable observer, like Defendant, could interpret the same nonverbal act as an invitation to enter. In other words, if Plaintiff himself intended his actions to convey a "*door's open—come in*side" message, that fact increases, even if modestly, the likelihood that a reasonable officer would understand the conduct as such an invitation. That is classic probative value under Rule 401.

Plaintiff's intent is one of many "context clues" a jury may use to better understand what his conduct naturally communicated. The Court should allow the jury to hear that context and decide what weight, if any, to give it.

Plaintiff's argument that Defendant only had a minimal view of Plaintiff's body/body language is a fair cross-examination point, but it ignores the other various relevant context clues associated with the event, ultimately, goes to the *weight* of the evidence, not its admissibility.

Plaintiff's argument is also asymmetrical. He expressly intends to rely on his own account and understanding of events, including his morning routine, his hearing difficulties, what he was doing, and why he opened the door. It would be wholly unfair to allow Plaintiff to use his subjective account to defeat implied consent while prohibiting Defendant from pointing out that Plaintiff's own version of events supports the reasonableness of Defendant's interpretation.

Because Plaintiff's admission that he intended to open the door to allow the person knocking outside to come inside (without greeting them), makes it at least a little "more probable" that Defendant's interpretation of that act to be an invitation to enter was "reasonable," the evidence is relevant and admissible. Fed. R. Evid. 401 and 402.

III.   **The Court should set off from recovery any amounts Plaintiff received from SSDI to the extent that the jury finds Defendant's conduct caused his disability resulting in early retirement.**

Plaintiff cites *Katka v. Mills*, 422 F. Supp. 2d 1304, 1308 (N.D. Ga. 2006), as "collecting cases" that allegedly support the proposition that set-offs are not permitted in Section 1983 cases. [Doc.76, p.14]. *Katka*, however,  make no such holding, and collects no such cases. Indeed, *Katka* does not mention, reference, or relate to the availability of set-offs at all; rather, *Katka* collects cases confirming the absence of a "right to contribution among joint tortfeasors" in Section 1983 actions—an issue not present in this case.[2] Nothing in Eleventh Circuit or Supreme Court precedent holds that SSDI benefits are immune from post-verdict set-offs in § 1983 cases.

Here, Plaintiff is seeking economic damages, including past and future wage loss for an allegedly early retirement caused by disability stemming from the events of this case. That very same alleged disability and inability to work has garnered Plaintiff Social Security Disability Insurance ("SSDI") since the date of his retirement. Allowing Plaintiff to recover full lost-wage damages on top of SSDI wage-replacement benefits for the same loss would exceed § 1983's compensatory purpose.

---

[2]    *Katka* relied on the Supreme Court's decision in *Nw. Airlines, Inc. v. Transport Workers Union of Am.*, 451 U.S. 77, 87– 88 (1981), which also did not mention, reference, or relate to the availability of set-offs.

Section 1983 is compensatory, not redistributive; it aims to make a plaintiff whole, not to provide a windfall or double recovery for the same economic loss. The Supreme Court has repeatedly described § 1983 damages as governed by common-law tort principles, with compensatory damages limited to actual proven injury. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306–07 (1986) (compensatory damages in § 1983 cases must be "grounded in determinations of the plaintiff's actual losses"). The Eleventh Circuit follows that framework and emphasizes that compensatory awards must reflect actual loss, not to place the plaintiff in a better financial position than if no violation had occurred. *See e.g., Slicker v. Jackson*, 215 F.3d 1225, 1229 (11th Cir. 2000) ("compensatory damages under § 1983 may be awarded only based on *actual injuries* caused by the defendant") (emphasis in original).

Florida's collateral-source statute, § 768.76, *Fla. Stat.*, requires trial courts in state-law tort actions to reduce judgments for collateral source payments where no right of subrogation exists. Florida's state court thus routinely implement post-verdict set-offs of collateral benefits—including disability-type payments—to prevent double recovery. Although § 768.76, Fla. Stat., does not directly govern this federal § 1983 claim, it is instructive in that it shows that post-verdict judicial set-offs of collateral disability benefits are familiar, workable tools for preventing double recovery. It further shows how Florida's policy of preventing duplicative compensation where the collateral

source has no reimbursement rights harmonizes with § 1983's compensatory purpose.

To the extent the Court finds that SSDI payments are wage-replacement for the same periods and income losses the jury has compensated, the Court should reduce the economic-loss component of the judgment by the overlapping SSDI amount to prevent double recovery.

## IV.    Defendant's entitlement to qualified immunity has not been conclusively determined and must be reviewed anew following the jury's resolution of factual disputes in the case.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quotation omitted). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (cleaned up).

Where, as here, there is no dispute that the defendant was acting under color of law, the burden is on the plaintiff show: (1) that the ... official violated a statutory or constitutional right, and (2) that the right was clearly

established at the time of the challenged conduct." *Fuqua v. Turner*, 996 F.3d 1140, 1149 (11th Cir. 2021) (cleaned up).

In the event that the jury concludes that Defendant violated Plaintiff's Fourth Amendment rights, Defendant is nonetheless entitled to qualified immunity to the extent that the specific ground(s) upon which the jury's determination rested were not "clearly established." Because all previous determinations of the qualified immunity issue were based upon assumptions that construed all facts in the light most favorable to the Plaintiff, the analysis must be conducted anew following trial and the jury's specific factual determinations. *See Cottrell v. Caldwell*, 85 F.3d 1480, 1487 (11th Cir. 1996) ("[A] defendant who does not win summary judgment on qualified immunity grounds may yet prevail on those grounds at or after trial on a motion for a judgment as a matter of law."); *Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002) ("a defendant is entitled to have any evidentiary disputes upon which the qualified immunity defense turns decided by the jury so that the court can apply the jury's factual determinations to the law and enter a post-trial decision on the defense.").

Defendant contends that no clearly established law exists establishing that the true and complete facts of the case violated the Fourth Amendment. The Defendant thus preserves all arguments regarding entitlement to qualified immunity under controlling law and will seek Special Interrogatories

from the jury, as appropriate, to determine factual issues relevant to the issue of qualified immunity.

Respectfully submitted this <u>18th</u> day of May 2026.

<u>/s/ Gwendolyn P. Adkins</u>



Gwendolyn P. Adkins, FBN: 0949566
Scott J. Seagle, FBN: 57158
gadkins@coppinsmonroe.com
sjseagle@coppinsmonroe.com
kflemming@coppinsmonroe.com
kwillis@coppinsmonroe.com

COPPINS MONROE, P.A.
2316 Killearn Center Blvd., Suite 202
Tallahassee, FL 32309
Office: 850-422-2420   Fax: 850-422-2730

ATTORNEYS FOR DEFENDANT
DEPUTY CHASE GREGORY

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b) and N.D. Florida Local Rule 5.1, this document is being filed electronically and service shall be through the Court's transmission facilities on all persons appearing before this Court.

<u>/s/ Gwendolyn P. Adkins</u>
Attorney

23