UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TERRY DUKES, SR.,

     Plaintiff,

v.

DEPUTY CHASE GREGORY,

     Defendant.

Case No. 1:23-cv-45-AW-HTC

**PLAINTIFF'S TRIAL BRIEF**

Per the Court's Order for Pretrial Conference (Doc. 70), Plaintiff Terry Dukes, Sr. files his trial brief with citation of authorities and arguments on all disputed issues of law.

## I.    Introduction

This case arises from an unlawful, warrantless intrusion into Terry Dukes Sr.'s Bronson, Florida home in the early morning hours of May 25, 2019. Defendant Deputy Chase Gregory entered Mr. Dukes' home without a warrant, exigent circumstances, or consent. Once inside, Deputy Gregory tased Mr. Dukes in his own bedroom despite allowing Mr. Dukes to put on his pants to cover his naked body, handcuffed him, and held him outside in restraints for up to thirty minutes. Mr. Dukes was then charged with resisting, which was dropped.

The Eleventh Circuit has reviewed the central legal questions here. In *Dukes v. Sheriff of Levy Cnty.*, Fla., 155 F.4th 1291 (11th Cir. 2025), the Court of Appeals affirmed the denial of qualified immunity on Mr. Dukes' unlawful entry claim, holding that under the facts in the light most favorable to Mr. Dukes, a reasonable jury could conclude that Deputy Gregory's warrantless entry violated Mr. Dukes' clearly established Fourth Amendment rights. The appellate court further directed that Mr. Dukes' unlawful seizure and excessive force claims be treated as subsumed within the unlawful entry claim.

The evidence at trial will establish that Deputy Gregory entered Mr. Dukes' home without consent and then subjected him to use of force and physical restraint. Mr. Dukes is entitled to compensatory damages for his physical injuries, emotional distress, humiliation, and economic loss, as well as punitive damages to deter Deputy Gregory and others from similar violations of the constitutional rights of citizens in their own homes.

## II.    Brief Recitation of Facts

Early in the morning on May 25, 2019, the Levy County Sheriff's Office was alerted that Plaintiff Terry Dukes' son had assaulted his pregnant girlfriend and was possibly armed and on drugs. Junior stayed at Plaintiff's home from time to time as well as another place. So that same morning, before sunrise, Defendant Chase Gregory and other deputies went to Mr. Dukes' home and approached it

from different sides. Deputy Gregory stood on the ground next to a handrail lining an elevated stoop at the home's back door. Another officer announced, "Sheriff's Office" and knocked at the front door. Thinking it was Junior, Mr. Dukes then stated, "I'm coming," opened the back door—where no officer had knocked—and turned and walked back toward the interior of the home, leaving the door open. Deputy Gregory was not positioned at the door and his flashlight was off. Neither he nor Mr. Dukes uttered any words.

At no point did Deputy Gregory identify himself to Mr. Dukes, ask Mr. Dukes for permission to enter, or communicate with Mr. Dukes in any way while outside the home. After only seeing a hand in a small gap in the open door, and without any communication, Deputy Gregory entered the home.

Deputy Gregory passed through a hall and kitchen area and only then announced his presence. The home was dark—the only light came from Mr. Dukes' phone and the officers' flashlights. After the deputies entered, Deputy Gregory fired his Taser at Mr. Dukes, striking him with one prong, while Mr. Dukes was trying to get dressed on the ground. Deputy Gregory then restrained Plaintiff. Mr. Dukes was charged with resisting, but that charge was ultimately dropped.

3

### III.    Disputed Issues

### A. The evidence at trial will show that Deputy Gregory lacked consent to enter Mr. Dukes' home.

For Mr. Dukes to establish his Fourth Amendment claims he must establish (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law. *Holmes v. Crosby*, 418 F. 3d 1256, 1258 (11th Cir. 2005). The parties have stipulated to the latter requirement (acting under color of law) and that Deputy Gregory lacked a warrant or exigency to enter Mr. Dukes' home. The following issues remain in dispute.

### 1.    Because the entry is presumed unreasonable, Deputy Gregory bears the initial burden of justifying consent.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Payton v. New York*, 445 U.S. 573, 585 (1980) (quoting *United States v. U.S. Dist. Court*, 407 U.S. 297, 313 (1972)); *Morris v. Town of Lexington Alabama*, 748 F.3d 1316, 1322 (11th Cir. 2014). "The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990).

4

Therefore, warrantless entry into the home is per se unreasonable, subject only to a few "jealously and carefully drawn" exceptions. *Georgia v. Randolph*, 547 U.S. 103, 109 (2006). "The prohibition does not apply, however, to situations in which voluntary consent has been obtained." *Rodriguez*, 497 U.S. at 181. "Where an officer enters a home without consent and without a warrant, "any resulting search or seizure violates the Fourth Amendment unless it was supported by probable cause and exigent circumstances." *Hardigree v. Lofton*, 992 F.3d 1216, 1224 (11th Cir. 2021). Exigency is a situation in which "the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." *United States v. Burgos*, 720 F.2d 1520, 1526 (11th Cir. 1983).

Under either consent or exigent circumstances, an officer who conducts a warrantless search or seizure inside the home bears the burden of proving that his conduct was justified. *See Sammons v. Taylor*, 967 F. 2d 1533, 1543 (11th Cir. 1992); *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984). The caselaw is clear on this point. It is "[t]he officer who conducted the warrantless search [who] bears the burden of proving that the search was justified by consent." *Fuqua v. Turner*, 996 F.3d 1140, 1151 (11th Cir. 2021) (citing *McClish v. Nugent*, 483 F.3d 1231, 1241 (11th Cir. 2007) & *Bashir v. Rockdale County, Ga*, 445 F.3d 1323, 1328 (11th Cir. 2006)). Accordingly, the Court at trial should assign the initial burden of proof to Deputy Gregory.

### 2. Deputy Gregory will not be able to satisfy his burden to demonstrate that any consent was voluntarily and freely given because he never communicated with Mr. Dukes.

The burden is on Deputy Gregory to prove "that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." *Florida v. Royer,* 460 U.S. 491, 497 (1983).

Deputy Gregory cannot meet his burden because it is undisputed that he never communicated with Mr. Dukes. He admits that he was standing away from the handrail, with his flashlight turned off, without uttering a word, without Mr. Dukes uttering a word, and that all he saw was either an unidentified black male or a hand in a small gap in the door.

"The fact that a person answers a knock at the door doesn't mean he agrees to let the person who knocked enter." *McClish*, 483 F.3d at 1247 (holding that an officer violated the Fourth Amendment where an officer reached into plaintiff's home and pulled him out when he opened his door); *see Judd*, 941 F.3d at 524.  In that context, this Court has been "reluctant to 'sanction entry into the home based upon inferred consent.'" *Fuqua*, 996 F.3d at 1151 (quoting *United States v. Gonzalez*, 71 F.3d 819, 828 (11th Cir. 1996)) (cleaned up). "Even when an officer has consent to conduct a search, he violates the Fourth Amendment if he goes beyond the scope of consent." *Fuqua*, 996 F.3d at 1151.

That said, the Eleventh Circuit has determined certain limited circumstances when answering the door without providing express, verbal permission to enter can establish consent. As the Eleventh Circuit demonstrated in *this case* on interlocutory review, none of those circumstances are applicable here.

For example, the court concluded that an officer may establish implied consent from body language when in response to requests for admittance a subject yields the right-of-way to officers. *U.S. v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002). On the other hand, entry into a home when an officer merely follows the subject into the house but never asked for permission to enter violates the Fourth Amendment. *Bashir*, 445 F.3d at 1329.

Similarly, no valid consent exists when an officer gains entry into the home by a show of force or "official authority." *United States v. Edmondson*, 791 F.2d 1512, 1514–15 (11th Cir. 1986) (officers with guns drawn knocked on door, announced "FBI. Open the door," and defendant opened the door and put his hands on his head); *see also Moore v. Pederson*, 806 F.3d 1036, 1046 (11th Cir. 2015) (no consent to enter house where officer told plaintiff he planned to arrest him and plaintiff, who was inside doorway of house, simply put his arms behind his back); *United States v. Tovar-Rico*, 61 F.3d 1529, 1535–36 (11th Cir. 1995) (holding that there was no consent where five police officers knocked on defendant's door,

announced their identity, and asked for permission to enter—and then rushed into the home with guns drawn as soon as defendant opened the door).

As the Eleventh Circuit held here, even though "consent need not be verbal and explicit, that precedent could not have suggested to a reasonable officer that he may enter a home without a warrant, exigency, or any meaningful communication with the home's occupant." *Dukes v. Sheriff of Levy Cnty., Fla.*, 155 F.4th 1291, 1300 (11th Cir. 2025). *See id.* at 1299 ("Like the officers in *Gonzalez* and *Bashir*, Officer Gregory followed Dukes into the interior of his home without a warrant or exigency, without being invited to enter, and without Dukes granting any request to enter. To make matters worse, unlike the officers in *Gonzalez* and *Bashir*, Officer Gregory never even communicated with Dukes before entering the home.").

The facts here simply do not support one of these limited circumstances precisely because Deputy Gregory never requested admittance into the home or "even communicated" before entering. Accordingly, Deputy Gregory cannot satisfy his burden to demonstrate that his entry was justified by consent, and that even if there were indicia of nonverbal consent, such consent was freely and voluntarily given in response to a request or communication.

### B. Mr. Dukes is entitled to recover damages, including compensatory and punitive damages.

In this lawsuit, Mr. Dukes seeks various available remedies under 42 U.S.C. § 1983, including compensatory damages for physical and emotional injuries, financial damages, and punitive damages. Because Mr. Dukes' unlawful seizure and excessive force claims are subsumed within his unlawful entry claim, his award may encompass the full range of harm arising from Deputy Gregory's unlawful entry and everything that followed from it.

### 1. Mr. Dukes will present sufficient evidence for compensatory damages.

"[T]he Supreme Court [has] held that compensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated." *Slicker v. Jackson*, 215 F.3d 1225, 1229 (11th Cir. 2000) (citing *Carey v. Piphus*, 435 U.S. 247, 264 (1978)). In determining that value, "general compensatory damages, as opposed to special damages, need not be proved with a high degree of specificity." *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 476 (11th Cir. 1999) (cleaned up). Instead, "compensatory damages may be inferred from the circumstances as well as proved by testimony." *Id.*

That is, Mr. Dukes' testimony about his physical and mental injuries is sufficient to establish compensatory damages. *Ferrill v. Parker Grp., Inc.*, 168

9

F.3d 468, 476 (11th Cir. 1999) (citing *Marable v. Walker*, 704 F.2d 1219, 1220 (11th Cir. 1983) ("[a] plaintiff's own testimony that he was embarrassed and humiliated by defendant's conduct was sufficient to support compensatory damages award")). *See also Muñoz v. Oceanside Resorts, Inc.,* 223 F.3d 1340, 1349 (11th Cir.2000) (upholding $150,000 emotional distress verdict in age discrimination case where plaintiff's testimony was the sole evidence of emotional damage).

In addition to his own testimony, Mr. Dukes will present the testimony of members of his community who have seen marked changes in Mr. Dukes since the incident involving Deputy Gregory, including Jerry Mongo, who witnessed Mr. Dukes have an episode at a bank following the incident, and has helped care for Mr. Dukes in his post-incident state. Mr. Dukes will also call medical professionals to speak to his condition, including his psychiatric hospitalization around the first anniversary of the incident, when Mr. Dukes' mental condition became worsened following the mass media coverage of George Floyd's death. It was during that time that Mr. Dukes could no longer work and sought early retirement. Mr. Dukes will call an economist to testify about the effects of Mr. Dukes' early retirement on his financial condition for economic damages.

All this evidence will be sufficient for a reasonable jury to return a compensatory damages award for economic and noneconomic damages. But again, even Mr. Dukes' testimony alone is sufficient for a compensatory damages award.

### 2. Mr. Dukes will demonstrate entitlement to punitive damages.

While compensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct, "punitive damages serve a broader function; they are aimed at deterrence and retribution." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (quotation marks omitted). "[B]ecause a punitive damages award is an exercise of government power, it must comport with constitutional due process." *Cote v. Philip Morris USA, Inc.*, 985 F.3d 840, 846 (11th Cir. 2021). Reprehensibility is generally "[t]he dominant consideration in the evaluation of a punitive damages award[.]" *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1283 (11th Cir. 2008).

A reasonable jury can find that the conduct here was reprehensible. "[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Payton*, 445 U.S. at 585. Because Mr. Dukes suffered emotional and physical harm as a result, it would be appropriate for the jury to award punitive damages. *Goldsmith*, 513 F.3d at 1283 (finding that the plaintiff's economic and emotional harm suggested that the defendant's

misconduct was reprehensible); *see also Williams v. First Advantage LNS Screening Sols. Inc.*, 947 F.3d 735, 751–52 (11th Cir. 2020) (noting Eleventh Circuit has at least twice upheld "substantial punitive damages awards when the underlying compensatory damages award was based either entirely or substantially on the plaintiff's emotional distress.").

The award would also be appropriate because Deputy Gregory's conduct was also a threat to the health or safety of others. Specifically, his unlawful entry into the home resulted in him firing his Taser at Mr. Dukes while naked in his home, restraining and arresting Mr. Dukes, and Mr. Dukes being charged with a crime. Mr. Dukes suffered physical and emotional injuries and could have been killed. Had Deputy Gregory followed the law, Mr. Dukes would not have to sleep in his living room, fear public places, fear law enforcement, or suffer from extreme emotional distress and anguish, among other things.

## Conclusion

In sum, the testimony and evidence at trial will establish that Mr. Dukes' Fourth Amendment rights were violated, and he should be fully compensated for such violations.

Dated: May 18, 2026.

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
SLATER LEGAL PLLC
2296 Henderson Mill Rd NE #116
Atlanta, Georgia 30345
Tel. (404) 458-7283
james@slater.legal

Joshua Tarjan (FBN 107092)
THE TARJAN LAW FIRM P.A.
12372 SW 82 Avenue
Pinecrest, FL 33156
(305) 423-8747
(323) 243-3186 (cell)
(786) 842-4430 (fax)
josh@tarjanlawfirm.com

*Attorneys for Plaintiff*

## Local Rule 7.1(F) Certification

Pursuant to Local Rule 7.1(F), I hereby certify that the above document contains fewer than 3,000 words, inclusive of headings, footnotes, and quotations, but exclusive of the case style, signature block and certificates.

By: *ization/s/ James M. Slater*
James M. Slater

13