UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TERRY DUKES, SR.,

    Plaintiff,

v.                            CASE NO. 1:23-cv-45-AW/HTC

CHASE GREGORY,

    Defendant.

_____/

## DEFENDANT'S SUPPLEMENTAL MEMORANDUM REGARDING SPECIAL INTERROGATIRES AND QUALIFIED IMMUNITY

Defendant Chase Gregory submits this supplemental memorandum to address the jury's role in resolving the disputed historical facts that determine his entitlement to qualified immunity.

## I.   Overview.

Defendant is entitled to have the jury resolve factual issues relevant to qualified immunity:

> Because a public official who is put to trial is entitled to have the true facts underlying his qualified immunity defense decided, a timely request for jury interrogatories directed toward such factual issues should be granted. Denial of such a request would be error, because it would deprive the defendant who is forced to trial of his right to have the factual issues underlying his defense decided by the jury.

*Cottrell v. Caldwell,* 85 F.3d 1480, 1487-88 (11th Cir. 1996) (citing *Stone v. Peacock*, 968 F.2d 1163, 1165–66 (11th Cir. 1992), and *Bendiburg v. Dempsey*, 19 F.3d 557, 561 (11th Cir. 1994)).

For the purposes of qualified immunity, the standard to be applied is that of "a reasonable police officer in the deputies' position." See *Bashir v. Rockdale Cty.,* 445 F.3d 1323, 1327 (11th Cir. 2006) (the question is whether "a reasonable police officer in the deputies' position would have known what they were doing offended the Constitution," and "The relevant, dispositive inquiry…is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," and "the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," and "a reasonable officer in Deputy Davis's position could not infer consent from Bashir's conduct," and concluding that "[a] reasonable law enforcement officer faced with these circumstances would have known [his conduct violated the constitution].").[1]

---

[1]    *See also Dukes v. Sheriff of Levy Cty*., 155 F.4th 1291, 1296 (11th Cir. 2025) (the question is "whether a reasonable public official could have believed that the questioned conduct was lawful under clearly established law.).

## II.   <u>Special Interrogatories.</u>

It is appropriate in this case for the jury to resolve certain specific factual issues that bear on the objective reasonableness of Defendant's belief that consent had been given, including the following:

1) Could a reasonable officer in Deputy Gregory's position believe that, at the time he opened the door to his home, Mr. Dukes knew that Sheriff's Deputies were outside his home?

2) Did Mr. Dukes open the door to his home in response to hearing deputies knocking loudly, announcing "Sheriff's Office," and shining a flashlight outside his home?

3) Could a reasonable officer in Deputy Gregory's position believe that Mr. Dukes opened the door to his home in response to hearing deputies knocking loudly, announcing "Sheriff's Office," and shining a flashlight outside his home?

4) Did Mr. Dukes intend for his conduct of opening the door to communicate permission for the person(s) knocking outside to enter his home?

5) Could a reasonable officer in Deputy Gregory's position believe that Mr. Dukes saw him and understood he was a law enforcement officer at the time he opened the door?

6) Could a reasonable officer in Deputy Gregory's position believe that Mr. Dukes's actions, in the totality of the circumstances, communicated consent to enter his home?

The above factual determinations bear directly on the issue of Defendant's entitlement to qualified immunity. The Eleventh Circuit's opinion in this case construed the facts in the light most favorable to Plaintiff (including that "Dukes…did not hear that announcement and did not know

that the police officers were outside," that "Dukes did not see Officer Gregory outside"), and turned substantially on the fact that Plaintiff opened the door without any "meaningful communication" occurring. However, the above facts, if answered in Defendant's favor, establish that the door was not opened and left open in a vacuum, but rather was opened in direct response to meaningful verbal and non-verbal communications, and left open with the express intent to communicate an invitation to enter.

These facts would sufficiently distinguish the *United States v. Gonzalez*, 71 F.3d 819, 822 (11th Cir. 1996) and *Bashir v. Rockdale Cty.,* 445 F.3d 1323 (11th Cir. 2006), cases relied upon by the Eleventh Circuit in denying qualified immunity, as <u>neither involved non-verbal conduct by the homeowner *intended*</u> <u>to expressly convey permission to enter</u>. In *Gonzalez*, the resident spoke with officers outside her home and expressly told them that she was only going inside to get a drink of water. *Gonzalez* at 829 ("Maria Fernandez stated that she wanted to go inside her house and get a drink of water. Deputy Marshal McDermott then…followed her inside."). In *Bashir*, the resident only entered his home to attend to a crying child. *Bashir* at 1326. ("Bashir noticed his seven-year-old son, Taajwar, crying and walking around unattended…He called out to his son and then 'stopped talking to the officer and just went over there and picked [him] up….[and] carried his son into the house through the carport door…Deputy Davis followed Bashir through the doorway.").

4

While it may have been unreasonable for Defendant to believe that the invitation to enter was directed to him if there been no prior meaningful communication, <u>the Special Interrogatories are designed to confirm that the communications – both verbal and nonverbal – were meaningful and that it was reasonable for Defendant to believe that Plaintiff knew and understood Sheriff's Deputies were the ones knocking outside and, therefore, <i>the invitation was directed at them</i></u>.

Specifically, a reasonable officer in Defendant's position *could have believed* that Plaintiff answered the door in direct response to their knocking and announcing "Sheriff's Office", that Plaintiff, therefore, did so knowing that it was deputies outside knocking, that Plaintiff saw Defendant Gregory outside and knew he was a deputy and, <u>*with such knowledge*</u>, acted in a way that was intended to communicate—*and thereby reasonably communicated*—an invitation to enter (by leaving the door wide open behind him while returning into the home).

No clearly established law exists to inform officers that they act unreasonably under the Fourth Amendment when they <u>*correctly*</u> interpret a non-verbal invitation to enter, <u>when the totality of the circumstances otherwise makes it reasonable for the officers to believe that the invitation is directed towards them</u>.

5

### III.   <u>Evidence of Defendants' training and experience is relevant to the qualified immunity analysis.</u>

Although the Court has ruled that the triable Fourth Amendment issue of consent in this case is to be judged from the objective standpoint of what a "typical reasonable person"[2] (*i.e.,* a layperson) would have understood, the qualified immunity analysis, as explained in Section I, turns on what a "reasonable officer" (not a "typical reasonable person") would have understood from the situation. *See Bashir v. Rockdale Cty.,* 445 F.3d 1323, 1327 (11th Cir. 2006) (the question is whether "<u>a reasonable police officer in the deputies' position</u> would have known what they were doing offended the Constitution.").

While both law enforcement and lay persons may knock on the door of a home to elicit a response from someone inside, their purposes are generally different. Law enforcement officers are not lay persons in that the purpose of knocking on one's door is with the intent to make an arrest, to elicit information, to convey critical information, or to provide aid. Because law enforcement's purposes are different, homeowners' reactions to them are different.

Reasonable law enforcement officers know from training and experience that homeowners may react differently to them than to others who knock on their door, i.e. the deliveryman is welcomed while the officer's reception may

---

[2]     *Florida v. Jimeno*, 500 U.S. 248 (1991).

depend on his purpose. Reasonable law enforcement officers know from training and experience that homeowners may react differently according to the purpose of their visit and the totality of the circumstances.

A layperson is not going to a home to take custody of a dangerous felon. A layperson would not have the training or experience to be concerned that the individual might immediately want to harm them and that they need to account for their safety. Relevant to this situation, a layperson would not have the training and experience to know that a silent welcome may communicate fear of a danger inside or may indicate submission.

Because it is possible that a reasonable *police officer* with the same knowledge, specialized training, skills, and experience as Defendant could draw on such training to make reasonable inferences that would elude a layperson, the jury should consider the same when answering Special Interrogatories Nos. 1-6 above. Such would support qualified immunity protection for Defendant because the jury could find that, while a typical layperson would not have reasonably believed that there was consent, a reasonable officer, with the benefit of greater training and experience, could have reached a different conclusion.

The above Special Interrogatories, if answered in Defendant's favor, would: (a) resolve disputed issues of historical fact relevant to the totality of the circumstances (such as how wide Plaintiff opened his door and whether

7

Defendant had to open the door further to gain entry), (b) confirm that Plaintiff intended his conduct to non-verbally communicate consent to enter, and (c) confirm that it was reasonable for Defendant to believe that the invitation communicated by Plaintiff was directed at him, and not some other person. If established, such facts would sufficiently distinguish the "clearly established" law relied upon by the Eleventh Circuit and entitle Defendant to qualified immunity.

Respectfully submitted this 2nd day of June 2026.

*/s/ Scott J. Seagle*

 Gwendolyn P. Adkins, FBN: 0949566
Scott J. Seagle, (FBN: 57158)
sjseagle@coppinsmonroe.com
kflemming@coppinsmonroe.com
kwillis@coppinsmonroe.com

COPPINS MONROE, P.A.
2316 Killearn Center Blvd., Suite 202
Tallahassee, FL 32309
Office: 850-422-2420    Fax: 850-422-2730

ATTORNEYS FOR DEFENDANT
CHASE GREGORY

8

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b) and N.D. Florida Local Rule 5.1, this document is being filed electronically and service shall be through the Court's transmission facilities on all persons appearing before this Court.

/s/ Scott J. Seagle
Attorney