UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TERRY DUKES, SR.,

     Plaintiff,

v.                                                                                  Case No. 1:23-cv-45-AW-HTC

DEPUTY CHASE GREGORY,

     Defendant.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S TRIAL BRIEF REGARDING SPECIAL INTERROGATORIES AND TRAINING

Per the Court's *ore tenus* Order at the continued pretrial conference, Plaintiff Terry Dukes, Sr. submits this response to Defendant Chase Gregory's brief on special interrogatories for qualified immunity and his continued effort to improperly inject his training and experience into the issue of consent. (Doc. 100). As explained below: Deputy Gregory fundamentally misunderstands the purpose of special interrogatories on qualified immunity; his proposed interrogatories should be rejected; and his last-ditch effort to bring in his training and experience on the issue of consent should be dismissed.[1]

---

[1] On Monday, June 1, Plaintiff's counsel informed the defense that Mr. Dukes waives any entitlement to punitive damages. Therefore, there is no relevance *at all* to any officer's training and experience.

## I. Special Interrogatories Are About *Facts*, Not Law

For purposes of qualified immunity, "a defendant is entitled to have any evidentiary disputes upon which the qualified immunity defense turns decided by the jury so that the court can apply the jury's factual determinations to the law and enter a post-trial decision on the defense." *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015). "When the case goes to trial, **the jury itself decides the issues of historical fact** that are determinative of the qualified immunity defense, **but the jury does not apply the law** relating to qualified immunity to those historical facts it finds; **that is the court's duty**." *Id.* (citations omitted) (emphasis supplied). That is, special interrogatories can be used when there are issues of fact that may affect a qualified immunity defense. *See Simmons v. Bradshaw*, 879 F.3d 1157, 1164 (11th Cir. 2018).

In his briefing, Deputy Gregory proposes six items, which he couches as "factual issues" for the jury to determine. Mem. at 3. Let's take them each in turn.

First, Deputy Gregory would like the jury to decide whether a reasonable officer would believe that Mr. Dukes knew deputies were outside his home. That is not a fact. A fact is: "did Mr. Dukes hear deputies outside his home." Or "did Deputy Gregory hear Mr. Dukes walking to the door." Whether it was reasonable

for Deputy Gregory to believe something goes to the ultimate issues here for the Court to decide. This proposed special interrogatory should be rejected.

Second, Deputy Gregory wants the jury to answer whether Mr. Dukes (1) opened the door (2) in response to hearing deputies knocking loudly (3) announcing "Sheriff's Office" and (4) shining a flashlight inside his home. These are four factual issues in a single interrogatory. How is a compound question regarding four factual issues helpful or dispositive? A jury might believe that Mr. Dukes opened the door in response to loud noise, but not that he thought deputies were knocking. Or he might have responded to the loud knocking and flashlight but not the announcement. As phrased, this interrogatory fails to identify a discrete factual issue for the jury to resolve. But in any event the phrasing does not matter because even if all these matters are true, their truth would have no bearing on the qualified immunity analysis here, as the Eleventh Circuit rejected these arguments. *See Dukes v. Sheriff of Levy Cnty., Fla.*, 155 F.4th 1291, 1299 (11th Cir. 2025).

Third, Deputy Gregory asks the jury again to consider what a reasonable officer could believe, this time whether Deputy Gregory could believe that Mr. Dukes opened the door in response to the knocking, announcing, and use of flashlight. This interrogatory is both legally deficient and compound. It does not articulate specific facts for the jury to decide. It invades the province of the Court to ask the jury about reasonableness. And even if it were phrased as "did Mr.

Dukes open the door in response to the knocking and announcing," or something to that effect, it would again have no bearing on the qualified immunity analysis. The Eleventh Circuit has already rejected the notion that responding to the door in this context was not clearly established.

Fourth, Deputy Gregory asks the jury whether Mr. Dukes intended to communicate entry into the home. It is undisputed that Mr. Dukes thought he was letting his son into the home. But that is irrelevant for the qualified immunity analysis. The question is whether the exchange (or here, no exchange) meant that consent was given for *Deputy Gregory* to enter. Again, the Eleventh Circuit rejected this argument in the qualified immunity context. *Dukes*, 155 F.4th at 1299 ("In this case, Dukes opened a door to his house and returned to his bedroom. Like the residents in *Gonzalez* and *Bashir*, he left the door open behind him. Like the officers in *Gonzalez* and *Bashir*, Officer Gregory followed Dukes into the interior of his home without a warrant or exigency, without being invited to enter, and without Dukes granting any request to enter."). Because Deputy Gregory would not be entitled to qualified immunity even if this interrogatory would be answered in the affirmative, it should not be given to the jury.

Fifth, Deputy Gregory asks about whether a reasonable officer could believe that Mr. Dukes saw him and understood he was a law enforcement officer. Again, this is not a factual inquiry. It is a legal inquiry. It must be rejected.

Sixth, Deputy Gregory seeks an interrogatory on whether a reasonable officer, in the totality of the circumstances, could believe that Mr. Dukes' actions communicated consent to enter the home. It must be repeated: this is legal inquiry, not a factual one.

Not only are Deputy Gregory's interrogatories largely legal questions or compound questions that do not bear on qualified immunity in this case, but they are also confusing.

To avoid the conclusion that these interrogatories must be rejected, Deputy Gregory focuses on the fact that the Eleventh Circuit relied in part on Mr. Dukes' subjective knowledge—that he did not see Deputy Gregory and did not hear the announcement. Mem. at 3-4. But the idea that these six interrogatories resolve the qualified immunity inquiry in Deputy Gregory's favor is not accurate. He argues that these interrogatories establish "the door was not opened and left open in a vacuum, but rather was opened in direct response to meaningful verbal and non-verbal communications, and left open with the express intent to communicate an invitation to enter." *Id.* at 4. But again, Mr. Dukes does not dispute that he expressed an intent to let someone into the home—his son.

These "facts" do not resolve the issue of whether there was a request to enter or meaningful communication, which is required for implied consent. *Dukes*, 155 F.4th at 1299-1300 ("Even though we held in *Judd* that consent need not be verbal

and explicit, that precedent could not have suggested to a reasonable officer that he may enter a home without a warrant, exigency, or any meaningful communication with the home's occupant."). Contrary to Deputy Gregory's position, *see* Mem. at 5, nothing here is tailored to demonstrate that any invitation was made to the deputies as opposed to Mr. Dukes' son. Unlike these confusing interrogatories, that is a simple question: who, if anyone, did Mr. Dukes intend to let into his home? But that is not what Deputy Gregory is asking the Court to provide to the jury. And the answer to that question decides who wins on liability—there is simply no need for the jury to answer this question twice.

In sum, this Court has discretion to permit special interrogatories on qualified immunity. *Stone v. Peacock*, 968 F.2d 1163, 1166 (11th Cir. 1992) ("If there are disputed issues of fact concerning qualified immunity that must be resolved by a full trial and which the district court determines that the jury should resolve, special interrogatories would be appropriate."). Here, the Court should exercise its discretion and disallow Deputy Gregory's proposed confusing and inappropriate special interrogatories.

## II.   Evidence of Training and Experience is Not Relevant

This Court has already determined that Deputy Gregory's training and experience is not relevant to the issue of consent, subject to punitive damages,

which Mr. Dukes has now waived. But Deputy Gregory argues that it is relevant for the qualified immunity analysis.

Deputy Gregory cites no caselaw for his proposition that the jury decides reasonableness in this way or that his training and experience should bear on the facts that the jury resolves. The caselaw he references generally—*Bashir v. Rockdale Cnty., Ga.*, 445 F.3d 1323 (11th Cir. 2006)—undermines his argument. In qualified immunity context, the panel in *Bashir* concluded that the *court* "look[s] to case law to see whether 'the right the official is alleged to have violated [has] been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* at 1330 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). This is not the province of the jury.

More importantly, Deputy Gregory use of the phrase "a reasonable official" and similar other turns of phrase in *Bashir* and other cases is belied by the actual holdings of those cases. That is, the qualified immunity standard is not divorced from the reasonable person standard. There is no "reasonable officer" standard that would make the officers' training and experience relevant. *Bashir*, 445 F.3d at 1327 ("Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly

established statutory or constitutional rights of which a **reasonable person** would have known," quoting *Lee v. Ferraro*, 248 F.3d 1188, 1193–94 (11th Cir. 2002) (emphasis added). *See also McClinton v. Warden, Baldwin State Prison*, 172 F.4th 1276, 1281 (11th Cir. 2026) ("Qualified immunity protects government officials from personal liability for their official conduct so long as "their conduct does not violate clearly established statutory or constitutional rights of which a **reasonable person** would have known," quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (emphasis added); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct did not violate clearly established statutory or constitutional rights of which a **reasonable person** would have known.") (emphasis added); *Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019) (per curiam) ("The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a **reasonable person** would have known.")(citation and quotation marks omitted; emphasis supplied).

Despite decades of precedent providing a clear articulation for the applicable standard, for a third time Deputy Gregory urges this Court to allow him

8

and his fellow officers to introduce irrelevant testimony and evidence concerning their training and experience. He belabors the point that police encounters are different and that he must explain how so. *See* Mem. at 7 ("A layperson would not have the training or experience to be concerned that the individual might immediately want to harm them and that they need to account for their safety."). Not so. It is a reasonable person standard for liability and for qualified immunity. Deputy Gregory's last-ditch effort to invade the trial with his (and other officers') training and experience should be rejected.

Dated: June 3, 2026.

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
SLATER LEGAL PLLC
2296 Henderson Mill Rd NE #116
Atlanta, Georgia 30345
Tel. (404) 458-7283
james@slater.legal

Joshua Tarjan (FBN 107092)
THE TARJAN LAW FIRM P.A.
12372 SW 82 Avenue
Pinecrest, FL 33156
(305) 423-8747
(323) 243-3186 (cell)
(786) 842-4430 (fax)
josh@tarjanlawfirm.com

*Attorneys for Plaintiff*

9

## **Local Rule 7.1(F) Certification**

Pursuant to Local Rule 7.1(F), I hereby certify that the above document contains fewer than 2,250 words, inclusive of headings, footnotes, and quotations, but exclusive of the case style, signature block and certificates.

By: */s/ James M. Slater*
James M. Slater