UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TERRY DUKES, SR.,

      Plaintiff,

v.

DEPUTY CHASE GREGORY,

      Defendant.

Case No. 1:23-cv-45-AW-HTC

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL

Plaintiff Terry Dukes, Sr. files this response in opposition to Defendant Chase Gregory's Rule 50(b) motion for judgment as a matter of law or Rule 59 motion for a new trial. (Doc. 140).

The jury heard evidence, was correctly instructed, and returned a verdict for Plaintiff. Defendant asks the Court to override the verdict based on his contention that a separate "reasonable officer" inquiry was required to go to the jury for purposes of qualified immunity and that the Court prevented Defendant from raising the issue of qualified immunity in the jury instructions, special interrogatories, or through officer testimony about their training and experience. Because Defendant did not properly preserve his Rule 50(b) arguments and because, even if preserved they are without merit, the Court should deny the Rule

50(b) motion. As to the Rule 59 motion, Defendant shows no manifest error requiring a new trial.

## I.   STANDARD OF REVIEW

### A. The applicable standard for Rule 50 motions.

Under Rule 50, a party may move for judgment as a matter of law at the close of evidence, and if the motion is properly renewed, after the jury has returned its verdict. *See* Fed. R. Civ. P. 50(a)–(b). The standard is exacting: the motion may be granted only if "there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party." *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007) (citation and quotation marks omitted). A court must assess whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1425 (11th Cir. 1998) (citation and quotation marks omitted). All evidence, and reasonable inferences drawn from it, must be viewed in the light most favorable to the nonmoving party. *See id.* (citation omitted). *See also Bailey v. Swindell*, 89 F.4th 1324, 1329 (11th Cir. 2024) ("In determining whether a government official is entitled to qualified immunity following a jury verdict, we view the evidence in the light most favorable to the party [who] prevailed at trial.") (internal quotation marks and citation omitted).

Rule 50 motions must be made on the record. *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1289 (11th Cir. 1998). "The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). Like here, where a jury returned a verdict, Rule 50(b) permits the court to enter judgment on the verdict, order a new trial, or enter judgment as a matter of law. *See* Fed. R. Civ. P. 50(b). Rule 50(b) expressly provides that, after a jury verdict, a party "may *renew* its request for judgment as a matter of law ...." *Id.* (emphasis added). The Eleventh Circuit "repeatedly has made clear that any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of the evidence and prior to the case being submitted to the jury. *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004) (collecting cases).

## B. The applicable standard for Rule 59 motions.

A Rule 50(b) motion may also "include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). Under Rule 59, a Court may "grant a new trial on all or some of the issues...after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1) (alterations added). A new trial may be warranted where the verdict runs counter to the great weight of the evidence, *see Rosenfield v.*

3

*Wellington Leisure Prods., Inc.*, 827 F.2d 1493, 1497–98 (11th Cir. 1987) (citation omitted); where the trial was marred by evidentiary error, *see Peat, Inc. v. Vanguard Rsch., Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004); or where the jury instructions were legally flawed, *see Stuckey v. N. Propane Gas Co.*, 874 F.2d 1563, 1571 (11th Cir. 1989) (citation omitted).

This is an exacting standard. A verdict should be set aside when the Court is convinced it would "result in a miscarriage of justice." *Hewitt v. B.F. Goodrich Co.,* 732 F.2d 1554, 1556 (11th Cir. 1984). Ultimately, "motions for a new trial are committed to the discretion of the trial court[.]" *Montgomery v. Noga*, 168 F.3d 1282, 1295 (11th Cir. 1999). That said, Rule 59 is not a vehicle to "relitigate old matters, raise argument[,] or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005) (alteration added; citations omitted).

## II.   ARGUMENT

Defendant's Rule 50(a) motions at trial addressed the sufficiency of evidence as to whether Defendant was entitled to qualified immunity. Therefore, his Rule 50(b) arguments about instructional error and officer testimony, while outside the ambit of Rule 50, are also unpreserved. Notwithstanding, both his Rule 50(b) and 59 motions fail for several reasons on the merits. First, the Court did not prevent Defendant from raising the issue of qualified immunity by limiting officer

testimony on training and experience or resisting Defendant's proposed jury instructions or verdict form. Second, any failure related to special interrogatories lies solely with Defendant, who could not craft *historical factual* questions despite a half-dozen opportunities from the Court to do so. Third, the Court did not err in finding that Defendant was not entitled to qualified immunity, and at this stage, the facts in the light most favorable to Plaintiff are identical to those the Court of Appeals considered in its ruling denying Defendant's immunity invocation. And last, a Rule 59 motion is an improper vehicle to relitigate the qualified immunity issue.

### A. Defendant's Rule 50(a) motion should be denied.

#### 1. Defendant's Rule 50(a) motion was inadequate, and he failed to preserve any arguments for purposes of Rule 50(b).

Defendant's Rule 50(b) motion complains primarily about perceived errors in the jury instructions, proposed special interrogatories, the verdict form, and the ruling limiting officer testimony about training and experience. Specifically, he claims:

- He "has never been afforded [the reasonable officer] perspective," (Doc. 140 at 10);

- The Court "did not allow testimony on the way law enforcement officers – and Gregory specifically – are trained on implied consent and nonverbal cues. This Court did not allow evidence on what other public

officials may have interpreted from the totality of the circumstances or believed as to the lawfulness of their actions" (*Id.* at 11);

- "There were no factual determinations submitted to the jury which would allow this Court to answer" whether Defendant was entitled to qualified immunity, (*Id.* at 12–13); and

- "[T]here was no evidence presented at trial to demonstrate that no reasonable officer could have believed that Dukes's actions communicated consent under the circumstances," (*Id.* at 13).

While the parties spent considerable time on these issues before and during trial, these are not issues concerning evidentiary sufficiency for purposes of Rule 50. *See Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 948 (11th Cir. 2018) (The proper analysis under Rule 50(a) "'is squarely and narrowly focused on the sufficiency of evidence,' that is, whether the evidence is 'legally sufficient to find for the party on that issue,'" quoting *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007)). Thus, Defendant's complaints about limiting testimony, interrogatories, and instructional error are not sufficiency of the evidence questions and therefore should not be considered under Rule 50.

Moreover, Defendant's Rule 50(a) motion did not address any of these issues. Defendant's counsel's Rule 50(a) motion was, in its entirety:

> We would make a motion for directed verdict on behalf of the defense that there is absolutely not enough evidence here that would allow the plaintiff to show that no reasonable person in Deputy Gregory's position at that point in time, under the totality of the circumstances, could have believed otherwise. That this indicated anything other than consent, and that he has to show that burden to be able to prove his claim. Otherwise, Deputy Gregory is entitled to qualified immunity.

(Doc. 137 at 4:16-24). The Court then made its ruling in the negative on cross-motions for judgment as a matter of law, (*see id.* at 4:25–5:17), and then asked the parties whether they had "any other motions." Defense counsel stated, "No, Your Honor." (*Id.* at 5:19). Defense counsel then raised the issues with instructions and verdict forms but indicated solely that she would submit an additional question for the verdict form over the lunch break, not that it was part of her Rule 50(a) motion. (*See id.* 5:19:22). Following the close of evidence, the parties renewed their Rule 50(a) motions. (Doc. 138 at 2:8-20). There were no additional arguments made regarding the Rule 50(a) motions. (*Id.*).

The grounds in the Rule 50(a) motion and post-trial Rule 50(b) motion "must be based upon the same grounds." *Doe*, 394 F.3d at 903. Defendant had an opportunity at the close of evidence before the instructions were read to convert his various objections to the instructions, interrogatories, verdict form, and testimony into a Rule 50(a) motion, but he did not. The Court was then clear that it would proceed with reading the instructions to the jury. (Doc. 183 at 2:17-20). Defendant

did not raise any motion prior to doing so under Rule 50(a) with respect to those issues; his complaints are unpreserved.

Not only that, but the only issue arguably preserved—the issue of evidentiary sufficiency—fails the basic requirements of Rule 50. As explained above, a Rule 50(a) motion must set forth the law and facts that entitle the party to judgment. Here, Defendant cited no law and facts to support his motion. On this basis, his initial motion was deficient and cannot be renewed.

### 2. Plaintiff met his burden at trial under the applicable reasonable person standard.

As to the question of evidentiary sufficiency, the Court correctly denied Defendant's Rule 50(a) motion. Here, as the Court noted after receiving the parties' competing Rule 50(a) motions, this case presented "a classic jury question." (Doc. 137 at 5:1-2). The evidence submitted, implicit in the jury's finding, demonstrated that a reasonable person understood by the exchange that Defendant's entry into the home was unjustified. The evidence set forth that the officers knocked and announced "Sheriff's Office" at the front of the home; Plaintiff, naked, walked to the back door and opened it; Defendant did not announce his presence verbally or by shining his flashlight (or in any other way) and Plaintiff did not speak to him; after opening the door, Plaintiff walked back into the interior of the home; Defendant then walked into the home. Plaintiff met his burden.

While Defendant argues that for qualified immunity a "reasonable officer" standard was appropriate, and therefore there was error, as the Court correctly instructed, the standard for the *jury* to apply was a "reasonable person" standard. In *Jimeno*, the Supreme Court concluded that "[t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Fla. v. Jimeno*, 500 U.S. 248, 251 (1991) (collecting cases). *See also United States v. Estadella*, 167 F.4th 1163, 1176 (11th Cir. 2026) ("The permissible reach of a consent search is limited by the scope of the given consent, as understood by a reasonable person.").

There was also no error for qualified immunity purposes because the "reasonable person" standard was also what the Court was required to apply in ruling on qualified immunity. *See Bashir v. Rockdale Cnty., Ga.*, 445 F.3d 1323, 1327 (11th Cir. 2006) ("Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a **reasonable person** would have known," quoting *Lee v. Ferraro*, 248 F.3d 1188, 1193–94 (11th Cir. 2002) (emphasis added). *See also McClinton v. Warden, Baldwin State Prison*, 172 F.4th 1276, 1281 (11th Cir. 2026) ("Qualified immunity protects government officials from personal liability for their official conduct so

9

long as "their conduct does not violate clearly established statutory or constitutional rights of which a **reasonable person** would have known," quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (emphasis added); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct did not violate clearly established statutory or constitutional rights of which a **reasonable person** would have known.") (emphasis added); *Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019) (per curiam) ("The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a **reasonable person** would have known.") (citation and quotation marks omitted; emphasis supplied). Defendant's effort to import a "reasonable officer" standard here is inapposite.

Finally, to assert that Plaintiff was required to do more than prove up the historical facts about what happened the morning of May 25, 2019 goes beyond the requirements of the law. Defendant's contention that "there was no evidence presented at trial to demonstrate that no reasonable officer could have believed that Dukes's actions communicated consent under the circumstances," (Doc. 140 at 13), is simply an incorrect statement of the facts and law. Plaintiff adduced

evidence of what happened that morning, which the jury weighed. The Court then denied qualified immunity based on those facts under the same applicable standard. To the extent Defendant's evidentiary sufficiency argument is even preserved, it is unavailing.

### 3. The Court correctly denied Defendant's immunity invocation.

Even if there were some doubts as to the applicable standard (reasonable person versus reasonable officer), the Court's denial of qualified immunity was correct.

As the Eleventh Circuit has noted, a Rule 50 motion "will sometimes be denied because the same evidence that led to the denial of the summary judgment motion usually will be included in the evidence presented during the plaintiff's case, although sometimes evidence that is considered at the summary judgment stage may turn out not to be admissible at trial." *Johnson v. Breeden*, 280 F.3d, 1308, 1317–18 (11th Cir. 2002) (citing *Wright v. Southland Corp.,* 187 F.3d 1287, 1304 n. 21 (11th Cir. 1999)). Where like here, "there is no change in the evidence, the same evidentiary dispute that got the plaintiff past a summary judgment motion asserting the qualified immunity defense will usually get that plaintiff past a Rule 50(a) motion asserting the defense, although the district court is free to change its mind." *Breeden,* 280 F.3d at 1318 (citing *Abel v. Dubberly,* 210 F.3d 1334 (11th Cir. 2000)).

11

While the defense of qualified immunity may be raised at trial, "at that stage, the defense must be evaluated in light of the character and quality of the evidence received in court." *Ortiz v. Johnson*, 562 U.S. 180, 184 (2011). Nevertheless, summary judgment opinions may be "instructive" where the facts are the same. *Wilkerson v. Seymour*, 626 F. App'x 816, 818 (11th Cir. 2015).

Here, not only did Plaintiff prevail at summary judgment on Defendant's qualified immunity defense, but that decision was affirmed by the Eleventh Circuit Court of Appeals, which declined Defendant's request for panel rehearing or *en banc* review.[1] The evidence presented at trial was the same evidence submitted to the Court at summary judgment and thus to the Court of Appeals. And the analysis here based on that same evidence would be the same—in the light most favorable to Plaintiff. *Bailey*, 89 F.4th at 1329 ("In determining whether a government official is entitled to qualified immunity following a jury verdict, we view the evidence in the light most favorable to the party [who] prevailed at trial.") (internal quotation marks and citation omitted).

---

[1] Defendant argues that the panel decision should not bear on the issues at trial because there were, in dicta, references to facts unknown to Defendant, such as Plaintiff's belief that it was his son knocking. But Defendant argued for vacatur of the opinion based on those arguments, which the Court of Appeals denied. (*See* Doc. 76-1 (Pet. for Reh'g or En Banc Review). Either way, the panel decision governs because the objective facts adduced at trial were the same.

12

Because the Eleventh Circuit and this Court determined that qualified immunity was not available to Defendant based on the evidence that has remained the same throughout the case—that Plaintiff opened his back door in response to knocking and announcing "Sheriff's Office" on the front, and following that door opening Defendant walked into the home without announcing his presence—it was not error for the Court to conclude that qualified immunity was not available to Defendant when raised by Defendant in his Rule 50(a) motions. Indeed, as noted above, the only historical fact that Defendant tried to raise was how far the door was opened. (Doc. 103). The Court correctly concluded that Defendant already raised that argument with the Court of Appeals, which rejected it. Thus, the Court could readily apply the law (and did apply it) based on the jury's verdict. And for purposes of this motion, the Court is essentially bound by the Eleventh Circuit's ruling based on the same facts and under the same light—that most favorable to Plaintiff. The Rule 50(b) motion should be denied.

Further, even if the Court accepted that Defendant's arguments on instructional error and limitations in testimony were not waived, those arguments are equally unavailing as explained below.

**B. Defendant's Rule 50(b) and 59 arguments on instructional error and officer testimony should be denied.**

13

### 1. Defendant impermissibly sought to invade the jury's factfinding inquiry with legal questions.

Defendant's primary concern, in both his Rule 50(b) and 59 motions, is his unfounded belief that the Court prevented him from raising a qualified immunity defense. But he ignores that qualified immunity is an issue to be resolved by the Court, not the jury. "It is not the province of the jury to decide a defendant's entitlement to qualified immunity." *Simmons*, 879 F.3d at 1166. *See also Cottrell v. Caldwell*, 85 F.3d 1480, 1488 (11th Cir. 1996).

Here, the Court's instructions and verdict form contemplated the historical factual issues for the jury to resolve and correctly did not include legal questions related to qualified immunity. If Defendant had it his way, the verdict form would have been invaded with questions outside the scope of the jury's role as the factfinder. For example, Defendant proposed that the jury be asked whether it "f[ou]nd from a preponderance of the evidence that Plaintiff has proved that no reasonable deputy could have believed under the totality of the circumstances that Mr. Dukes's actions conveyed consent to enter." (Doc. 111 at 1). This is a mixed factual and legal question and the Court correctly determined that it was not appropriate for the jury's factual inquiry.

As for the jury instructions, the Court's final instructions to the jury were essentially those proposed by Defendant before trial. (*Compare* Doc. 116 *with* Doc. 78 at 35–40). But despite submitting jury instructions that the Court, with

14

some adjustments, found proper for the jury, Defendant changed course after the Court presented its proposed instructions for discussion purposes. He claimed that the jury would need to know about the so-called "reasonable officer" standard for qualified immunity purposes—in the instructions, verdict form, and through officer testimony on their training and experience. But as explained above, there is no "reasonable officer" standard for either liability or qualified immunity. *See* § II.A.2, *infra* (collecting cases). And for purposes of Rule 50(b), this argument is unpreserved.

The jury here was instructed that the question was "only whether a reasonable person in Defendant's situation would have understood there to be consent to enter the home." (Doc. 116 at 4). This is an instruction that placed the jury precisely in Defendant's shoes based on the "totality of the circumstances" known to him at the time. (*Id.*). Not a bystander's or a hypothetical civilian's perspective divorced from Defendant's circumstances. Defendant identifies no caselaw or evidence that a differently worded instruction, including a "reasonable officer" instruction, would have changed the analysis here. On that basis, he has not met his burden to show a manifest injustice or error under Rule 59.

The Court correctly excluded Defendant's proposed language in the verdict form and jury instructions about whether a reasonable *officer* under the totality of circumstances would believe that he or she had consent to enter the home. *See*

15

*United States v. Starke,* 62 F.3d 1374, 1380 (11th Cir.1995) (as long as they "accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed [in jury instructions and special interrogatories]," citing *McElroy v. Firestone Tire & Rubber Co.,* 894 F.2d 1504, 1509 (11th Cir. 1990)); *see also Breeden*, 280 F.3d 1308, 1314 ("We do not engage in word-by-word hairsplitting when reviewing the instructions given at trial, because a 'trial judge is given wide discretion as to the style and wording employed in the instructions,'" quoting *Carter v. DecisionOne Corp.,* 122 F.3d 997, 1005 (11th Cir. 1997)).

The Court also correctly limited testimony by officers regarding their training and experience, as those matters were not relevant to whether entry into the home was justified by consent under a reasonable person standard—which both the jury and Court were required to apply for liability and qualified immunity.

In *Simmons v. Bradshaw*, on which Defendant principally relies, the Eleventh Circuit was faced with jury instructions where—"[r]ather than submitting the contested factual issues—*i.e.*, the historical facts—to the jury at trial,"—the trial court improperly gave an instruction that "effectively delegated resolution of the issue of qualified immunity to the jury—presumably as to both facts and law—," which meant that the trial court never decided the issue of qualified immunity. 879 F.3d at 1166. There was no room, so to speak, for the trial court to decide the issue of qualified immunity in that case.

16

But contrary to Defendant's arguments in his moving papers, and as explained above, the Court here correctly concluded that Defendant was not entitled to qualified immunity. Unlike in *Simmons*, there was no unresolved legal question left for special interrogatories to unlock. *See id.* This Court and the Court of Appeals already resolved this question. *Breeden,* 280 F.3d at 1323 (holding that a special interrogatory is not required when the answer "was either covered by the verdict and jury findings, or it was irrelevant to the qualified immunity issue in light of the verdict and jury findings.").

Indeed, in the qualified immunity context, the *court*, not the jury, "look[s] to case law to see whether 'the right the official is alleged to have violated [has] been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Bashir*, 445 F.3d at 1330 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).

The jury instructions, in limine rulings on training and experience, and verdict form—and as explained below, the Court's discretionary decision not to allow Defendant to put improper interrogatories before the jury—did not deprive Defendant of an opportunity to advance the immunity argument; those correct rulings prevented Defendant from invading the jury's fact-finding inquiry with

17

matters that were reserved for the Court. Under *Simmons*, it would have been error for the Court to accept Defendant's invitation to permit the jury to resolve legal questions. Under *Bashir* and the cases collected above, the Court would have contradicted Supreme Court and Eleventh Circuit precedent had it followed Defendant's call to deviate from the "reasonable person" standard.

Defendant's contention that he is entitled to qualified immunity because "Plaintiff has never offered evidence that, and the jury was never asked whether, 'every reasonable official would have understood that what he is doing violates that right,'" is simply not the case. (Doc. 140 at 13). Plaintiff presented evidence of *facts*, as did Defendant. The jury was instructed to weigh those facts. And based on those facts, the Court *applied the law* when it denied Defendant's Rule 50(a) motions after Plaintiff's case-in-chief and following the conclusion of evidence. Defendant's idea that the jury would be asked the ultimate legal question of qualified immunity is nonsensical. And to the extent Defendant frames the issue as instructional error makes no sense when the Court correctly instructed on the law based primarily on the proposed instructions first proposed by Defendant.

Finally, Defendant's assertion that the jury's mid-deliberation questions show instructional error is wrong. Questions from a deliberating jury reflect careful engagement with the evidence, not confusion caused by the instructions; and Defendant offers only speculation as to those questions, which is not a basis for

18

disturbing a jury verdict. *See Simmons*, 879 F.3d at 1162 (new trial warranted only where instructional error leaves "substantial and ineradicable doubt" about proper guidance, not mere possibility of confusion) (quoting *Carter*, 122 F.3d at 1005).

For all these reasons, Defendant's motions are flawed and should be denied.

### 2. The Court did not abuse its discretion in disallowing Defendant's improper special interrogatories.

For purposes of qualified immunity, "a defendant is entitled to have any evidentiary disputes upon which the qualified immunity defense turns decided by the jury so that the court can apply the jury's factual determinations to the law and enter a post-trial decision on the defense." *Breeden*, 280 F.3d at 1318, abrogated on other grounds by *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015). "When the case goes to trial, the jury itself decides the issues of historical fact that are determinative of the qualified immunity defense, but the jury does not apply the law relating to qualified immunity to those historical facts it finds; that is the court's duty." *Id.* (citations omitted). That is, special interrogatories can be used when there are issues of fact that may affect a qualified immunity defense. *See Simmons*, 879 F.3d at 1164. And they are "restricted to the who-what-when-where-why type of historical fact issues." *Id.* at 1165.

Here, Defendant complains that the Court erred in not letting him raise special interrogatories to the jury. While the Court of Appeals has concluded that denial of such a request can constitute error, *see id.* (quoting *Cottrell*, 85 F.3d at

19

1487–88), the Court here indulged every effort by Defendant to raise appropriate special interrogatories. While Defendant blames the Court for denying him "any opportunity" to litigate qualified immunity at trial, (*see* Doc. 140 at 1), the record shows the opposite. The Court indulged Defendant prior to trial and during trial in an effort to allow him to raise special interrogatories for qualified immunity. While Defendant casts blame on the Court, the fault lies solely with him. After proposing almost a dozen special interrogatories, he did not advance any "who-what-when-where-why type of historical fact issues," as required, but instead supplied vague and compound questions that invaded the Court's role as the sole arbiter of the law.

A party who is given repeated opportunities to frame a defense or present special interrogatories in a legally proper way but fails to do so is not denied a fair trial when the Court holds him to the minimum requirements of the law. The Court's rulings did not deprive Defendant of qualified immunity; his inability to craft questions resolving historical facts doomed his efforts.

For example, prior to trial, Defendant advanced various proposed special interrogatories, which the Court decided were inappropriate. (Doc. 100 at 3). These were:

1. Could a reasonable officer in Deputy Gregory's position believe that, at the time he opened the door to his home, Mr. Dukes knew that Sheriff's Deputies were outside his home?

2. Did Mr. Dukes open the door to his home in response to hearing deputies knocking loudly, announcing "Sheriff's Office," and shining a flashlight outside his home?

3. Could a reasonable officer in Deputy Gregory's position believe that Mr. Dukes opened the door to his home in response to hearing deputies knocking loudly, announcing "Sheriff's Office," and shining a flashlight outside his home?

4. Did Mr. Dukes intend for his conduct of opening the door to communicate permission for the person(s) knocking outside to enter his home?

5. Could a reasonable officer in Deputy Gregory's position believe that Mr. Dukes saw him and understood he was a law enforcement officer at the time he opened the door?

6. Could a reasonable officer in Deputy Gregory's position believe that Mr. Dukes's actions, in the totality of the circumstances, communicated consent to enter his home?

(*Id.*).

As Plaintiff explained prior to trial, these proposed questions were confusing, compound, legal questions that did not address the historical facts for the jury to resolve. (Doc. 101).

As to the first proposed interrogatory, Plaintiff explained that it was not a historical fact for the jury to decide whether a reasonable officer believed that Plaintiff knew deputies were outside his home. Instead, Plaintiff proposed some examples of historical facts: "A fact is: 'did Mr. Dukes hear deputies outside his home.' Or 'did Deputy Gregory hear Mr. Dukes walking to the door.'" (*Id.* at 2). Instead, this interrogatory, like the rest, went to the ultimate issue for the jury to

21

decide contrary to the requirements of *Breeden* and *Simmons*. Other questions, like the second, were compound, containing myriad facts that could not be answered in a coherent way. (*Id.* at 3).

Plaintiff also explained before trial that some of these facts were irrelevant, as explained below, because of the Court and Eleventh Circuit's prior rulings. For example, Defendant wanted to ask the jury whether Plaintiff intended to communicate entry into his home. That was never disputed. The evidence has always supported that Plaintiff intended to let someone (his son) into the home. And the Eleventh Circuit concluded that even under those facts, Defendant could not raise qualified immunity to escape liability. *Dukes v. Sheriff of Levy Cnty., Fla.*, 155 F.4th 1291, 1299 (11th Cir. 2025) ("In this case, Dukes opened a door to his house and returned to his bedroom. Like the residents in *Gonzalez* and *Bashir*, he left the door open behind him. Like the officers in *Gonzalez* and *Bashir*, Officer Gregory followed Dukes into the interior of his home without a warrant or exigency, without being invited to enter, and without Dukes granting any request to enter."). Because Defendant would not be entitled to qualified immunity even if this interrogatory would be answered in the affirmative, the Court adequately exercised its discretion in not providing it to the jury.

Again, prior to trial, Plaintiff aided Defendant in crafting a historical fact out of this inappropriate question: "who, if anyone, did Mr. Dukes intend to let into his

22

home?" (Doc. 101 at 6). But instead of asking a simple historical fact—the who, why, what, when, or where—Defendant insisted on presenting legal questions to the jury: "Do you find that, under the totality of the circumstances known to Deputy Gregory, Deputy Gregory reasonably believed Mr. Dukes consented to his entry"; or "Do you find from a preponderance of the evidence that Plaintiff has proved that no reasonable deputy could have believed under the totality of the circumstances that Mr. Dukes's actions conveyed consent to enter?" (Doc. 111 at 1). These are not historical facts. The answer to these questions, instead, decides who wins on liability. If Defendant had simply followed the Eleventh Circuit's clear articulation of what a special interrogatory entails—historical facts—there is no doubt from the myriad opportunities the Court gave Defendant that it would have allowed him to present such interrogatories to the jury. But despite prodding by the Court and even proposed questions by Plaintiff, Defendant could not follow the simple requirements of the law. The fault is his own.

In *Breeden*, the Eleventh Circuit considered whether it was an abuse of discretion to refuse certain proposed special interrogatories on qualified immunity. 280 F.3d 1308. There, the defendant requested more than a dozen interrogatories, most of which were historical facts, unlike what Defendant here proposed. For example, they asked whether the plaintiff verbally abused defendants, whether it was necessary to escort plaintiff to his cell, whether the plaintiff deliberately struck

the defendant, whether the plaintiff got out of his bed contrary to instructions by defendants. *See id.* at 1322. Here, Defendant offered nothing like these. Even so, the panel found that these instructions were "irrelevant" because they were, in part, implicit in the jury's verdict. *See id.* That is, "what force is excessive will depend upon the circumstances in which it is administered, but the jury in this case was instructed about that, and it found that the force used in this case was, in view of the circumstances, excessive." *Id.*

Here, reading the instructions and the verdict together, "the inference is inescapable that the jury [more than] implicitly found" that the facts weighed in Plaintiff's favor. *Breeden*, 280 F.3d at 1319. "After all, we must presume that juries follow their instructions." *Id.* (collecting cases); (*see also* Doc. 137 at 10:3-4 ("Well, we assume people follow the instructions.")). As explained above, the jury was instructed to consider the totality of the circumstances based only on whether a reasonable person in Defendant's situation would have understood there to be consent to enter the home. (*See* Doc. 111). Based on the jury's finding, the Court did not need special interrogatories to determine that qualified immunity did not attach to Defendant.

Indeed, the Defendant's argument for its final proposed interrogatory was that "if [the jury] take[s] it from the subjective view of Mr. Dukes, which the jury is not supposed to do," then the interrogatory would be necessary to establish the

24

objective belief of a person in Defendant's position. (Doc. 137 at 40:18-23). But, as the Court correctly pointed out, and as explained herein, "they're not going to take it from the subjective view," "because we've told them not to" in the instructions. (*Id.* at 40:24–41:1).

But even so, the proposed interrogatories here were simply deficient in all respects and would not have further aided the Court in this inquiry. While they may have had some relevance to qualified immunity, they were not historical facts for the jury to evaluate and weigh. The failure to present Defendant's proposed interrogatories to the jury was not error because Defendant failed to provide questions of "historical fact," and, as explained below, "the answers to the refused interrogatories [are] irrelevant to the qualified immunity defense." *Breeden*, 280 F.3d at 1318; *see also id.* at 1323 ("given the jury's verdict, when read in light of the instructions, and its findings in response to the submitted interrogatories, it was not an abuse of discretion for the district court to refuse to submit the defendants' requested special interrogatories").

Further, as explained below, because there were no disputed issues of fact concerning qualified immunity, the Court had discretion as to the appropriateness of special interrogatories. *Stone v. Peacock*, 968 F.2d 1163, 1166 (11th Cir. 1992) ("If there are disputed issues of fact concerning qualified immunity that must be

resolved by a full trial and which the district court determines that the jury should resolve, special interrogatories would be appropriate.").

In sum, the Court did not err by refusing Defendant's improper interrogatories. At no point did the Court *refuse* the concept of providing special interrogatories; it simply was not satisfied with Defendant's various iterations over the four or five times the Court heard argument on them. If anything, the Court went out of its way to ensure that Defendant's had an opportunity to raise the issue. As the Court stated during the trial with respect to the lack of interrogatories: "that's because you have not come up with one that would—and this is what I said at the second pretrial conference is what you need to do is have a factual question that says to the jury is this fact true or not, and then you'd have to have an argument that says if the jury says yes as to that, then he is entitled to qualified immunity even if he violated Mr. Dukes's constitutional rights. And that's what has not come forward." (Doc. 137 at 11:16-23); (*see also id.* at 28:14-19) ("I mean, I've never precluded you from saying here is the factual scenario that, if proven, would be – would entitle us to qualified immunity, and here are the specific factual questions to ask a jury. And I've been talking about that since our first pretrial conference, and that's why where I think we still are.").

The Court should not be faulted, nor should the verdict be overturned, solely based on Defendant's inability to craft adequate interrogatories based on historical

fact as opposed to legal questions. (*See id.* at 34:18-21) (disallowing proposed questions in Doc. 111 because they were "legal questions").

### 3. Rule 59 is an improper vehicle to relitigate old matters.

As a final point, while Defendant is permitted to raise a Rule 59 motion at this stage, his motion is nothing more than an attempt to relitigate matters that this Court has heard ad nauseum on the "reasonable officer" language he wanted to present to the jury, his complaints about limiting officer testimony, and his failure to provide historical facts for interrogatories.

However, "[t]he only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." *In re Kellogg,* 197 F.3d 1116, 1119 (11th Cir. 1999). "[A] Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet,* 408 F.3d at 763. Because Defendant offers no manifest error in law, his request should be denied.

## III.   CONCLUSION

For all these reasons, Defendant's post-trial motions should be denied.

Dated: July 27, 2026.

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
SLATER LEGAL PLLC
2296 Henderson Mill Rd NE #116
Atlanta, Georgia 30345

27

Tel. (404) 458-7283
james@slater.legal

Joshua Tarjan (FBN 107092)
THE TARJAN LAW FIRM P.A.
12372 SW 82 Avenue
Pinecrest, FL 33156
(305) 423-8747
josh@tarjanlawfirm.com

*Attorneys for Plaintiff Terry Dukes, Sr.*

## **Local Rule 7.1(F) Certification**

Pursuant to Local Rule 7.1(F), I hereby certify that the above document contains fewer than 7,000 words, inclusive of headings, footnotes, and quotations, but exclusive of the case style, signature block and certificates.

By: */s/ James M. Slater*
James M. Slater

28